IN THE DISTRICT COURT OF THE UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED

2007 MAY -8  A 9: 23

KENNETH  WILLIFORD

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

**V.**                                    **CIVIL ACTON NO: 3:07 cv 105-WKW**

CHARLOTTE  WILLIFORD  &
MEMORY & DAY ATTORNEY'S at LAW

_____  _____  _____  _____  _____

   O1 appeal from the U.S. Ba1druptcy court for the MIDDLE DISTRICT
OF ALABAMA  Affirma1ce i1 case No 03-81486-WRS, of property divisio1
a1  fraud committed agai1st the U.S.BANKRUPTCY COURT

_____  _____  _____  _____  _____  __

        PLAINTIFF'S / APPELLANT'S KENNETH WILLIFORD

                 PRINCIPAL    BRIEF

_____  _____  _____  _____  __


Submitted o1 this Day ___7+H___ ,of MAY,2007

_Ke1eth Williford_
KENNETH  WILLIFORD

PRO-SE


                         KENNETH WILLIFORD
                         PRO-SE
                         100 WARRIOR LANE
                         BESSEMER, AL, 35023
                         AIS # 229597--O-11A

## CERTIFICATE OF INTERESTED PERSONS & ORGANIZATION'S

The following presons & organizations comprise all of the presons & entities, as are presently known to the plaintiffs/appellants, who or which have any interest in this appeal, other than the 12-or-50 creditors of the initial litigation from which this appeal eventually arose, who are not parties hereto.

Ms. CHARLOTTE T. WILLIFORD, Ex=wife in underlying chapter 11 case number BK- 03-81486-WRS

MR. JAMES L. DAY, ESQ; Memory&Day, Attorneys for the Willifords in underlying chapter 11 case Number BK-03-81486-WRS

MR. VON G. MEMORY,ESQ, Memory & Day, Attorney for the Willifords in the underkying chapter 11 case Number BK-03-81486-WRS

HON. WILLIAM R. SAWYER, JUDGE, U.S.BANKRUPTCY COUTR, M.D.ALA, presiding in the underlying chapter 11 case Number BK-03-81486-WRS

[ I ]

ALPHABETICAL LIST OF ABBREVIATIONS & ACRONYMS
SOMETIMES USED IN THES BRIEF

(BB) = BEVERLY BRADY, Divorce Attorىty for charlotte WILLIFORD

(BANKR. C.)  = BANKRUPTCY COURT

(CW) = CHARLOTTE WILLIFORD, EXWIFE

(DI.C.) = DIVORCE COURT

(DOC.C.) = DOCKETING STATEMENTS

(JD) = JAMES L. DAY, ATTORNEY
(J.R.L.) = JUDGE RICHARD LANE

(J.W.S.) = JUDGE WILLIAM R. SAWYER

(KW) = KENNETH WILLIFORD

(MB) = MARGARET BROWN, ATTORNEY, for Keىeth Williford iى Divorce case

(M&D) = MEMORY & DAY, ATTORNEYS AT LAW FIRM

(MD) = MEMANDUM DECISION

(M.H.P.) = MOBILE HOME PARK

(VM) = VON G. MEMORY, ATTORNEY

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs / Appellants does request oral argument. Due to the fact that (KW) is having to proceed these issues PRO-SE and without funds. (KW) feel's that since he is not A legal attorney, that it, would be extremely harder for (KW) to express the seriouness of the issues at hand than it would be to oraly argue them and not near as lengthy, due to (KW) absense of his writting skills. (KW) will be arguing the automatic stay, fraud against the courts, and the extreme Bias against (KW), and the scope of the (BANKR.C.)'s jurisdiction and arthiorty to make property division, and the role of the courts at hand. While perhaps intermixed and somewhat confused in this litigation, are all within this courts comprehension. An oral argument would uncoufuse any of the issues that are presented.

[ III ]

## TABLE   OF   CONTENTS

| DESCRIPTION | PAGE |
|---|---|
| COVER  PAGE | |
| CERTIFICATE OF INTERESTED PERSONS | I |
| LIST OF ABBREVIATIONS AND ACRONYMS SOMETIMES USED | II |
| STATEMENTS REGARDING ORAL ARGUMENT | III |
| TABLE OF CONTENTS | IV |
| TABLE OF CITATIONS | V & VI |
| UNITED STATES STATUTES | VII |
| ALABAMA STATUTES | VII |
| ISSUES TO BE PRESENTED | VIII |
| ISSUE  #1 | [1-7] |
| ISSUE  #2 | [8-15] |
| ISSUE  #3 | [16-20] |
| CONCLUSION | [21-22] |
| certificate of service | [23] |
| EXHIBITS A THRU Z | |

## TABLE OF CITATIONS

(Arranged alphabetically pursuant to rule 28 (a) (3))

### FEDERAL CASES

IN RE ABMA, 215 B.R. 148, 152 (BANKR. N.D.ILL1997)

ALBANY PARTNERS, 749 F. 2d at 675

BORG-WARNER ACCEPTANCE CORP V. HALL, 685 F.2d 1306,1308-9(11th cir. 1982)

IN RE BECKER, 136 B.R.113,116,118 (BANKR. D.N.J. 1992)

IN RE COLE, 202 B.R. at 360

IN RE COLLINS, 173 F. 3d 924, cert. denied

IN RE DURANGO GEORGIA PAPER CO., 297 B.R.326 (BKRTCY S.D.GA. 2003)

ELROD V. ELROD, 91 B.R. 187,189 (BANKR. M.D.GA.1988)

IN RE EDEN ASSOCIATES,SUPA,13 B.R. at 585

IN RE GARDNER, 913 F.2d 152 (10th cir. 1990)

IN RE GREENWALD,134,B.R. 729,731 (BANKR.S.D.N.Y. 1989), Rev'd on other GROUNDS..119 B.R. 435 (S.D.N.Y. 1990)

IN RE GIBSON,(1915 D.C.WASH) 255 F 420

IN RE HOWELL, 311 B.R. Id at 177 (BKRTCY D.N.J.2004)

IN RE HILSEN,100 B.R. 708, 711 (BANKR. S.D.N.Y.1989)

IN RE JEAN, 306 B.R. 708 (BKRTCY. S.D. FLA. 2004)

IN RE MORGAN,286 B.R. 678 (BKRTCY E.D.WIS.2002)

MALLINGKRODT, 260 B.R. 892 REVERSED 274 B.R. 560 (BKRTCY S.D.FLA.2001)

MATTER OF PASO DEL MORTE OIL CO., 755 F. 2d 421

PERLOW V. PERLOW, 128 B.R. 412 (E.D.N.C. 1991)

IN RE PALMER, 778 B.R. 402,406 (BANKR. E.D.N.Y. 1987)

ROBERGE V. RUIS,95 F.3d 42 (4th cir. 1996)

ROBERGE V. ROBERGE, (IN RE ROBERGE),188 B.R.366,367 (E.D.VA.1995),Citing 11 U.S.C. § 541 (a)(1)(2000)

IN RE STORM TECHNOLOGY INC.,260 B.R. 152

IN RE THOMAS, 331 B.R. 798 (BANKR. W.D.ARK. 2005)

UNITED STATES V. LE BOUF BROS. TOWING CO.,45 B.R. 887,12 B C D 1051, 12 C B C 2d 356 (E.D.LA. 1985)

IN RE VANN, 113 B.R. 704,706 (BANKR. C.COLO. 1990)

VIRGINIA V. COLLINS, 120 S.ct. 785,528 U.S. 1073,145 L.Ed 2d 663

WARTH, 422,U.S. at 501, 95 S.ct. 2206

IN RE WOOD, 825 F.2d 90,96 (5th cir. 1987)

## TABLE  OF  CITATIONS

Arranged alphabetically pursuant to rule 28 (a) (3)

### STATE  CASES

BAGGETT V. BAGGETT, 855. so.2d 556 (ALA. CIV. APP 2003)

DIVINE V. DIVINE, 812 so.2d 1278 (ALA. CIV. APP. 2001)

EX PARTE EILLOUGH, 728 so.2d 589 (ALA. 1998)

GATES V. GATES, 830 so.2d 746 (ALA. CIV. APP.2002)

HUNTER V. HUNTER , 706 so.2d 753 (ALA.CIV.APP.1987)********

EX PARTE LAMOREAUX,845 so.2d 801 (ALA. 2002)

LONG V. LONG, 824 so.2d 778 (ALA.CIV.APP.2002)

NOWELL  V.NOWELL, 474 so.2d 1128 (ALA. CIV. APP.1985)

PATE V. PATE, 849 so.2d 972 (ALA. CIV. APP.2002)

ROBINSON V. ROBINSON, 840 so.2d  729 (ALA. CIV. APP.2001)

ROBINSON V. ROBINSON, 840 so.2d  180 (ALA. CIV. APP. 2002)

SMITH  V. SMITH, 836 so.2d  893 (ALA. CIV. APP. 2002)

WELCH B. WELCH, 708 so.2d 179 (ALA.CIV. APP. 1997)

[  VI  ]

## UNITED  STATES  STATUTES

N.J.  STATE ANN. 2A: 34 - 23

28 U.S.C. §§ 157 (a), 1334 (b)

28 U.S.C. § 157 (a)

28 U.S.C. § 1334 (a)

11 U.S.C. § 541

11 U.S.C. § 362 (a)(3)

11 U.S.C. § 362 (d)

TITLE 11 SECTION (a)

BANKR. ACT § 311, 11 U.S.C. (1996 Ed) § 711

BANKRUPTCY KEY'S, 2546, 2062, 2401

BANKRUPTCY CODE 11 U.S.C. §§ 362,541 (a)(2)(A)

BANKR. CODE SECTION 362 (a)(1),(3)

ARK. CODE ANN § 9-12-308(MICHIE 2002)

## ALABAMA  STATUTE

30-2-5     (b)

[ VII ]

## ISSUES  TO  BE  PRESENTED

### ISSUE #1

The violation o an automatic stay during the proceeding's of A bankruptcy case, and the division of property after the automatic stay has been put in place and before the judgment of final decree in the divorce case was finalized.

### ISSUE #2

The fraud that was committed against the courts during the bankruptcy proceedures and the tax evaision that was and still is being committed against the government and the bankruptcy court.

### ISSUE  #3

The bias of the circuit court (DI.C.) and the (BANKR.C.) of one party, because of that party being incarcerated.  By taking the stand by helping one party which does not refute anything said by the other party, and not excepting any of the laws or statutes that the other has shown to the courts, just because that party is incarcerated.

[  VIII  ]

# ISSUE #1

Now (KW) since 11/28/2003, Exhibit "A" has been acting pro-se in the issues of the automatic stay, and property of his marital and busines property. First (KW) and (CW) goes to (DI. C.) on 9/22/2000, then on 10/3/2003 (DOC.1) (KW) and (CW) FILED JOINT BANKRUPTCY together, which in act's an automatic stay on all marital and business property's. On 10/31/2003 Hon. judge Lane of the divorce court hands down a judgement of divorce decree, and makes property division in this decree. Which violates the automatic stay of the (Bankr. C.).  On 10/22/2003 Exhibit "B"(KW) receives a letter from my divorce attorney (MB) saying she is with drewing from my divorce case because she was left out of the loop of our bankruptcy action.  But, (MB) does not inform the circuit court of her withdrawal until 12/12/2003, exhibit"C", and then the court GRANTED (MB) withdrawal on 12/24/2003 ,exhibit"C". (KW) had thought, that, since I had received (MB) letter on 10/22/2003, exhibit "B", that, the courts also knew of her withdrawal on the same date as I had received the letter of (MB) withdrawal, So on 11/28/2003, exhibit"A" pg. 3 #10 acting pro-se (KW) puts in a motion to intervene and informs the court of (KW)and (CW) bankruptcy action.  The court denies (KW) motion tointervene, and ignore's the information about the (Bankr. C.) automatic stay.

As in "Welch v. Welch,708 SO. 2d 179 (Ala. civ. App. 1997)", the appellate court noted, that, property division which award the husband, in addition to half of the marital home , and a portion of the furnishings, and one vehicle subject to indebtedness, was totaly inequitable, and unfair, and was reversible error on part of the trial court."

In the Williford case, (KW) receive's ZERO percent of any property and (CW) receives 100% percent of all the property.  This is to the extreme, and the lower courts are in error and should be reversed.

Asin "Nowell v. Nowell,474 so,2d. 1128 (Ala. civ. App.1985)" [3] that the trial court, however, awarded both pieces of real estate to the husband and made "No" monetary as to a division of property to the wife. In so holding, the trial court abused it"s discretion. REVERED. [4] inview of the evidence, the wife is "at least" entitlede to be compensated in an amount equal to ONE-HALF"...

[1]

This applies to (KW) case also, (KW) is intitled to at least one-half of his marital and business property also.  The court is in error by abusing it's discretion in the williford case and it should be <u>REVERSED</u>.

As in <u>Robinson v. Robinson</u>, 795 so. 2d (Ala. civ. App.2001), When the appellate court noted, the trial court property award contravened Ala. code 1975§ 30-2-5 , and was inequitable, and unjust in that it left the husband with virtually no assets from which to pay the wifes $51,000.00 award and forced him to remove the one remaining asset, his business, from the marital real estate at his own expence.

<u>REVERSED</u>.

CITED IN:

<u>Baggett v. Baggett</u>, 855 so. 2d 556 (Ala. civ. App.2003);

<u>Pate V. Pate</u>, 849 so. 2d 972 (Ala.civ. App 2002);

<u>Robinson v. Robinson</u>, 840 so. 2d 180 (Ala. civ. App.2002);

<u>Ex Parte Lamoreaux</u>, 845 so.2d 801 (Ala. 2002);

<u>Smith v. Smith</u>, 836 so.2d 893 (Ala civ. App.2002);

<u>Gates V. Gates</u>, 830 so. 2d 746 (Ala. civ App. 2002);

<u>Long V. Long</u>, 824 so. 2d (Ala. civ. App. 2002);

<u>Ex Parte Eillough</u>, 728 so. 2dd589 (Ala.1998)

The same is true in the williford's case as in the Robinson case above. The trial courts and the B(Bankr. C.) property award contravene's Ala. code 1975§ 30-2-5   and is  inequitable and unjust in that it has left (KW) with Zero assets to even pay the $512.00 per month child support, that has been awarded against him.  The lower courts are in eorror here and should be <u>REVERED</u>.

As in (5) <u>BANKRUPTCY KEY2546</u>, property owned individually by debt or orr co-owned with non-debtor spouse will become part of bankruptcy estate upon the filing of the bankruptcy petition. 11U.S.C.§541(a)(1)

As in (6)<u>BANKRUPTCY KEY 2546</u>, State laww principles of equitable distribution are not determinate of bankruptcy estate's interest in marital property belonging to debtor as of commendncement of a bankruptcy case, where petition for devorce is filed after one spouse's filing of a bankruptcy petition.

¶5,6] in accordance with the bankruptcy code, property owned individually by the debtor or co-owned with a non-debtor spouse will become part of the bankruptcy petition.

[2]

As Roberge b. Roberge, (I₁ Re Roberge), 188B.R.366, 367 (E.D.Va 1995), citi₁g 11U.S.C. § 541 (a)(1) (2000);

I₁ Re   Becker, 136 B.R. 113, 115 (Ba₁k. D.N₀J.1992)...
Robergw v. Ruis, 95 F. 3d 42 (4th cir. 1996);.. where a divorce is f filed after o₁e  spouse's fili₁g of a ba₁kruptcy petitio₁, pri₁ciples of equitable distributio₁ u₁der state  law are ₁ot determi₁ative of the ba₁kruptcy estate's i₁terest i₁ property belo₁gi₁g to debtor o₁ ₁ the date of the ba₁kru₁tcy petitio₁.  The property belo₁ged to (KW) the date the ba₁kruptcy was filed.. IN Re Becker, 136B.R. at 118

O₁e (Ba₁kr. C. ) court has observed that a ba₁kruptcy fili₁g is "t "theequivale₁t of a levy by the tnustge upo₁ all the debtor's property as of the petito₁ date" I₁ Re Becker, 136 B?C. 148,152(Ba₁kr W.D. Ill. 1997),"If awardof marital dissolutio₁ has ₁ot bee₁ made at time of ba₁kruptcy fili₁g, the trustee's status as a hypothetical lie₁ creditor cuts off ₁o₁- debtor spouse's i₁chate rights i₁ marital property, a₁d such property becomes property of the estatg, free claims of the ₁₁o-₁debtor spouse".(Quoti₁g I₁ ReCole,202B.R.at 360; IN Re Palmer, 778 B.R. 402,406 (Ba₁kr,E.D.N.Y. 1987);I₁ Re Va₁₁, 113, B.R. 704, 706 (Ba₁kr. d. colo. 1990).

( ₁o₁- debtor spouse's i₁terest i₁ debtor's share of maraital property, which is the subject of equitable distributuo₁ proceedi₁gs i₁ a divorce actio₁ comme₁ced prior to ba₁kruptcy, are cut off by the ba₁kruptcy fili₁g if property divisio₁ has ₁ot bee₁ fi₁alized).

(Citi₁g Perlow v. Perlow, 128 B.R.412 (E. D. N. C. 1991);
I₁ Re Gree₁wald, 134 B.R. 729,731 (Ba₁kr. S.D.N.Y.1989), Rev'd o₁ other grou₁ds.. 119 B.R. 435 (S.D.N.Y.1990).

Furthermore, Li₁da Thomas's motives for fili₁g for divorce are highly suspect.  She admitted that although her husba₁d was co₁victed of fraud i₁ statecourt a₁d is due to serve time i₁ jail, she still does ₁ot live separate a₁d apart from him . They atte₁ded the (Ba₁kr .C.) heari₁g together, a₁d the debtor testified that his wife stood by him duri₁g his state court trial.  Stro₁g evide₁ce was adduced at the ba₁kruptcy heari₁g that the divorce actio₁ is the result of collusio₁ betwee₁ spouse's who i₁te₁ded to shield their pri₁cipal assets from the dlaims of creditors... see also ArK code A₁₁ § 9-12-308 (Michie 2002),....

As i₁, Devi₁e v. Devi₁e , 812so.2d 1278 (Ala. civ. App.2001) state's i₁ (6) BANKRUPTCY KEY 2062
"t₁ial court has jurisdictio₁ to fashio₁ a property divisio₁ i₁ a divorc

[3]

actio 1 where the ba 1kruptcy court e 1ters a 1 order lifti 1g the automatic
stay as to the divorce actio 1".

**WHICH WAS NOT DONE IN THE WILLIFORD CASE.**

(7) BANKRUPTCY KEY 2062

"Because of the  parties pe 1di 1g ba 1kruptcy actio 1, the trial court
was ithout jurisdictio 1 to e 1ter that portio 1 of it's divorce judgme 1t
tjat divided the parties marital property , give 1 that the ba 1kruptcy
court did 1ot e 1ter  a 1 order lifti 1g the automatic stay " See Hu 1ter
v. Hu 1ter, SUPRA.

**WHICH IS EXACTLY WHAT HAPPEN IN THE WILLIFORD CASE.**

**As i 1 Hu 1ter v. Hu 1ter, 700 so. 2d 753 (Ala. civ. App. 1997),(2)**
BANKRUPTCY KEY 2062, 2401

"...it did apply to wife's claims o 1 appeal that the trial court i 1eq-
uitably divided marital property, which sought e 1largeme 1t of her pro
-perty rights at expe 1se of husba 1d chapter 13 debtor property rights,
so that abse 1t stay relier order, the state appellate court had 1o
jurisdictio 1 over appeal, BANKE. code 11U.S.C. § 362 (a),(d); However,
we must reverse that portio 1 of the  trial court's judgme 1t related
to the  divisio 1 of marital property.

**WHICH IS EXACTLY WHAT SHOULD BE DONE IN THE WILLIFORD CASE.**
I 1 Re Wood, 825 F 2d 90,96 (5th cir. 1987), 2)BANKRUPTCY KEY 293

(1) Test for whether matter is related to ba 1kruptcy.  With i 1 mea 1i 1g
of jurisdictio 1al statue, is whether outcome of proceedi 1gs could co 1ce-
eivably have a 1y affect o 1 estate bei 1g admi 1istered i 1 ba 1kruptcy...28
U.S.C. § 1334

(2) For  the purpose of determi 1i 1g whether a particular matter
fails withi 1 ba 1kruptcy jurisdictio 1, it is 1ot 1ecessary to be dis-
ti 1guish betwee 1 proceedi 1gs "arisi 1g u 1der, arisi 1g i 1 a case u 1der
or "related" to a case u 1der, title 11. These refere 1ces operate
co 1ju 1ctively to defi 1e the scope of jurisdictio 1. Therefore it is
1ecessary o 1ly determi 1e whether a matter is at least "Relave 1t" to
the ba 1kruptcy. The act does 1ot defi 1e what is related to matters.
Courts have articulated various defi 1itio 1s of "related," but the
defi 1itio 1s of the circuit of appeals for the third circuit appears
to have the most support, is whether the outcome of that proceedi 1g
could co 1ceivably have a 1y effect o 1 the estate bei 1g admi 1istered
i 1 ba 1kruptcy. This defi 1itio 1 comport with the legislative history
of the statutory procedure to sectio 1 1334, 1either maratho 1 1or ge 1eral

[4]

co cer 1 of doi g of cou sel agai st its use, we adopt it as our ow 1.

As i 1 the williford's case here, just like i 1 <u>Hu ter V. Hu ter</u>,700 so. 2d 753 (Ala. civ. App 1997), The appellate courts had 10 juris-dictio 1 over appeal due to BANKR. code 11 U.S.C. § 362 (a),(d), a d was reversed o 1 the portio 1 of the trial's court's judgme t related to the divisio 1 of property , just because the wife wa ted her property rights ENLARGED. I 1 other word's the trial court judgme t had i equitaly divided the property just as they have go e to the extreme i 1 the Williford case

As show 1 i 1 all of the above case the trial court, appellate court's a d the (BANKR. C.) has co trave ed the Ala. code 1975 § 30-2-5  . The (BANKR. C.) just goes o e step further tha 1 the lower courts o 1 1/23/2007 i 1 a telepho e heari g a d ad mittes that, for their reaso i g, is (KW)'s i carceratio 1.

"BKRTCY. E.D. WIS. 200<u>2,</u> i 1 postpetitio 1 dissolutio 1 proceedi g, wisco si 1 family court had 10 jurisdictio 1 i 1 award to 10 1-debtor wife, or to a yo e else, real property that was the marital property of her a d chapter 7 debtor husba d, 10 say relief was requested whe 1 wife filed the dissoluytio 1 actio 1 a d by the 1, the house i 1 questio 1 was already u der the jurisdictio 1 of the Florida ba kruptcy court, as property of debtor-husba d's ba kurptcy estate. "Ba kr. code 11 U.S.C.§ § 362,541 (a) (2) (A) I 1 Re morga 1, 286 B.R. 678". (KW) case a d the morga 1 case above are ide tical, both wifes lay claims to real property that was the marital property a d i 1 (KW) case busi ess property also, all of (KW) real property was already i 1 the jurisdictio 1 of the U ited States (Ba kr. C.) as property of debtor (KW) ba kruptcy estate.  The questio 1 is how ca 1 the Ho 1,(J.W.S.) retroactivate a divisio 1 of property that did 10t exsist at the time the ba kruptcy petitio 1 was filed.  Accordi g to all the case law a d statutes that have bee 1 show 1, this ca 1 ot be do e, a d si ce the 10 1-debtor wife or co-ow er did 10t request for title 11 U.S.C. § 362 (d)  to have the automatic stay lifted so the lower court could make divisio 1 of property.  The 10 1-debtor wife, accordi g to the law is 10w without a y rights to a y real property 10t the mai 1 debtor (KW). See Perlow  v. Perlow o 1 pg. (3), (KW) a d (CW) judgeme t of divorce was 10t fi ial u til 10/31/03 ,see (DOC. ST.)306,a d the ba kruptcy petitio 1 had bee 1 filed o 1 10/3/03,see (DOC.ST.)1, a d so all the distri-butio 1 of a y property was cut off o 1 10/3/03.

"I 1 Re Gibso 1's co str. INC. 46 B.R.193,12 B C D 463 (E.D.KY 1984),where

[5]

district judge of easteri district court of Keitucky issued staidiig order pursuait to 28U.S.C. § 157, baikruptcy court is empowered to hear aiy or all cases ataisiig uider title 11 of the UNITED STATES code , except persoial iijury, tort, or wroigful death claims".

"C.A. 5 (Tex) 1985, Baikruptcy court jurisdictioi attaches ocer debtor aid his property, if at all, at time chapter11 petitioi is filed, BANKR. ACT § 311, 11 U.S.C. (1976 Ed.), § 711, Matter of Paso Del Morte oil Co., 755 F2d 421"

"C.A.4 (Va) 1999, oice a baikruptcy petitioi is filed, the baikruptcy court has jurisdictioi over the case with authority to resolve all claims agaiist the estate aid discharged the debtor, regardless of hether a state is a creditor. Ii Re Colliis,173 F. 3d 924, certiorari deiied, Virgiia v. Colliis, 120 S. ct. 785, 528 U.S. 1073, 145 L.Ed. 2d 663."

Not evei the divorce court cai take (KW) property away from him aid give it to somebody else accordiig to the law at haid.

"BJRTCY. N.D. Cal. 2001, Jurisdictioi Graﬁt to baikruptcy courts is board. 28 U.S.C. §§ 157 (a), 1334 (b).

Ii Re Stom techiology INC., 260 B.R. 152, board graiﬁt of jurisdictioi to baikruptcy courts promotes the efficieiﬁt aid expedi_tiois resolutioi of all matters coiiected with the baikruptcy estate, 28 U.S.C. §§ 157 (a), 1334 (b). Ii Re Storm techiology INC.,260B.R. 152".

" As ii matter of Palmer, 78 B.R. 402 (BKRTCY. E.D.N.Y. 1987)", [4[ it is with the distributioi of prorerty of the  estate as defiied ii 11 U.S.C. § 1334 gives the district court exclusive jurisdictioi over both property of the estate aid property of debtor..." "the stay is coitiiued, however, with regard to eiforcmeit of aiy decree of the matrimoiial court to the exteit that it awards property of the estate to aiy eitity other thai the debtor.  Aiy distributioi of  property of the estate shall proceed oily ii this court pursuait to the applicable preovisiois of title 11".

"Ii Re Gardier, 913 F 2d 1515 (10th cir. 1990) I.D. at 1520 "states that oice the  baikruptcy court acquired jurisdictioi  over the debtor property, that, jurisdictioi coitiiued to determiie all coitroversies relatiig to claims of aiy aid all parties to that property , the (BANKR. C.) could determiie the priorities betweei the parties. THE FACT'S ARE IN THE WILLIFORD CASE,

(1) (KW) isthe meai debtor ii this baikruptcy proceediig.

(2) (CW) is co-owier or ioi-debtor spouse ii this baikruptcy proceedii

(3) (KW) and (CW) want to divorce court on 9/22/03, filed joint bankruptcy on 10/3/03,(DOC.ST.1), then on 10/31/03,(DOC.ST.306) judgement of divorce decree come's down with a illegal division of property.

(4) On 10/22/03, Exhibit "B" (MB) divorce attorney for (KW) withdraws from the case.

(5) On 11/28/03 Exhibit "A" acting Pro-Se "motion's to intervene" and informs divorce court of bankruptcy. (KW) motion is denied and bankruptcy information was ignored.

(6) (KW) appeal's the divorce case and the appellate court affirms. Which was irrelevant, because neither of these courts had jurisdiction over this case, and their judgement's were "MOOT".

(7) At no time during these proceeding's has (CW) or any of the attorneys have refuted any of the material allegation's of the of the complaint set before the courts.

(8) At on time had (CW) requested for title 11 U.S.C. § 362 (d) as to lift the automatic stay, to make the division of property legal.

Now according to the "Law" that has been shown, all of the properties still belong to (KW). Also according to the "law", since the state,

(CW), and the (BANKR. C.) has not refuted (KW) complaint's as described therefore by the operation of "law" it is to be taken as true by this reviewing court. "Warth, 422 U.S. at 501, 95 S. ct. 2206 and Ex Parte Brooks, 897 so. 2d 1017 at 1021 (2004); "The United States Supreme Court , stated a reviewing court "MUST" accept as true all material allegations of the complaint,and "MUST" construe the complaint in "FAVOR" OF THE "COMPLAINING PARTY." Which in this case is (KW).

[7]

ISSUE # 2

When (KW) and (CW) filed joint bankruptcy in 10/3/03,(DIC. ST.)1 (VM) told both (KW)and(CW) that they would not take sides nor have any thing to do it in our divorce case and that, they (M&D) would represent both (KW)&(CW) equally in our bankruptcy case. What they failed to say was since the money ,that was to pay them was actually coming out of (CW) hand to their hand , that they (M&D) were going to lean toward (CW) interest, rather than to comply to the law of the (BANKE. C.) or to protect (KW)'s interest as aclient from the very begining (M&D) failed to report to the divorce court or to the (BANKR. C.), THAT, THE DIVORCE COURT (DI.C.) had made an illegal division of property, while their client's (KW)&(CW) were under an automatic stay, pursuant to [BANKR. code 11 U.S.C.§§ 362,541,(a)(2)(A)] see" Morgan, 286 B.R. 678 (BKRTCY. E.D.WIS.2002); As shown in (DOC.ST. 1-8,10,13-26,28,29), in these documents you can find all the creitors that had anything to with this bankruptcy case. What cannot be found is the courts being notified about the property division.

On 1/29/04,EXHIBIT (D),(M&D) wrote(KW) and were ex*PLAINING THAT* they (M&D) represented both (KW)&CW), and went on to explain some other things in the case. Then the next to the last paragraph on the second page, saying that, "Realistically, I must remember that this bankruptcy is just A way to prevent having to file A supersedeas bond during the appeal of the emerton case. There is no real intent to file A plan or reorganization, was just to help "hold the dogs off". (KW) wrote back on 2/1/04 EXHIBIT (E), telling (M&D) about the false information being handed to this Hon. Court and that if there was any kind of underhandless going on that I would with draw from this case, and that I wanted them to fix the illegal division of property now since they said, they represented me. (M&D) never responded to this letter. For the First (277, DOC. ST.)'s that were turn in to the bankruptcy court only one (DOC. ST.) referres to the property division and this was not done untill 6/29/05 (DOC.ST.)191. On pages 6,7 of(DOC.191) it says "in September 2003 charlotte williford filed A petition for divorce against Kenneth Williford in the circuit court of lee county, Alabama, case Number DR 2003-175, pursuant to A judgment

[8]

of divorce re ndered 10/31/2003, the court awarded to Charlotte Willifor
d all property of the estate. This matter was appealed by Ke n neth
Williford to the Alabama court of civil appeals, case Number 2030320,
a nd A reheari ng was de nied, 6/17 2005". There was nothi ng i n this
co (DOC.ST.191) sayi ng that the (Di.C.) to let the lower court k now,
that,  it's judgme nt decree was voided because of the  utomatic stay,
pursua nt to title 11 §362 (a) of the Ba nkr. code.  The o nly reaso n
(M&D) ame nded this to (DOC 191) was because of the letter (KW) se nt
to  (M&D)&(CW) o n 5/26/05,EXHIBIT "F", that , (KW) was fixi ng to "Motio
n the  (BANKR.C.) for co ntroll or for the divisio n of the property
   Arou nd or about 6/8/05 (JD) CAME TO THE PRISON TO VISIT WITH (KW)
AND TOLD HIM THAT IF I se nt this letter i nto judge sawyer, that he
would kick us out of chapter 11 a nd put us i nto chapter 7 , the n make
us liquidate all of our assets, a nd that, (KW) should wait u ntill
judge sawyer comfirmed the pla n, that was before him, before I (KW)
motio ned the court for divisio n of the property. By not havi ng a ny
k nowledge of the importa nce of the pla n whe n it was comfirmed,(KW)
we nt o n the advice of attor ney (JD), a nd waited u ntill judge sawyer
comfirmed the pla n.  This i n it's self is fraud, advisi ng (KW) to
wait u ntill the pla n was comfirmed, a nd k nowi ng that the ba nkruptcy
proceedures were all but over whe n this is do ne, a nd also k nowi ng
that (CW) would keep full possessio n of the illegal property diviso n
   Starti ng as far back as 7/26/04 EXHIBIT (G) (KW) wrote to (M&D)
about me (KW) taki ng  co ntroll over my busi nesses .  (M&D) respo nse
to the 7/26/04 EXH.(G) came o n 8/4/04 Exhibit (H). Their respo nse
was no more tha n A "Bo Game" with (KW). (KW) told (M&D) that he was
tur ni ng over power of his busi ness. (M&D) reply back by sayi ng i n
the seco nd pargarph "that this could n't have come at A more i nopportu ne
time, a nd that we were o nly "ha ngi ng by A thread" etc,etc,. The n i n
the fi nal pargraph, that, they represe nt (KW)&(CW); Rather tha n
prepari ng  docume nts o n my ow n, to allow them to prepare docume nts
for me....but would have to be do ne with cooperatio n a nd coordi natio n
of (CW), a nd suggest that I direct Jaso n McDa nial to take no actio n."
  (KW) reply back o n 8/11/04 EXHIBIT(I)o n page 6 that I awaited respo nse
from them with subjestio ns of their opi nio n as how to ha ndle thes
matter. No respo nse from (M&D). O n 8/15/04 EX IBIT(J) telli g (M&D)
I was tryi ng to comply to th ir wish s, that, I had tryed to call them
but my  alls wo nt go through, a nd to please make promptest respo ns .
Still no respo nse from (M&D)  O n 8/30/04 EXHIBIT(K) TELLING (M&D) t at

[9]

I wasn't A part of defrauding the courts, or help cover up (CW)'s tax evaision to the governmeit aid askiig (M&D) to help m get back my property and busiNess. Still no response back from (M&D). On 11/8/04 EXHIBIT(L) (KW) received A letter from (M&D), on page 3 second paragraph under question six. (M&D) go a d explain how to make the value of property look less than the value (Equity). Sayiig "for example, "if" you one more on the mobile housiig preperty, that it is worth, an the property iS liquidated, there would be nothiig lcft for unsecured creditors"....

Which was not the case, in the Williford's bankruptcy case. In facT we owed oily about $200,000.00 on the housiNg property, and it's value was and is about $75,000.00 and (M&D) knew thes too. Which these papers would have to be subpuena from (CW) aid the insurance compaNy.

No (M&D) would peobable say that this iS the stRategy, that, has to be used in bankruyptcy proceedure. When in fact, it iS, straight out lieiig to and miss leadiNg the courts to the trueTh of the facTs in this case.

On 1/31/05 EXHIBIT(M) (KW) sends (M&D) two letteA's telliNg them how (CW) is falsifyiig the income st4tements aid (KW) beiniing surprise that the courts hadn't caughT them at it by now. But no response fRom (M&D).

On 2/5/05 EXHIBIT(N) pg. 2 second pargaRaph (KW) seit (M&D) an ther leter, aid waris them again a out (CW)'s wrong doiNgs aid that I'm goiig to go to Judge Sawyer with it iF something isn't done about it.

On 2/24/05 EXHIBIT(Q), (KW) receive's A letter fRom (M&D) sayiNg now they "have no desire to geT in the middle of disagreemeits witH respect to paymeNt and the operatioi of my business', aNd then explaiiing that they do nced my inpput oT A chapTer 11 plai. BuT never do they respone to EXHIBIT (M) or (N) on the miscoiduct of (CW).

On 3/16/05 EXHIBIT(P) f om (M&D) saying they weRe goiig to meeT with (KW) at the prison or by phone by the enD of APRIL.

On 3/20/05 EXHIBIT(Q) letter to (M&D) telliNg them I didi't wait A meetiNg by phone, but f4ce to face aT the prison.

On 3/28/05 EXHIBIT(R) letter to (M&D) telliig them t make their arraigmeNts to see me in APRIL, Not aRouid the days of 14-17, that I would be in "KAIORS" on them dates aNd would Not be able to talk to them. Still no response back.

On 5/26/05 EXHIBIT(F) letter to (M&D) sendiNg them A copy of what was togo to Judge Sawyer. I was tired of waitiNg on them siNce

[10]

they didn't come to see me as they had said in APRIL.

On 6/1/05 EXHIBIT(S) (M&D) responses to Exhibit(F) and say's that the firm does not respond to  threat's and uses me as for their reason for  asking for another extension and then uses the Emertors judgement as another "Bo Game" to stop me from filing

On 6/2/05EXHIBIT(T) (KW) response to (M&D) Exhibit(S) telling them not to be useing me for their lie's of Reasoning to courts,that, filing late was their fault, not (KW) fault

As to the orders on (DOC.ST.251,252,256,and257) (KW) had'nt received these (DOC.ST.) untill after they had been put into place, and knew nothing about them coming up at that time.

On 2/5/06 EXHIBIT(U) (KW) "motions for controll or division of property' to the courts . (KW) WAITED UNTILL HE HAD FOUND OUT THAT THE Bankruptcy plan had been comfirmed on 1/30/06 (DOC.ST.255). But (KW) never received A response back from the court.

(KW) has shown that from the beginning that (M&D) knew about the illegal division of property by the lower court and fail to notify the (D.C.) or the (BANK.C.) about this problem, by trying to keep (KW) Quiet about this issue. Then (M&D) craftily amend's the disclosure statement about (KW)&(CW) divorce and all property Awarded To (CW) see (DOC.ST.191) pages 6&7, and still does not address the issue that the automatic stay was in place at time of the judgement decree. This is negligence on the part of (M&D) and fraud against (KW) and the court system.  The letter from (M&D),Exhibit(V) on 6/29/05 says they enclosed A copy of the amendment, (DOC.ST.191).  There was no (DOC.ST 191) with this letter to (KW). IN fact (KW) han't even seen this (DOC.ST.191) untill "Atorney Williammurray" sent it to (KW) on 1/22/07 EXHIBIT(W), some ninteen months later. On (DOC.ST.191) page# 28 the court can see(KW) wasn't even on the "Certificate of S rvice". Another perfidious way of keeping information from (KW) and this Hon. court.

Furthermore, (M&D) were told about the incorrect income statement's false payroll statement, false or misleading apprais'al's and tax evaision that (CW) was reporti  to t e court i  the i  exhibits above and made no effort to correct these false statements to the courts. Which are A clear and intentional effort to defraud (KW) and the courts.

As for (CW) part in defrauding (KW), and the courts, and tax evaision to the I.R.S., will be shown in Exhibits listed as their (DOC.ST.Numbers ).(Doc.St numbers 43,4 ,61,69,77,85,and89.) (KW) never received any of these (DOC.ST.)'s,but, (KW) feel's,that, (DOC.ST.) will reflect

[19]

the same scenario as the following (DOC.ST.)'s, 94,100,111,123,129 130,133 142,152,166,178,188,196,215,and 239. Please look at EXHIBIT(X), as A chart has been laid out on EXHIBIT'S 94 thur 239.

First of all let (KW) educate this Hon. court on the mobile home park (M.H.P.) rental business some. The revenue, and expense section are to be considered as gross, not net. In the (M.H.P.) business is not like any retail business were you will have A daily flow of customer's, which can and will influence revenue greatly. Unlike the (M.H.P.) lot rental business, were, when your customer moves their home into our park at Agreat expense to the customer, and will cost the customer r A great expens to move out, when they decide to leave. Which makes the (M?H.P.) revenue income 90% more stabile, than retail revenue. As for the expenses in the (M.H.P.) BUSINESS, THE EXPENSES ARE MORE STABILE THAN THE REVENUE. You will have employee's, that, have to be payed weekly , utilities and payments , that have to be paid monthly, which these 3 payouts stay the same monthly, and other than, if, A piece of equipment breaking down rvery once and A while, the expenses are extremely stabile every month, in the range of 95 to 99% stabilization. The (DOC.ST.)'s on EXHIBIT (X) will/ do not reflect A stabile revenue income, nor A stabile expense pattern. In fact it will show A wide range of revenue income and A wide range of expense, which neither are consistent with the (M.H.P.) industry. Looking at this chart EXHIBIT(X) the "revenue, expenses, net income and checks on pages" or the most important. The revenue section shows as much as $54,722.40 in (DOC.ST.) 133, and as low as $41,667.99 in (DOC.ST.) 142. Notice how in (DOC.ST.) 94 thru 130 conveniently coincide the revenue and £xpenses, by the fixures running up and down each month, and the "current statement balance" always having just A little left in it. By *looking* at these (DOC.ST.) 94 thru 130, it would seem, that, there was A lot of mobile homes being moved into and out of or rental homes *being*, rented out to people or people leaveing the rental home. But when you look at (DOC.ST.) 123 thru 130, it would have taken about 45 mobiles homes to of been moved into the parks to cover th s jump in revenue or more, an average of 15 homes per month. The best three month's in the past thirteen years of business, virtually impossibl in this area. What is even more impossible is the next month on (DOC.ST. 130 to 133, there would have had to be 58 new homes moved in that month.

[1̸7̸]

The the very next month from (DOC.ST.) 133 to 142, there would had to of been all the homes that moved in from (DOC.ST.) 123 thru 133 which would be 103 homes moved out of the parks.

This is not what is happening. What is happening, is, what revenue is being shown, in being shifted around from month to month, and the expenses are trying to coincide with the revenue, to make it look like the park's are bearly getting by. Where in reality, from (KW) personal knowledge the (M.H.P.)'s revenue is taking in approximately $55,000.00 to $60,000.00 per month. On (DOC.ST.) 133 revenue was $54,722.40 which is A more realistic fixure, but lower than the actual fixures. Then the next month, revenue drops by $13,054.41; in (DOC.ST.) 142 where revenue is now at $41,667.99. Now if by some strange event there hasn't been 103 mobile homes moved out of the parks, the revenue would not have change from (DOC.ST.) 133 to 142, or $54,722.40, to $41,667., this $13,054.41 is being hidden from the (BANKR.C.) and the taxes or not being paid on this money either. On (DOC.ST.) 166 and 178 have virtually the same revenue of $43,633.74 and the same expense of $25,117.10, their net income for the month were the same at $18,516.64. Now when (DOC.ST.) 166 net income was $18,516.64 it moved the "current statement balance" fixure from $4,421.85 which is what the balance was on (DOC.ST.) 152 the month before, too A balance of $22,913.49, but when the exact same fixure came in on (DOC.ST.) 178 of A net income of $18,516.64, the "current statement balance" only moved up tp $26,415.77, when the "current statement balance" should have been $41,430.13. By their own fixures there is $15,014.36 missing from the account, and untaxed. On (SOC.ST) 188 thru 228 IS running virtually same scenario as (DOC.ST.) 94 theu 129, then again in (DOC.ST.) 235 and 239 another large jump in revenue and expenses trying to keep things balanced out. (CW) has been averaging about $44,358.00 per month. When the parks have actually been bringing in a average of $60,000.00 permonth. Which at the end of twelve months is about $187,698.00 dollars left untaxed and not reported to the (BANKR.C.). Now (DOC.ST.)'s 94 thru 239 on exhibit (X) page. (KW) does not have "checks on pages" section for (DOC.ST.) 94, or 219, but, (DOC.ST.) 100 thru 239, the pages under section " check on page #'s" all the payroll checks written to employee's. Fir example Mr. David Miles, this employee is paid $400.00 for A 5 day work week . On every one of his check this Hon. court can see, that, this employee's check's is for $179.99, are from where (CW) has taxed David Miles on $200.00 of the $400.00 she has paid him. The other $200.00

[13]

is handed to Mr. Miles in the form of cash, so that (CW) wont have to
pay anymore payroll taxes than she has too.

(KW) will start with the check numbers in (DOC.ST.)100 listed
in the ' checks on pages #'s" section and will work allthe way through
(DOC.ST.) 239 in exhibit(X).

Check number's (DOC.ST.)100/ 1780,1779,1778,1754,1737,1735,1690;/
(DOC.ST.)111/ 1889,1903,1878,1881,1860,1856,1813,1819,1801;
(DOC.ST.)123/1816,1977,1957,1946,1912;
(DOC.ST.)129/ 2065,2057,2009,1994,1988,1996,
(DOC.ST.)130/ 2154,2132,2096,2080;
(DOC.ST.)133/ 2161,2180,2201,2221,2224;
(DOC.ST.)142/ 2223,2269,2275,2289,2301,2302,2318,2321;
(DOC.ST.)152/ 2322,2330,2359,2398,2399,2397,2418;
(DOC.ST.)166/ 2417,2434,2459,2476,2485,2492;
(DOC.ST.)178/ 2544,2565,2579;
(DOC.ST.)188/ 2662,2651,2606,2595;
(DOC.ST.)196/ 2755,2733,2734,2724,2723,2681(T.A.);
(DOC.ST.)215/ 2819,2818,2794,2793,2764,2762,2848,2757,2756;
(DOC.ST.)219 (KW) did not receive any copies of the checks this month.
(DOC.ST.)228/ 2998,2988,2985,2948,2944,2939,2875;
(DOC.ST.)235/ 3001,3031,3074,3078;
(DPC.ST.)239/ 3089,3111,3136,3148;

These are all payroll checks that will show, like in David Miles
,that, A person does not work for  $4.00per hour any more and that in
the other checks written for the whole amount and wasn't taxed at all.
The evidence that has been presented here before this Hon. court, clearly
shows the intentional and deliberate attempt to defraud the court system
and to keep from paying taxes,which, makes this Hon. courts payroll.

Furthermore, Teresa Akins is the manerager over "BEN-MOR VILLAGE"
(M.H.P.) and (CW) pays her money all under the table, Tony Palmer is
the manerager of "FIELDS" (M.H.P.) and is paid all monies under the table.
With all due respect to (CW)'s high intelligent level, (CW) intelligence
does not reach this level, as to make up such A finacialsatatement,
as it would be an every day practice for (M&D), and for (M&D) to show
(CW) how to do such a finacial statement.  (M&D) knew of these finacial
statements and knew they were false, so (M&D) or just as guilty as (CW)
if not more so.  Then by the HON. Judge William Sawyer being told
about the fraud and by ignoring it and overlooking all the facts and

[14]

evide ce prese ted to himo 1 this case the Ho 1. Judge Sawyer may be just
as guilty as the other parties i volved

## ISSUE #3

The Bias against (KW) can be seen from the beinnig at the (DI C.) stage in (DOC.ST.) 306, 10/31/03, see court record "case number DR 2003-175" Lee county Ala.

When the Hon. Judge Richard Lane (J.R.L) award (CW) 100% of all marital and business property, see court record final "Judgment of Divorce. This judgment of divorce could no have been made up by the Hon. (J.R.L.), the judgment of divorce is twenty-one (21) pages long and is in such detail as to show the latitude, and longitude, and degree of all the properties. This could have only been done by (CW)'s attorne (BB). NO judge would ever take time or could even have the time to have gone into such particular's of properties in any divorce casee.

But the Hon. (J.R.L.) goes further when he starts asking about (KW) crimial case, in the (DI.C.) transcript rec rd, page 78 & 79 EXHIBIT(Y) lines (8-25),& 79 line (1-2).

Question's

(1)     THE COURT:
        Let me ask him a question. No , I'm just A simple
        person and I'm ot very smart when it comes to
        busines , but y u've to two se tences, fiftee n
        years and twenty-five years, and they are not
        concurrent, are they?
        (A) Yes, they are.
(2)     THE COURT:
        THEY ARE CONCURRENT? I wasn't sure.
        (A) They a   runnig together.
(3)     THE COURT:
        they are concurret. You're going to be in jail
        for-- unless t e appe l comes back and we've
        all been around this t ack. There would probably
        A Re-trial, I would imagine.
        (A) Right
(4)     THE COURT:
        and so you're still going to be confine, and
        you just tell me how you're going to run the
        business and make the proportionate payme t o
        on the debt? How are y u going todo that if you're
        in jai ?
Page 79 lines (9-13,15,20-23,25)
(5)     THE COURT:
        Do you not agree with me, Kenny, that if you
        don't, if we do this which you have just suggested
        that she will probabl go down the tube in A
        couple of month because she's the one they are
        going  to be looking for making the payments
        (A) No Sir.
(6)     TH  COURT:
        How is she going to do it the ?
(7)     THE COURT:
        Kenny, the bankers, who are they going to look
                        [16]

to? Do you thik they are goiıg to go to the jail
aıd sit outside your jail cell there aıd wait
for you to--

page 80 liıes (1,10-13) EXHIBIT(Y)

(8)   THE COURT:
Who do you thiık the baık is goiıg to look
for to make paymeıts oı Octerber 5th ?

(9)   THE COURT:
I'm adkiıg you how is it goiıg to work theı?
If you get what you waıt there, isit ıot
goiıg to go dowı the tube with iı A moıth
A moıth or two?

page 81 liıes (9-23) EXHIBIT(Y)

(10)   THE COURT:
Keııy, would have, could have, aıd should
have, you kıow how that goes, would have,
could have aıd sıould have. You could have formed A
corporatioı A loıg time ago aıd protected yourself
from come of this thiıg. Right ıow you're iı A bad
situatioı, everbody is. Aıd what I hear this lady say
that she would take whole thiıg over, aıd the debts
with it, I'm assumiıg, aıd  try to make A go of the
whole deal. I meaı that's--

(11)   THE COURT:
aıd you're sayiıg you waıt part of the pie eveı though
you're iı prisoı ıow for A period of time aıd hopefully
your appeal will work out aıd all that, you kıow, but
I am just woıderiıg how it's goiıg to work out that
wrʒ    'd you say you--

page 83 liıes (1-3,7,8)EXHIBIT(Y)

(12)   THE COURT:
If she was iı prisoı for the ıext teı years I bet you
wouldı't miss A heartbeat, you'd keep it ruııiıg,
wouldı't you?

(13)   THE COURT:
aıd she would be iı prisoı aıd wouldı't be able to
do aıythiıg.

(KW) has just preseıted thirteeı (13) questioı from the record,
where the Hoı. (J.R.L.) has just battered (KW) with aıd would bearly
x chaıce to aıswer or would iıterrupt (KW) before he could fiıish oıe
questioı by askiıg aıother. The Hoı. (J.R.L.) first & secoıd questioı
starts with beiıg bias by askiıg (KW) about his crimial case. How maıy
years (KW) has if they rum coıcurreıt or ıot.

This has ıothiıg todo with the divorce case or property divisioı.

Third questioı of statemeıt was about (KW) beiııiıg iı jail, uıless
my appeal came back, aıd how they all have beeı arouıd that trick aıd
the probablitly of A re-trial.

Noıe of this has aıythiıg todo with property divisoı or our divorce.

Questioı 4 thru 13 all show the bias of the court. The divorce court
kıows ıothiıg of my crimial case at all. other thaı (KW) was coıvicted.

[17]

The (DI.C.) job is not to try and put (KW) on trial the second time so they can insert A second punishment upon (KW). It is not the concern of the (DI.C.) whether or not if (KW) and (CW) business goes down the tube or not. It is not any of the (DI.C.) concern on how (KW) or (CW) pay the bankers, or ho the banker's are looking to for their payment. It is not the concern of the (DI.C.) whether or not (KW) had or had not formed A corporation. The law's laid down in the book's or suppost to protect (KW) and (CW) from any wrong doing's. And then the Hon. (J.R.L.) say's in question 11, and you want part of the PIE. Who does this man think he is. (KW) is the one who built the pie, filled the pie and put the pie in the oven to cook,so (KW)&(CW) could retirer off the pie when it came out of the over. Thenthe Hon. (J.R.L.) starts asking hypothetical question , as in question 12&13,"IF"(CW) was in prison for the next ten years, that, he "BET" on what I (KW) would do, and she wont be able to do anything. All these question are A clear indication of the bias of the (DI.C.). And the bias is clearly seen in the judgment of divorce,see (DOC.ST.)306, when the Hon.(J.R.L.) award (CW) 100% of all marital and business propery and (KW) received $512.00 A month child support, and over $500,000.00 dollars of unsecured loans without any means to be able to pay these loans or child support. All that (KW) has shown to this Hon court is A clear and intentional bias toward (KW), from the (DI.C.) based on (KW) incarceration.

Furthermore, in the divorce transcript pg. 75 EXHIBIT(Z) lies (13,14) (KW) told the (DI.C.) that I was fixing to file bankruptcy, but there was never anything else said about this by (KW)or the (DI.C.)

(KW) argued to the Alabama civil appeals court, that the division of property was, first illegal divided. Because of the property binning unjust, unfair, and was inequitably divided, by their own case laws and statutes as shown in issues of law and statutes in this brief. The Appeals court affirmed thes judgement, even after being told about the bankruptc automatic stay that was still in affect. (KW) carried this arguement to the ALABAMA SUPREME COURT telling them that the artomatic stay of bankruptcy court was still in affect and none them had jurisdiction over the dividion of property, they affirmed the lower court decision also.

But, all of the decision's made by the courts are to be condidered "MOOT". For not one of these court's had jurisdiction to make such A decision while (KW) ahd his property was under A automatic stay by the U.S. BANKRUPTCY COURT, Pursuant to 11§ 362 (a) and 28 U.S.C. § 1334(a); 28 U.S.C. § 157 (a).

[18]

(CW)'s memorandum response to (KW)'s memorandum "see(DOC.ST.)311(CW) never refrte's any of (KW)'s allegations in his memorandum, nor does she cite any case law to back up, why she should own 100% of the property or cite any statutes.  On the next to last pargarph on page 3 saying that the bank could demand full payment, if they feel they might have difficulty collecting.

Every bank loan in thiscountry has the same clause in it, and she continues to lie about the income of the parks.

There, since (KW)'s complaints as described in this case have not and can not be refuted by (CW), or (M&D), (KW)'s allegation are to be , by the operation of law it is to be taken as fact and true by this reviewing court, and the relief that (KW) request should be GRANTED.

Warth, 422 U.S. at 501,95 S.ct. 2206,"see also, EX PARTE BROOKS, 897 So. 2d 1017 at 1021.

(KW) in (DOC.ST.)312 on page 7 (KW) conclusion told the Hon.(J.W.S.) this , but didn't quote the case law above and misspelt allegation.

The Hon. (J.W.S) memorandum decision, shows his bias toward (KW), see (DOC.ST.)315, when on pg. 2. The Hon. (J.W.S) MEMORANDUM DECISION, shows his bias toward (KW), SEE (DOC.ST.)315, when on page 2 the Hon. (J.W.S) says there are three parallel story lines (1) Willifords crimial proceedings; (2) Emerton civil action; (3) divorce proceedings. (KW) in (DOC.ST.)317 tell's the court that (KW) crimial case and the emerton civil case are "NOT" relevent here, just the divorce proceeding

On pg. 5 (DOC.ST.)315 the court show the five elements of fraud. (KW) has told, explained, and showed this Hon.Court their five elements but, the court refuessed to acknowledge it, and just ignored the facts presented.

On pg 7 (DOC.ST.)315 the court now acknowledges that the of property division are voided as A matter of law. On pg (DOC.ST.)315 the court states that it had three options, and used the third option , which retroactively validated the proceeding in Lee county court.  The court uses "Albany Partner, 749 F.2d at 675" to have the power to retroactively annul the automatic stay, validating actions taken in violation of the stay.  So on pg 4 (DOC.ST.) 317 (KW) shows this HON. court "IN RE EDEN Associates, SUPA, 13 B.R. at  585...The automatic stay demands court be ESPECIALLY HESITANT to validate acts committed during the pendency of the stay"

(KW) went on to explain the Albany Partners case was not at all like the Williford case.  The Albany case had an outside creitor trying to foreclose on the Albany Partners.  Where on the Williford case,

[19]

(KW)&(CW) had equal share in the marital and business property, and (KW) had all of his shares stolen from him and given to (CW), which was unjust, unfair, and inequitable division of property. Just because Hon. (J.W.S) has bias of (KW) but his incarceration and admittes to this in the telephone hearing on 1/23/07, which (DOC.ST.) 318 shows will be held. (KW) goes further and amemds A motion to (DOC.ST.)311, read the three pages (DOC.ST.)312. (KW) referrs the court to "BKRTCY S.D. GA.2003" asbent A qualifying clause, one mandatory statutory provision should not be presumed to trump another mandatory provision-IN RE DURANGO GEORGIA PAPER CO, 297 B.R. 326". Which is exactly what the  Hon. (J.W.S.) did. He is trying to or did trump all the case law and statute in the (KW) case with just one case, the "Albany Partners" case.  Which the circumstances in that case or not even remotely similar to the circumstance's in the Williford case.

  In the telephone hearing held on 1/23/07,"which will have to be subpoena", the Hon. (J.W.S) was ask by (KW),"If" (KW) wasn't incarcerated and was A free man, would he still be making the same decisions". The Hon. (J.W.S) answered and said, "that he based his decision on (KW) incarceration and, that, he stood by his decision."

  Since the Hon. (J.W.S.) has based his decision on (KW) incarceration and due to the fact that (KW) plead innocent to this crime, and is still fighting it today in the court system.  Then the court would have to take up all the evidence in (KW) crimial case and couple it with the evidence in the bankruptcy case, to be able to make A reasonable decision or give (KW) A new trial.  But this court could not do this simply because (KW) crimial case is out of this courts jurisdiction. But, here again this shows A clear and intintional BIAS against (KW) due to his incarceration. If (KW) is to be judged by (KW) crimial case ever time he appears in another court, then (KW) should be able to bring in all evidence and witness, to prove is innocent.  But since (KW) can't do this, then the courts or being in prejudice by useing this case against him when the court is making A decision based on th crimial case in A civil case proceeding.

  This is surely A clear and intentional case of prejudice against (KW), AND SHOULD BE REVERSED.

[20]

**CONCLUSION**

(1)  (KW) has shown to this Hon. court in issue number one all the dates, case law, statutes, Federal, and State law, that , the automatic stay had in fact been in non compliance with the law, and the division of property in question, still belongs to (KW). No one has refuted (KW) allegations in any of the prior arguements in the courts before. So all the decisions should have been in (KW) favor, as in WARTH,422 U.S. at 501,95 S. ct.2206,/ EX PARTE BROOKS, 897 So.2d 1017 at 1021,. But  the court system failed todo this on the simple fact of (KW)'s incarceration.

(2)    (KW) HAS SHOWN TO THIS Hon. court in issue two the fraud that has been committed against this Hon. Court and (KW). (KW) has shown in his exhibits  to this Hon. Court the correspondence between (KW) and (M&D) attorney's at law for (KW)&(CW) their letters, and (M&D) would ignore (KW) and how (M&D) knew about the lieing information being given to the  (BANKR.C.), the lie's about the appraisal's, the  income , tax evaision, and the illegal property division during the automatic stay.  (KW) has shown (CW)'s part in this conspiracy th (M&D) to hide the true  appraised value, income and tax evaision done by  (CW). See (DOC.ST.) 94 thru 239 on EXHIBIT (X). And that (CW) did not refute (KW) allegations or show any case law,or statutes in (DOC.ST.)311. (KW) has shown to Hon. court by way of exhibits and (DOC.ST.) , and explained to this Hon. Court, by ways and means, how the court's were DEFRAUDED, and it is up to this Hon.Court too pursure, of to investigate crime committed against the courts.

     This is further proof that the decisions made by the courts should have been made to (KW) favor, but wasn't because of his incarceration.

(3) (KW) has shown to this Hon. Court by the means of exhibits from the (DI.C.) TRANSCRIPTS. AND THE JUDGEMENT OF DIVORCE, (DOC.ST.)306, the bias toward (KW) due to (KW) incarceration. (KW) has  also  shown that the  (BANKR.C.) has ignored  all case law, and statutes presented to them. Then goes and trump's all the law's and statutes with one case. And (KW) shows the courts where they couldn't do that.  Then the Hon. (J.W.S) admittes in the telephone hearing,that,his decision was based on (KW) incarceration. This is A clear and intentional case of **PREJUDICE AGAINST (KW),AND STANDS TO BE REVERSED.**

[21]

(4) The first question to this Hon. Court is? Does this Hon. Court let A unjust, unfair, illegal, and unequitablae division of property stand as is. Are ill this Hon. Court abide by the case laqs, and statutes and have the marital and business property divided equally. (KW) can't seem to find in any law bool, where one party in any divorce case, gets 100% of all property and the other party gets Zero.

The second question to this Hon. Court is? Will this Hon. Court stand by and let the fraud, that, has been committed against the (DI.C.) and the (BANKR.C.) and (KW), just slide by unnotice as the lower court have. Just because (VM), (JD),of (M&D) are attorney's. Wiill this Hon. Court let the conspiracy between (CW), and (VM), (JD), of (M&D) slide by unnotice. The records show clear intentional fraud, that, (M&D) knew of the illegal division of property, and then trirg to slip it in (DOC.ST) 191 and not explainiirg to the courts the seriousness of this due to the automatic stay and the circumstances behind it. The records shows in the exhibits and (DOC.ST.) 94 thru 239, that, there had been at least any where from $15,000.00 to $20,000.00 per month hide from the (BANKR.C.) (DOC.ST.)'s and, that (M&D) knew of the false statements being handed in by (CW) and knew that this money wasn't being taxed either. Will this Hon.Court let this fraud go unpunished also?

The third question to this Hon Court is? Will this Hon.Court let the bias by the (DI.C.), exhibit (Y) and (DOC.ST.)306, slide by because of (KW)'s incarceration, of the bias of (BANKR.C.) slide by due to (KW)'s incarceration. The only way (KW) can show the bias of the (BANKR.C.) other than by their decision, is to have the 1/23/07, telephone hearirg tapes subpoena or the record of the hearirg be brought forth. This telephone hearirg is the most and clearest intentional bias toward (KW) due to his incarceration.

Due to the **PREJUDICE** against (KW), and the illegal division of properties, **THIS CASE SHOULD BE REVERSED**

Done this the 7th day of May,2007

RESPECTFULLY   SUBMITTED

KENNETH   WILLIFORD

[   22   ]

## CERTIFICATE   OF   SERVICE

I hereby certify that I have served A copy of the foregoing on the parties listed below, by placing said "PRINCIPAL BRIEF" in the U.S. mail box, postage pre-paid and properly addressed on this the <u>7th day of May 2007</u>.

TO: CHARLOTTE WILLIFORD
HICKORY HAVEN OFFICE
815 Crawford Rd.
Opelika, Al, 36804


TO: Hon, JUDGE WILLIAM R. SAWYER
CKERK OF THE U.S.BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
        EASTERN DIVISION
P.O.BOX, 1248
Montgomery. Al, 36102-1248


TO: Hon.HUDGE SUSAN RUSS WALKER
OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
P.O.BOX, 711
Montgomery, Al, 36101-711

TO: VON MEMORY & JAMES DAY
(MEMORY & DAY ATTORNEYS AT LAW)
P.O.BOX, 4054
Montgomery, Al, 36103-4054

KENNETH WILLIFORD
AIS # 229597-0-11A
100 WARRIOR LANE
BESSEMER, AL, 35023-7299
**PRO-SE**

[   23   ]

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA
FAMILY COURT DIVISION

CHARLOTTE D. WILLIFORD,
    Plaintiff,

U.S.

KENNETH A. WILLIFORD

\*
\*
\*
\*
\*
\*
\*

Civil Action No. DR-2003-175

## MOTION TO INTERVENE

    Comes now the interceder, Jason McDaniel, of 203 Preston Circle, Opelika, Alabama, 36804, a family relative, and duly elected/constituted, attorney-in-fact of the Defendant, Kenneth H. Williford, in the above styled cause, and moves this Honorable Court, pursuant to Rule's 24(a)(b); 25(a)(b), of the Ala. R. Civ. P. for permission to intervene in this action, for the purpose of joining the Defendant in defending against the plaintiff, Charlotte D. Williford, and substitute myselfe in place of the Defendant's responsibility's, rights and obligations, to fifty (50) percent of the Defendant's, etal, family Business and assets there to, as specified in the attached Limited Power of Attorney, and as agreed to as follows:

## A. AGREEMENT

1) That I will assume fifty (50) percent of said family business in the place of said Defendant, and maintain it's opperation, care, and controll, from the assets, profits, and income of said percentage of said family business, Untill the Defendant is physically able to appear and resume said position.

2) That I will, With use of the assets, profits, and or incane of said percentage of said family business, pay (50)-fifty percent of the standing Bank Note's (Liens) on said Business, and its assets, in conjunction with the plaintiff's remaining fifty percent of

-1-

said family business, to meet in conjunction, and make said monthly payments in whole, (or as negotiably Justifiable) untill the Defendant is physically able to appear and resume said position.

3.) That I will not sell, nore Convey Dede/Title of said family business or it's assets, to any other persons name, except to myself, or insuch event, the Defendant upon the Defendant being physically able to appear and resume said position's, Without permission of the Defendant, as stipulated to in the attached power of attorney.

4.) That I will, with use of the said assets, profits and or income of said family business, do anything in my given power(s) to help the plaintiff's remaining fifty percent of said family business, when in extreme need, and when extreme need is not due to any neglegence on the plaintiff's part.

5.) That I will, with said powers given to me, upon agreement with all other parties, to include, plaintiff, Defendant, and business creditors, do anything necessary to increase the value and position of the Defendants percentage of said family business; or as Justifiably Negotiable, the family business as a whole.

6.) That upon the completion of each due monthly installment/ payment as may be required in maintaining the above, I will recieve a percentage of the monthly income, of fifty percent of said family business, as my services regarding this matter.

B.) <u>SUPPORTING GROUNDS</u>

In support of this motion, this interceder states as follows:

7.) This interceder has been duly elected/constituted by the Defendant, as his lawfull attorney-in-fact, to gain controll

-2-

of and maintain fifty percent of said family business, and enforce his (Defendant) responsibility's/obligations thereto, in place of the Defendant, with use of the assets, profits and income therefrom;

8.) The interceder has an interest in the said family business as not only a relative of the Defendant, but as a future business partner, of whom has placed several hours of physical labor in the maintenance and care of the said family business, to secure the value, reliability and stability of the said family business, but because this business was built by the Defendant for family income to support the Defendants family in life, or the event of Defendant's death;

9.) The defendant, due his incarceration, in part, has become incompetent to perform the above actions, (#1. through #6.) as recognised by Rule 25 (b) of the Ala. R. Civ. P., which actions/obligations etc., must be diligently performed and maintained in order for the defendant and said family business, to stay in good standing with Bank policy and requirement's, and therefore this interceder, pursuant to rules 25,(a), (b), and 24,(a),(b), of the Ala. R. Civ. P. and obliges Defendant ex mero muto, in respects to said obligations, family business, to assure payments from becoming defaulted in any way, on said business, and to assure the maintaining of said business.

10.) Approximately one month before this courts order, the Defendant and plaintiff condoned and filed Bankruptcy on said family business and their marital estate. "Pursuant to Title 11 U.S.C. §362 (a), The filing of a Bankruptcy petition stay's the determination in a Divorce case of the interest's of the debtor in property of the estate, any exercise of controll over such property and monetary claims against a debtor, other

than for alimony, maintenance, and support; however, other aspects such as dissolution of the marriage are not stayed." <u>Hunter v. Hunter, 706 So.2d 753 (Ala. Civ. App. 1977)</u>

And for said reasons, this interceder substitutes him-selfe, as discribed and stipulated above, ex mero muto, and with full power of attorney on a Limited basis, as attached hereto, to act in behalf of the Defendant, and meet the obligation's/responsibility's of the Defendant, to assure the care, maintaining, and controll of said, and or said percentage, of said family Business.

Wherefore, premisis Considered, the interceder pray's that this Honorable Court will Grant this motion to intervene and allow the interceder to act in these respects, in behalf of the Defendant, Kenneth H. Williford, as all agreement's as discribed above, creates no hardship or prejudice to either party.

Respectfully Submitted,
On this the 28th day of November, 2003.

JASON MCDANIAL
203 PRESTON CIR.
OPELIKA, ALA. 36804.

# CERTIFICATE OF SERVICE

I, Jason Mc Danial, hereby certify that I have served the foregoing "Motion To Intervene", On the below listed party's, Complete with a copy of Limited power of Attorney By placing said in the United States Mail, postage pre-paid and properly addressed, on this the 28th day of November 2003.

JASON McDANIAL
203 PRESTON CIR.
OPELIKA, ALA. 36804



**MARGARET Y. BROWN**
**ATTORNEY AT LAW**
214 NORTH COLLEGE STREET
AUBURN, ALABAMA 36830
(334) 821-6944
(334) 826-8614 (FAX)

October 22, 2003

H. Kenneth Williford
AIS# 229597 1-94
Donaldson Correctional Facility
100 Warrior Lane
Bessemer, Alabama 35023

Re: Letter received this date, transcript, appeal, divorce

Dear Mr. Williford:

Your letter reaches me too late. I have tried to get these matters worked out with you financially for months now to no avail. I have spoken with your sister and with Jason and Jason told me that he was going to get me bills of sale to several pieces of equipment. I was willing to do this, but he did not contact me about it soon enough and now it appears that with no notice to me you have filed bankruptcy. I do not want to continue to be involved in this fashion. I told you at the beginning that I would not do this case without full payment arrangements and that has never occurred despite various representations about what I have been told was in the works.

I filed the enclosed motion today. I have not filed a brief but the time has been extended and I have requested that counsel be appointed and you be given more time for filing the brief.

I do not think I can take title to equipment when it could be defrauding the bankruptcy court stay. I will not be a part of that type thing. It was alright that it not be in the divorce when the other side was aware of it and it had not been in your name for some time. But that is a moot point since I have not seen any equipment nor have I seen any bills of sale. Jason was to produce these last week.

I do not have a final order in the divorce. As soon as I do you will get a certified copy. I know that it has been dictated by Judge Lane and presumably prepared and reviewed by your bankruptcy attorney. I was not in the loop on that and did not feel the action taken on that was appropriate. However, you are listed on the bankruptcy and I have to assume the attorney who filed it represents you and your soon to be former wife.

I am sorry that I cannot be of further service to you. I would not have minded representing you but you and your family have been very demanding while not paying as I pointed out you would have to do to keep me on the case. Additionally there was a letter written to Judge Lane that was highly improper. I have no opinion whether it was from you but the court was very convinced.

I cannot under these circumstances continue to represent you nor will I. The rest of your file is at my office and can be picked up by whomever you designate or I will deliver it to whatever attorney you tell me. I will not mail it to the prison.

Sincerely,

Margaret Y. Brown

Cc/MYB

AVSO352

DR 2003 000175.00
JUDGE: RICHARD D. LANE

```
------------------------------------------------------------------
|            ALABAMA JUDICIAL DATA CENTER                         |
|            CASE ACTION SUMMARY CONTINUATION                     |
|                  CIRCUIT CIVIL                                  |
|  IN THE CIRCUIT COURT OF    LEE         COUNTY                  |
|  CHARLOTTE D WILLIFORD  VS  KENNETH H WILLIFORD                 |
|  FILED: 04/09/2003 TYPE: CONTESTED DIVORCE  TYPE TRIAL: NON-JURY  TRACK: |
******************************************************************
```

DATE1:                 CA:   BENCH VERDICT    CA DATE:   10/31/2003
DATE2:  09/22/2003  AMT:              $.00  PAYMENT:

```
On December 9, 2003, defendant pro se, filed his Motion To Alter, Amend or
Vacate Judgment or in the Alternative Grant a New Trial and Defendant's
Motion To Stay The Judment Pending Resolution of Motion To Alter, Amend,
Or Vacate Judgment/new Trial, or in the Alternative Stay the Judgment pending
resolution of Appeal.  Upon consideration, the court notes that said Motion
To Alter, Amend, or Vacate Judgment Or in The Altenative Grant a New Trial
was not timely filed pursuant to Rule 59 ARCP, and hence said Motion be and
hereby is denied, the request to Stay the Judgment pending resolution of
Appeal is denied.
On December 9, 2003 defendant, pro se, filed his Motion for Periodic Alimony
and upon consideration of the same said motin be and hereby is denied; all
other motions or requests filed herein by defendant on December 9,2003
are either moot or are due to be denied and accordingly be and hereby are
denied.

Motion to intervene filed herein on Dec. 9, '03 by Jason MCdaniel, having been
considered by the Court, it is be and hereby denied.  Clerk of forward a
copy of all of the aforesaid rulings to each of the parties/counsel of record
and to Jason McDaniel 203 Preston Circle, Opelika, Al36804.
```

FILED IN OFFICE  DEC 2 4 2003

```
12/9/03  LIMITED POWER OF ATTORNEY/ MOTION TO INTERVENE; NOTICE OF APPEAL/ MOTION FOR PROPER
         DOCUMENTS & EXTENSION OF TIME FOR TAKING APPEAL; MOTION TO STAY THE JUDGMENT PENDING
         RESOLUTION OF MOTION TO ALTER, AMEND OR VACATE JUDGMENT/NEW TRIAL, OR IN THE ALTERNATI
         STAY THE JUDGMENT PENDING RESOLUTION OF APPEAL; MOTION FOR PERIODIC ALIMONY; MOTION TO
         ALTER, Amend OR VACATE JUDGMENT OR IN THE ALTERNATIVE GRANT A NEW TRIAL
12/16/03 MOTION FOR EXTENSION OF TIME TO PRESENT APPEAL
12/29/03 SENT COURT OF CIVIL APPEALS COPY OF CAS
1/12/04  REQUEST FOR JUDICIAL NOTICE
1/12/04  OBJECTION AND MOTION FOR RECONSIDERATION
1/15/04  IN FORMA PAUPERIS DECLARATION
1/15/04  NOTICE OF SUPPLEMENTATION
```

12/24/2003

EXHIBIT "C"

AVSO352

DR 2003 000175.00

JUDGE: RICHARD D. LANE

```
--------------------------------------------------------------------
                ALABAMA JUDICIAL DATA CENTER
                CASE ACTION SUMMARY CONTINUATION
                        CIRCUIT CIVIL
--------------------------------------------------------------------
  IN THE CIRCUIT COURT OF    LEE      COUNTY
--------------------------------------------------------------------
  CHARLOTTE D WILLIFORD  VS  KENNETH H WILLIFORD
  FILED: 04/09/2003 TYPE: CONTESTED DIVORCE   TYPE TRIAL: NON-JURY  TRACK:
********************************************************************
  DATE1:          CA:                 CA DATE:
  DATE2:          AMT:        $.00  PAYMENT:
********************************************************************
```

8-11-03   At the appointed time Hon. Beverlye Brady appeared together with her client, Hon. Margaret Brown was excused; however, the Court did not receive any instructions on this case; therefore, it is being set for trial on September 22, 2003 at 8:00 A.M. by separate order. Upon request of any of the counsel for the appearance of Mr. Williford from the Department of Corrections the Court will consider the same upon a motion being filed with an order presented for transportation to the trial. Clerk to mail a copy of this to all respective parties and/or counsel. ~~FILED IN OFFICE AUG 1 3 2003~~

8/11/03  ORDER SETTING CASE FOR TRIAL  9-22-03 ⊙ Ram

9/19/03  ORDER GRANTING MOTION FOR TRANSPORT

10/31/03  JUDGMENT OF DIVORCE

12/12/03  NOTICE OF APPEAL MOTION TO WITHDRAW AS COUNSEL OF RECORD MOTION TO APPEAL WITHOUT COST

12/16/03  PETITION FOR WRIT OF MANDAMUS

12-24-03  ORDERED that Hon. MARGARET BROWN counsel for Plt/Deft be and hereby is withdrawn as counsel of record for Plt/Deft. Clerk to send notices to all counsel/parties. This 12-24-03 ~~FILED IN OFFICE DEC 2 4 2003~~

12-24-03  NOTICE OF APPEAL OF DEFENDANT WAS DULY FILED ON 12-12-03 TOGETHER WITH MOTION TO WITHDRAW AS COUNSEL OF RECORD AND MOTION TO APPEAL WITHOUT COST. UPON CONSIDERATION OF THE SAME, THE MOTION TO WITHDRAW AS COUNSEL OF RECORD OF DEFENDANT FILED BY HON. M. BROWN HAS BEEN GRANTED (SEE ABOVE ORDER ENTRY) MOTION TO APPEAL WITHOUT COST SHOULD PROPERLY BE ADDRESSED BY THE APPELLATE COURT IN ACCORDANCE WITH THE RULES OF APPELLATE PROCEDURE (RULE 3; RULE 35 (A)(1) AND OTHER RULES APPLICABLE. THE MOTION OF DEFENDANT FOR A FREE TRANSCRIPT TO BE FURNISHED BY THE COURT REPORTER AND THE PETITION FOR WRIT OF MANDAMUS FILED PRO SE BY DEFENDANT ON 12-16-03 ARE, UPON CONSIDERATION, RESPECTFULLY EACH DENIED.    RDL  ALC.    FILED IN OFFICE  DEC 2 4 2003

CAG   04/09/2003

# MEMORY & DAY
## ATTORNEYS AT LAW

VON G. MEMORY
vgmemory@memorylegal.com
JAMES L. DAY
jlday@memorylegal.com

469 SOUTH MCDONOUGH STREET
MONTGOMERY, ALABAMA 36104

TYSON-MANER HOUSE
THE NATIONAL REGISTER - 1888

MAILING ADDRESS
P.O. BOX 4054
MONTGOMERY, ALABAMA
36103-4054

TELEPHONE 334-834-8000
FACSIMILE 334-834-8001

January 29, 2004

## PRIVILEGED COMMUNICATION, ATTORNEY CLIENT

Mr. Kenneth Williford
AIS 229597 C-1 B-94
W. Jefferson Correctional Facility
100 Warrior Lane
Bessemer, AL 35023

Reference: Your Letter January 27, 2004

Dear Mr. Williford:

Thanks for your responses to the interrogatories. I have filed them with the court and that should satisfy that requirement. Also, I appreciate you taking the time and effort to write.

It is good that you have come to terms with Ms. Williford and things are progressing smoothly. However, let me assure you, in all matters with respect to the bankruptcy, we represent the both of you. We were not retained by just Ms. Williford. Of course, anything that needs to be prepared and filed with the court will be coordinated with you. With routine matters, it may occur after the fact.

A Chapter 11 reorganization requires publication of a disclosure agreement and a plan of reorganization. This has to be done within 120 days of the petition date. The disclosure statement contains information about the estate (claims, assets, debts, and any other information that would assist creditors in determining whether they will vote for or against a plan of reorganization). The plan of reorganization is a document that details how each creditor will be treated (paid and under what terms).

The court established January 30, 2004 as the date these documents were due. However, the lawsuit by the Emertons and the subsequent appeal has created a problem. Although there is a judgment, it is not a final judgment. Therefore, there could be a major unsecured claim for in excess of approximately $300,000.00. On the other hand, there may not be. This prevents us from effectively preparing a viable plan and disclosure.

Therefore, we will be moving the court for additional time to file the plan and disclosure so as to fully determine whether this judgment will be part of the plan. I expect that we will need

(81)

### MEMORY & DAY

Thursday, January 29, 2004
Page 2 of 2

an additional six months. During that time, the assets of the bankruptcy estate will be protected and the Emertons will not be able to garnish, seize, or sell anything. The bankruptcy stay remains in place.

Realistically, you must remember that this bankruptcy is just a way to prevent having to filing a supersedeas bond during the appeal of the Emerton case. There is no real intent to file a plan or reorganization. We are just helping to "hold off the dogs" until the appeal in the Emerton case runs its course. Regardless, if we are ultimately required to produce a plan of reorganization, I will sit down with you, in person, and go over what we file. Allot of these agreements are just boilerplate. However, I would want to get your input and concurrence on any product that we submit to the court.

I hope this effectively answers your questions. I do not know what your limitations are with respect to telephone calls. If you are able, feel free to contact me at the number listed above. If I cannot get you a good answer, I will find it for you.

Best regards.

Sincerely,

Memory & Day

By: _____
James L. Day

EXHIBIT "E"

2/1/04

DEAR MR. MEMORY

I HAVE RECEIVED THE LAST TWO MONTHLY STATEMENTS, THAT, CHARLOTTE HAS SENT IN TO YALL AND I AM AT A DISAGREEMENT WITH THEM. YALL SHOULD KNOW THAT SHE HAS TURNED IN FALSE REPORTS AS TO THE INCOME OF THE PARKS. SHE IS ALSO TURNING IN FALSE REPORTS AS TO THE DAY ROLL, THAT, SHE IS PAYING OUT. THE PARKS ARE TAKING IN A LOT MORE MONEY THAN SHE IS REPORTING TO THE COURTS. SHE IS PAYING THE WORKS 1/2 ABOVE THE TABLE AND 1/2 BELOW THE TABLE, AND SHE IS NOT REPORTING ANY OF THIS, BECAUSE SHE IS DOIREING THE TAX SERVICE, AND FALSLY REPORTING MATERIAL TO THE COURTS NOW. I DON'T THINK I WANT TO BE A PART OF THIS SCAM. SO I'M LETTING YALL KNOW NOW WHAT IS GOING ON NOW, AND WISH THAT YALL WOULD TALK TO HER ABOUT THIS, AND STOP HER BEFORE SHE GETS US ALL IN TROUBLE. I'M NOT THE ONE MAKEING THESE FALSE STATEMENTS, YALL GOT NONE OF THAT INFORMATION FROM ME.

As TO YOUR LETTER I RECEIVED ON 1/29/04, I AM CONCERN OR MAYBE CONFUSED. YOU SAY THAT REALISTICALLY THIS BANKRUPTCY IS JUST A WAY TO KEEP FROM FILEING A SUPERSEDEAS BOND WITH THE EMERTONS OR TO JUST "HOLD OFF"

44

2/1/04

THE TAX" AS YOU HAVE SAID IT. IT IS TO MY UNDER
STANDING, THAT, WE ARE FILING BANKRUPTCY AND
THE SO CALLED TAXES WILL BE HELD OFF.

Now I'm not REAL SMART, BUT, MY GUT FEELING
TELLS ME, THAT, THERE MAYBE SOME UNDER HANDNESS
GOING ON AND IF THERE IS, PLEASE TELL ME
NOW AND I WILL WITHDRAW FROM THIS CASE.

THERE'S SOMETHING ELSE, WE ALL KNOW THAT
THE CIRCUIT COURT ON OUR DIVORCE HAS MADE
AN ILLEGAL DIVISION OF PROPERTY, AND SINCE
YOU HAVE STATED IN YOUR 1/29/04 LETTER TO ME
THAT YALL REPRESENT BOTH ME AND CHARLOTTE, I
WANT YALL TO GET THIS FIXED WHILE WE ARE IN
THE BANKRUPTCY COURT AND GET ME MY BUSINESS
BACK INTO MY HAND OR LEAST MY SHARE ON
IT.

I EXPECT A RESPONSE BACK AS SOON AS POSSIBLE
TO MY REQUEST HERE.

THANK YOU FOR YOUR TIME

Keith Wilcher

(2)

5/26/05
EXHIBIT "F"

DEAR MR. DAY,
    I'M SORRY THAT I AM HAVING TO GO THIS
ROUTE, FOR THE DIVISION OF PROPERTY, BUT, SINCE, IT
SEEMS TO ME, THAT, YOUR NOT GOING TO COME
AND TALK TO ME ABOUT THE DECISIONS THAT NEED
TO BE MADE IN OUR CASE, LIKE YOU TOLD ME
YOU WERE GOING TO DO A MONTH AND 1-HALF
AGO, IN A LETTER TO ME FROM YOU. IT SEEMS,
THAT, I AM GOING TO HAVE TO TALK TO THE
JUDGE MYSELF. SO HERE IS YOUR COPY OF WHAT
I AM SENDING TO HIM THIS COMING WEDNESDAY
JUNE THE 1ST, 2005. SO IF YOU HAVE ANYTHING
THAT YOU WANT TO SAY TO ME OR ASK ME ABOUT
BEFORE I SEND IT TO THE JUDGE, YOU NEED TO
DO IT BEFORE 9:30 P.M. TUESDAY NIGHT.
    THANK YOU FOR YOUR TIME

    SINCERELY,

    [signature]

5/26/05    EXHIBIT "E"

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF ALABAMA EASTERN DIVISION

KENNETH H. WILLIFORD
PLAINTIFF PRO-SE
V.
CHARLOTTE D. WILLIFORD
DEFENDANT

\*
\*
\*
\*    CASE NO.    03-81486-WRS
\*
\*
\*
\*

## MOTION FOR CONTROL OR DIVISION OF PROPERTY

COMES NOW PLAINTIFF (KENNETH H. WILLIFORD) MOVES THIS HONORABLE COURT PURSUANT TO 11. U.S.C. SEC. 362(d) FOR PERMISSION TO INTERVENE IN THE ACTION FOR THE PURPOSE TO GRANT SOLE CONTROL OR DIVIDE, SAID PROPERTY AND TO LET JASON McDANIEL FAMILY RELATIVE AND DULY ELECTED/CONSTITUED, POWER OF ATTORNEY FOR PLAINTIFF OVER HIS REAL ESTATE, TO HELP RUN AND CONTROL SAID PROPERTY AND STATES AS FOLLOWS:

1.) TITLE 11 U.S.C. SECTION 362(d) GIVES THIS HONORABLE COURT COMPETENT AUTHORITY TO RULE ON SAID MOTION.

2.) PLAINTIFF AND DEFENDANT BOTH MARRIED AT THE TIME AGREED TO FILE FOR BANKRUPTCY UNDER TITLE 11 U.S.C. SECTION 362(a).

3.) THE PROCEEDINGS OF THE DIVORCE WERE STAYED DUE TO THE PENDING BANKRUPTCY HEARING.

①

4.) DEFENDANT CHARLOTTE IS BREACHING THE "LONG STANDING VERBAL AGREEMENT" CONCERNING THE MOBILE HOME BUSINESS "THEY" STARTED AS HUSBAND AND WIFE.

DEFENDANT STATED DURING THE PLAINTIFFS DIVORCE TRIAL CONCERNING THE AGREEMENT (SEE EXHIBIT (A) PG. 19 LN: 15-18 AND EXHIBIT (B) PG. 44 LN: 13-22) WHICH CLEARLY ESTABLISHES THAT THE HUSBAND AND WIFE TEAM HAD AN UERBAL AGREEMENT, ALSO (SEE PG. 106 AND 107) WHICH SHOWS AND PROVES THE START OF THE MOBILE HOME BUSINESS AND THE ROLE EACH PARTNER HAD IN DEVELOPING THE BUSINESS, SEE EXHIBIT (C).

5.) THE AGREEMENT AT THE START OF THE BUSINESS WAS TO SPLIT THE TOTAL INCOME OF $5,600.00 DOLLARS, EACH MONTH, DUE TO MY INCARCERATION ON FEB. 26, 2003 THE LAST 27 MONTHS, I'VE FAILED TO RECEIVE MY PART OF THE AGREED SPLIT. SEE EXHIBIT (D) PG. 87 LN: 12-25 AND PG. 88 LN: 1-8) OF THE DIVORCE TRIAL TRANSCRIPT.

6.) DUE TO MY INCARCERATION DEFENDANT CHARLOTTE AGREED TO CONSULT WITH ME ON ALL BUSINESS DECISION'S DUE TO THE FACT I BUILT AND PERSONALLY MANAGED THE BUSINESS AND SHE WAS RESPONSIBLE FOR KEEPING THE RECORDS, AND DOING THE PAY ROLE CHECK, AND INSURANCE, ETC., SEE EXHIBIT (C). SHE HAS FAILED TO CONSULT WITH ME ON ANY BUSINESS DECISION FOR THE LAST 2 OR 3 MONTHS EVERY SINCE, I FOUND OUT ABOUT OUR "16 YEAR OLD SON CONFRONTED A "DRUG DEALER" IN ONE OF OUR TRAILER PARKS AND SHE HAS REFUSED TO ACCEPT MOST OF MY PHONE CALLS!

(2)

THE DEFENDANT CHARLOTTE HAS LEFT ME WITH NO OTHER CHOICE OR OPTION BUT TO FILE FOR CONTROLL OF THE MOBILE HOME BUSINESS UNDER 11 U.S.C. SECTION 362 (d) DUE TO HER FAILURE TO PROTECT THE INTEREST OT THE PROPERTY, THE INTEREST OT THE DEBTORS OT THE PARKS AND THE SECURITY AND WELL BEING OT MY ONLY SON.

7.) AFTER EXAMINATION OF THE RECORDS, THAT PLAINTIFF HAS MANAGED TO RECEIVE, IT SHOWS THAT THE DEFENDANT IS STRONGLY IN QUESTION OT HER MONTHLY REPORTS TO THE BANKRUPTCY COURT, SEE YOUR MONTHLY REPORTS, ALSO THE DEFENDANT IS "VERY STRONGLY" IN QUESTION TO HER PAYROLL TAXES, REPORTS ON HER STATEMENTS TO THE COURTS, AND THE I.R.S., THE DEFENDANT HAS EVEN FORGED PLAINTIFFS NAME ON A INSURANCE CHECK FOR $5,000°° DOLLARS WITHOUT MY WRITTEN PERMISSION.

8.) UPON EXAMINATION OT THE RECORD I HAVE, IT SHOWS SHE HAS BY UNPREPARADNESS OT MAINTAINING AND MANAGMENT OT THE BUSINESS HAS SERIOUSLY JEOPARDIZED THE FUTURE OT ITS SURVIVAL. DUE TO THE NATURE AND SERIOUSNESS OT THIS ALLEG-ATION, AND THE LACK OT THE DEFENDANTS ABILITY TO COMMUNICATE WITH PLAINTIFF ON THE WELFARE OT THE BUSINESS. PLAINTIFF ASK THIS HONORABLE COURT TO SET THIS MATTER FOR AN EVIDENTIARY HEARING TO SHOW AND EXPLAIN THE COMPETENT EVIDENCE.

## CONCLUSION

THE PLAINTIFF HAS SENT TO THE DEFENDANT A SIMILAR COPY OF THIS MOTION BACK ON FEB 05,05 AND A COPY OF THAT ONE, TO OUR LAWERS "MEMORY & DAY" AT THE SAME TIME. TRYING TO GET DEFENDANT TO LISTEN TO REASON AND STOP WHAT SHE WAS DOING. OUR DIVORCE HAD BEEN IN THE CIVIL APPEAL COURT SINCE MAY 29TH 2004. I HAD FELT, FOR SURE THAT THEY WOULD HAVE RELERSE, THE LOWER TRIAL COURTS DECISION ON THE PROPERTY DIVISION ISSUE. KNOWING THAT THE BANKRUPTCY COURT HAD JURISDECTION OVER BOTH TRIAL COURT AND APPELLATE COURTS DECISIONS TO THE PROPERTY DIVISION. TO THE PLAINTIFF'S SURPRISE, THE APPELLATE COURT "AFFIRMED" THE LOWER TRIAL COURTS DECISION, APRIL 29TH, 2005, THE PLAINTIFF IS, AT THIS VERYTIME IS PUTTING IN FOR A "MOTION FOR REHEARING" AS I WRITE THIS LETTER TODAY 5/10/2005. IF THE APPE-LLATE DOES NOT GRANT ONE, THEN THE PLAINTIFF IS GOING TO ASK THE ALABAMA SUPREME COURT TO GRANT "CERTIORARI" IN THIS CASE AND STOP THE LOWER COURTS DECISION'S.

THE ISSUE PRESENTED TO THE APPELLATE COURT IS WHEATER THE TRIAL COURTS HAD JURISDECTION OR THE POWER TO MAKE PROPERTY DIVISION, OR THE APPELLATE COURTS HAD POWER, OR JURISDECTION TO AFFIRM THE LOWER COURTS DECISION. THE ANSWER IS "NO", THEY DIDN'T HAVE THE POWER OR JURIS-DECTION TO INTERVENE AFTER THE "FEDERAL BANK-RUPTCY" COURT HAD TAKEN CONTROLL OF THE ESTATE.

IN THE CASE OF HUNTER V. HUNTER, 706 So.2d 153 (ALA. CIV. APP. 1997) THE APPELLATE COURT RENDERED AS FOLLOWS:

(4)

"PURSUANT TO TITLE 11. U.S.C. §362 (a), THE FILING OF A BANKRUPTCY PETITION STAY THE DETERMINATION IN A DIVORCE CASE OF THE INTEREST'S OF THE DEBTOR IN PROPERTY OF THE ESTATE, ANY EXERCISE OF CONTROL OVER SUCH PROPERTY, AND ANY MONETARY CLAIMS AGAINST A DEBTOR, OTHER THAN FOR ALIMONY, MAINTANCE, AND SUPPORT, HOWEVER, OTHER ASPECTS SUCH AS THE DISOLUTION OF THE MARRIAGE ARE NOT STAYED"

<u>BANKRUPTCY KEY - 2401</u>

<u>IN HUNTER V. HUNTER, Id,</u> THE HUSBAND BROUGHT DIVORCE ACTIONS AGAINST THE WIFE, IN SUMMER CO. ALA. THE TRIAL COURT ENTER DIVORCE AND MARI-AL PROPERTY DIVISION AND THE WIFE APPEALED.

DURING THE PENDENCY OF WIFE'S APPEAL, THE HUSBAND FILED A PETITION FOR RELIEF UNDER CHAPTER 13 OF THE U.S. BANKRUPTCY CODE IN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTH-ERN DIVISION OF ALABAMA, WESTERN DIVISION.

COUNSEL FOR HUSBAND NOTIFIED THE WIFE'S, ABELLATE COURT OF THE PENDENCY OF THE BANKRUPTCY PROCEDU AND SERVED A COPY OF HIS LETTER UPON COUNSEL FOR THE WIFE, AND COUNSEL FOR THE HUSBAND PROVIDED A COPY OF THE BANKRUPTCY CONFIRMATION ORDER WHICH PROVIDED AS FOLLOWS:

"ALL CREDITORS ARE UNDER THE AUTOMATIC STAY PROVISIONS OF §362 OF TITLE 11. U.S. CODE. EACH CREDITOR IS HERE BY ENJOINED FROM DEM-ANDING, REQUESTING, OR ATTEMPTING COLLECTION OF ANY PART OF SAID CLAIM FROM DEBTOR, THIS EMPLOYER, THIS COSIGNER, OR <u>JOINT OBLIGER,</u>"

IN THIS INSTANT CASE, THE FILING OF THE BANKRUPTCY IN THIS CAUSE, WAS NO SECRET TO THE

TO THE TRIAL COURT, NORE THE DEFENDANT.
IN FACT THE DEFENDANT HAD SIGNED THE
BANKRUPTCY PETITION, AND THE ATTORNEYS OF
SAID MATTER, ENTERED THE PRISON FACILITY WHERE
THE PLAINTIFF RESIDES, AND HAD APPELLANT SIGN
THE BANKRUPTCY PETITION ALSO, AND THERE AFTER,
THE PETITION WAS FILED ON OCTOBER 7th, 2003,
IN THE UNITED STATES BANKRUPTCY COURT, FOR
THE SOUTHERN DIVISION OF ALABAMA, AND THUS,
PROVIDING AN AUTOMATIC STAY ON ALL PROPERTY,
ASSETS, ETC. OF PLAINTIFF AND DEFENDANT. SEE
(EXHIBIT "A") OF APPELLANTS BRIEF TO "THE COURT
OF CIVIL APPEALS FOR THE STATE OF ALABAMA,"
THUS, A FACT KNOWN TO THE DEFENDANT AND
COUNSEL, AND THE TRIAL COURT.
    IN HUNTER, id THE APPELLATE COURT STATES, "WE
FIRST COSIDER THE JURISDICTION OF THIS COURT
TO ADJUDICATE THE WIFES CLAIMS OF ERROR, BECAUSE
JURISDICTIONAL MATTERS ARE OF SUCH MAGNITUDE
THAT WE TAKE NOTICE OF THEM AT ANY TIME
AND DO SO EVEN EX MERO MOTU." CITING Nunn
V. BAKER, 518 So. 2d 711, 712 (Ala. 1987)
    THE APPELLATE COURT RENDERED THAT THE
FILING OF A BANKRUPTCY PETITION STAYS THE
DISTRIBUTION IN A DIVORCE OF THE INTERESTS
OF THE DEBTOR INPROPERTY OF THE ESTATE, AND
BECAUSE THE WIFE DID NOT OBTAIN RELIEF FROM
THE EFFECT OF THE STAY FROM BANKRUPTCY COURT
PURSUANT TO TITLE 11. U.S.C. § 362(d), THE APPELLATE
COURT IS WITHOUT JURISDICTION TO RENDER A
JUDGMENT REGARDING DISTRIBUTION OF
PROPERTY, SPECIFICALLY BECAUSE THE HUSBAND
FILED BANKRUPTCY DURING THE PENDENCY OF
APPEAL.

IN THIS INSTANT CASE, IT IS VERY MUCH
THE SAME ONLY INVOLVING THE TRIAL COURT IN THIS
MATTER. AS PROVIDED ABOVE, THE COURT WAS AWARE THAT
THE PLAINTIFF WAS TO FILE BANKRUPTCY IN THIS
CAUSE, AS STATED BY PLAINTIFF AT HIS SEPTEMBER
22, 23, 2003 TRIAL.

DURING PENDENCY OF JUDGMENT THE PLAINTIFF
AND DEFENDANT FILED BANKRUPTCY JOINTLY ON OCTOBER
7, 2003, 24-DAYS BEFORE THE TRIAL COURTS OCTOBER
31ST, 2003, JUDGMENT, ORDER, DECREE, ORDER PROPERTY
DIVISION, WHICH STAY IS PENDING TO DATE.

IN ADDITION, THERE IS NO RECORD IN THE BANKRUPTCY
COURT, OR TRIAL COURT OF THIS CAUSE, PURSUANT TO
TITLE 11. U.S.C. §362 (d) TO ALLOW THE TRIAL COURT
(DIVORCE COURT) TO DIVEST TITLE FROM PLAINTIFFS
NAME OF ANY PROPERTY'S, OR MAKE PROPERTY DIVISION
IN THIS CAUSE.

THE PLAINTIFF IS IN PURSUANT TO TITLE 11. U.S.C.
§362 (d) ON HIS BEHALF. THE PLAINTIFF FEELS THAT
THERE CAN NOT BE A FAIR OR JUST OUTCOME WITH ANY
OF THE LOWER COURTS DECISIONS, BECAUSE OF HIS
INCARCERATION AT PRESENT TIME, EVEN THO THE
PLAINTIFF HAS BEEN GRANTED HIS "CERTIORARI" BY THE
"ALABAMA SUPREME COURT" ON HIS CRIMINAL CASE AND
FEELS THAT HE WILL BE "ACQUITTED" OR AT THE LEAST,
WILL BE "GRANTED" A NEW TRIAL. THE PLAINTIFF
FEELS THAT IF THE SUPREME COURT OF ALABAMA DOES
NOT REVERSE THIS CASE, THAT IT SHOULD BE LIFT UP
THE UNITED STATES FEDERAL BANKRUPTCY JUDGES TO
DECIDE THE DIVISION OF SAID PROPERTY. SO PLAIN-
TIFF CAN GET JUSTICE AND HIS EQUAL SHARE OF
BUSINESS AND PROPERTY.

IN THE COURTS DECISION IN BROWN SHOE CO. V. SCHAEFER, 6 SO. 2d 405, 242 ALA. 310, PROVIDES AS FOLLOWS:

"PROPERTY BROUGHT WITHIN THE JURISDICTION OF A BANKRUPTCY COURT, CAN NOT BE INTERFERED WITH BY ANY OTHER COURT, AND THE BANKRUPTCY COURT HAS EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ALL QUESTIONS RESPECTING THE RIGHT, TITLE, INTEREST AND DISPOSITION THEREOF."

AGAIN AS PROVIDED ABOVE, THE TRIAL COURT DID NOT HAVE JURISDICTION TO INTERVENE IN AUTOMATIC STAY PROVIDED BY THE BANKRUPTCY CODE, TITLE 11. U.S.C. §362(a), AS THERE WERE NO MOTIONS PURSUANT TO TITLE 11 U.S.C. §362(d) REQUESTING INTERVENTION IN THE TRIAL COURT OF THIS CAUSE.

THEREFORE I THE PLAINTIFF CONTENTS THAT THE TRIAL COURTS OCTOBER 31ST, 2003, JUDGEMENT REGARDING PROPERTY, ASSETS, MARITAL RESIDENT OF PLAINTIFF AND DEFENDANT, AND PLAINTIFFS RIGHTS THERE TO, BE RENDERED AS WITHOUT JURISDICTION AND THEREFORE NULL AND VOID.

IN NOWELL V. NOWELL 474 SO. 2d 1128 (ALA. CIV. APP. 1985) THAT, THE TRIAL COURT, HOWEVER, AWARDED BOTH PIECES OF REAL ESTATE TO THE HUSBAND AND MADE NO MONTARY AWARD AS A DIVISION OF PROPERTY TO THE WIFE. IN SO HOLDING, THE TRIAL COURT ABUSED ITS DISCRETION. "REVERSED"

"IN VIEW OF THE EVIDENCE, THE WIFE IS "AT LEAST" ENTITLED TO BE COMPENSATED IN AN AMOUNT EQUAL TO ONE-HALF OF THE NOTED EQUITY"

IN THIS INSTANT CAUSE, THE SHOE IS ON THE OTHER FOOT AGAIN, THE DEFENDANT WAS AWARD ABSOLUTELY

EVERY THING AS DESCRIBED ABOVE, AND PLAINTIFF WAS AWARD ($609,000.°°) WORTH OF DEBT, AND ALL TITLES DIVESTED FROM PLAINTIFF'S NAME, WITH NO ACCESS TO PLAINTIFF'S SELF-EMPLOYMENT AND ITS ASSETS IN WHICH TO RESOLVE SUCH DEBT. CERTAINLY THIS HONORABLE COURT WILL RECONIZE THAT THE TRIAL COURT AND APPELLATE COURT SAID JUDGMENT WAS SEVERELY INEQUITABLE, UNJUST, AND SO UNFAIR, NOT TO MENTION, THAT THE LOWER COURTS DID NOT HAVE JURISDICTION TO MAKE SUCH A JUDGMENT CALL, NORE DO THEY HAVE JURISDICTION AT THE PRESENT TIME.

THIS SHOULD BE LEFT UP TO THE HONORABLE JUDGE SAWYER IN OUR BANKRUPTCY CASE AT THIS TIME. IT SEEMS TO THE PLAINTIFF THAT THE ALABAMA COURT SYSTEM HAS NO REGARD FOR FEDERAL BANKRUPTCY LAWS, AND JUST DO AS THEY PLEASE. THIS IS, JUST A "OPINION" OF THE PLAINT-IFF'S.

THE PLAINTIFF IS HAVING TO ACT AS "PRO-SE" IN THIS REQUEST, BECAUSE THE ATTORNEY'S MEMORY & DAY DO NOT, AND WILL NOT, TAKE SIDES, BETWEEN PLAINTIFF AND DEFENDANT, REGARDING ANY DIVORCE ISSUES, WHICH IS PERFECTLY UNDERSTANDABLE TO THE PLAINTIFF, MR. MEMORY, AND MR. DAY SAID IN THE BEGINNING THAT THEY DIDN'T WANT TO GET INVOLVED IN MY WIFES DIVORCE, AND I CAN NOT, AND WILL NOT BLAME THEM FOR THEIR DECISION OF THIS MATTER. BUT SINCE MY WIFE FULL CONTROL OF ALL BUSINESS AFFAIRS, AND UNLIMITED CONTACT WITH OUR ATTORNEYS (AND THIS HONORABLE COURT, AND SINCE THE PLAINTIFF HAS AT BEST, VERY LITTLE ACCESS TO BE ABLE TO HAVE COMMUNICATIONS WITH THIS ATTORNEY OR THIS HONORABLE COURT, THIS PLAINTIFF, IS LEFT WITH NO OTHER CHOICE BUT TO WRITE AND ASK FOR RELIEF, ON THIS CASE,

HOWEVER, THE PLAINTIFF REALIZES THAT, THE COURT OF LAW SHOULD NOT, OR DOES NOT, RELIE ON THE EMOTION, OPINIONS, OR BELIEVES OF ANY PLAINTIFF'S OR DEFENDANT'S. BUT RELIE ON THE FACTS, AND THE LAW OF THE LAND.

THE FACTS AND THE LAW IN THIS INSTANT CASE IS AS FOLLOWS:

1) THE LOWER COURTS CAN NOT INTERVENE WITH DIVISION OF PROPERTY, WHEN THE FEDERAL BANKRUPTCY COURT HAS ESTABLISHED A STAY ON ALL PROPERTY OR ETC.. NO MATTER IF IT BE FOR A DIVORCE ARE FOR WHATEVER.

2) BOTH PARTIES IN A DIVORCE CASE, HAVE EQUAL RIGHTS, TOO EQUAL SHARES OF BUSINESS AND PRIVATE PROPERTY.

3) THERE IS NO LAW, STATE OR FEDERAL, THAT STATES THAT A PERSON CAN NOT RUN A BUSINESS FROM BEHIND PRISON WALLS.

4) BEING INCARCERATED DOES NOT GIVE THE STATE THE RIGHT TO DIVEST ANY TITLES OR PROPERTY FROM A PERSON.

5) IN TITLE 11 U.S.C. 362 (d) DOES GIVE THE RIGHT TO THE FEDERAL BANKRRUPTCY COURT TO MAKE THE DECISION TO DIVIDE SIDE PROPERTY IN A DIVORCE AND ANY MONETARY CLAIMS AGAINST A DEBTOR, OTHER THAN ALIMONY, MAINTANCE, AND SUPPORT.

WHEREFORE PREMISES CONSIDER, PLAINTIFF PRAYS THIS HONORABLE COURT WILL SET THIS MATTER DOWN FOR AN EVIDENTIARY HEARING, DUE TO DEFENDANT (CHARLOTTE) MISMANAGEMENT OF THE BUSINESS AND QUESTIONABLE HANDLING OF THE BUSINESS AFFAIRS, AND MOTION'S THIS HONORABLE COURT TO INTERVENE AND GRANT HIM CONTROLL OF THE BUSINESS THROUGH HIS POWER OF ATTORNEY TO SAVE THE FUTURE OF THE BUSINESS AND INTEREST OF THE CREDITORS.

DONE THIS 26TH DAY OF MAY 2005

RESPECTFULLY SUBMITTED

KENNETH H. WILLIFORD
AIS # 229597 - B - 38
100 WARRIOR LANE
BESSEMER, Ala. 35023-7299

## STATUTES AND CASES TO BACK UP PLAINTIFFS REQUEST

(I) TITLE 11 U.S.C. SECTION 362 (a) PG. 1, 5, 8

(II) TITLE 11 U.S.C. SECTION 362 (d) PG. 1, 3, 7, 8, 10

(III) BANKRUPTCY KEY - 2401 PG. 5

(IIII) HUNTER V. HUNTER, 906 SO. 2d 953 (Ala. CIV. 1 PP. 1997)

(V) HUNTER V. HUNTER, id, PG. 5    | PG. 4

(VI) HUNTER, id, PG. 6

(VII) NUNN V. BAKER, 518 SO. 2d 711, 712 (Ala. 1987) PG. 6

(VIII) BROWN SHOE CO. V. SCHAEFER, 6 SO. 2d 405, 242 Ala. 310 PG. 8

(IX) NOWELL V. NOWELL 474 SO. 2d 1128 (Ala. CIV. AP. 1985) PG. 8

CERIFICATE OF SERVICE

I HEREBY CERTIFY THAT A TRUE AND
CORRECT COPY OF THE FOREGOING DOCUMENT
HAS BEEN SERVED ON THE FOLLOWING PARTIES.

BEVERLYE BRADY
ATTORNEY AT LAW
118 N. ROSS ST. STE-1
AUBURN, ALABAMA 36830-4869

MRS. CHARLOTTE T. WILLIFORD
OAK-HAVEN-OFFICE
3503 MARVYN PWY
OPELIKA, ALABAMA, 36804

MR. DAY
MEMORY & DAY
ATTOREY AT LAW
469 S. McDONOUGH STREET (36104)
P.O.BOX 4054 (36103-4054)
MONTGOMERY, ALABAMA

POSTAGE PREPAID AND PROPERLY ADDRESSED ON THIS
THE 26 TH DAY OF MAY, 2005

Kenneth H. Williford
KENNETH H. WILLIFORD
AIS#229597-B-38
100 WARRIOR LANE
BESSEMER, ALABAMA
35023-7299

EXHIBIT "G"

KENNETH H. WILLIFORD
A.I.S.# 229597.   B-37.
100 WARRIOR LANE
BESSEMER, Ala. 35023-7299

Attn:
Mr. Von Memory
Memory & Day
Atty's At Law
P.O. Box# 4054
Montgomery, Alabama.                          7/26/04
        36103-4054.

Re:          CHAPTER 11. CASE NO. 03-81486
        Inre: CHARLOTTE & KENNETH WILLIFORD.

Dear Mr. Memory:
    I am hoping that this will find you and yours at the very top, and in good health.
    Sir, I am in reciept of the "MONTHLY FINANCIAL REPORT" which was prepared in respects to my et.al business, and I come to you as client and owner of said business'es regarding the following matters:

1) As an owner of said businesses I am requesting all documents from which you assess the current Financial Report for the Month of June-1-2004/June-30-2004, and of which documents caused the figures provided on the balance sheet/Income sheet/Statement of said Report.
    With further appriciation, I would request the same be included in future monthly reports.

2) As well, I write to you, et.al, as owner of said business-es, and client, to advise you of a decision I have made which was durived from a current Divorce action of Mrs. Williford and I, and a decision made for the benifit of the safty of my business.

-1-

To brief you, I took out loan from banks, to expand construction of my business, and without the completion of the construction planned, the business will go down hill, if remain standing still, as the plann was to increase expansion, Not only to secure sufficient funds to pay the Banks, but as well, to at best, assure a comfortable living for my family, in both respects, to increase revenue income.

As the current figures appear on the monthly Report, the entire business is going "Down Hill", which places all Bankers/Investors, etc, in jeopardy, including the entire business itself.

According to telephonic Contact with MRS. Williford, I assure that MRS. williford Speaks lack of Knowledge as to the completion of construction, and furtherly requests advise as to other business affairs with Bankers, of which knowledge I supply to keep the businesses at best, Safe, Not only for the sake of the business, but for the sake of my family and the Banks as well.

It has prior been stipulated that in the event of Seperation, MRS. Williford would obtain and posess Control of three parks, and I of two, Namely, Fields and OakHaven; OakHaven, where the construction sight is at stand Still, and Fields, obtained through my father, Now deceased.

However, the construction must continue, and I am Convienced that I taking controll of Field's and OakHaven is a significant necessity for the security of the entire business, as fields will as well, financially Secure construction in conjunction with income of OakHaven; and Mrs. Williford does not have the knowlege to complete construction.

Herefore, I have personally placed, as owner, New management, and assistant Management, into Fields and OakHaven trailer Parks, as the other remaining three parks can opperate themselves, without farther construction, for MRS Williford to manage.

New management will however, be providing from

Total income (business) Revenue, adequate funds for the monthly Bank Notes due on said Trailor Parks. (Fields and Oak Haven.)

Attached is the copy of Limited Power of Attorney(s) to both, Jason McDaniel, Manager; and Diane Williford, Asst. Manager.

Furtherly, construction crew is in negotiation and planned for imediately.

Please advise of any Further steps necessary to which concerns the T.11. Petition pending this cause, re:#2. above.

Thanking You in Advance
I am sincerely,

Kenneth H. Williford

# MEMORY & DAY
## ATTORNEYS AT LAW

Von G. Memory
vgmemory@memorylegal.com
James L. Day
jlday@memorylegal.com

469 South McDonough Street
Montgomery, Alabama 36104

Tyson-Maner House
The National Register - 1888

Telephone 334-834-8000
Facsimile 334-834-8001

Mailing Address
P.O. Box 4054
Montgomery, Alabama
36103-4054

August 4, 2004

Kenneth H. Williford
AIS 229597 C-1 B-94
W. Jefferson Correctional Facility
100 Warrior Lane
Bessemer, AL 35023

Reference: Your Letter and Limited Power of Attorney, 26 July 2004.

Dear Mr. Williford:

First, let me address your concerns with respect to the monthly financial statements. These are "form" documents provided by the Bankruptcy Administrator and required for all Chapter 11 cases in the Middle District of Alabama. While they provide limited information to creditors with respect to disposition of assets and revenue, they do not rise to the viability of a proper financial statement, prepared by an accountant, and traditionally advanced to a taxing authority or a financial institution. Collateral values are carried over from the bankruptcy petition (and often grossly estimated), long term asset balances are reduced periodically (but not monthly), and, due to the E-government act, supporting documents are not provided to creditors (since they contain account numbers that would eventually be filed on a public website).

I am not quite sure what aspect of the reports got your attention but it is my impression that the report has not changed substantially since the first report we filed. Also, since we provide the supporting documents to only the Bankruptcy Administrator (cancelled checks and account reconciliation documents) we usually avoid sending these out with the reports. This also assists in keeping costs down for the Debtor. If you would like to receive copies of the checks and the reconciliation documents, I would be more than happy to advance a copy to you. In fact, if there are previous months that you would like to see, I will also forward those. I must warn you, they are rather repetitive and tedious and there has been no great change to the credits and debits.

Second, and probably more important, I must address the Limited Power of Attorney and appointment of Jason McDaniel as your attorney-in-fact in the management, maintenance, care, and construction of the trailer parks. This cannot come at a more inopportune time. The best way that I can characterize our current position in the Emerton matter and the subsequent appeal is that we are "hanging by a thread". We have managed to corner the Emertons into the bankruptcy court and we have a better prognosis for our chances there. Any change to the management of

# MEMORY & DAY

Wednesday, August 04, 2004

Page 2 of 2

the business or appearance of turmoil within our position will only work to the advantage of the Emerton's and their counsel. I know that you are aware of the existing judgment in this matter and we stand to have that judgment reinforced by the bankruptcy court. A $383,000.00 debt will have a serious impact on our chances of reorganization and may require full liquidation. If we can convince the court to reduce this judgment to a more reasonable amount, we are suggesting something below $100,000.00, a successful reorganization is more likely.

I am not sure whether your efforts have created a situation where we need to go to the court and request permission for Mr. McDaniel's participation. Generally, these matters are handled by motion, after notice to all creditors, and a hearing. Any ad hoc participation by Mr. McDaniel may incur the wrath of the same bankruptcy judge who is keeping us on that thread and will make the final decision on the amount of the judgment. We would prefer to keep anyone else out of the management of the business for the near term.

Third, the construction project you mentioned in your letter has not started and cannot be started without leave of the bankruptcy court. As I understand this project, it will require additional financing. Any increase in the total debt load of your business will require a motion, notice to creditors, and a hearing.

Fourth, I have discussed two matters in this letter that would require notice and a hearing. Keep in mind that the Emertons are secured creditors in his bankruptcy and they receive notice and the opportunity to be heard in all matters. Anytime we give Mr. Reynolds, counsel for the Emertons, a platform to be heard, he can create additional problems and have the chance to put his position in front of the judge. In previous hearings and pleadings, I have noticed that he is quite fond of adding damning, and mostly irrelevant, information whenever he is given the opportunity. I do not want to give him any more opportunities than he has had already.

Finally, we represent you, as well as Charlotte Williford in this matter. Rather than preparing documents on your own, it would be better to coordinate these matters with us, your attorneys, and allow us to prepare the documents for you. This would also give us an opportunity to do our jobs and provide counsel to you and hopefully avoid the wrath of the bankruptcy court. Of course, our assistance would only apply to matters directly related to the Chapter 11 bankruptcy (not any pending criminal or domestic issues) and would have to be done with the cooperation and coordination of Charlotte.

If this limited power of attorney has been forwarded to Mr. McDaniel, I would only suggest that you direct him to take no action.

Sincerely,

Memory & Day

By: James L. Day

EXHIBIT "I"

KENNETH H. WILLIFORD
A.I.S.#229597   B-37
100 WARRIOR LANE
BESSEMER, ALABAMA.
        35023-7299

MEMORY + DAY.                           8/11/04
Atty's AT LAW
469 S. McDONOUGH, ST.
MONTGOMERY, ALABAMA
        36104

Re:                    KENNETH H. WILLIFORD

Dear Mr. Day:

    I am in reciept of your Augest 4th, 2004 letter, advising against intervention of P.O.A. at this time, and concerning financial statements.

    Before I begin response to your said letter, allow me to compliment your services to me, et.al, to the upmost, as by the documents I have observed of your represent-ation of us, the willifords, and such entailing results, you have provided exelent and diligent performance of which I am so gratefull.

    I understand that the final decree may very well be by granted prayer, however, with all due respect's to the law, it also must be fair, which I am confident you will assure.

    So by all means, your representation is not my complaint, and your intellegence regarding the bankruptcy laws, etc., I do not question, and I will not jeopardise your work and strategy.

    I believe the grace of God has given us loyal counsel.

    As I recall, you had stated that should the divorce bet-ween Mrs. Williford and I become mixed with your services to us, then you would wish to resign on those grounds... therefore, fighting my own battle pro-se throughout the divorce proceeding I have carefully executed my litigations, and business decisions with

-1-

With all due respect to not letting it involve your strategy, and I felt that my most recient decision to place management into a portion of my business you should be aware of, and therefore, notified you.

As you wish, I will temporairily withhold executing at this time, my management decision, long enough to discuss matters with you that you are obviously unaware, and matters of which are not only pertinent to your representation to me/us, but which are a direct cause for my decision to take sudden action which I intend to take in protection of my rights as a Co-owner, as well as the protection of my business.

I feel therefore, that you should be made cognizant of the following events which have occured and are resulting in actions such as T. II. § 362 d).

First, Charlotte and I were talked into obtaining a divorce by an attorney, Funderburk, to avoid lawsuit and/or liquidation of the property's/business, as it was explained by said attorney that my name taken off of the business, etc., would bar any-one from obtaining such said relief in lawsuit.

I agreed, but only agreed to remain owning Field's and Oak Haven trailer parks, and continue to recieve $2,800.00 per-month income from the entire business; Viceversa, only Charlotte owning the other three parks.

However, during the divorce proceeding Charlotte breached this agreement and demands all property, etc., which was more than likely instigated by Atty. Funderburk, who is mad at me because I refused to sell him a plott of land in Chambers County, Alabama.

The result of this said breach, the trial Court (divorce) ordered me so to speak, "out of the picture with no rights nore survivorship", and due my income status being at $2,800.00 per-month, that I pay $500.00 per month child support for my son, etc.

On appeal, I argued pursuant to Hunter v. Hunter, 706 So.2d 753 (11th Cir.) that as the bankruptcy petition was filed prior the trial Court's said judgment was

-2-

entered, Title II. U.S.C. §362(a) provided an automatic stay on all decisions/Judgments, regarding said property, and Charlotte had not filed pursuant to §362(b) to all the trial (divorce) court's intervention to make property division, and therefore the trial court's said Judgment was without Jurisdiction and should be Null and Void.

Charlotts Counsel, agreed and folded requesting dismissal of the arguement, of which I agreed to as long as the appellate court executes it's duty as the superior court over the trial court's (divorce) property Judgment and orders therewith Null and Void due lack of jurisdiction. I am currently awaiting response, and I am battling with charlotte regarding the business, and telephonically advising her how to run the business.

According to your letter, you have been mislead as to the construction at Oak Haven, which, as supported by trial (Divorce) record was in progress prior my incarceration.

Basically, the said construction can continue without further Loan. As always, for the past twelve years, my reported $2,800.00 per month income, has always went back into the business, thus todate, coupled with revenue income will financially support the construction at Oak Haven, which would upon completion, add another two Hundred (+) Lot's to the particular park and add to increase the revenue income.

Thus, the Completion of Construction is vital to securing the bank loans, and to cease construction would be Harmfull in all respects to my business, as it must expand or the business will fold without the extra revenue income, without the help of the emerton's efforts.

Even if the emertons are only allowed "PER-MONTH" payments, it will not burden the business, unless construction strategy remains at cease, as there will not be enough revenue income to maintain et.all bills.

The trial records (Divorce) will reflect that I am to be recieving $2,800.00 per-month income from said business, and therefore caused childsupport order of $500.00 per-month.

-3-

Those very documents (my income) are being used to accommodate your monthly financial statement.

The problem is, I am not recieving $2,800⁰⁰ per-month, and the construction at oakhaven has come to a stop.

Specifically, where is my income?. The Financial Statement does not reflect total income amount in the business account, which reflects only $6,000⁰⁰, and with my un-paid income, should amount to approximately $44,000⁰⁰ sence Construction stoped, and documents in my posession reflect that I have recieved approximately $2,985⁰⁰ sence the cease of construction on or about march of 2003, when I was incarcerated.

Furtherly, business records reflect that no reliable additions and/or construction has been added/continued sence my incarceration; charlotte has placed a minor on a tractor unsupervised causing a traffic accident and another law suit against us; allowed equipment to be repossesed which was purchased to create construction, and breaching her duty's as a co-owner.

Charlotte simply does not have the intellegence to expand, secure, and properly maintain the business, and has always been the "Book Keeper."

I can-not, and will not give up hope on thought of the emerton's causing liquidation in the future, and allow my business to fold, when I busted my tail for twelve years to build a business to not only support my familys needs, to afford to pay possible legal representation need be it, but to also secure my selfe and wife with selfe income/employment, and retirement, as well as to leave a business to my children of whom I have coached and taught how to construct, opperate, and negotiate said business in event of mine and charlottes business.

Simply sir, this is my efforts to succeed and provide for my family then, Now, and in the future, which my co-owner (wife) has tried to steal and take my rights away from, all of which I will not allow.

—4—

There is no law's nor policy's which say's that I can-not
own an operate my business from within these prison
wall's, nor is there any that bars me from placing respon-
sible management into a portion of my business, claimed
and agreed upon as my own, but as co-owner, I in fact
have that right.

The business, Trial (Divorce), Bank, credit card, and etc.,
records will reflect that I have never neglected my
business, nor my obligations of the business, and that any
actions ever taken by me regarding said records, was for
the construction, expantion and security of my business
in the entire twelve years, and have never spent a
dime on myselfe from my personal income etc., but
only on my family's needs, and the business; certainly
opposite of what the records will reflect of my co-owner's
actions who is now trieing to take it all away, and
jeopardizing the future of the business; again, thus, I
will not allow.

Please take into consideration the above, and under-
stand my position and decisions I must make, and the
actions I am being forced to execute to secure my right-
full position.

My taking over the two parks, and recieving the $2,800.00
per-monthe income from the entire business, I do not see
how it would work to the emertons advantage as you
refer.... My two parks revenue income will provide its
payments to the bank Notes in conjunction with charlottes
and thereby, Nothing changes debt status, and if the emer-
ton's are granted monthly payments, all three parks will
provide accordingly the such extra obligation, and cert-
ainly, the completion of construction will provide larger
revenue income to betterly deal with such obligation.

A simple agreement with my co-owner to devide,
would avoid a battle of which I am prepared and conf-
ident to win.

Again, I do not wish to instigate possible advantage
for the emertons, and Jeopardise your diligent strategy

-5-

yet again, understand that I am not only in a posit-ion to where the emerton's are, "After it all", but I am also in such position with my co-owner whom is not willing to reason, an thus, a position I am forced to, and intend to defend.

However, you state in your letter to me, that as a representitive of me, et al, you would cause the proper motions/channels/Negotions to place these matters in proper perspective, rather than for me to handle these matters pro-se.

So with all due respects, I have come to cease on my actions which will result in a $362 (d) motion Hunter id., and/or if need be, Title 10.§10-8A-601(5),(i),(ii),(iii), termination of my co-owner based on her neglegence, breach of agree-ment and lack of business Knowlege, all resulting in jeopardizing my business, and of which actions I do intend to take before time elapses and damages my business, or rights/survivorship to my business.

So I await response from you with sudjestions of your opinion as how to handle this matter.

In so far as the documents, "Cancled checks, and account reconciliation documents", etc., I would appriciate being provided with those which reflects all month's at your convieniance.

A bit much to ask and a burden I'm sure, but I am sure you understand, "as a co-owner yourselfe", the significance of being able to observe documents reg-arding my business under these curcumstances.

Final, I have managed to have your phone No. placed on my calling list, and can only call collect.

Yet every time I call, my call is not accepted. Is there any possible way that you can accept my call for counsel/tation?

Thanking you in advance for your time and consi-derations, I await in cease of further action pending response.

Sincerely

Kenneth Williford

-6-

KENNETH H. WILLIFORD
A.I.S. #229597   B-37      EXHIBIT "J"
100 Warrior Lane
Bessemer, Alabama.
35023-7299

Memory & Day
Atty's at Law
469 S. McDonough St.
Montgomery, Alabama.
36104.

Re:               8-11-2004 Response letter
          of KENNETH H. WILLIFORD.

Dear MR. Memory / MR. Day:
    I am writing to you regarding my last letter to you of
which I have not recieved no response.
    Thus, my 8-11-2004 letter was regarding my choice to
place management in two of my trailer Park's, and the
financial statements of my business.
    My last letter, with all due respects, advised that I would
refrain from executing further pro-se actions in order to
obtain access to what is rightfully mine, and requested all
Financial statements at your convieniance; as well as advise/
suggestion's regarding my pro-se actions.
    I find my-selfe burdened with concern, as I have had
No response to said letter, and sincerely wish to comply
with your wishes.
    furtherly, I have tryed to contact you telephonically, as
requested in my last letter, in order to discuss this and
other matter with you, and still, my call's will not go through.
    Please understand that it is quite uncomfortable to know
that a business you have struggled to build, and the
income from said business, is being taken from you, and

80)

You are in a position where "people will not care."

As well, please understand that, I will not allow this to happen, when I have right to do as I have chosen, and rights to my business.

I am not as smart at law as you, yet I do realize that TIME bars many from taking action, and action is STALLED for only one reason.

In this case, you came to me after my Notice, and advised me in professional opinion, and with all due respects, I heeded long enough to hear your advise and strategy.

This is a matter I have tryed to no avail to settle with charlotte, and a matter I did not wish to come before your profession, and a matter which hase.

I do not wish to negotiate with charlotte unless she is finally on an agreement state of mind, and as I sincerely believe she is Not, I intend to succeed in full action, however, as it now involves your Jurisdiction, I have accepted your coordination in this matter, as offered.

I would request however, that should you intend to talk to charlotte about this matter I entend to execute, then please allow me Knowlege of your strategy, decisions, intention and etc., when dealing with charlotte, please.

Please take Note as well, that it is I who is negotiating business for charlotte, which is the only time she wishes to accept my calls, and it is both charlotte and I of whom coordinate the business and any transactions there to, lawfully.

Please make promptest response.

Thanking You in Advance -
I am Sincearly

_[signature]_

(72)

EXHIBIT "K" 8/30/04

MR. MEMORY,

LET IT BE KNOWN, THAT, I HAVE BEEN AS NICE ABOUT THIS AS I POSSIBLE CAN BE, BUT BY YOU IGNORING MY LETTERS TO YOU ON 2/11/04,  , 8/11/04, AND 8/15/04, THAT I'M NOT PART OF DEFRAUDING THE COURTS IN THIS CASE. IT IS YOU MR. MEMORY AND MR. DAY   AND CHARLOTE THAT ARE TELLING THE COURTS LIES ABOUT THE INCOME OF THE PARKS AND ARE ⁿᵒᵗTELLING THE COURTS ABOUT THE ILLEGAL DIVISION OF THE PROPERTY BY THE DIVORCE COURT, AND ARE HELPING CHARLOTE COVER UP HER TAX EVASION TO THE GOVERNMENT. AS I'M SURE THAT I WON'T GET A RESPONSE FROM YALL, BECAUSE THIS IS BECOMING COMMON PRACTICE NOW, SENDING ME BACK LETTERS AS IF I HADN'T EVER WROTE TO YOU ABOUT ANY OF THE PROBLEMS THAT I'VE TOLD YOU ABOUT. YALL SAID YOU WOULD HELP AND THAT YALL REPRESENT BOTH OF US ME/CHARLOTE, SO PLEASE HELP ME GET BACK MY PART OF MY PROPERTY AND BUSINESS.

SINCERELY

Kenneth F. Wilford

(69)

MEMORY & DAY
ATTORNEYS AT LAW

Von G. Memory
vgmemory@memorylegal.com
James L. Day
jlday@memorylegal.com

469 South McDonough Street
Montgomery, Alabama 36104

Tyson-Maner House
The National Register - 1888

Telephone 334-834-8000
Facsimile 334-834-8001

Mailing Address
P.O. Box 4054
Montgomery, Alabama
36103-4054

November 8, 2004

Kenneth Williford
AIS 229597 C-1 B-94
W. Jefferson Correctional Facility
100 Warrior Lane
Bessemer, AL 35023

Reference: Your Letter, Late October 2004, Attached

Dear Kenneth:

I hope that this letter provides you with sufficient answers to your letter. I am attaching a copy of your letter for your reference and to compare with the numbered answers on this letter.

Before I begin, just a reminder of the events that occurred to this point. Your civil case was appealed to the Alabama Supreme Court. Although the court reaffirmed the decision of the trial court, they did feel that the lower court failed to properly perform a hearing according to Hammond. The court said:

> "In Hammond [v. City of Gadsden, 493 So.2d 1374 (Ala.1986)], this Court required that a trial court 'reflect in the record the reasons for interfering with a jury verdict, or refusing to do so, on the grounds of excessiveness of the damages.' 493 So.2d at 1379; see also ALFA Mut. Ins. Co. v. Brewton, 554 So.2d 953 (Ala.1989). In Hammond, this Court stated the reason for the requirement:

> " '[T]he trial judge is better positioned to decide whether the verdict is ... flawed [as excessive]. He has the advantage of observing all of the parties to the trial--plaintiff and defendant and their respective attorneys, as well as the jury and its reaction to all of the others. There are many facets of a trial that can never be captured in a record, so that the appellate courts are at a special disadvantage when they are called upon to review [a] trial [court's] action in this sensitive area....' "493 So.2d at 1378-79."

> When a trial court fails to put in writing its reasons for denying a motion to review a punitive-damages award for excessiveness, this Court's practice has been to remand the cause for the trial court to enter an order

# MEMORY & DAY

in compliance with Hammond. See, e.g., Love, 775 So.2d at 128; Spencer v. Lawson, 815 So.2d 502 (Ala.2001); Southern Pine Elec. Coop. v. Burch, [Ms. 1020066, March 28, 2003] --- So.2d ---- (Ala.2003). We therefore remand this case to the trial court for the entry of an order that complies with the requirements of Hammond. On return to remand, the Willifords will have the opportunity to renew their argument that the punitive-damages award is outside the constitutional parameters set forth in Gore and Hammond/Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989), should they still wish to do so.

The trial court's order denying the Willifords' motion for a new trial is affirmed. We remand the cause to the trial court, however, for that court to take such steps as are necessary to enter an order in compliance with Hammond. The trial court is instructed to file a return to this Court within 56 days of the release of this opinion, after which the Willifords will have 14 days to file a supplemental brief, if they choose to do so. The Emertons will then have seven days to respond, and the Willifords may then file a reply brief within seven days of the Emerton's response.

Emerton v. Williford, 2004 WL 596165 (Ala.)

Mr. Reynolds, and while there was a bankruptcy stay in place, went to another Judge, Judge Young, and had him issue an order saying that the original judgment was correct and in compliance with Hammond. In fact, it is our belief (although he has denied it in open court) that Mr. Reynolds drafted the order and put it in front of Judge Young, and he automatically signed it. William Evans Brittain, one of the attorneys for Travelers, filed the writ of mandamus in response to this action by Reynolds.

(Question 1) William Evans Brittain of Ball, Ball, Matthews & Novak, P.A., while you were still being represented by Travelers Insurance, filed the motion for writ of mandamus on your behalf, at an eleventh hour before his representation expired, and with our coordination. He did not have to do this and, as I said, it was at the last minute. This should not reflect on the quality of what he filed, just that he felt obligated to file it before Travelers pulled the plug. We felt that the wit and brief were well written and supported.

(Question 2) See the background above

(Question 3) We did not have much time at that point. We did "back brief" you on the fact that it was filed during our phone call. Also, you have to remember that we have been doing everything to hold this all together.

(Question 4) It is somewhat lengthy and not very illuminating. Mostly they said that the judge was supposed to do something and he did not, so, "please make him do it". If you want a copy of it, we will send it. Also, we are trying to keep down costs for the bankruptcy estate.



# MEMORY & DAY

Monday, November 08, 2004
Page 3 of 4

(Question 5) The bankruptcy judge has allowed the stay to be lifted. It will allow the Alabama Supreme Court to rule on the writ of mandamus and a Hammond hearing to be held.

(Question 6) The plan is now due January 31, 2005. We cannot file a plan until we know how much we are going to have to contend with on the Emerton debt. The good news is that along with the bankruptcy judge allowing the stay to lift, the Emerton claim has been permanently relegated to an unsecured claim. If it was secured, we would have to deal with the full amount. We also believe that Mr. Reynolds has not quite figured this out yet.

With the Emerton debt unsecured, we only need to treat it as you would under a liquidation plan. We are working with Charlotte to amend the petition and schedules to reflect tax appraised values for the trailer park property. So, for example, if you owe more on the mobile housing property that it is worth, and the property is liquidated, there would be nothing left for unsecured creditors. If the property is worth more than you owe on it, there will be something left to be divided between all the unsecured creditors. Therefore, the secret is to reflect as little value (equity) as possible…and they HAVE to take what they get. We believe that even if the judgment stands at $350,000.00, we can get them to take less than $100,000.00.

Also, we have just received permission of the court to employ Mr. Murray and the results of his litigation will also make a difference on the plan. If he can recover from Funderburk, or his liability carrier, it will add to the assets of the bankruptcy estate. It also can be used to pay unsecured creditors.

(Question 7) No, not the Alabama Supreme Court. What it will result in is the Chambers County court, "under the gun" of some close Alabama Supreme Court scrutiny, may reduce the amount of the judgment. We have some case law that shows that even in the case of most outrageous conduct, the punitives should not exceed three times the compensatories.

I hope that this answers your questions. Please let me know if I can be of any further assistance.

Sincerely,

Memory & Day

By: _____
James L. Day

Enclosure(s) [Letter of Kenneth Williford]

CC:

Dear Mr. Memory

I have just received a from you saying, that a "Petition of for writ of mandamus has been submitted to the Alabama Supreme Court. I'm not understanding this submitted Petition, answer, and briefs on October 26, 2004.

① Who submitted the mandamus, them or us?

② If we submitted the mandamus. For what reason was it done? And the same if they submitted it, why?

③ Why wasn't I notified about it before hand?

④ Why haven't I received copies of all of this being done?

⑤ Has the "Federal Judge" decided anything about the law suit with the Emertons yet?

⑥ Please explain to me if or when the Federal Court will need "us" to give them a plan?

⑦ Does this mean that the Supreme Court is looking at reducing the law suit amount?

Thank you for your cooperation and patience with me.

Sincerely

Larry

EXHIBIT "M"

1/31/05

DEAR MR MEMORY,

IT HAS BEEN OVER A WEEK NOW SINCE I LAST WROTE TO YOU. SINCE THEN I DID RECEIVE DEC. INCOME STATEMENT, BUT WHAT I HAINT RECEIVED IS AN ANSWER TO MY LETTER ABOUT YALL'S MEETING WITH JIMMY. SO I AM REQUESTING THAT INFORMATION FROM YALL FOR THE SECOND TIME.

NOW FOR ONE REASON OR THE OTHER MY WIFE HAS HAD AN EXTREMELY LARGE JUMP IN REVENUE, AND A EXTREMELY LARGE DROP IN EXPENSES FOR LAST MONTH.

I'M GOING TO CUT THIS SHORT AND STRAIGHT TO THE POINT. PLEASE ANSWER MY QUESTION'S IN MY LAST LETTER TO YOU LAST WEEK, AND PLEASE EXPLAIN THESE LARGE JUMPS IN REVENUE AND EXPENSES. A BLIND MAN COULD SEE WHAT SHE IS DOING. I AM EXTREMELY SURPRISED THAT YOU MR. MEMORY AND MR. DAY, THAT NEITHER ONE OF YALL HAVE QUESTION HER ABOUT THE INCOME STATEMENTS, AS FAR AS THAT GOS, I'M MORE SURPRISED THAT THE TULES AS NOT CAUGHT HER IN THESS INCOME STATEMENTS. PLEASE WRITE BACK OR CALL ME BY THE END OF THE WEEK.

THANK YOU

SINCERELY KENNY

1/31/05

DEAR MR. MEMORY,

I APOLOGIZE FOR NOT PUTTING THIS LETTER IN WITH THE OTHER LETTER THAT I WROTE TO YOU TODAY. I WANT TO EXPLAIN SOMETHING TO YOU FIRST. I HAVE WORKED VERY HARD ALL OF MY LIFE, AND VERY HARD TO BUILD MY BUSINESS LIKE I HAVE.

CHARLOTTE HAS WORKED RIGHT ALONG BE SIDE ME DOING ALL THE PAPER WORK. SHE HAS BEEN MY RIGHT ARM ON ANY BUSINESS ADVENTURE THAT I HAVE EVER TAKEN ON.

BUT, SHE REALLY DOES NOT KNOW HOW TO KEEP THE BUSINESS RUNNING LIKE IT SHOULD RUN. NOW HER MADNESS, AND MOST OF ALL HER GREED HAS TAKEN OVER HER MIND. I CAN'T SEEM TO TALK ANY SENSE INTO HER HEAD ANY MORE. I HAVE REPEATEDLY TOLD HER TO STOP DOING THINGS SHE IS DOING. BUT SHE WILL NOT LISTEN TO ME. NOW THE ALABAMA SUPREME COURT HAS GRANTED ME MY CERT, AND I DO BELIEVE THAT IT WON'T BE MUCH LONGER BEFORE I AM SET FREE WITH GOD'S HELP. I KNOW THAT "I" CAN SAVE MY BUSINESS. I'M THE ONE THAT BUILT IT AND KEPT IT RUNNING, AND IT NEVER RAN IN THE "RED" LIKE WHAT SHE HAS STARTED IT TO DO SINCE I'VE BEEN IN JAIL. AND IT WON'T RUN IN THE RED WHEN I AM ABLE TO TAKE CONTROL OF IT AGAIN.

THIS IS WHY I AM GOING TO BE
ASKING THE JUDGE TO EITHER GIVE ME
FULL CONTROL, OR AT LEAST DIVID THE
PROPERTY BETWEEN US. SO I CAN AT LEAST
SAVE SOME PART OF IT AND HAVE SOME-
THING TO FALL BACK ON WHEN I GET OUT.

I ALSO NEED TO KNOW WHAT IS SAID
AND AT MEETINGS THAT I'M NOT AT,
LIKE WITH THE BANKER JIMMY.

Now I'LL TELL YOU THIS, I "KNOW"
I CAN SAVE THE BUSINESS ON ONE HAND.
BUT ON THE OTHER HAND, I WILL BET YOU
A $1000⁰⁰ TO A DONUT SHE WILL BE THE
CAUSE FOR IT GOING UNDER EVEN IF
WE WASN'T IN BANKRUPTCY. No FAULT
OF HER OWN, SHE DOESN'T HAVE A REAL
GOOD BUSINESS SENSE ABOUT HER SELF, SHE
IS THE BEST THERE IS WITH HELPING RUN
ONE, BUT TO DO IT ON HER OWN, IT WILL
NEVER LAST. SO PLEASE ANSWER ME THIS
WEEK,

Thank You

Jerry

SINCERELY

Case ...  Document 23-15  Filed ...  Page 1 of 1

2/5/05

DEAR MR. MEMORY
I HAVE RECEIVED YOUR LETTER
TO ME, WRITTEN ON 2/2/05 AND SENT TO ME
ON 2/3/05, I RECEIVED IT ON THE 2/4/05

Now TO ANSWER THIS LETTER FROM YOU.
BY THE SUPREME COURT ORDERING THE
REISSUE OF THE HAMMONDS ORDER, AND
BY YOU TELLING ME, THAT THE CIRCUIT COURT,
UNDER THE SIGNATURE OF JUDGE YOUNG, HAS
NOW DONE THAT. JUST WHAT DOES "THIS" MEAN
DOES IT MEAN WE ARE FIXING TO START
THIS ALL OVER AGAIN OR WHAT?

AS FAR AS THE REORGANIZATION
AND DISCLOSURE STATEMENT WITH THIS CASE,
I'M NOT ASKING YOU, BUT I AM TELLING YOU THAT
THIS IS NOT TO BE DONE WITHOUT MY
APPROVAL AND CONSENT, FIRST BEFORE
IT IS SENT IN TO THE JUDGE FOR
APPROVAL, I WILL HAVE A DECIDING VOTE
IN THIS, NOT JUST YOU AND CHARLOTE. I
KNOW THAT CHARLOTE WILL NOT DECIDE ANY-
THING, SHE PROBABLY JUST GO ALONG WITH
ANYTHING THAT YOU SAY. ME ON THE OTHER HAND, I'M NOT
THAT WAY. IT WILL HAVE TO MAKE PRETTY
GOOD SENSE TO ME FIRST. BETTER YET I AM
REQUESTING A SPECIAL VISIT FROM YOU.
TO COME UP HERE AND SEE ME. WHERE
WE CAN SET DOWN AND DISCUSS THESE
MATTERS AT HAND, AS SOON AS POSSIBLE.

②

2/5/05

Now for some reason you kept on avoiding answering my question to you about the meeting with "Jimmy Hurst" our banker, last month. This is beginning to make me feel like that there may be something under-handed is going on with you and Charlotte against me. In this meeting that yall had with Jimmy, I will assure you this, this will be the last time I ask you about this meeting.

If I am not answered by 2/8/05. I will be sending a letter to Judge Sawyer, along with copies of my letters to you for the last three weeks and copies of your return letters to me. I'm telling you now "Charlotte" is screwing the bankruptcy courts with her income statements. She is is screwing the I.R.S. out of taxes, but worst of all she is putting "you" and "me" at a risk that I do not care about taking.

I would like to commend you on the work that you and your firm has done for us on this case. I know that it has been avery difficult case for you to work with. I also know that with the way things are between me and Charlotte, that it has made it even that much more difficult for

③

2/5/05

YALL TO HAVE TO WORK @ AROUND OUR
DISAGREEMENTS. I KNOW SHE IS WORKING
LIKE AN ANGEL TO EVERYBODY AND IM
LOOKING LIKE THE BUTTHOLE. BUT I WILL
NOT SPEND ONE EXTRA MINUTE IN A
SEPTIC TANK PLACE LIKE THIS JUST
BECAUSE OF HER STUPIDITY.

       NOW I WILL BE FINISHED WITH
MY REQUEST TO THE BANKRUPTCY COURT
FOR CONTROLL OR DIVISION OF THE PROPERTY
THIS COMING WEEK. I WILL SEND A COPY OF
IT TO CHARLOTTE FIRST. I WILL GIVE
HER ONE LAST CHANCE TO GET IN
COMPLIANCE WITH THINGS SO MAYBE SHE
WON'T GET INTO TROUBLE WITH THE STATE
AND FEDERAL COURTS. SHE SHOULD RECEIVE THIS
ON WED. 2/7/05. IF I HAVE NOT TALKED
TO HER OR RECEIVED A LETTER BACK FROM HER
BY THE 2/9/05. I WILL BE SENDING A
COPY FOR YALL TO LOOK OVER. I WILL WAIT
THREE DAYS FOR YOUR REPLY. IF I HAVE
NOT RECEIVED A RESPONSE BY THEN I WILL
BE SENDING IT ON TO JUDGE SAWYER.
MAYBE HE GIVE ME A EVIDENTIARY
HEARING SO I CAN SHOW AND EXPLAIN
THE COMPETENT EVIDENCE I HAVE

       GOD BLESS
                Kenneth Williford

SINCERELY

EXHIBIT "O"

# MEMORY & DAY
## ATTORNEYS AT LAW

VON G. MEMORY
vgmemory@memorylegal.com
JAMES L. DAY
jlday@memorylegal.com

469 SOUTH MCDONOUGH STREET
MONTGOMERY, ALABAMA 36104

TYSON-MANER HOUSE
THE NATIONAL REGISTER - 1888

TELEPHONE 334-834-8000
FACSIMILE 334-834-8001

MAILING ADDRESS
P.O. BOX 4054
MONTGOMERY, ALABAMA
36103-4054

February 24, 2005

Kenneth Williford
AIS 229597 C-1 B-94
W. Jefferson Correctional Facility
100 Warrior Lane
Bessemer, AL 35023

Reference: Your letter of February 14, 2005

Dear Mr. Williford:

First, I apologize for any interruption in communication that you may have perceived. As we have stated before, we have no desire to get in the middle of disagreements with respect to payments and the operation of your business. Right now, we are doing what we can to keep ahead of Mr. Reynolds.

We do need your input on a Chapter 11 plan and it looks like you have started getting your ideas together. In the plan, there will be four types of creditors:

1) Administrative Claims – Attorneys, CPAs, or any other professional who has been hired to work for the estate. So far, there is only Mr. Murry and us.

2) Priority Secured Claims – Taxing authorities like the Internal Revenue Service and Alabama Dept of Revenue

3) Secured Claims

4) Unsecured claims

Unsecured claims are all handled the same. We cannot show any preference to one over the other. In the spirit of how you characterized it in your letter, the unsecured creditors are all "equally screwed".

What we ultimately figured was that Mr. Reynolds jumped the gun and tried to record his judgment before the appeal was final. By order of the bankruptcy court, his claim will be unsecured. As an unsecured claim, he will have to accept whatever percentage on the dollar we

# MEMORY & DAY

Thursday, February 24, 2005
Page 2 of 2

offer to unsecureds. Also, we expect to get some support from Peoples Bank in voting for the plan, since we will show them as fully secured.

Anyway, regardless of how any of the banks treated you, and what deficiency balance there may remain, they will get only that portion that we deem to pay them under the plan of reorganization.

I will provide you additional information as our plan develops. I will also keep your letter on file so that we can be sure that we integrate it into our plan of reorganization.

Sincerely,

Memory & Day

By: _____
Janes L. Day

EXHIBIT "P"

# MEMORY & DAY
## ATTORNEYS AT LAW

VON G. MEMORY
vgmemory@memorylegal.com
JAMES L. DAY
jlday@memorylegal.com

469 SOUTH MCDONOUGH STREET
MONTGOMERY, ALABAMA 36104

TYSON-MANER HOUSE
THE NATIONAL REGISTER - 1888

TELEPHONE 334-834-8000
FACSIMILE 334-834-8001

MAILING ADDRESS
P.O. BOX 4054
MONTGOMERY, ALABAMA
36103-4054

March 16, 2005

Kenneth Williford
AIS 229597 - B-38
100 Warrior Lane
Bessemer, AL 35023

Reference: Chapter 11 Plan and Disclosure

Dear Mr. Williford:

The exclusivity period (period in which we are exclusively allowed to file a plan of reorganization) has been extended by the court to June 1, 2005. However, we do not intend to see how close that we can get to that deadline. Our plan would be to meet with you there or by teleconference by the end of April.

Sincerely,

Memory & Day

By: _____
James L. Day

EXHIBIT "Q"

3/20/05

Mr. Day,

I received your March 16th letter to me. Thank you for answering so quickly. In your letter it says that you will answer meet with me here or teleconference, by the end of April, For I do not want to do this teleconference. I prefer that you meet with me face to face.

First, the Captain asked Day would like for me to be able to use their office for my business. They is such a little animosity, by trying to hurry as we like last time we did this.

Secondly, I want to see it in writing in front of you, did I not want to be in no hurry either.

So please make your appointment with the warden, for in the morning time, when you come.

Thank you very much for your time and God bless you.

Sincerely

[signature]

3/28/05          EXHIBIT "R"

Mr. Day

I AM WRITING YOU TO
LET YOU KNOW THAT ON APRIL 14TH
15TH, 16TH AND 17TH, THAT I WILL NOT
BE ABLE TO MEET WITH YOU ON THESE
DAYS. SO IF YOU DON'T MIND, PLEASE
MAKE ARRANGEMENTS TO COME SEE ME
ON A DAY OTHER THAN THESE. WE ARE
HAVING RAZORS ON THESE DATES AND
I WILL NOT BE ABLE TO LEAVE RAZORS
TO COME AND MEET WITH YOU. BUT
ANY OTHER DATE WILL BE FINE.

Has THERE BEEN ANYTHING ELSE TO
HAPPEN SINCE THE LAST TIME YOU
WROTE TO ME. IF SO, PLEASE LET ME
KNOW ABOUT IT. Thank You FOR YOUR TIME.

God Bless

Sincerely

Kenneth W. Magwood

EXHIBIT "S"

## MEMORY & DAY
### ATTORNEYS AT LAW

VON G. MEMORY
vgmemory@memorylegal.com
JAMES L. DAY
jlday@memorylegal.com

469 SOUTH MCDONOUGH STREET
MONTGOMERY, ALABAMA 36104

TYSON-MANER HOUSE
THE NATIONAL REGISTER - 1888

TELEPHONE 334-834-8000
FACSIMILE 334-834-8001

MAILING ADDRESS
P.O. BOX 4054
MONTGOMERY, ALABAMA
36103-4054

June 1, 2005

Mr. Kenneth Williford
AIS 229597 C-1 B-94
W. Jefferson Correctional Facility
100 Warrior Lane
Bessemer, AL 35023

Reference: Your Letter of May 26, 2005

Dear Mr. Williford:

I am in receipt of your letter of May 26, 2005. It arrived late in the afternoon Tuesday night.

While this firm does not respond to threats, you should know that we have asked for an extension on the deadline to file the plan and disclosure. We asked for this extension specifically for the purpose of meeting with you, in person (see enclosed motion). It is Mr. Memory's intent to meet with you during the course of next week.

If it is your desire to file your motion, we cannot stop you. However, you will be negating a significant amount of negotiation with your creditors and will insure that the bulk of the Emerton judgment is taxed to your estate.

Sincerely,

Memory & Day

By: James L. Day

Enclosure(s)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE:** | |
| **CHARLOTTE TERESA WILLIFORD and KENNETH WILLIFORD,** | **Case No. 03-81486-WRS**<br>**Chapter 11** |
| **Debtors.** | **Motion to Expand Exclusivity Period by 10 Days to June 10, 2005.** |

**FIFTH MOTION TO EXPAND THE TIME TO FILE DISCLOSURE**
**STATEMENT AND PLAN AND MOTION TO EXPAND THE DEBTOR'S**
**EXCLUSIVITY OR RIGHT TO FILE PLAN, 11 U.S.C. § 1121(d)**

1. CHARLOTTE TERESA WILLIFORD and KENNETH WILLIFORD,

("DEBTORS") filed a petition for an order of relief under Chapter 11, Title 11 of the United

States Bankruptcy Code, October 3, 2003.

2. Under previous orders and notices, the Debtor was required to file a disclosure

statement and plan on or before January 30, 2004.

3. Under 11 U.S.C. § 1121(b), the Debtor has the exclusive right to file a plan for 120

days after the petition for an order of relief.

4. Debtors have previously moved the court to extend the exclusivity period, January 30,

2004 (ECF Doc. 52) and said motion was granted, March 10, 2004 (ECF Doc. 65). The new

deadline to file a plan and disclosure is May 15, 2004. A second motion was filed to extend the

exclusivity period, May 13, 2004 (ECF Doc. 82) and that motion was granted, June 16, 2004

(ECF Doc. 87). The deadline was then extended to September 15, 2004. A third motion was

submitted, September 15, 2004 (ECF Doc. 109) and that motion was granted, October 28, 2004

(ECF Doc. 124). The deadline was then extended to January 31, 2005. The Debtors filed a fourth

motion, January 31, 2005 (ECF Doc. 135), and that motion was granted, March 4, 2005 (ECF Doc. 144). The deadline was extended to June 1, 2005.

5.   Although there are issues pending that may significantly affect the bankruptcy estate of the Debtors, counsel for the Debtors prepared a draft plan and disclosure which was available to be submitted on the current deadline for submission.

6.   However, Mr. Kenneth Williford, who is incarcerated at the W.F. Donaldson Correctional Facility in Bessemer, has insisted on direct, face-to-face participation in the preparation of the plan and disclosure.

7.   It will take some advance preparations, coordination with the Alabama Department of Corrections, and approximately an entire day to travel to and from Bessemer and meet with Mr. Williford. It is anticipated that this meeting and the inputs to the plan and disclosure can be finalized no later than June 10, 2005.

8.   Debtors have dutifully filed monthly financial reports as required by the Bankruptcy Administrator.

9.   The Debtors are current with their quarterly maintenance fees.

WHEREFORE, it respectfully requested that the court grant the Debtor the exclusive right to file a disclosure statement in 10 days.

Respectfully submitted May 31, 2005.

MEMORY & DAY

By:    /S/ James L. Day
James L. Day
ASB-1256-A55J

Von G. Memory
ASB-8137-071V

- 2 -

S9OTHER SIDE THIS SIDE GO

Attorneys for Debtor

OF COUNSEL:

Memory & Day
Post Office Box 4054
Montgomery, AL 36103-4054
Tel (334) 834-8000
Fax (334) 834-8001

## CERTIFICATE OF SERVICE

    I hereby certify that I have this date served a copy of the foregoing document on the following, by:

    ☑ placing same in the United States Mail, postage prepaid, and properly addressed

    ☑ E-mail or ECF (Pursuant to Fed. R. Bankr. P. 9036)

    ☐ facsimile

    ☐ hand delivery

    ☐ delivered in open court

on May 31, 2005

    Teresa Richards Jacobs
    U. S. Bankruptcy Administrator
    1 Court Sq Ste 221
    Montgomery, AL  36104-3538

                /S/ James L. Day
                OF COUNSEL

6/2/05
EXHIBIT "I"

DEAR MR. DAY,

I HAVE RECEIVED YOUR LETTER DATED JUNE
1ST 2005. I HAVE TO SAY, THAT I AM EXTREMELY
DISAPPOINTED IN YOUR RESPONSE. IT WOULD SEEM TO
ME THAT A MAN WITH YOUR EDUCATION COULD
DISTINGUISH A THREATING LETTER FROM ONE THAT
WAS TO JUST LET YOU KNOW WHAT WAS ABOUT TO
HAPPEN, SO THAT YOU WOULDN'T BE CAUGHT OFF
GUARD, JUST SO YOU WILL KNEW I HAVE KIDS FIXING TO
GO TO, AND FIXING TO GRADUATE FROM, AND HAS
ALL READY GRADUATED FROM COLLEGE. SO I KNOW THAT
THAT THEY DON'T TEACH YOU COURTEOUSY, RESPECT OR
COMMON SENSE, WHICH YOU HAVE SHOWED A LACK OF
IN YOUR LAST LETTER. PLEASE LET ME REFRESH YOUR
MEMORY, WE PAY YOU, SO FOR THE TIME BEING THAT
MEANS THAT WE ARE THE EMPLOYER, YOU ARE THE
EMPLOYEE, BUT BUT I GUESS THAT MOST THAT THAT
I HAVE JUST SAID, WILL COME TO YOU WITH AGE
AS IT DID WITH THE REST OF US.

PLEASE LET ME NOW RESPOND TO THE REST OF YOUR
LETTER ABOUT THIS MOTION BEING LATE AGAIN,
NOW I SEE WHERE THAT YOUR FIRST, SECOND, THIRD,
AND FOURTH MOTION WERE ALL DENIED. IN THIS, YOU SAY
DEBTORS RESPONSE THESE WHICH MEANS ME AND CHARLOTE
WHICH IT WAS OUR CREDORS, WHICH ARE EMPLOYED BY
US, HOD IS PIECE TOGETHER TOLD US FOR GOOD REASON,
AND A LAW FIRM THAT WILL BE FOR YOUR EXPENSES
AND FILING FEES, AND SUCH MATTER.

I

8/2/05

LIEING IS SOMETHING THAT I DON'T DO. I DON'T
WANT TO BE LIED TO, LIED ON, OR LIED AGAINST.
I WILL NOT LIE ON, LIE TOO, OR LIE FOR SOME
ONE. SO PLEASE CORRECT ME IF I'M WRONG. IT LOOK
LIKE YOU HAVE BLAMED ME, FOR YOU NOT SUBMITTING
THIS PLAN AND DISCLOSURE ON THE CURRENT DEADLINE,
ON #5, & #6 OF PAGE 2 OF THIS LETTER. WHEN IN
FACT, I TOLD YOU IN A LETTER TO YOU BACK ON MARCH
20TH, 2005, "THAT I DIDN'T WANT TO DO THIS PLAN AND
DISCLOSURE BY TELECONFERENCE". THAT I PREFER TO DO IT
FACE TO FACE." YOU HAD WRITEN ME ON MARCH 16TH, 2005,
TELLING ME, THAT YOU KNOW THE DEADLINE WAS ON
JUNE 1, 2005. THEN YOU SAID, "AND I QUOT OUR PLAN WOULD
BE TO MEET WITH YOU THERE OR BY TELECONFERENCE BY THE END
OF APRIL." UNQUOT. THEN I WROTE BACK TO YOU ON MARCH THE 28TH
TELLING YOU, OR LETTING YOUR THAT I WAS GOING TO BE AT "RAZORS"
APRIL 14, 15, 16, AND 17, NOT TO MAKE YOUR MISTAKE ON EITHER
OF THESE DAYS. THEN I SEND YOU A LETTER ON MAY 26, 2005,
LETTING YOU KNOW WHAT I FELT LIKE I USED TO DO FOR MYSELF,
AND TO LET YOU KNOW, THAT, YOU HADN'T DONE WHAT YOU
SAID YOU WERE GOING TO DO. THEN I GET THIS "SMART ASS"
LETTER FROM YOU, SAYING YOUR FIRM DOESN'T RESPOND TO THREATS.
NOW TO ADD INSULT TO INJURY, YOU USE THIS AS YOUR EXCUSE
FOR A MISS TRUE, THE JULY 1ST, 2005, DEADLINE. MR. DAY, DON'T
YOU EVER USE THIS FOR ANOTHER ONE OF YOUR LIES TO THIS
COURT OR ANY OTHER COURT AGAIN. I WOULD LIKE FOR
US TO BE HONEST AND TRUTHFULL WITH EACH OTHER ON THIS ISSUE

8/2/05

MR. DAY?

Now as I have requested before, please send me a copy of this "PLAN AND DISCLOSURE" before MR. MEMORY comes next week, so I can go over it before he comes to see me. Because as I have told you before, THIS has to do with our lifes and we will decide what is best. I ask you months ago not to do this, that, is not to wait right up to the last minute to the deadline, and then want to present it to us. I told you, that we would want some time to go over what ever yall presented to the courts. I have copies of all my letters to you MR. DAY, so I know that, you know, that you are wrong, by saying what you did in your last letter to me and the court. I know, that, you can't even imagine, that CHARLOTTE could do any wrong. After looking into her big brown eyes, hearing her soft voice along with her innocent look as a whole. Let me insure you, she is walking across very thin ice and she knows it. I don't like it in this place, I have told her and you what is going on with CHARLOTTE. She won't listen to me, so when she gets caught, I want it noted, that, I warned her and you about this. Nobody can say that I was aware of these _____ things to this court so I won't stand ___ going _____
3

8/2/05

Now, MR. DAY, I'm NOT A BROW TO HOLD A
GRUDGE AGAINST SOMEONE, JUST BECAUSE THEY MIGHT
HAVE PISSED ME OFF, I ~~HOPE~~ HOPE YOUR THE SAME
WAY AS, I AM. SO WHY DON'T YOU KEEP ON DOING THE
GOOD WORK THAT YOU HAVE BEEN DOING IN THE PAST,
AND PLEASE DON'T FUMBLE THE BALL THERE ON THE ONE
YARD LINE, WITH JUST SECONDS TO GO, BECAUSE OF
SOME STUPID LETTERS BETWEEN YOU AND I HERE
AT THE LAST MINUTE.

OH! JUST TO LET YOU KNOW, THE ONLY REASON THAT
I DIDN'T MAIL THE LETTER TO THE JUDGE WHEN I
TOLD YOU I WOULD, IS BECAUSE I HAD FORGOTTEN THAT
THIS PAST MONDAY WAS A HOLIDAY. THEY DIDN'T PICK
MAIL UP HERE UNTIL TUESDAY MORNING. SO I
THOUGHT I WOULD GIVE YALL A FEW EXTRA DAYS TO SEE IF
YOU WANTED TO RESPOND. I WILL TALK TO MR. MEMORY
OR YOU WHEN YALL SHOW UP THIS COMING WEEK.

THANK YOU FOR YOUR TIME

GOD BLESS

SINCERELY

EXHIBIT 4

THE MIDDLE DISTRICT OF ALABAMA

EASTERN DIVISION


Kenneth H. Williford,
          Plaintiff,

          vs                                        Case No.

Charlotte D. Williford,
          Defendant.


## MOTION FOR CONTROL OR DIVISION OF PROPERTY

Comes now the interceder, Jason McDaniel, of 203 Preston Circle, Opelika

Alabama 36804, a family relative and duly elected/constituted, Attorney-in-fact of

the Defendant, Kennth H. Williford in the above styled cause, and moves this Hon.

Court pursuant to 11 U.S.C. Sec. 362 (d) for permission to intervene in the action

for the purpose to Grant sole control or Divide, said property and states as

follows :


1.)  11 U.S.C. Section 362 (d) gives this Honorable Court Competent

Authority to rule on said Motin.

2.)  Plaintiff and Defendant both being Married at the time agreed to

file for Bankruptcy under 11 U.S.C. Sec. 362 (a) .

3.)  The proceedings of the Divorce were stayed due to the pending

Bankruptcy Hearing.

4.) Defendant Charlotte is breaching the " Long Standing Verbal agreement " Concerning the Mobile Home business " THEY " started as Husband and Wife.

Defendant stated during the Plaintiff Divorce Trial concerning the agreement ( See exhibit (A) Pg. 19 lines 15-18 and exhibit (B) Pg. 44 lines 13-22) which clearly establish that the Husband and Wife Team had an Verbal Agreement , also ( See Pg. 106 and 107 ) which shows and proves the start of the Mobile Home business and the role each partner had in developing the business. See exhibit (C) .

5.) The agreement at the start of the Business was to split the total income of $ 5,600.00 dollars, each Month, due to my incarceration on Feb. 26, 20003 the last 23 Months, I've failed to receive my part of the agreed split. See Exhibit (D) Pg. 87 lines 12-25 and Pg. 88 lines 1-8 ) of the Divorce Trial Transcript .

6.) Due to my incercaration Defendant Charlotte agreed to consult with me on all Business Decision due to the fact I Built and Personally Managed the Business and She was responsible for keeping the Records, See Exhibit (C). She has failed to Consult with me on any business decision for the last 2 or 3 Months every since our " 16 year old Son confronted a DRUG DEAIER in one of our Trailer Parks and she has refused to accept any of my calls ".

I have no other choce or option but to file for control of the Mobile Home Business under 11 U.S.C Section 362 (d) due to her failure to protect the intrest of the property, the intrest of the debtors of the Parks and the Security and well being of our Son .

7.) After examination of the Records it shows the Defendant is defrauding the Bankruptcy Court on her Monthly Reports, See your Monthly Reports also deciving and falsely report Payrole Taxes to the State and Federal Government, also defrauding the I.R.S. by filing false reports on her Statements and Forged a personal Check of $ 5,000.00 without my permission or written permission .

8.) Upon examination of the Record I have, it shows she has by <u>unPrep</u> <u>aradness</u> of <u>Maintaining</u> and <u>Managment</u> of the Business has <u>Serously jeopardized</u> the future of it survival . Due to the nature and seriousness of this allegation Plaintiff ask this Honorable Court to set this matter for an Evidentiary Hearing to show and Explain the <u>Competent Evidence</u> .

<u>CONCLUSION</u>

Wherefore premises considered Plaintiff hope this Honorable Court will set this matter down for an Evidentiary Hearing, Due to Defendant Charlotte Mismanagment of the business and fraudilent handling of the business affairs and Motion this Honorable to intervene and grant him Control of the business affiars through his Power of Attorney to save the Future of the Business and the intrest of the Creditors .

Done this the ___5___ day of Feb. 2006

Respectfully Submitted

Kennth H. Williford
AIS # 229541   B- 38
W.E.Donaldson C.F.
100 Warrior Lane
Bessemer, Al  35023-7299

*EXHIBIT (A)*

1    A.   That's right.

2    Q.   Did you pay for that?

3    A.   Oh, we paid a hundred thousand for that and

4  Mr. Williford was able to keep getting the lot rent

5  off of that until he passed away and then it converted

6  over to us.

7    Q.   So, how long have you had Field's Trailer

8  Park as part of your operating trailer parks?

9    A.   I believe Kenny's dad passed away in 2002 and

10 so it's been since then.

11   Q.   At the present time, who operates the parks?

12   A.   I do and Amanda helps me.

13   Q.   Prior to Kenny's conviction and

14 incarceration, who operated the parks?

15   A.   I was working part of them.  I was working

16 Ben-Mor Village, Hickory Haven, and then the Hardaway

17 park which is Brook Haven.  Kenny was over at the new

18 park and that's Oak Haven and Field's.  Amanda was

19 helping him out with those two.

20        THE COURT:  Amanda was where?

21   A.   At the office with Kenny and that was at Oak

22 Haven Park.

23   Q.   And you have taken over those additional

24 responsibilities since Kenny has been incarcerated?

25   A.   Yes, I have.

EXHIBIT (B)

44

```
 1   your husband is incarcerated?

 2        A.    No, I'm not.

 3        Q.    Are you willing to continue to provide the

 4   medical insurance and pay any uninsured expenses on

 5   the children?

 6        A.    Yes, I am.

 7        Q.    In regard to what we are asking the Court, it

 8   appears that you are asking for all of the real

 9   estate, including the five parks and the home place,

10   as well as all of the personal property to operate

11   those parks.  Is that what you are asking for?

12        A.    That's correct.

13        Q.    Why are you asking for that?

14        A.    Right now with the position Kenny is in, I

15   don't have any other choice.  I didn't go into this to

16   be by myself, Kenny.  We were supposed to be a team

17   and do this together.  I know you have worked for it

18   but I have worked beside you with it.  I never would

19   have wanted all of this on me.  It's supposed to be on

20   both of us.  But right now with the way things are, I

21   don't have any other choice but to do this.  I have to

22   support Matthew and I have to take care of Amy.  Amy

23   is taking a lot of hours in school and she can't work.

24   She's having to -- you know, her minor is piano, the

25   music, and I have to send her money because she
```

*EXHIBIT (C)*

1    in a partnership to some degree, were they not?

2    Whether you want to call it that or not.

3                MS. BRADY:   Not a written partnership,

4    Your Honor, but, yes, sir, both of them contributed

5    and they contributed different things to the building

6    of these businesses.   I think the testimony would

7    support, Your Honor, one of the first parks purchased

8    back in 1991 but most recently in the last three and

9    four years has been the development which led to five

10   operating parks, and that development was done in part

11   by Mr. Williford and we certainly give him credit for

12   what he did and the initiative he showed in doing so,

13   and also by Mrs. Williford.   They could contribute

14   different things, Your Honor.   Mr. Williford, you

15   know, the earth moving equipment and some of the

16   physical labor.   Mrs. Williford, I know there is some

17   physical labor involved but a lot of the management,

18   rent collection, checking on perspective tenants to

19   clean these parks out because particularly the former

20   Hardaway park, Your Honor, now Brook Haven, was just

21   infested with drug dealers, prostitutes, as the

22   testimony would show.   It was a very difficult place

23   even for the police to enter and enforce the law in

24   the City of Opelika.   So, they both went to a lot of

25   trouble to clean those out but they worked together,

*ΞΤΗΙΒΙΤ (C)*

1    Your Honor.  You could call that a partnership,

2    nothing written.

3              THE COURT:  So they shared in the profits?

4              MS. BRADY:  Yes, sir.  Filed joint taxes.

5              THE COURT:  And they are obviously sharing

6    in the losses also, I mean, basically.

7              MS. BRADY:  And, unfortunately, Your

8    Honor, that is a big part of our argument on the

9    financial here is the sharing in the losses.  Through

10   no fault of her own, Charlotte is sharing in losses

11   and some losses she didn't create and we would say she

12   shouldn't have to bear, and maybe as a result of the

13   marital union she will have to bear.  We know as a

14   result of the judgments that have been taken against

15   Mr. Williford on debts exclusively in his name,

16   whether they were for marital debts or not, but those

17   debts have now attached to land, real estate in the

18   Lee County area that we are hoping that you will award

19   to Charlotte because she needs to manage those

20   properties.  That real estate holds the mobile home

21   parks.  She needs to manage those to have the monthly

22   income to meet the needs for herself and the children,

23   Your Honor.  We know there is no contribution from

24   Mr. Williford.  She now has that full responsibility.

25   So, the judgment that is against those properties she

1    MS. BRADY:  Well, it does, Judge, but it's

2    also his threat to file executions against the parks,

3    take further actions, steps to collect, and it's

4    within the ten days.  So, that along with the

5    SouthTrust judgment that she's just found out in the

6    past few days, Your Honor.

7              (Whereupon, Plaintiff's Exhibit No. 13

8                 was admitted into evidence).

9

10              (Whereupon, Plaintiff's Exhibit No. 14

11                 was marked for identification).

12    Q.   Mrs. Williford, let me also show you what I

13    marked as Plaintiff's Exhibit 14 collectively.  Is

14    this a calculation of the child support guidelines

15    containing your affidavit showing your income at at

16    least twenty-eight hundred dollars per month?

17    A.   Yes, it is.

18              THE COURT:  I think you furnished me a

19    copy of that.

20              MS. BRADY:  Yes, sir, I think I did.

21              THE COURT:  That way you don't need

22    guidelines form to do that.

23              MS. BRADY:  Guidelines form, but this will

24    be her affidavit and the compliance form, Judge, for

25    you to decide what you're going to do.

*EXHIBIT (D)*

1    Q.  How did we arrive at the figure of

2  twenty-eight hundred dollars per month?

3    A.  We took our -- Kenny and ours income and you

4  divided that in half and came up with that

5  twenty-eight hundred.  That's before he went in.

6    Q.  And that amount met your monthly expenses,

7  did it not?

8    A.  That's correct.

9      MS. BRADY:  Your Honor, I have a child

10  support information sheet if you don't have one in

11  your file.  Do you need one?

12      THE COURT:  There is one in here that Tom

13  Jones filed April 9th.

14      MS. BRADY:  All right.  Thank you, sir.

15    Q.  Charlotte, I must ask you that at the time of

16  the filing of your complaint, had the relationship

17  between you and Kenny reached the point where you were

18  incompatible in your tastes, your views, your likes

19  and dislikes?

20    A.  Yes, it had.

21    Q.  Was it possible at that time for you two to

22  live together as husband and wife, considering your

23  different ideas on raising family, finances, goals in

24  life, other aspects of your marriage?

25    A.  No, it wasn't.

I hereby certify that I have place the foregoing Motion for Control or Division of Property by placing the said in the US. Mail postage Prepaid One (1) copy to the United States District Court for the Middle District of Alabama Eastern Division, One (1) copy to Mr. Memory of Memory & Day 469 S. McDonough St. , P.O. Box 4054 , Montgomery , Al  36103-4054 and Mrs. Charlotte T. Williford, Oak-Haven Office, 3503 Marvy PWY, Opelika, Al  36804 ,


Done this the ___5___ day of Feb., 2005


Kennth H. Williford

6/28/05
*EXHIBIT "V"*

## MEMORY & DAY
### ATTORNEYS AT LAW

Von G. Memory
vgmemory@memorylegal.com
James L. Day
jlday@memorylegal.com

469 South McDonough Street
Montgomery, Alabama 36104

Tyson-Maner House
The National Register - 1888

Telephone 334-834-8000
Facsimile 334-834-8001

Mailing Address
P.O. Box 4054
Montgomery, Alabama
36103-4054

June 29, 2005

Kenneth Williford
AIS 229597 C-1 B-94
W. Jefferson Correctional Facility
100 Warrior Lane
Bessemer, AL 35023

Reference: Plan and Disclosure

Dear Kenneth:

We have since amended the plan and disclosure for a few minor comments that the Bankruptcy Administrator had and, to prevent an objection, we made the changes. I am enclosing a copy of the amendment.

I know that you had some concerns with two of the debts. Hopefully, I can help you out with an explanation.

1)   Colonial Bank – they have been receiving notice since day one. The claims bar date has passed and their claim is time barred. As a result, they are not in the plan and their debt will be discharged.

2)   SouthTrust Bank – We are trying to play nice with them and what you see is the initiation of a deal that Von will work out with Nick Parnell, the attorney for SouthTrust Bank. We will need to be flexible on this and don't want to irritate the entity that has your mortgage. I will keep you in the loop as this progresses.

If there were other concerns, and I apologize if I forgot, please write and I will try to address them.

**MEMORY & DAY**

Wednesday, June 29, 2005
Page 2 of 2

                                        Sincerely,

                                        Memory & Day


                            By: _____
                                        James L. Day

Enclosure(s)

# WILLIAM R. MURRAY
## ATTORNEY AT LAW

MURRAY LANE
NORTHPORT, ALABAMA 35475-4325

Phone: (205) 339-7080
No FAX/E-mail Accepted
Without prior agreement

Friday, January 19, 2007

Mr. Kenneth Williford
229597   B-38
100 Warrior Lane
Bessemer, AL 35023

Re: Document 191 & Telephone hearing set for January 23, 2007, etc.

Dear Mr. Williford:

1. After I got home yesterday evening, I checked the Internet to find (Doc. 191) you said you needed, and am enclosing what I obtained. Please not that, on the service page, only Charlotte's name is listed.

2. In addition, I'm enclosing the docket sheets to date beginning with (Doc. 191) so you'll have them handy for the telephone hearing.

3. I saw that your  "Notice of Appeal" in your Bankruptcy Case (BK-03-81486-WRS) was filed at 3:51 P.M., a few hours after I had left Donaldson.   So, you must have mailed it at least a day before I visited with you. However, you did  not let me know that you had mailed in any "Notice of Appeal."

4. At any rate,  I just telephoned the Clerk's Office to confirm that the hearing will still be held on Tuesday, the 23d, and you'll be on the line.

Sincerely,

William R. Murray

Page 1 of 1

Encl: Doc. 191      (30 pages)
      Docket Sheets (18 pages)

---

"Render therefore unto Caesar the things which are Caesar's, and unto God the things that are God's." Matt. 22:21; Mark 12:17; Luke 20:25  (KJV)...

EXHIBIT (X)   CHART

| DATE | DOCK. # | MONTH | REVENUE | EXPENSES | NET INCOME | CURRENT STMT. BALANCE | CHECKS ON PAPER #'S |
|------|---------|-------|---------|----------|------------|----------------------|---------------------|
| 7/29/04 | 94 | JUNE 1-30 | $42,528.12 | $41,663.83 | +$864.29 | ? | ? |
| 8/23/04 | 100 | JULY 1-31 | $45,515.40 | $47,232.20 | −($1,717.30) | $4,234.49 | 11/12/14/15/16/ |
| 9/29/04 | 111 | AUG 1-31 | $43,672.81 | $43,775.65 | −($102.85) | $4,053.34 | 9/10/19/15/16 |
| 10/20/04 | 123 | SEPT 1-30 | $41,952.35 | $43,894.13 | −($1,921.77) | $2,044.29 | 10/12/13/14/13 |
| 11/23/04 | 129 | OCT 1-31 | $44,531.57 | $43,224.16 | +1,302.36 | $3,263.53 | 11/12/13/16/17 |
| 12/20/04 | 130 | NOV 1-30 | $47,408.17 | $47,655.26 | −($247.09) | $2,933.84 | 11/12/15/17/ |
| 1/20/05 | 133 | DEC 1-31 | $54,722.40 | $39,916.56 | +14,805.84 | $17,658.38 | DID NOT PAY NOTE IN PROCESS |
| 2/22/05 | 142 | JAN 1-31 | $41,667.99 | $42,717.35 | −($1,049.36) | $16,609.02 | 10/14/15/16/17 |
| 3/22/05 | 152 | FEB 1-28 | $44,185.78 | $56,347.95 | −($12,162.17) | $4,421.85 | 11/12/14/17/18 |
| 4/22/05 | 166 | MAR 1-31 | $43,633.24 | $25,117.10 | +18,576.69 | $22,913.49 | 13/15/16/17/10 |
| 5/20/05 | 178 | APR. 1-30 | $43,633.24 | $25,117.10 | +18,576.64 | $26,415.29 | 10/14/16/ |
| 6/20/05 | 188 | MAY 1-31 | $42,258.22 | $57,249.08 | −($14,258.22) | $12,157.55 | 10/11/12/14/15/17 |
| 7/14/05 | 196 | JUNE 1-30 | $42,019.19 | $49,087.14 | −($7,019.92) | $5,137.58 | 10/11/13/15/16 |
| 8/24/05 | 215 | JULY 1-31 | $43,097.29 | $44,082.59 | −($985.32) | $4,227.26 | DO NOT HAVE CK. FOR THIS MONTH |
| 9/20/05 | 219 | AUG 1-31 | $43,777.25 | $41,853.28 | +$1,924.53 | $6,026.29 | 10/11/12/15/ |
| 10/20/05 | 228 | SEPT 1-30 | $41,672.55 | $42,397.65 | −($725.10) | $5,296.68 | 10/12/16/ |
| 11/22/05 | 235 | OCT 1-31 | $47,095.68 | $40,140.03 | +6,953.66 | $12,205.35 | 10/12/14/16/17/ |
| 12/20/05 | 239 | NOV 1-30 | $45,111.41 | $51,502.38 | −($6,390.97) | $5,989.38 | |

FINANCIAL THE STATEMENTS STOPED COMING IN AS OF
12/00/05 & I NEVER RECEIVED DOC. STATEMENTS 43, 46,
61, 69, 77, 85, OR 89.

(75)

1    Q.    Let me stop you again.  You started to tell

2   the Judge awhile ago that there were 514 lots total;

3   is that correct?

4    A.    That's correct.

5    Q.    And are you asking that if you're awarded

6   those two trailer parks that the debt be apportioned

7   according to the --

8    A.    Total number of lots.

9         THE COURT:  Let me ask him a question.

10  Now, I'm just a simple person and I'm not very smart

11  when it comes to business, but you've got two

12  sentences, fifteen years and twenty-five years, and

13  they are not concurrent, are they?

14   A.    Yes, they are.

15        THE COURT:  They are concurrent?  I wasn't

16  sure.

17   A.    They are running together.

18        THE COURT:  They are concurrent.  You're

19  going to be in jail for -- unless the appeal comes

20  back and we've all been around this track.  There

21  would probably be a re-trial, I would imagine.

22   A.    Right.

23        THE COURT:  And so you're still going to

24  be confined.  And you just tell me how you're going to

25  run the business and make the proportionate payment on

1   the debt?  How are you going to do that if you're in

2   jail?

3       A.  If it stays like it is, my daughters can

4   collect the lot rent.  They are doing it now.  You

5   know, that was the --

6       THE COURT:  Well, it's not their

7   responsibility, it would be your responsibility and --

8       A.  I do --

9       THE COURT:  Do you not agree with me,

10   Kenny, that if you don't, if we do this which you have

11   just suggested, that she will probably go down the

12   tube in a couple of months because she's the one they

13   are going to be looking for making the payments.

14       A.  No, sir, no, sir.

15       THE COURT:  How is she going to do it

16   then?

17       A.  She won't go down the tubes because I ain't

18   going to let her go down the tubes.  All I need and

19   all I'm asking for -- I got no help.

20       THE COURT:  Kenny, the bankers, who are

21   they going to look to?  Do you think they are going to

22   go to the jail and sit outside your jail cell there

23   and wait for you to --

24       A.  Jimmy ain't going to look to nobody --

25       THE COURT:  Who do you think the bank is

EXHIBIT "Y" 80

1   going to look for to make the payment on October 5th?

2       A.    She's going to make the payment.  She'd still

3   be getting the money.  The money comes all in one

4   general location.  It comes in at Oak Haven.

5             THE COURT:  Yes, but you're saying you

6   want two of the trailer parks and there's five trailer

7   parks producing all this income.

8       A.    So, you're telling me that I shouldn't get

9   anything after twenty something years of --

10            THE COURT:  I'm asking you how is it going

11  to work then?  If you get what you want there, is it

12  not going to mean that this whole thing is going to go

13  down the tube within about a month or two?

14      Q.    (BY MS. BROWN)  Mr. Williford, were there

15  some --

16      A.    No.

17      Q.    You wait a minute.  Were there some

18  discussions had and some plans made for the

19  contingency of if you got convicted and then were

20  incarcerated and could not take care of this?

21      A.    We wouldn't even be going through this if I

22  hadn't got incarcerated.

23            THE COURT:  Answer Ms. Brown's question.

24      A.    That's what I am.

25      Q.    No, no.  I want you to tell the Judge, were

1    there some conversations with your daughters or were

2    there some contingency plans for in the event you got

3    in jail and couldn't immediately get out?  Did you

4    have some plans?

5         A.    Yes.

6         Q.    Tell the Court what those are.

7         A.    I mean, they was to collect the lot rent and

8    run the parks.  I mean, they are doing it now.

9              THE COURT:  Kenny, would have, could have

10    and should have, you know how that goes.  Would have,

11    could have and should have.  You could have formed a

12    corporation a long time ago and protected yourself

13    from some of this thing.  Right now you're in a bad

14    situation, everybody is.  And what I hear this lady

15    say is that she would take the whole thing over, and

16    the debts with it, I'm assuming, and try to make a go

17    of the whole deal.  I mean that's --

18         A.    Well, Judge --

19              THE COURT:  And you're saying you want

20    part of the pie even though you're in prison now for a

21    period of time and hopefully your appeal will work out

22    and all that, you know, but I am just wondering how

23    it's going to work out that way.  And you say you --

24         A.    She will be -- Charlotte will still be

25    collecting the money and Charlotte knows that.

90/2/6

1        THE COURT:  If she was in prison for the

2  next ten years, I bet you you wouldn't miss a

3  heartbeat.  You'd keep it running, wouldn't you?

4     A.   Keep it running?

5        THE COURT:  Yes.

6     A.   Yes, sir.

7        THE COURT:  And she would be in prison and

8  she wouldn't be able to do anything.

9     A.   No, I would be getting -- I would be help

10  paying her a lawyer to get out if she was in prison.

11  I wouldn't be buying eight thousand dollar cash

12  trailers, be spending eight thousand dollars buying

13  new trailers cash on the side when I needed money to

14  pay my lawyer with.  I wouldn't be helping -- I would

15  help my momma and daddy but I wouldn't put it past to

16  make me sit in a dog filth place like what I'm in.

17        THE COURT:  Okay.

18     A.   For --

19        THE COURT:  Any further questions?

20     A.   Got a two thousand dollar lawn mower she paid

21  cash for but I can't pay my lawyer?  Now, I have

22  worked years for this.  When we started this off she

23  wanted to know why in the world, because when we drove

24  through Hickory Haven she said, "I don't see why in

25  the world you want this."  I said, "You can't look at

1   put too much on the charge card.  She used to say I
2   was worse than a woman using the charge card and I
3   must have been but there was nothing that was just
4   strictly for me.  It was always something used for the
5   business or used in the business in some shape, form
6   or fashion or might have been something that I bought
7   her or one of the kids with.  I mean, it's just
8   general use.  The eighteen thousand went to everybody
9   and was used on everything.  The SouthTrust note, I
10  intend on -- and the Colonial Bank, I have never been
11  late on a payment in my life.
12      Q.    Despite your circumstances right now --
13      A.    I'm going to file bankruptcy on them and I
14  can't see where she has to pay a dime.  It is totally
15  my debt.  SouthTrust tried to get me to get her to
16  sign it here a little over a year ago and I wouldn't
17  do it, I wouldn't let her sign it.  That debt has --
18  now, I tell you, a lot of it has to do with the stock
19  market, where it fell, some of it has to do with
20  vehicles.  I mean, this note fluctuated up and down
21  all of the time.  You never knew -- it might be twenty
22  thousand this month and it might be a hundred thousand
23  next month.  We never had what you so-call car
24  payments for a long time until here recently.  The
25  tractors, I don't know where the fifty-five thousand