### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA

In re:

**Charlotte Teresa Williford**
**Kenneth Williford ,**
**Debtors.**                          **Bankruptcy Case. No. 03-81486-WRS**


**Kenneth Williford,**
**Appellant,**
**v.**                                **CIVIL ACTION NO. 3:07-CV-105-WKW**
**Charlotte Williford,**
 **Appellee.**


### <u>TRANSMITTAL</u>
### <u>OF APPELLANT DESIGNATION OF RECORD</u>


I, Dianne M. Segrest,  do hereby certify that the documents herein comprise the items in the designation of contents related to the Notice of Appeal filed in the above referenced case.

**Transmittal of Bankruptcy Contents of Record  per Order On Motion (CV Doc #8).**
**Transmittal Submitted On**:          **September 6, 2007**


**Contents of Record**:
**Designated Items of Appellant(s)**:  **Filed with U.S. District Court on 02/07/2007**
                                       **CV Document # 5**


**PLEASE NOTE**:


**Designated  Item #36 - Submission error**
                 **Resubmitted in BK Doc #38.**


**Designated Item #244 - Submission error**
                 **Resubmitted in BK Doc #245**


**Designated Item #259 - Administrative Error**
                 **Duplicate entry of BK Doc #257**


**Designated Item #305 - Administrative Error**
                 **Replaced with BK Doc #307**


**Designated Item #308 - Administrative Error (related Bk Doc #305 )**
                 **Resubmitted in BK Doc #307**

**PLEASE ACKNOWLEDGE RECEIPT OF TRANSMITTAL**

 /s/ Richard S. Oda, Clerk
United States Bankruptcy Court

 /s/Dianne M. Segrest
Deputy Clerk

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re                                              Case No. 03-81486-WRS
                                                   Chapter 11
CHARLOTTE TERESA WILLIFORD
KENNETH WILLIFORD,

      Debtors.

# FINAL ORDER APPROVING DISCLOSURE STATEMENT
# AND CONFIRMING PLAN

The debtors having certified transmission of copies of the chapter 11 plan and the disclosure statement to all creditors and equity security holders; and

The court having determined after notice and a hearing that the requirements for final approval of the disclosure statement and confirmation of the plan under 11 U.S.C. § 1129(a) have been satisfied;

IT IS ORDERED that:

The amended disclosure statement (Doc. 191) filed by the debtors is APPROVED, and

The amended chapter 11 plan (Doc. 240) filed by the debtors is CONFIRMED.

Counsel for the debtors shall serve by mail a copy of this order confirming plan upon all creditors and other parties in interest.

Done this 30th day of January, 2006.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Von G. Memory, Attorney for Debtors
   Teresa R. Jacobs, Bankruptcy Administrator

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re                                                                Case No. 03-81486-WRS
                                                                     Chapter 11

CHARLOTTE TERESA WILLIFORD
KENNETH WILLIFORD,

                    Debtors.

**PLAN IMPLEMENTATION ORDER**

        This order is entered pursuant to 11 U.S.C. § 1142 and Fed. R. Bankr. Proc. 3020(d).
The order governs acts required to implement the confirmed Chapter 11 plan, to conclude
administration of the estate, and to close the case.  11 U.S.C. § 350.  Accordingly, it is

        ORDERED that --

        1.  The debtors shall commence distribution and perform all other acts necessary to
carry out the confirmed plan.  11 U.S.C. § 1142(a); Fed. R. Bankr. Proc. 3021.

        2.  The debtors shall effect substantial consummation in accordance with the provisions
of the plan.  Substantial consummation comprises only the acts specified in 11 U.S.C.
§ 1101(a)(2)(A), (B), and (C).

        3. Inability to effectuate substantial consummation constitutes cause for dismissal or
conversion under 11 U.S.C. § 1112(b).

        Done this 30th day of January, 2006.

                                                        /s/ William R. Sawyer
                                                        United States Bankruptcy Judge

c: Von G. Memory, Attorney for Debtors

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE
### MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

IN RE:

**CHARLOTTE TERESA WILLIFORD and KENNETH WILLIFORD,**

   **Debtors.**

**Case No. 03-81486-WRS**

**Chapter 11**

---

### JOINT MOTION TO ALLOW  GRANT OF MORTGAGE IN DEBTORS' HOMESTEAD TO SCOTT AND CHRISTIE EMERTON AND EMERGENCY MOTION FOR EXPEDITED HEARING

COME NOW, CHARLOTTE TERESA WILLIFORD and KENNETH WILLIFORD, ("Debtors") and SCOTT AND CHRISTIE EMERTON ("Emertons") and respectfully move this Honorable Court for leave to allow the Debtor to grant Scott and Christie Emerton a second mortgage on the Debtor's homestead, and to hear this matter on an expedited basis, and in support thereof say as follows:

1.  Under a previous order, January 24, 2006, this Honorable Court approved post petition financing for the Debtor to facilitate a consolidation of two judgments and refinancing of the Debtors' homestead.

2.  Incident to that order, the terms of the consolidation/ settlement provided for a $50,000.00 down payment on the $100,000.00 claim of the Emertons. The remaining portion, $50,000.00, would be paid in 24 monthly payments of $1,500.00, with the remaining balance due with the last payment.

3.  It was believed that this order would settle the issues preventing confirmation and the Court issued a confirmation order, January 30, 2006.

4.  However, Scott and Christie Emerton have asked that the remaining balance due of $50,000.00 be secured by a second mortgage on the Debtors' homestead, in a second position to the lien of Peoples Bank & Trust.

5.  Hearing this matter on an expedited basis is warranted because there are only three key secured/unsecured creditors in this matter and Peoples Bank & Trust is attempting to expedite closing on the previously approved note and first mortgage.

WHEREFORE, the Debtors and the Emertons jointly pray for an order, after notice and hearing, to allow the remaining $50,000.00 of the balance due to Scott and Christie Emerton be secured by a second mortgage on the Debtors' homestead and to set a hearing, on an expedited basis, on the Debtor's motion and for such other relief as is justified by the facts and the law as this Honorable Court deems just and proper.

Respectfully submitted on this the 7th day of February 2006.

Memory Day & Azar

By: /S/ Von G. Memory
Von G. Memory
ASB-8137-071V

James L. Day
ASB-1256-A55J

Attorneys for Debtors

OF COUNSEL

Memory Day & Azar
Post Office Box 4054
Montgomery, Alabama 36103-4054
Tel (334) 834-8000
Fax (334) 834-8001
vgmemory@memorylegal.com
jlday@memorylegal.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the foregoing document on the following, by:

☑ placing same in the United States Mail, postage prepaid, and properly addressed

☑ E-mail or ECF (Pursuant to Fed. R. Bankr. P. 9036)

on February 7, 2006.

Teresa Jacobs
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL  36104

/S/ Von G. Memory
OF COUNSEL

# United States Bankruptcy Court
# Middle District of Alabama

QUARTERLY FEE STATEMENT
Pursuant to Fed. R. Bankr. P. 2015(a)(5)

| Debtor | Case #: |
|---|---|
| Charlotte and Kenneth Williford | 03-81486 |

FOR CALENDAR QUARTER ENDING    12/31/05

1. **MONTH**           **DISBURSEMENTS\***

| October | $51,502.38 |
|---|---|
| November | $40,140.03 |
| December | $39,703.18 |
| TOTAL DISBURSEMENTS FOR QUARTER | $131,345.59 |

2. QUARTERLY FEE OWED PURSUANT TO
28 U.S.C. § 1930(a)(7)    $750.00

3. QUARTERLY FEE PAID    $750.00
(Attach proof of payment)

4. AMOUNT OF UNPAID FEES (IF ANY)    $0.00

I, James L. Day _____, acting as the duly authorized agent for the Debtor-In-Possession (Trustee) (Plan Administrator) declare under penalty of perjury under the laws of the United States that I have read and certify that the figures, statements, disbursement itemizations, and account balances as listed in this Quarterly Fee Statement are true and correct as of the date of this report to the best of my knowledge, information and belief.

7-Feb-06
DATE

For the Debtor-In-Possession (Trustee) (Plan Ad

(Print or type name and capacity of person
signing this Declaration)

James L. Day, Esq.
Attorney for Debtor

**The check for payment of the quarterly fee should be attached to the original of this Quarterly Fee Statement filed with the clerk of court.**

\*For periods after plan confirmation, disbursements include all plan payments plus all withdrawal amounts (checks, direct debits, etc.) posted to each bank account plus any cash payments.

2/7/2006    Quarterly Fee Statement

RECEIPT #: 6000298

Charlotte T. Williford &
Kenneth H. Williford,

Case No: 03-81486 WRS

Chapter 11

MOTION TO VACATE CONFIRMATION
OF PLAN BECAUSE OF FRAUD ON COURT
&
REQUEST FOR RELIEF FROM UNLAWFUL DIVISION
OF ESTATES ASSETS

**FILED**

JUL 2 5 2006

U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

DEBTOR KENNETH WILLIFORD, hereby asks this court to reopen this case, to vacate the plan confirmed on January 30, 2006, and to conduct such evidentiary hearing as may be appropriate, and to enter such orders as may be Necessary, to effect the request contained in this motion, and as grounds for this motion would state as follows.

1. Prior to the filling of this bankruptcy on or about October 7, 2003, Joint debtors Charlotte Williford and I were husband and wife, engaged in the business of owning and operation several "mobile home parks" in the Opelika, Ala. Area.  Our net worth exceeded $1 Million.

In March of 2000, My wife and I were charged in the circuit court of Chambers County, Ala, In CV-00-273, with "unlawful eviction" and "Breach of contract" by former residents (The Emertons) of one of our Mobile Parks, with a resultant adverse jury verdict on September, 16, 20002 of $383,000.00

Then, on February 26, 2003, I was convicted of two very serious crimes in the circuit coourt of Lee County (CC-2000-248 &249) and sentenced to serve 25 years in the state penitentiary, where I am now at, W.E. Donaldson C.F. in Jefferson county.

Charlotte then about a month later, filed for divorce, after I was convicted, April of 2003.  We went to divorce court in September 22, of 2003, at the same time we were seeking advice on Bankruptcy, because of the Emerton case. Charlotte found Bankruptcy attorneys in Montgomery, Alabama, "memory and day" though her divorce attorney "Beverly Brady in Auburn Al. Memory and day advised us both to file joint bankruptcy to protect out assets. They also told me and I assume that they told Charlotte, that they did not want to nor would they get involved with our divorce case, which we or I agreed.

1.

Now on or about October 7, 2003, Memory and Day filed out joint Bankruptcy, which was two weeks after we had gone to Divorce court and was still waiting on the judges judgement in that case "Dr-03-175," in Lee County Alabama.

Now while Charlotte and I were in court, we had told Judge Lane that we was looking to go into Bankruptcy.

Judge Lane did not render his judgement until October 31, 2003, two weeks after we had filed this chapter 11 Bankruptcy.

This chapter 11 Bankruptcy was then filed, but no notice, such as a "suggestion of Bankruptcy," was filed by either of out parties' divorce attorneys, with the circuit court, advising that court of this Bankruptcy case and the application of the "Automatic Stay" provision of 11 U.S.C.§362.

The Circuit Court then, two week's after we had filed our Bankruptcy, divided the marital property, awarding 100% of our business and my assets to my wife, and making me liable for 100% of all unsecured debts, plus child support. I don't think that, other than being told during the divorce trial, that the Circuit court never received any "formal" or "written" notice of the bankruptcy filing, so that there was nothing in the circuit court file which showed the existence of this bankruptcy filing.

I filed an appeal from the circuit court property division, telling and showing the Alabama civil appeals court, that the property was in "automatic stay" when the circuit court had made their division, but the appellate court affirmed the division. I appeal to the Alabama Supreme Court, explaining to them, that the circuit court, nor the state court's had no jurisdiction over the property in question since it was in Federal Bankruptcy court, the Alabama Supreme court affirmed the circuit court division anyway.

Now I did not know until here recently, that neither my divorce attorney, "Margaret Brown of Auburn Alabama, or my wife's attorney "Beverly Brady", nor out Bankruptcy attorneys Memory and Day" had failed to advise the Lee County Circuit court of this Bankruptcy case. Using the Circuit court's property division decree as authority, my wife transferred assets from out joint ownership to her sole ownership, thus depriving me of access to any funds for further represention.

When I complained to our bankruptcy attorneys (Memory and Day) about the unlawful division of marital assets by the Circuit Court, they told me to Keep quiet and not to upset the apple cart by bringing up the "automatic stay". I had sent the attorneys and my wife, copies of a letter that I was going to present to judge Sawyer, about the division back in May of 2005,

2.

that is when "Mr. James L. Day of Memory & Day came to the prison and told me, that if I did send the letter to Judge Sawyer, that , more than likely, the Judge would kick us out of Chapter 11 and make us go into Chapter 7, which would cause us to loose every thing. "Day" said that I should wait until after the Judge"s confirmation of ouℛ proposed plan, then send the letter. Which is exactly what I did. I waited until after January 30, 2006, when the plan was confirmed. In February of 2006, I sent Judge Sawyer a letter and waited for his reply, which I never received.

Since I was (and am) in prison, I have lost any practical control over my "debtor in possession" interest in the Bankruptcy estate, and have been deprived of access to any funds for representation. Our Bankruptcy attorneys (Memory & Day) never advised the bankruptcy court of the unauthorized division of marital assets by the circuit court, nor of my dissatisfaction with their failure to do so and to try to correct the problems which that property division are causing.

Also after the chapter 11 plan had been confirmed, I wrote a letter to you the Bankruptcy judge, complaining of the Circuit court's division of Marital assets during the bankruptcy case and of our bankruptcy attorney's failure to advise you of such unlawful division, and asking for your assistance. You, the bankruptcy Judge, never responded to my letter.

Later, I filed a petition with the U.S. District Court, asking for mandamus, which was apparently sent to your court by mistake, You Denied it because mandamus is no longer available in Federal Court and because of something about the confirmation of the plan having ended the case. Since I do not know anything about bankruptcy law, I did not know anything about the effect of a "comfirmation" of the "Plan".

I wrote back to your court, explaining that I had sent my "petition for Mandamus" to the U.S. District court Myron H. Thompson also denied my petition, issuing an order telling me to follow the correct procedure. That is what I am attempting to dohere.

I argue that a "Fraud" has been committed against the bankruptcy court by our attorneys' "Memory & Day" failure to advise you that the Circuit court of Lee County had, during the pendency of this bankruptcy case, divided the marital assets owned jointly by my former wife and I, in direct violation of the "automatic stay" Rule of Bankruptcy Law, and that such division and transfer of assets had never been disclosed to the Bankruptcy court.

IN SUMMARY, I ASK THAT YOU:

A. Reopen this Bankruptcy case;

B. Vacate the plan in so far as it fails to take account for the unlawful division of marital assets; and *BUSINESSES; AND*

C. <u>Conduct such evidentiary hearings</u> as may be required to fairly divide the joint debtor's marital assets and business.


Respectfully Submitted By:

Mr. Kenneth H. Williford
229597 - B - 38
100 Warrior Lane
Bessemer, Al. 35023

4.

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE
### MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| IN RE: | |
| **CHARLOTTE TERESA WILLIFORD and KENNETH WILLIFORD,** | **Case No. 03-81486-WRS** |
| **Debtors.** | **Chapter 11** |

### MOTION TO DISMISS, 11 U.S.C. § 1112 (b), Fed. R. Bankr. P. 1017, 9014

COME NOW Charlotte Teresa Williford and Kenneth Williford, by and through legal counsel, and, based upon Kenneth Williford's motion to vacate confirmation and the request of Charlotte Williford, respectfully move this Honorable Court to dismiss the pending Chapter 11 case, 11 U.S.C. § 1112 (b).

Respectfully submitted on this the 27th day of July 2006.

Memory & Day

By: /S/Von G. Memory
    Von G. Memory
    ASB-8137-071V

    James L. Day
    ASB-1256-A55J

    Attorneys for Debtors

OF COUNSEL

Memory & Day
Post Office Box 4054
Montgomery, Alabama 36103-4054
Tel (334) 834-8000

1

Fax (334) 834-8001
vgmemory@memorylegal.com
jlday@memorylegal.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the foregoing document on the following, by:

☑ placing same in the United States Mail, postage prepaid, and properly addressed

☑ E-mail or ECF (Pursuant to Fed. R. Bankr. P. 9036)

☐ facsimile

☐ hand delivery

☐ delivered in open court

on July 27, 2006.

Teresa Jacobs
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL  36104

OF COUNSEL

2

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

In re:                                  )
**Charlotte T. WILLIFORD and**          )        Case No: <u>03-81486-W</u>
**Kenneth WILLIFORD,**                  )
                      **Joint Debtors** )              **Chapter 11**

_____

### SPECIAL COUNSEL MURRAY'S MOTION TO INTERVENE TO PROTECT POTENTIAL CONTINGENT FEE IN AP-04-08015-WRS

_____

1.  Special Counsel Murray hereby requests permission to **Intervene** in this Bankruptcy Case in order to protect his many-hour investment in AP-04-08015-WRS, and as grounds for this **Motion to Intervene** would state as follows.

2.  Special Counsel William R. Murray was authorized to be employed by This This Court on 11/04/2004 (Doc. 127) to represent the Joint Debtors in an Adversary Proceeding (AP-04-08015) involving "Alabama Legal Services Liability Act" Claims against the Joint Debtors' former attorneys (Kenneth Funderburk, Thomas Worthy, and their law firm), who had allegedly failed to represent them properly in Civil Action CV-00-073 (Chambers County), wherein the Joint Debtors suffered a $383,000 Jury verdict.  That verdict, including interest, has been tentatively settled.  See This Court's "ORDER on  Joint Motion to Allow Grant of Mortgage

in Debtors' Homestead to Scott and Christie Emerton (Doc. 260)" (Doc. 264),

entered on 03/14/2006, about 2½ months after the PLAN had been confirmed.

3.  On 01/30/06, This Court issued a FINAL ORDER (Doc. 255) which, *inter*

*alia*, Confirmed the Joint Debtors' Chapter 11 PLAN.

4.  On 07/27/06, the Joint Debtors' attorneys, Mr. Von G. Memory and James L.

Day, filed a "Motion to Dismiss" which states:

> "Come now Charlotte Teresa Williford and Kenneth Williford,
> by any through legal counsel, and based upon Kenneth Williford's
> motion to vacate confirmation and the request of Charlotte Williford,
> respectfully move this Honorable Court to dismiss the pending Chap-
> ter 11 case, 11 U.S.C. § 1112(b)."

5.   Upon learning of the filing of the "Motion to Dismiss" this case, Special

Counsel Murray obtained permission from the Warden at Donaldson Correctional

Facility to visit with Kenneth Williford on 07/28/06 under a waiver of the normal

24-hour written notice requirement.

6.  Special Counsel Murray deemed it necessary to immediately contact his client,

Co-Plaintiff (in AP-04-08015-WRS) and Joint Debtor (in BK-03-81486-WRS)

Kenneth Williford to determine whether he had ever expressed any desire to have

the entire case, BK-03-81486-WRS **Dismissed**, or had only requested that the

Confirmation itself be **Vacated**, the case be **Reopened**, and appropriate relief be

granted, as clearly stated in the last portion of his 07/25/06 "Motion to Vacate

Confirmation of PLAN " (Doc. 278).

7.   During their 07/28/06 discussion (yesterday), Joint Debtor Kenneth Williford

unequivocally stated that he did not want BK-03-81486-WRS to be **Dismissed**,

that his motion stated, and was meant to state, and that he only wanted the PLAN's

Confirmation vacated and the case  **Reopened**.  Kenneth Williford also stated

several reasons for his **Objection** to any proposed **Dismissal**, not repeated herein.

8.   By virtue of Rule 1.7, Ala. Rules of Prof. Conduct, Special Counsel Murray

cannot represent Joint Debtor Kenneth Williford in any matter which may be

adverse to the interests of Kenneth Williford's  former wife, Charlotte Williford,

Joint Debtor in this Bankruptcy Case, who is also the present  client of Special

Counsel Murray in AP-04-08015-WRS.   See (Doc. 16), filed by attorney Murray

in that Adversary Proceeding's Appeal, CV-05-857-MHT (M.D. Ala.)  and its

Exhibits, with Murray's Complaint  to the Alabama State Bar (and others)

concerning allegations of fraud on the Courts in this and related Civil Action DR-

03-175-RDL (Lee County Circuit Court), copies of which have been sent to all

interested parties and their attorneys.

9.  However, there is nothing in the Bankruptcy Code, Alabama Code of Professional Responsibility, or and other Statute or Rule which prevent Special Counsel Murray from attempting to protect his property interest in the "Contingent Fee" agreed upon during the course of approval of his appointment (Doc. 127).

10.  Special Counsel Murray submits that 11 U.S.C. 1112(b), the statute cited by the Movants, requires a Hearing before any judicial action can be taken on a motion to convert or to **Dismiss**.   That is a logical statute, especially here, where creditors are relying upon the PLAN as their "guarantee" of payment.

11.  Special Counsel submits that a **<u>Dismissal</u>** of this bankruptcy case (BK-03-81486-WRS) would wreak havoc on the creditors' interests,  and would substantially reduce the value of the Estate's assets, now controlled solely by Joint Debtor Charlotte Williford as a result of the Judgment in their divorce action, DR-03-175-RDL, entered on October 31, more than 3 weeks after this case was filed on October 3, 2003.

12.  The "Motion to Dismiss" requires a Hearing.   As 11 U.S.C. 1112(b) itself states in pertinent part:

> "§ 1112.  Conversion or dismissal
> .....

(b)  ....  on request of a party in interest or the United States trustee or bankruptcy administrator, and *after notice and hearing*, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, *whichever is in the best interest  of creditors and the estate*, for cause, including – ...."
(portions italicized for emphasis)

13.  Special Counsel Murray submits that he has "Standing" to intervene in this Bankruptcy Case by virtue of the agreement between and among himself, attorneys Memory and Day, and the Joint Debtors.

14.  Special Counsel Murray has expended many hours in AP-04-08015-WRS and its appeal (CV-05-857-MHT), and submits that he should not be deprived of his reasonable anticipation of eventually being successful and receiving his "Contingent Fee" based upon a  successful resolution of that Adversary Proceeding.   Admittedly, a successful outcome is not at all certain;  nevertheless, the contract under which Special Counsel Murray has been prosecuting AP-04-08015-WRS should remain valid regardless of whatever happens in the underlying Bankruptcy Case, BK-03-81486-WRS.

15.  Further, Special Counsel  Murray submits that AP-04-08015-WRS constitutes "Property of the Estate" and as such, should not be impaired without commensurate financial enhancement to the Estate.  Stated another way, AP-

04-08015-WRS is an "Asset" of the Estate, while attorney Murray's "Contingent Fee" is a "Liability contingent upon successful liquidation of that asset." Special Counsel Murray considers himself to be a "contingent unliquidated creditor," so to speak, depending upon the final outcome of AP-04-08015-WRS, which is presently on appeal as CV-05-857-MHT (M.D. Ala.)

16.  IN SUMMARY, Special Counsel Murray requests permission to **Intervene** in this case, and to protect "Contingency Fee" interest.

/S/ William R. Murray                    William R. Murray
William R. Murray                        Attorney at Law
Attorney for Joint Debtors               Murray Lane
Charlotte T. WILLIFORD and               Northport, AL 35475
Kenneth WILLIFORD                        (205) 339-7080
in AP-04-08015-WRS and its appeal,       ID:  ASB-1931-A64W
and CV-05-857-MHT

Certificate of Service:   I hereby certify that I have mailed this "Motion to Intervene and Motion to Compel..." properly addressed  and with First Class postage prepaid, to the persons listed below, on July 30, 2006.

Attorneys for Debtors in Chapter 11 Case No. 03-81486:
        Mr. James L. Day, Esq. (jlday@memorylegal.com)
        Mr. Von G. Memory, Esq. (vgmemory@memorylegal.com
        Memory & Day, P.O. Box 4054, Montgomery, AL 36103-4054

Attorney for Defendants in this Adversary Proceeding 04-08015:
        Mr. Aldos S. Vance, Esq. (alv@starneslaw.com)
        Starnes & Atchison, LLP, 100 Brookwood Place, 7th Floor
        P.O. Box 598512, Birmingham, AL 35259-8512

Bankruptcy Administrator:
       Ms. Teresa R. Jacobs, Bankruptcy Administrator, M.D.  Ala.
       One Court Square, Suite 221, Montgomery, AL 36104

Ms. Charlotte Williford, 815 Crawford Road,  Opelika, AL 36804

Mr. Kenneth Williford, 229597  B-38,100 Warrior Lane, Bessemer, AL 35023-7299

All Creditors listed on latest BK-03-81486-WRS matrix:

       Agri-Credit, P.O. Box 14535, Des Moines, IA 50306-3535

       Auburn Bank, P.O. Box 3110, Auburn, AL 36831-3110

       Colonial Bank, 54 N. Lafayette Street, Lafayette, AL 36862-2000

       East Alabama Cardiovascular, 2123 Executive Park Dr., Opelika, AL 36801-6041

       East Alabama Medical Center, 2000 Pepperell Pkwy, Opelika, AL 36801-5422

       Scott Emerson et al. ATTN: Charles R. Reynolds, Jr., Esq.
          P.O. Box 367, Lanett, AL 36863-0367

       MBNA, P.O. Box 15137, Wilmington, DE 19850-5137

       NEXTEL, 1810 east Sahara Ave., Suite #1, Las Vegas, NV 89104-3735

       Peoples Bank, 310 Broad Street, P.O. Box 799, Selma, AL 36201-0799

       Phillips & Phillips, 225 North Gay Street, Auburn, AL 36830-4815

       Wachovia Bank, ATTN: Charles N. Parnell, III, Esq.
          P.O. Box 2189, Montgomery, AL 36102-2189

       Travelers' Indem. &SF Insurance Co., ATTN: Charles R. Johanson, III, Esq.,  P.O. Box
          11405, Birmingham, AL 35202

/S/ William R. Murray
William R. Murray
Attorney for Joint Debtors Charlottte Williford and Kenneth Williford
in AP-04-08015-WRS (Bkcy, N.D. Ala) and its related appeal,
CV-05-587-MHT (N.D. Ala.)

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re                                              Case No. 03-81486-WRS
                                                   Chapter 11
CHARLOTTE TERESA WILLIFORD
KENNETH WILLIFORD,

        Debtors

**ORDER FOR STATUS HEARING**

On January 30, 2006, this Court confirmed the Debtors' Chapter 11 Plan. (Doc. 255).

On July 25, 2006, Kenneth Williford acting pro se, filed a motion to vacate the order of

confirmation. (Doc. 278). On July 27, 2006, Memory and Day, counsel for the Debtors, filed a

motion to dismiss this case. (Doc. 279). On July 30, 2006, William Murray, counsel for the

Debtors in Adversary Proceeding 04-8015, filed a motion to intervene, opposing the motion to

dismiss filed by Memory and Day. (Doc. 280). In addition, Murray has filed a complaint with

the Alabama Bar, with copies to this Court and the Circuit Court in Lee County, Alabama,

alleging that Memory and Day and two lawyers who represented Kenneth Williford and

Charlotte Williford defrauded him.

        ORDERED, that this Court will conduct a status conference on this bankruptcy

proceeding and hear from all interested parties as to how the Court should proceed, on September

12, 2006, at 1:30 p.m., in Montgomery, Alabama, Courtroom 4(D). The Court is aware that

Kenneth Williford is in prison in Bessemer, Alabama, and requests that he make his views

known by filing a memorandum with the Court as to how he believes the Court should proceed

in these pending matters.  This hearing will be procedural in nature; no evidence will be heard and the Court will not dispose of any motion at this hearing.

Done this 31st day of July, 2006.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Von G. Memory, Attorney for Debtors
   Debtors
   Kenneth Williford, *229597 - B - 38, 100 Warrior Lane, Bessemer, AL 35023*
   William R. Murray, Esq.
   Teresa R. Jacobs, Bankruptcy Administrator

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE
### MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

IN RE:

**CHARLOTTE TERESA WILLIFORD and**
**KENNETH WILLIFORD,**

    **Debtors.**

**Case No. 03-81486-WRS**

**Chapter 11**

### MOTION TO WITHDRAW AS COUNSEL

COMES NOW the law firm of Memory & Day, and respectfully requests this Honorable

Court allow it to withdraw as Chapter 11 counsel in the above-referenced case, and in support

thereof, says as follows:

1. Charlotte Teresa Williford and Kenneth Williford, ("Debtors") filed a petition for an

order of relief under Chapter 11, Title 11 of the <u>United States Bankruptcy Code</u>, October 3,

2003.

2. A formal application for approval of Memory & Day, 469 South McDonough St.

Montgomery, AL, 36104 as general legal counsel was filed October 8, 2003 (ECF Doc. 10), and

the undersigned firm was ordered employed under general retainer/ engagement, November 6,

2003 (Doc. 34). See 11 U.S.C. § 327 (a).

3. A final order approving the Debtor's disclosure statement and confirming their

Chapter 11 plan was entered January 30, 2006 (ECF Doc. 255) and a plan implementation order

was entered January 31, 2006 (ECF Doc. 257).

1

4.   One of the joint Debtors, Kenneth Williford, filed a document entitled "Motion to Vacate Confirmation of Plan Because of Fraud on Court and Request for Relief from Unlawful Division of Estates Assets", July 25, 2006 (ECF Doc. 278).

5.   By filing this motion, Debtor Kenneth Williford has created a direct conflict and continued representation by Memory & Day in this matter is no longer practicable. To continue representation would create a professional conflict incident to future representation of the two Debtors in this matter.

6.   William R. Murray, Esq., filed a document entitled "Motion by Special Counsel Murray to Intervene to Protect Potential Contingent Fee in AP-04-08015-WRS", July 30, 2006 (ECF Doc. 280). However, this document was filed on behalf of the Debtors but without the knowledge of Charlotte Williford or without consultation with Chapter 11 counsel for the Debtors.

7.   Charlotte Williford has agreed to Memory & Day withdrawing representation in this matter.

8.   A motion to dismiss the instant Chapter 11 bankruptcy was filed July 27, 2006 (ECF Doc. 279).

WHEREFORE, it is respectfully requested that this Honorable Court allow the law firm of Memory & Day to withdraw it representation in this matter.

Respectfully submitted on this the 8th day of August 2006.

Memory & Day


By: /S/Von G. Memory
Von G. Memory

2

ASB-8137-071V

James L. Day
ASB-1256-A55J

Attorneys for Debtors

OF COUNSEL

Memory & Day
Post Office Box 4054
Montgomery, Alabama 36103-4054
Tel (334) 834-8000
Fax (334) 834-8001
vgmemory@memorylegal.com
jlday@memorylegal.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the foregoing document on the following, by:

☑ placing same in the United States Mail, postage prepaid, and properly addressed

☑ E-mail or ECF (Pursuant to Fed. R. Bankr. P. 9036)

☐ facsimile

☐ hand delivery

☐ delivered in open court

on August 8, 2006.

Teresa Jacobs
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL  36104

William R. Murray, Esq.
Murray Lane
Northport, AL 35475

Kenneth Williford

3

AIS 229597 C-1 B-94
W. Jefferson Correctional Facility
100 Warrior Lane
Bessemer, AL  35023

/S/Von G. Memory
OF COUNSEL

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

IN RE:                                    * CASE NO. 03-81486-WRS
CHARLOTTE TERESA WILLIFORD    *
AND KENNETH H. WILLIFORD        *   CHAPTER 11
DEBTORS.                                 *
                                               *

**FILED**
AUG 09 2006
U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

Comes now KENNETH WILLIFORD (KW), BY AND
THROUGH LEGAL PRO-SE COUNSEL, IT HAS COME TO MY
ATTENTION TODAY JULY, 28TH, 2006, THAT ATTORNEYS "VON
G. MEMORY AND JAMES L. DAY," HAVE PUT A "MOTION
TO DISMISS" 11 U.S.C. § 1112 (b), FED. R. BANKR. P. 1017,
9014. THERE COULD BE NOTHING MORE FURTHER FROM THE
TRUTH. I (KW) HAVE NEVER ASK FOR THIS HONORABLE
COURT TO "DISMISS" ANY OF THE CONFIRMATION PLAN
OF OUR BANKRUPTCY.

WHAT I HAVE ASK THE COURT TO DO, IS, TO VACATE
THE CONFIRMATION PLAN AS IT STANDS RIGHT NOW,
AND TO HAVE AN EVIDENTIARY HEARING, AND TO
REOPEN OUR CASE, SO, AS TO CORRECT THE UNLAWFUL
DIVISION OF THE ESTATES ASSETS, THAT, THE CIRCUIT
COURT OF LEE COUNTY HAD DONE, AND THE ATTORNEYS
"BRADY, BROWN, MEMORY AND DAY" PERMITTED TO LET
GO UNCHECK ALL THROUGH THIS THREE YEAR ORDEAL.

I WOULD BE COMMITTING FINANCIAL SUICIDE TO MYSELF, TO ASK THIS HONORABLE COURT TO DISMISS THIS PLAN FROM, THE PEOPLE OR FINANCE COMPANIES THAT WE OWE. AGAIN "MR. MEMORY AND MR. DAY" (M&D) HAVE COMMITTED FRAUD TO THIS HONORABLE COURT. NEITHER OF THESE ATTORNEY'S HAVE CONTACTED ME (CW) BY PHONE, OR WRITTEN LETTER, NOR HAVE THEY COME TO VISIT ME BEFORE THEY DECIDED TO PUT THIS "MOTION TO DISMISS" BEFORE THIS HONORABLE COURT. THIS HAS BEEN THE PROBLEM WHOLE TIME, THAT THEY (M&D) HAVE HAD WITH REPERSENTING ME. ATTORNEYS (M&D) KNEW FROM THE BEGINNING WHAT THE CIRCUIT COURT HAD DONE WITH THE UNLAWFUL DIVISION OF OUR MARITH ASSETS AND BUSINESSES, BY, THEM (M&D) KNOWING THAT MY WIFE CHARLOTTE WILLIFORD (CW) HAD FULL CONTROLL OF THE BUSINESSES AND ASSETS, THEY (M&D) HAVE TRYED SERVAL TIMES TO JUST KEEP ME OUT OF THE PICTURE, UNLESS THEY JUST NEEDED ME TO SIGN SOME PAPERS. BUT I WOULD NOT JUST LET THEM GET AWAY WITH THIS TYPE OF CONDUCT. I WOULD WRITE NUMOUES LETTERS TO (M&D), HAVING TO MAKE THEM TO RESPONED TO MY REQUEST AT ANY GIVEN TIME. I HAD TO MAKE THEM SEND ME THE MONTHLY REPORTS THAT (CW) WAS SENDING TO THIS HONORABLE COURT. I HAD DISCUSS MY DISAPROVAL TO "MR. DAY" ABOUT SOME OF THE THINGS THAT (CW) WAS TURNING INTO THE COURTS. MR. DAY, TOLD ME THAT HE KNEW ABOUT THEM AND THAT THING WOULD BE FINE. WHICH WAS JUST ANOTHER

2

LIE THAT I HAVE BEEN TOLD.

Now I HAVE FELT ALL A LONG THAT (M&D) HAVE BEEN LEANING TOWARD (CW) SIDE, BUT HAVE NOT BEEN ABLE TO PROVE IT UNTILL NOW. IT IS MY ASSUMPTION, THAT, NOW, THAT (M&D) HAVE PUT IN FOR THIS "MOTION TO DISMISS" WITHOUT CONSULTING WITH ME (CW) FIRST, BEFORE THEY DID IT, THAT ALL THEY (M&D) ARE TRYING TO DO IS, THROW UP A SMOKE SCENE TO COVER THEIR OWN BUTTS. I BELIEVE THAT WHAT THEY (M&D) AND (CW) ARE GOING TO TRY TO DO IS, TO GET THE HONORABLE CIRCUIT COURT TO SAY, THAT, THEY DID NOT KNOW, THAT, WE (CW) AND (KW) WERE IN BANKRUPTCY AND, THAT, JUDGE LANE WILL SAY THAT THE "JUDGMENT OF DIVORCE" CAN NOT STAND AND DROP IT, THEN TRY TO GET THIS HONOR-ABLE COURT TO DISMISS OUR CHAPTER 11 PLAN, LONG ENOUGH FOR THE CIRCUIT COURT TO REINSTATE THEIR ORGINAL "JUDGMENT OF DIVORCE". THEN TO LET (CW) COME BACK WITH THE CREDITORS, WITH THE SAME CHAPTER 11 PLAN. SINCE I HAVE BEEN DECEIVED BY MR. DAY ABOUT WHEN I SHOULD TRY TO GET THIS HONORABLE COURT TO MAKE A DIVISION OF OUR (CW) AND (KW) ESTATE AND ASSETS, I HAVE NO OTHER CHOICE BUT TO BELIEVE THAT THEY WOULD TRY TO DO SOME-THING AS UNDER HANDED AS THIS.

THIS IS WHY I HAVE ASK THIS HONORABLE COURT FOR A "MOTION TO VACATE CONFIRMATION OF THE PLAN BECAUSE OF FRAUD ON THE COURT, AND REQUEST

FOR RELIEF FROM THE UNLAWFUL DIVISION OF THE ESTATES ASSETS"; NOT TO DISMISS OUR CHAPTER 11 CASE ALL TOGETHER, AS (M&D) HAVE REQUESTED TO THIS HONORABLE COURT.

IN FACT, IF IT HAD NOT BEEN FOR MR. WILLIAM MURRAY, WANTING TO KNOW, WHY, I WANTED TO HAVE THIS CASE DISMISSED. BECAUSE IT WOULD HAVE THROWN OUT OUR SUIT AGAINST "FUNDERBURK AND WORTHY" IF I HAD WANTED IT TO BE DISMISS. I (AW) WOULD HAVE NEVER KNOWN ABOUT THIS MOTION TO THE COURTS, OR MIGHT NOT, WOULD HAVE KNOWN IN TIME TO TRY TO AT LESS STOP IT IN TIME. ANOTHER SNEAKY WAY OF TRYING TO KEEP ME OUT OF THE PICTURE.

NOW WHEN MR. DAY CAME TO VISIT ME BACK IN MAY OF 2005, HE MAY SAY THAT I GAVE HIM "POWER OF ATTORNEY". WHAT I GAVE HIM WAS ONLY "LIMITED POWER OF ATTORNEY", STRICKLY, ONLY TO BE USE) FOR THE SIGNING OF MY NAME FOR THE CONFIRMATION OF THE PLAN, SO THAT THEY, (M&D) WOULD NOT HAVE TO WASTE TIME AND MONEY, JUST TO COME UP HERE, FOR ME TO SIGN THE PAPER WORK, NOT, FOR THEM, (M&D) TO ABLE TO PUT MY NAME ON THIS "MOTION TO DISMISS" AS THEY (M&D) HAVE DONE. THESE ATTORNEYS OR SUPPOST TO BE WORKING FOR ME, NOT AGAINST ME.

MAYBE I SHOULD APOLOGIZE TO THIS HONORABLE COURT, FOR MY IGNORANCE OF THE LAW, AND I PRAY THAT THE COURT WILL ACCEPT MY APOLOGY FOR

WORDING OF WHAT I HAVE REQUESTED. MAYBE, I SHOULD NOT HAVE USED THE WORD VACATE IN MY REQUEST, I MIGHT HAVE JUST OF SAID, I WOULD LIKE TO HAVE THIS CASE <u>REOPEN</u>; BECAUSE OF THE FRAUD ON THE COURT, AND FOR <u>RELIEF</u> FROM THE UNLAWFUL DIVISION OF THE ESTATES ASSETS. BECAUSE I SURELY DO NOT WANT, NOR HAVE I REQUESTED DISMISSAL OF THIS PLAN, NOR WILL I, OTHER THAN FOR RELIEF, FOR WHAT I HAVE WORKED FOR, FOR THE LAST 27 YEARS. I HAVE NEVER SEEN, OR HAVE I EVER BEEN IN SUCH A MESS, IN ALL OF MY LIFE.

FURTHERMORE; IF IT WOULD PLEASE THIS HONORABLE COURT AND ALL THE PARTIES INVOLVED, I WOULD LIKE TO SUGGEST, THAT, ME (RW) AND (CW) HAVE A ONE ON ONE CONFERENCE WITH A NEUTRAL MEDIATOR, TO TRY TO STRAIGHTEN ALL THIS MESS OUT BETWEEN US. SO NO ONE ELSE FALLS VICTIM TO THIS SPIDER WEB THAT HAS BEEN WOVEN AGAINST US.

NOW, I GUESS WE COULD CALL THIS SOME KIND OF CEASEFIRE, OR PEACE TREATY, IS NOT SUITABLE FOR THIS HONORABLE COURT, OR FOR ANY OF THE PARTIES INVOLVED. I AM THEN ASKING FOR THIS HONORABLE COURT FOR A EVIDENTIARY HEARING. SO THIS COURT CAN STRAIGHTEN THIS MESS OUT AT THE FEDERAL LEVEL, NOT AT THE CIRCUIT COURT LEVEL, WHERE PREJUDICE IS AT THE EXTREME AGAINST (RW). I CAN NOT FIND IN ANY LAW BOOK, OR CASE, AS TO, WHERE THE COURTS

WAS AWARD EITHER PARTY 100% OF THE ESTATE AND ASSETS, AND THE OTHER PARTY 100% OF THE UNSECURED DEBTS, AND/OR DID IT WHILE ESTATE WAS UNDER AN "AUTOMATIC STAY" IN THE BANKRUPTCY COURTS. THIS IS WHY (KW) COMES TO THIS HONORABLE COURT AND PRAYS FOR THE FEDERAL COURTS TO FAIRLY GIVE RELIEF AND DIVIDE THE ESTATE AND ITS ASSETS.

LOW, BY (MED) FILING A "MOTION TO DISMISS", WITHOUT CONSULTING ME, OR GETTING MY APROVAL, IS A WEAK AND FEEBLE ATTEMPT TO COMOUFLAGE AND SIDE-STEP THE REAL ISSUE OF FRAUD CONSTITUTED ON THEIR BEHALF, AS I DO NOT WANT A DISMISSAL FOR ANY REASON.

RESPECTFULY SUBMITTED

_Kenneth H. Williford_

KENNETH H. WILLIFORD

I SWEAR (OR AFFIRM) UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.
EXECUTED ON ___7/30/06___
                    DATE

_Kenneth H. Williford_

SIGNATURE OF PETITIONER

SWORN TO AND SUBSCRIBED BEFORE ME THIS _____ DAY OF
_____, 2006

COULD NOT GET A NOTARY
IN TIME                          _____
                                  NOTARY PUBLIC



IN THE UNITED STATES BANKRUPTCY
COURT FOR THE MIDDLE DISTRICT OF
ALABAMA EASTERN DIVISION

FILED
AUG 09 2006
U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

IN RE:                                    *
                                          *  CASE NO. 03-81486-WRS
CHARLOTTE TERESA WILLIFORD  *
AND KENNETH H. WILLIFORD    *    CHAPTER 11
DEBTORS,                                  *
                                          *              JULY, 31, 2006

DEAR HONORABLE JUDGE SAWYER,
        I KENNETH WILLIFORD (KW) HAVE JUST RECEIVED
TWO PIECES OF LEGAL MAIL TODAY, AT 6:30 P.M., FROM
ATTORNEYS "MEMORY & DAY"(M&D) ATTORNEYS AT LAW. THE
LETTER TO ME STATES, AND I AM QUOTING FROM
BEGINNING TO END OF THE LETTER.
        "      JULY 28, 2006
        REFERENCE: CHAPTER 11 CASE DISMISSAL
        DEAR MR. AND MS. WILLIFORD:
            WE RECEIVED, JULY 26, 2006, MR. WILLIFORD'S
MOTION TO VACATE CONFIRMATION ETC, FILED BY
MR. WILLIFORD WITH THE BANKRUPTCY COURT. BASED
UPON THIS MOTION AND THE CONCURRENCE OF
MS. WILLIFORD, WE FILED A MOTION TO DISMISS
YOUR CHAPTER 11 BANKRUPTCY
            UNDER SEPARATE COVER, I FORWARDED A COPY OF
THE MOTION TO DISMISS, I EXPECT AN ORDER OF THE
COURT FORTHWITH
                        SINCERELY
                            JAMES L. DAY

1

NOW, IT SEEMS TO ME (RW), THAT, THE LETTER THAT I PUT INTO THE PRISON MAIL BOX YESTERDAY JULY, 30, 2006. THE PREDICATION'S IN THAT LETTER TO YOU ARE STARTING TO TAKE PLACE AS I WRITE THIS LETTER, AS YOU CAN SEE THE SAYS NOTHING ABOUT, MEETING WITH (RW). ONLY " THE CONCURRENCE OF MS. WILLIFORD, WE FILED A MOTION TO DISMISS YOUR CHAPTER 11 BANKRUPTCY "

Now I DON'T KNOW, JUST HOW SOMETHING LIKE THIS IS TAKEN IN THE COURT OF LAW, BUT TO ME (RW), THIS SEEMS TO BE MIGHTY BOLD, FOR ANY ATTORNEY TO PRESENT SUCH A MOTION TO THE COURTS WITHOUT AT LEAST CONSULTING WITH THIS CLIENT FIRST, THAT HE WAS SUPPOST TO BE REPRESENTING,

IT HAS ALWAYS BEEN MY ASSUMPTION, THAT WHEN AN ATTORNEY REPRESENTS TWO PEOPLE IN ANY CASE, THAT AT NO TIME CAN THE ATTORNEY "TUCK TAIL" AND RUN TO EITHER SIDE AND START REPRESENTING EITHER CLIENT OVER OR AGAINST THE OTHER, AS IT SEEMS TO BE HAPPENING HERE WHEN THEY (MD) SAY, "CONCURRENCE OF MS. WILLIFORD), WE FILED A MOTION TO DISMISS YOUR CHAPTER 11 BANKRUPTCY," WHEN THEY SAY YOUR I HAVE TO ASSUME THEY (MD) OR TALKING ABOUT ME (RW), AS I HAVE SAID, BEFORE, I (RW) HAVE HEARD NOTHING FROM TWO ATTORNEYS (MD) OTHER THAN THE LETTERS I RECEIVED TODAY JULY, 31ST, 2006, AND DID NOT GIVE THEM

2

PERMISSION TO DO THIS AT ANY TIME ON MY BEHALF.

THIS IS ALL THE MORE REASON TO HAVE AN EVIDENTIARY HEARING, WITH ALL OF THE PARTIES THAT ARE INVOLVED. BEFORE THIS MESS GETS ANY WORST THAN WHAT IT IS ALREADY.

IF THIS HONORABLE COURT, DOESN'T HAVE A COPY OF THE LETTER, THAT, I QUOTED ABOVE, I WILL BE GLAD TO SEND A COPY OF IT AS SOON AS I AM ABLE TO GET ONE RUN OFF, WITH THE NEXT FEW DAYS. I JUST DON'T HAVE THE TIME NOR THE MEANS TO RIGHT NOW TONIGHT.

RESPECTFULLY SUBMITTED

_Kenneth H. Williford_

KENNETH H. WILLIFORD


I SWEAR OR AFFIRM UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON JULY, 31ST, 2006

_Kenneth H. Williford_

SIGNATURE OF PETITIONER


3

IN THE UNITED STATES BANKRUPTCY
COURT FOR THE MIDDLE DISTRICT OF
ALABAMA EASTERN DIVISION

FILED

AUG 10 2006

U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

IN RE:
CHARLOTTE TERESA WILLIFORD          X     CASE NO. 03-81486-WRS
AND KENNETH WILLIFORD               X
                                    X
DEBTORS                             X
                                    X     CHAPTER 11

MEMORANDUM

COMES NOW KENNETH WILLIFORD, IN THE ABOVE STYLED
CAUSE, AND MATTER, AND MOVES THIS COURT TO ACCEPT
THIS MEMORANDUM WHICH WAS REQUESTED BY THIS
HONORABLE COURT ON JULY, 31, 2006, AND HEREBY STATES
HIS VIEWS AS FOLLOWS:

1.) UNDER NO CIRCUMSTANCES DO I (WE) WANT
A DISMISSAL OF THIS CASE A STATED BY ATTORNEYS
"MEMORY & DAY," OR ANY OTHER ATTORNEY.

2.) DUE TO OUR ASSETS EXCEEDING ONE MILLION
DOLLARS, I FURTHER REQUEST THIS COURT TO ISSUE
AN ORDER FOR MY PRESENCE DURING THE HEARING
TO BE HELD ON SEPTEMBER, 12TH, 2006, IN COURT ROOM
4(D) IN MONTGOMERY ALABAMA. IN ORDER TO
REMOVE ALL DOUBT, MISCOMMUNICATION, OR

(1)

OTHERWISE ANY "ONE-SIDED" INTEREST BY BY ANY INTERESTED PARTY DURING THIS STATUS CONFERENCE.

3.) I SEEK ONLY JUSTICE IN THIS CASE FOR MYSELF, AND TO EXPOSE THE REPRESENTATION, THAT, ATTORNEYS "MEMORY & DAY" (M&D) HAD GIVEN TO MY WIFE "CHARLOTTE WILLIFORD" (CW) AND THE MISREPRESENTATION, THAT, THE ATTORNEYS (M&D) HAD GIVEN TO ME (RW), AND TO FURTHER EXPOSE THE FRAUD AGAINST THIS HONORABLE COURT, AND THE CIRCUIT COURT BY ATTORNEYS "BRADY, BROWN, MEMORY, AND DAY". BY NOT LETTING THIS HONORABLE COURT KNOW, THAT, (RW) AND (CW) WAS HAVING A DIVORCE AND, THAT, PROPERTY DIVISION SHOULD HAVE BEEN TAKEN INTO CONCENTRATION, BEFORE CONFIRMATION OF OUR BANKRUPTCY PLAN WAS COMPLETED, NOR, LETTING CIRCUIT COURT KNOW THAT THE SAID PROPERTY AND MARTIAL ASSETS WERE IN AN "AUTOMATIC STAY" IN THIS HONORABLE COURT, AND THAT IT WAS NOT IN THE CIRCUIT COURT'S JURISDICTION AT THE TIME OF THE CIRCUIT COURT'S DIVISION OF THE PROPERTY.

I (RW), SEEK 50% OF ALL PROPERTY AND MARTIAL ASSETS IN THIS CASE. I (RW) REQUEST TO BE TRANSPORTED TO THE SEPTEMBER, 12th, 2006, HEARING IN COURTROOM 4(D) IN MONTGOMERY

(2)

ALABAMA. I AM PUTTING I A "MOTION FOR TRANSPORT" WITH THIS "MEMORANDUM" AND I (KW), AM PRAYING THAT THIS HONORABLE COURT WILL RESPECT MY REQUEST, FOR THERE WILL BE NO ONE THERE TO REPRESENT ME (KW) AT THIS HEARING, BECAUSE I AM FORGOING THIS PRO-SE.

AUGUST, 6, 2006

RESPECTFULLY SUBMITTED

KENNETH H. WILLIFORD

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

**FILED**

AUG 2 3 2006

U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

IN RE:                                    CASE NO. - 03-81486 WRS

CHARLOTTE TERESA WILLIFORD
AND KENNETH WILLIFORD            CHAPTER 11
DEBTORS,

MOTION

WRIT OF HABEAS CORPUS AD TESTIFICANDUM
JUDICIAL CODE 28 U.S.C. 1651 (A)
JUDICIAL CODE 28 U.S.C. 2241 (C)(5)

COMES NOW PETITIONER KENNETH WILLIFORD IN
THE ABOVE STYLED MATTER AND PETITIONS THIS HONORABLE
COURT TO ISSUE A WRIT OF HABEAS CORPUS AD TESTIFICAN-
DUM FOR THE PRODUCTION OF THE PETITIONER AT THE
HEARING ON SEPTEMBER, 12TH, 2006, IN COURT ROOM 4(D)
IN MONTGOMERY ALABAMA, FOR THE ABOVE CASE TO BE SCHEDULED
BY THIS HONORABLE COURT.

1). THE PETITIONER ARGUES, THAT, HE IS "PRO-SE" AND
THAT PETITIONER IS THE ONLY PERSON THAT CAN ARGUE
THE ALLEGATIONS MADE AGAINST THE OTHER PARTIES OF
INTEREST IN THIS CASE. WITHOUT PETITIONER REPRESENTING
HIMSELF, PETITIONER WILL HAVE NO REPRESENTATION
AT ALL IN THIS CASE AT THE HEARING.

PETITIONER'S VERIFICATION UNDER PENALTY OF PERJURY

I DO HEREBY VERIFY AND AFFIRM UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

CERTIFICATE OF SERVICE

I DO HEREBY CERTIFY THAT I HAVE PLACED COPY OF THE FOREGOING DOCUMENTS IN THE UNITED STATES MAIL ADDRESSED TO THE FOLLOWING: "UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF ALABAMA EASTERN DIVISION, OFFICE OF THE CLERK, P.O. BOX 1248 MONTGOMERY, ALABAMA 36102-1248," FIRST CLASS POSTAGE PREPAID.

DONE ON THIS THE 18TH DAY OF AUGUST, 2006

RESPECTFULLY SUBMITTED

KENNETH WILLIFORD

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

IN RE:
CHARLOTTE T. WILLIFORD AND     CASE NO: 03-81486-WRS
KENNETH WILLIFORD
DEBTORS                        CHAPTER 11

## MOTION TO AMEND
### MEMORANDUM

COMES NOW KENNETH WILLIFORD (KW) IN THE ABOVE STYLE CAUSE, AND MATTER, AND MOVES THIS HONORABLE COURT TO ACCEPT THIS MOTION TO AMEND HIS MEMORANDUM, WHICH WAS REQUESTED BY THIS HONORABLE COURT ON JULY, 31ST, 2006.

THIS MEMORANDUM WHICH THE COURT HAD REQUESTED, FROM (KW), WAS SENT BACK OFF TO THE COURTS ON AUGUST, 6TH, 2006. FIRST, PETITIONER (KW) APOLOGIZE'S TO THIS HONORABLE COURT, AND ASK FOR IT'S FORGIVENESS, I (KW) DID NOT FULLY UNDERSTAND, JUST WHAT THIS COURT WAS REQUESTING OF ME WHEN I FIRST RECEIVED THE COURTS REQUEST. SO I NEED TO NOW AMEND TO MY MEMORANDUM, AND THEREBY STATES THIS VIEWS AS FOLLOWS:

IF, I (KW) UNDERSTAND THIS HONORABLE COURT CORRECTLY NOW, I'm THINKING THAT THE COURT IS WANTING TO KNOW MY (KW) THOUGHTS ON JUST HOW THESE PROCEDURES SHOULD PROCEED FROM THIS POINT FORWARD.

1). I (KW) ASK THAT ATTORNEYS "MS. BEVERLY BRADY AND

MS. MARGARET BROWN" SHOULD HAVE TO PUT UP A CONSIDERABLE BOND FOR THEIR PART IN DEFRAUDING THE CIRCUIT COURT SYSTEM AND ME (RW) ALSO.

2). I ASK THAT ATTORNEYS "LOU MEMORY AND JAMES DAY" SHOULD HAVE TO PUT UP A CONSIDERABLE BOND FOR THEIR PART IN THIS FRAUD TO THE "CIRCUIT COURT AND TO THIS U.S. BANKRUPTCY COURT" AND TO ME (RW) ALSO.

3). I (RW) ASK "MEMORY AND DAY" (M&D) SHOULD <u>NOT</u> BE <u>ALLOWED</u> TO WITHDRAW FROM THIS CASE, THAT, THEY (M&D) HAVE MANAGED TO SCREW UP. I ASK THIS HONORABLE COURT TO MAKE (M&D) STAY ON THIS CASE WITHOUT PAY UNTILL THEY GET IT FIX. MY WIFE AND I, HAS PAID FROM OUR ESTATES, ACCOUNT FOR THEM TO SCREW IT UP, AND WE SHOULD NT HAVE TO PAY THEM (M&D), OR ANYBODY ELSE TO UNDO THEIR SCREW UP.

4). THE BUSINESSES SHOULD BE DIVIDED UP EQUALLY AND FAIRLY. I ASK FOR "OAK-HAVEN M.H.P." WITH 120 LOTS, AND "BROOK-HAVEN M.H.P." WITH 60 LOTS, AND "FIELDS M.H.A" WITH 27 LOTS, A TOTAL OF 207 LOTS. CHARLOTTE WILLIFORD (CW) SHOULD RECEIVE " HICKORY-HAVEN M.H.P." WITH 126 LOTS, AND "BEU-MOR VILLAGE M.H.P." WITH 81 LOTS, WHICH IS A TOTAL OF 207 LOTS ALSO. ANY BILL'S THAT ARE OWED THROUGH THIS BANKRUPTCY PLAN CAN BE SPLIT DOWN THE MIDDLE AND PAID BY BOTH OF US. THERE ARE MANY DIFFERENT WAYS

THAT OUR CREDITORS CAN, AND SHOULD GET PAID WITH BOTH OF US (RW) AND (CW) HAVING OUR EQUAL SHARE OF THE BUSINESSES. IF (CW) WILL AGREE TO RUN ALL THE BUSINESSES AS A WHOLE UNTILL I GET OUT OF PRISON. I WILL ONLY ASK FOR 25% OF THE PROFITS, THAT, SHE (CW) TOLD TO THE CIRCUIT COURT ON SEPTEMBER, 22, 2003, THAT, WERE BEING MADE AT THAT TIME. WHICH WOULD MAKE MY (RW) INCOME AT $1,400.00 PER MONTH, PLUS THE $512.00 PER MONTH CHILD SUPPORT PAYMENTS. WITH THIS I ALSO ASK FOR A 5% INCREASE YEARLY. IF, SHE (CW) DOES NOT AGREE WITH THIS PROPOSAL, THEN I (RW) WILL HAVE PEOPLE IN LINE THAT WILL BE ABLE TO TAKE UP MY PART OF THE BUSSINESSES AND RUN IT FOR ME.

WITH THE MARITAL PROPERTY AND ASSETS THERE SHOULD BE A 60/40 SPLIT, WITH 60% TO (CW) AND 40% TO (RW). EVERY THING THAT WAS LEFT TO ME BY MY DADDY WHEN HE DIED, SHOULD BE GIVEN TO ME WITHOUT A SPLIT, WHICH ONLY EXIST OF A "ROLEX WATCH" AND A COUPLE OF DIAMOND RINGS.

5). ALL COST TO EITHER SIDES ATTORNEY'S, (CW), OR (RW) SHOULD BE TAKEN FROM THE ESTATES ACCOUNT. THIS INCLUDES "MR. MURRAY'S" FEES, BUT NOT LIMITED JUST THERE TO MR. MURRAY

6). THIS PLAN, THAT, THIS HONORABLE COURT HAS COMFIRMED SHOULD NOT BE DISMISSED OR DISMANTLED, FOR ANY REASON

(3)

OTHER THAN TO DIVID THE BUSINESSES AND MARITAL PROPERTY AND ASSETS EQUALLY AND FAIRLY.

7). ALL PROPERTY, TITLES, DEED, AND NOTE PAYMENTS, THAT, HAS BEEN DEVASTED OUT OF MY (KW) NAME AND HAS BEEN PUT SOLELY INTO (CW) NAME SHOULD BE REVERSED, AND BE MADE TO BE PUT BACK INTO MY (KW) NAME.

8). LAST, BUT NOT LEAST, ANY AND ALL COST FOR ANY OF THIS THAT ACCRUES THROUGH THESE PROCEEDINGS SHOULD BE AT THE COST OF "MR. MEMORY AND MR. DAY" SENCE THEY ARE THE ONE'S WHO DEFRAUDED ME (KW) AND THIS HONORABLE COURT.

9.) I (KW) FURTHERMORE, REQUEST FROM THIS HONORABLE COURT, TO GRANT ME MY "MOTION FOR TRANSPORT" AND TO HAVE MY PRESENCE AT THE HEARING ON SEPTEMBER, 12TH, 2006, IN COURT ROOM 4 (D) IN MONTGOMERY, ALABAMA, DUE TO OUR ASSETS EXCEEDING ONE MILLION DOLLARS PLUS, AND DUE TO THE COMPLICATED OF THIS CASE, PLUS SINCE I AM PROCEEDING "PRO-SE" I WILL HAVE NO REPRESENTATION OTHER THAN MYSELF, TO REFUTE, OR TO AGREE TOO, ANY MATTERS, THAT, MAY ACCURE AT THE HEARING. BY HAVING MY (KW) PRESENCE, IT WILL REMOVE ALL DOUBT, MISCOMMUNICATION, OR OTHERWISE, ANY

(4)

"ONE-SIDED" INTEREST BY ANY INTERESTED PARTY DURING THIS STATUS CONFERENCE.

PETITIONER'S VERIFICATION UNDER PENALTY OF PERJURY. I DO HEREBY VERIFY AND AFFIRM UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

CERTIFICATE OF SERVICE

I DO HEREBY CERTIFY THAT I HAVE PLACED A COPY OF THE FOREGOING DOCUMENTS IN THE UNITED STATES MAIL ADDRESSED TO THE FOLLOWING:

"UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION
P.O. BOX 1248
MONTGOMERY, ALABAMA 36102-1248"

THIS DONE ON THE 21ST DAY OF AUGUST, 2006

RESPECTFULLY SUBMITTED

KENNETH TD. WILLIFORD
KENNETH TD. WILLIFORD

(5)

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                                    Case No. 03-81486-WRS
                                                         Chapter 11

CHARLOTTE TERESA WILLIFORD
KENNETH WILLIFORD,

      Debtors

### <u>ORDER ON STATUS CONFERENCE</u>

The Court has set a status hearing for September 12, 2006, upon the motion filed by

Debtor Kenneth H. Williford to vacate confirmation of the Debtors' Plan.  Kenneth Williford is

presently incarcerated.  He seeks an order of this Court to have him transported here for the

September 12 hearing.  (Docs. 292, 293, 295, 296).  As previously set forth, the September 12

hearing will not be an evidentiary hearing.  Kenneth Williford's motion requesting transportation

to Court is DENIED.  Kenneth Williford may be heard by telephone.  He shall telephone

Courtroom Deputy William Livingston at 334-954-3846 and provide him with a telephone

number at which he may be reached.  Mr. Livingston is directed to contact the authorities at the

State Prison in Bessemer and attempt to facilitate this process.

      Done this 5th day of September, 2006.


                              /s/ William R. Sawyer
                              United States Bankruptcy Judge

c: Von G. Memory, Attorney for Debtors
   Kenneth Williford, *229597 - B - 38, 100 Warrior Lane, Bessemer, AL 35023*
   William R. Murray, Esq.
   Teresa R. Jacobs, Bankruptcy Administrator
   Charlotte Williford, Debtor

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

IN RE:

CHARLOTTE TERESA WILLIFORD and
KENNETH WILLIFORD,

      Debtors.

Case No. 03-81486-WRS
Chapter 11

Response to Various Motions and
Documents

**RESPONSE BY THE FIRM OF MEMORY & DAY TO CERTAIN DOCUMENTS FILED
BY DEBTOR, KENNETH WILLIFORD, AND WILLIAM MURRAY AND
ACCUSATIONS CONTAINED THEREIN**

COMES NOW, the law firm of Memory & Day, and for response to the following

documents, filed on the dates indicated and docketed below:

| Date | ECF# | Entry Title |
|------|------|-------------|
| 07/25/2006 | 278 | Motion to Vacate Confirmation of Plan Because of Fraud on Court and Request for Relief from Unlawful Division of Estates Assets |
| 07/30/2006 | 280 | Motion by Special Counsel Murray to Intervene to Protect Potential Contingent Fee in AP-04-08015-WRS |
| 08/06/2006 | 285 | Motion by Special Counsel Murray for Correction of This Court's "Order For Status Hearing" |
| 08/09/2006 | 287 | Response to Motion to Vacate Confirmation of Plan and Request for Evidentiary Hearing Filed by Kenneth Williford |
| 08/09/2006 | 288 | Response to Motion to Vacate Confirmation of Plan and Motion to Dismiss Case |
| 08/10/2006 | 291 | Response to Motion to Dismiss Case |
| 08/17/2006 | 293 | Objection to Motion to Dismiss (Doc. 279) |

| 08/22/2006 | 294 | Motion to be Heard at Status Hearing with Suggestions Concerning Issues and Procedures to be followed |
| 08/25/2006 | 296 | Response Motion to Amend Memorandum |

## Background

1.   Kenneth Williford was arrested in Lee County in November of 1999 on felony charges of Rape I and Sodomy I. The charges were based on the allegations that Mr. Williford forced a 13 year old girl to have oral and anal sex in one of the trailers located at a mobile home park owned by Mr. Williford and his wife.

2.   Mr. Williford was indicted by a grand jury in Lee County, Alabama, in April of 2000 on the two felony charges.

3.   A trial was held in the Circuit Court of Lee County, State v. Williford, Case Numbers CC-00-248, 249 in February of 2003. The jury returned guilty verdicts on both the Rape I and the Sodomy I counts.

4.   In May of 2003, Mr. Williford was sentenced to serve 25 years in the state penitentiary and is presently incarcerated at the Donaldson Correctional Facility in Bessemer, Alabama.

5.   Just before Mr. Williford's indictment on the criminal charges, Scott and Kristi Emerton filed suit in the Circuit Court of Chambers County, Alabama against the Debtors, Kenny Williford and Charlotte Williford (hereafter "Debtors" or "Willifords"), March 22, 2000, for conversion and breach of contract. This action was as a result of an altercation between Mr. Williford and the Emertons in December of 1999 incident to an eviction action.

6.   The jury in Chambers County returned verdicts in favor of the Emertons on their conversion and breach-of-contract claims. On the breach-of-contract claim, the jury awarded the

Emertons $25,000.00 in compensatory damages, interest, and costs. On the conversion claim, the jury awarded the Emertons $8,000 in compensatory damages and $350,000 in punitive damages. On September 16, 2002, the trial court entered a judgment in favor of the Emertons in the total amount of $383,000.00 in accordance with the jury verdict. By the time of their Chapter 11 bankruptcy, with interest, this judgment had grown to $428,960.00.

7.   Charlotte Williford filed a petition for divorce in the Circuit Court of Lee County, April 9, 2003, case number DR 2003-175.

8.   In this state court domestic action Charlotte Williford was represented by Thomas E. Jones, Esq., and Beverlye Nixon Brady, Esq. Kenneth Williford was subsequently represented by Margaret Young Brown, Esq. However, Ms. Brown withdrew from the case during the appeal process, December 24, 2004.

9.   A trial was set in the Domestic Relations case for September 22, 2003 at 8:00 AM. Mr. Williford requested and was granted transport.

10. A judgment of divorce was entered October 31, 2003.

11. A notice of appeal and various motions were filed on behalf of Mr. Williford, December 12, 2003 and this matter was on appeal until August 2005.

12. The Debtors filed a joint petition for an order of relief under Chapter 11, Title 11 of the United States Bankruptcy Code, October 3, 2003.

13. Due to the various actions and their associated appeals, the Debtors requested, and were approved five extensions to the exclusivity period; the fifth was filed May 31, 2005, requesting a ten day extension.

14. The Debtors filed their Chapter 11 disclosure and plan, pursuant to the Court's order allowing expansion of the exclusivity period, June 10, 2005. The instant plan and disclosure was

coordinated with and filed after numerous letters, an early visit by Mr. Memory, a phone conference, and after an approximately three hour visitation by Mr. Day with Debtor Kenneth Williford at Donaldson Correctional Facility in Bessemer, Alabama, June 8, 2005.

15. Initially, the undersigned counsel and firm discussed the pending domestic action with the Willifords and its impact on the bankruptcy action. It was unequivocally stated, on more than one occasion, that they would not give advice, render aid, or otherwise participate in the pending domestic action. This same position was discussed when one or all of the domestic lawyers called from time to time during the pendency of the bankruptcy. Finally, at no time during the above-referenced discussions or communications was there a concern raised or communicated on the part of Mr. Williford about a conflict in representation, the automatic stay, or the impact of the domestic relations case as it applied to the bankruptcy, or *vice versa*.

16. The amended disclosure statement and plan were conditionally approved June 29, 2005 (ECF Doc. 193) and a copy was mailed to all creditors and parties in interest July 5, 2005 (ECF Doc. 195). A copy of this amendment was sent to Debtor Kenneth Williford and was available to William Murray through PACER.

17. The plan, as proposed and subsequently approved, made no provisions for the transfer of property, either real property or personal property, from one to the other of the joint debtors. This plan specifically restructured the debts owed the creditors, attempted to "hold off" execution of the judgment of the Emertons, and liquidation of the estate until a settlement could be negotiated. The assertions by William Murray, Esq. and Mr. Williford that the estate represents a million dollars in value fails to take into consideration that all of the assets, before and after the bankruptcy, were fully encumbered by debt, leaving little equity in the estate.

18. The primary issue with respect to the estate was the extent of the imposition of the judgment of the Emertons and deficiency claim of Colonial Bank. Their impact would result in either an estate that had a debt load equal to its value (with no change to the amounts of the judgments), or the addition of approximately $450,000.00 in debt to the estate.

19. The debts and the secured assets of the plan are as follows:

| Creditor | Collateral | Debt | Value of Property |
|---|---|---|---|
| The Peoples Bank & Trust Company | Five Trailer Parks (Real Property) | $2,844,872.00 | $2,891,826.50 [1] |
| The Peoples Bank & Trust Company | Manufactured Homes | $100,815.58 | $92,000.00 |
| Agri-Credit | Long 45 Tractor | $3,202.98 | $6,260.37 |
| Auburn Bank | 2002 Ford, 1 Ton, 4X4, Truck | $9,714.30 | 21,000.00 |
| The Peoples Bank & Trust Company | Homestead | $125,000.00 (Appx) | 115,420.00 |

20. The debts that were significantly restructured were as follows:

1) SouthTrust Bank - a judgment for $86,164.00. This debt was paid as a result of a new note to The Peoples Bank & Trust Company, secured by the Debtor's homestead. This claim was settled for $42,500.00.

2) The Emerton judgment - the claim as filed lists the claim as $428,960.00. This claim was settled for $100,000.00.

3) Deficiency claim of Colonial Bank - for $55,983.34. This claim was reduced to $0.00.

21. The net amount of savings as a result of the reorganization was $428,607.00, not to mention avoidance of liquidation under a Chapter 7. A minimal amount, represented and secured by the equity in the Debtor's homestead, of additional debt was assumed in the reorganization.

---

[1] In the Debtor's second amended plan, this amount was listed as being a median value between the Debtor's scheduled values and the revenue appraised value.

22. The debts to The Peoples Bank & Trust Company for the trailer parks and manufactured homes, Agri-Credit, and Auburn Bank are all essentially being serviced as they were prepetition.

23. There were no other unsecured claims.

### Issues Presented by the Various Pleadings

1) Can the stay of 11 U.S.C. § 362 apply to one of two joint Debtors;

2) Memory & Day had an obligation to inform the Circuit Court of Lee County of the pending bankruptcy proceeding;

3) Memory & Day had an obligation to inform the bankruptcy court of the pendency of the divorce proceeding in Lee County;

4) The issue of dismissal, versus vacating the confirmation order;

5) The issue of withdrawal of Memory & Day from representation of the Debtors; and,

6) The participation of William Murray, Esq., in representing Mr. Williford.

### 1. 11 U.S.C. § 362 as it Applies to Joint Debtors

Under 11 U.S.C. § 302, a joint case is commenced by filing a single bankruptcy petition under the applicable chapter by an individual that may be a debtor under that chapter <u>and</u> the individual's spouse. A joint petition provides for a debtor and their spouse, as well as with respect to creditors and parties in interest, simplicity of administration of the bankruptcy estate.

By filing a petition in bankruptcy it gives rise to an automatic stay pursuant to Section 362, "which generally prevents **third parties** from taking action that could affect the property of the bankruptcy estate," *In re Jason Pharmaceuticals, Inc.,* 224 B.R. 315, 321 (D.Md.1998) (citing *United States v. Carolina Parachute Corp.,* 907 F.2d 1469, 1471 (4th Cir.1990)),

- 6 -

<u>Chapman v. Coho Resources, Inc</u>  2002 WL 1124768, *6 (N.D.Tex.) (N.D.Tex.,2002)

**[Emphasis added]**

Title 11 U.S.C. § 362(a) automatically stays a wide array of collection and enforcement proceedings against the <u>debtor and his or her</u> property. The stay is self-executing and is effective upon the filing of the bankruptcy petition. The stay is intended immediately to put the debtor and the debtor's property under the protection of the bankruptcy court and its availability is often a significant factor in a debtor's decision to commence a bankruptcy case.

In pertinent part, 11 U.S.C. § 362 of the code, with respect to Automatic stay, states:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the **debtor** that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> (2) the enforcement, against the **debtor** or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate;
>
> (5) any act to create, perfect, or enforce against property of the **debtor** any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
>
> (6) any act to collect, assess, or recover a claim against the **debtor** that arose before the commencement of the case under this title;
>
> (7) the setoff of any debt owing to the **debtor** that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the **debtor**.

The automatic stay is further expanded in cases under Chapter 13 in that it allows the imposition of a stay with respect to codebtors, who are not otherwise parties to the bankruptcy proceeding, 11 U.S.C. § 1301. However, the legislative history for section 1301 shows that it was planned to protect debtors by insulating them from "indirect pressures from their creditors exerted through friends or relatives that may have co-signed an obligation of the debtor", *See* H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 426 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6381, In re Heghmann,  316 B.R. 395, *402 (1st Cir.BAP (N.H.),2004)

Essentially, the stay operates to protect the debtor and property of the estate from commencement or continuance of actions against the Debtor/ Debtor's estate. It does not operate between joint debtors. In fact, in a review of applicable case law, the undersigned was unable to find any materials that address the imposition of the automatic stay by one joint debtor against the other. Finally, in spite of the fact that there was wide knowledge and a clear understanding regarding the domestic court participants of the pending bankruptcy, not once did the participants or their legal counsel advance a suggestion of bankruptcy or otherwise move to stop the domestic action in Lee County.

Assuming, *arguendo*, that the stay applies with respect to and between joint debtors, the automatic stay remains in effect during the pendency of the bankruptcy proceedings unless a party obtained relief from the automatic stay pursuant to 11 U.S.C. § 362(d), In re Berry  340 B.R. 636, *636 (Bkrtcy.M.D.Ala.,2006). Considering the propriety of the filing of a motion for relief by counsel for the Debtors, the motion would

have been filed by counsel in the domestic action on behalf of one of the Debtors at their insistance.

However, if there was a concern as to the automatic stay, and it was held to be applicable to one of the joint debtors, a motion for relief from the stay would allow the Lee County action to proceed to, based on Mr. Williford's civil and criminal actions, a similar and what would fundamentally be the same and predictable result. The court in Moretz, v. Moretz discussing a post petition state divorce proceeding, stated "… are the substantive terms within the realm of likely outcome that would be expected in a case that was actually litigated? When applying this analysis a court should keep in mind that public policy favors the voluntary resolution of disputes and that federalism demands great deference to state proceedings in domestic relations", Pamela S. Moretz, v. Richard Keith Moretz 1996 WL 33401174 (Bankr.S.D.Ga.) (In Re: Richard Keith Moretz, Br. No. 95-41767).

Moreover, the need for this Court to use 11 U.S.C. §362 to protect the bankruptcy estate itself, or the creditors, is not compelling. The case is essentially a "no asset" Chapter 11. After administration, there are no assets available for liquidation and distribution to creditors. Third-party creditors' rights were not invaded by the domestic action of the joint debtors of which Mr. Williford complains. No assets otherwise available for creditors were diverted and all property went back to the Debtors. The only credible § 362 issue relates to protecting Mr. Williford personally from the divorce litigation.

Other circuits have held that a bankruptcy court has "wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay," Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.), 129 F.3d 1052, 1054-55 (9th

Cir.1997) ; Mataya v. Kissinger (In re Kissinger), 72 F.3d 107, 109 (9th Cir.1995). This latitude

and authority includes annulment and can provide retroactive relief.

### 2. Obligation to Inform the Circuit Court of Lee County of the Pending Bankruptcy Proceeding

Before the instant petition was filed and as a condition of representation, the Debtors

were presented with and required to sign a document entitled "Waiver of Representation and

Professional Conflict". This document was executed by the joint Debtors and the signature of

Mr. Williford was notarized.

In pertinent part, the document states:

> 3.  The Willifords have contacted the firm of Memory & Day to file a petition for
> an order of relief under Chapter 11 of the United States Bankruptcy Code.
> However, Memory & Day has expressed the concern of a conflict in representing
> both Mr. and Mrs. Williford in view of the pending domestic action. Also,
> Memory & Day has disclosed its representation of SouthTrust Bank from time to
> time.

> 4.  We have been fully advised of our rights and the conflicts referenced herein.
> We have also been advised that we have the right to employ individual counsel to
> advise us and to protect our interests.

> 5.  However, we have agreed to waive the above referenced conflicts, if such are
> construed or interpreted, now or later, to be considered or treated as conflicts and
> hereby request that said firm proceed, for both of us, to file a petition for an order
> of relief in the United States Bankruptcy Court for the Middle District of
> Alabama.

During the initial stages of representation, Mr. Williford was specifically told that the

firm of Memory & Day represented both Kenneth and Charlotte Williford in the bankruptcy and

as such it could not enter into litigation that pitted one debtor against the other. This was also

specifically represented to Beverlye Brady, Esq. in a letter, January 13, 2004.

However, it appears that this matter is moot in that Mr. Williford, himself, notified the

Lee County court of the existence of a bankruptcy proceeding. In a document entitled "Motion to

Intervene" and filed November 28, 2003, with the Circuit Court of Lee County, in paragraph 10,

he states:

> "Approximately one month before this Courts October 31st 2003 order, Defendant and plaintiff condoned and filed Bankruptcy on said family business and their merital estate.
>
> Pursuant to Title 11. U.S.C. § 362 (a), The filing of a bankruptcy petition stays determination in a divorce case of the interests of the debtor in property of the estate…"  [sic]

The instant motion to intervene was an attempt to substitute a "family relative" in the domestic

action.

Moreover, in a subsequent petition for a Writ of Mandamus filed against the Hon.

William R. Sawyer in the United States District Court for the Middle District of Alabama, Mr.

Williford, in his own words says (page 2 of 5, paragraph 4):

> "October 31, 2003: Despite his awareness of the existence of Petitioner's joint bankruptcy filing, and despite his constructive knowledge of the existence of the "Automatic Stay" mandate contained in 11 U.S.C. § 362, Family Court Judge Lane, on or about the above date, ordered the division of the parties' property…"

Finally, in Mr. Williford's document entitled "Motion to Vacate Confirmation of Plan

Because of Fraud on Court & Request for Relief from Unlawful Division of Estates Assetes"

[sic], Mr. Williford specifically states, "Now, while Charlotte and I were in court, we had told

Judge Lane that we was looking to go into Bankruptcy" (page 2 paragraph 2).

It appears that Mr. Williford, on more that one occasion, brought the bankruptcy to the

attention of the domestic court.

### 3.  Memory & Day had an obligation to inform the bankruptcy court of the pendency of the divorce proceeding in Lee County

Upon entry of the divorce decree, Mr. Williford began a steady and interminable process of appeal. The appeal on the petition for divorce was pending on the date the initial disclosure statement was filed, however, when it was determined that the appeal was to be denied, the disclosure statement was subsequently amended, within nineteen days, to reflect the divorce proceeding. The text of the Amended Disclosure Statement, June 29, 2005, on pages 6 and 7 states, in pertinent part:

> *"In September 2003 Charlotte Williford filed a petition for divorce against Kenneth Williford in the Circuit Court of Lee County, Alabama, Case Number DR 2003-175. Pursuant to a judgment of divorce rendered October 31, 2003 the court awarded to Charlotte Williford all property of the estate. This matter was appealed by Kenneth Williford to the Alabama Court of Civil Appeals, Case Number 2030320, and a rehearing was denied, June 17, 2005." [emphasis added]*

As with all other filings, a copy of the disclosure, plan and their subsequent amendments, was provided to Mr. Williford. In addition, copies were served (Fed. R. Bankr. P. 9036) and available to Mr. Murray on PACER and it appears that he has registered his email to receive noticing. **This notice was posted and made available to the parties and all interested persons seven months prior to confirmation.** Not one of the instant matters or issues was raised by Messrs Williford and Murray during the intervening seven month period and prior to confirmation.

In addition, the existence of the divorce proceeding was repeatedly discussed in open court many times as it applied to the various matters associated with this bankruptcy. This issue was discussed, although not formally filed, with the court well before the amended disclosure statement was filed.

### 4. The Issue of Dismissal

11 U.S.C. § 1112 (b) provides that:

> "Except as provided in subsection (c) of this section, on request of a <u>party in interest</u> or the United States trustee or bankruptcy administrator, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including-"

Rule 1017, Dismissal or Conversion of Case; Suspension, provides that:

> (a) Voluntary dismissal; dismissal for want of prosecution or other cause.
>
> Except as provided in § 707(b), 1208(b), and 1307(b) of the Code, a case shall not be dismissed on motion of the petitioner or for want of prosecution or other cause or by consent of the parties prior to a hearing on notice as provided in Rule 2002.

and Rule 9014. Contested Matters, provides that:

> (a) Motion. In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court directs otherwise.

It was Charlotte Williford's desire to dismiss the instant bankruptcy case. As a joint Debtor and party in interest, it is Ms. Williford's right to request dismissal, regardless of what Mr. Williford has filed or currently suggests. In fact, it was counsel's interpretation that Mr. Williford suggested a dismissal in his initial filing.

Contrary to Mr. Murray and Mr. Williford's assertions about the necessity of keeping the plan in force, all debts are protected by their underlying loan agreements and/or new notes and security agreements. In fact, the case was due for dismissal or a final decree. Substantial consummation had begun. There is nothing that will occur to prejudice the joint debtors or the creditors of this bankruptcy estate by dismissal.

### 5. The Issue of Withdrawal of Memory & Day from Representation of

**the Debtors**

Mr. and Ms. Williford signed a notarized agreement with Memory & Day entitled "Waiver of Representation and Professional Conflict", October 3, 2002. The agreement expresses concern about the possible conflict of interests with respect to the domestic action that was pending in the Circuit Court of Lee County. It also summarizes the status of the lawsuit with the Emertons. In pertinent part, the agreement specifically addressed the following issues:

1) The right of either party to seek independent counsel

2) A waiver of all conflicts… "if such are construed or interpreted, now or later, to be considered or treated as conflicts…"

3) Disengagement by Memory & Day if a conflict arises.

Upon the filing of the motion to vacate by Mr. Williford and Ms. Williford's desire to dismiss the case, a genuine dispute has developed between the Joint Debtors. In their waiver of representation and professional conflict, the Willifords agreed that there was a concern for a potential "conflict in representing both Mr. and Ms. Williford in view of the domestic action". Pursuant to paragraph 7, the agreement in pertinent parts states that… "at the point and time there is disagreement or a conflict arises, the parties hereto may engage individual counsel and the firm of Memory & Day will immediately resign."

The firm of Memory & Day filed a motion to withdraw representation, based upon the representations, conditions, and agreement of the Debtors as contained in the waiver as well as Mr. Williford's *pro se* filings that are definitely at odds with the representation of Memory & Day and the rules of professional conduct.

Further, the firm of Memory *&* Day, and its lawyers, find it rather incredible that Mr. Williford alleged that he received less than professional service[2] when the Emerton litigation was settled and when approximately $500,000.00 in debt was forgiven or discharged.

### 6. Participation of William Murray, Esq., in representing Mr. Williford.

The participation of Mr. Murray and pleadings in this matter is troubling at best. Its source seems to be a refusal on the part of Ms. Williford to make any future payments to Mr. Murray or allow further representation of the estate and the protection of his fees.

Of special additional concern is the ex parte meeting between Mr. Murray and Mr. Williford, July 28, 2006. It is now apparent that the withdrawal of Memory *&* Day from the bankruptcy was timely and appropriate in that Mr. Murray has taken on full representation of Mr. Williford to the exclusion of Ms. Williford, although he had previously represented both Debtors, and there is a genuine issue of disagreement between the joint debtors. It is further believed that Ms. Williford has not consented to this conflict of representation or signed any waiver. Moreover, Mr. Murray seeks to represent Mr. Williford while Mr. Williford continues to file documents with the court *pro se*.

Finally, Mr. Murray alleges that there is an agreement with respect to his representation of the Debtors existing between himself and the firm of Memory *&* Day. This is factually incorrect. There is no contractual relationship or privity between Memory *&* Day, its members, and Mr. Murray whatsoever.

---

2 Motion to Amend Memorandum, paragraph 3, "M&D should not be allowed to withdraw from this case, that , they (M&D) have managed to screw up".

**CONCLUSION**

Based upon statements made in open court, filings of Mr. Williford, and documents filed on behalf of the Debtors in this Chapter 11 bankruptcy, more than sufficient notice was filed with respect to both the Lee County domestic action and the bankruptcy in the Middle District of Alabama. The idea that there was a "fraud on the court" is simply untrue and not supported by the documents filed.

This case has been pending for over two years. In discussions with the Bankruptcy Administrator it was suggested that because of this extended time, the case be dismissed rather than kept open and the court petitioned for final decree. The Debtors will also have to effectively resolve the issues that arise from the domestic relations case before this matter can continue.

Because of the disagreement between the joint debtors, the firm of Memory & Day can no longer represent both Mr. Williford and Ms. Williford. The firm of Memory & Day respectfully requests that it be allowed to withdraw from the instant Chapter 11 bankruptcy. If the Debtors so desire, and the court determines that dismissal is not proper at this time, they are welcome to employ the services of Mr. Murray or other substitute counsel.

Respectfully submitted September 11, 2006.

MEMORY & DAY

By:    /S/ James L. Day
James L. Day
ASB-1256-A55J

Von G. Memory
ASB-8137-071V

OF COUNSEL:

Memory & Day
Post Office Box 4054
Montgomery, AL 36103-4054

Tel (334) 834-8000
Fax (334) 834-8001

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the foregoing document on the following, by:

☑ placing same in the United States Mail, postage prepaid, and properly addressed

☑ E-mail or ECF (Pursuant to Fed. R. Bankr. P. 9036)

☑ facsimile

☐ hand delivery

☐ delivered in open court

on September 11, 2006

Teresa Richards Jacobs
U. S. Bankruptcy Administrator
1 Court Sq Ste 221
Montgomery, AL  36104-3538

William R. Murray Esq.
Murray Ln.
Northport, AL  35475-4235

Charlotte Williford
815 Crawford Road
Opelika, AL  36804

Kenneth Williford
AIS 229597 C-1 B-94
W. Jefferson Correctional Facility
100 Warrior Lane
Bessemer, AL  35023

/S/ Von G. Memory
OF COUNSEL

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re                                          Case No. 03-81486-WRS
                                               Chapter 11
CHARLOTTE TERESA WILLIFORD
KENNETH WILLIFORD,

       Debtors

## <u>ORDER</u>

    This Chapter 11 case came before the Court for hearing on September 12, 2006.  Present in person were Charlotte Williford, William R. Murray, Von G. Memory, James L. Day and Bankruptcy Administrator Teresa Jacobs.  Kenneth Williford appeared telephonically.

    It is ORDERED, that Kenneth Williford may file a memorandum not later than October 12, 2006.  Charlotte Williford may file a response not later than November 13, 2006.  The Court will take all pending motions and filings under advisement on November 13, 2006.

    Done this 20th day of September, 2006.

                         /s/ William R. Sawyer
                         United States Bankruptcy Judge

c: Von G. Memory, Esq.
   Charlotte Williford, Debtor
   William R. Murray, Esq.
   Kenneth Williford, *229597 - B - 38, 100 Warrior Lane, Bessemer, AL 35023*

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

IN RE:

CHARLOTTE TERESA WILLIFORD                    Chapter 11
KENNETH WILLIFORD

DEBTORS                                        Case No. 03-81486-WRS

### TRANSMITTAL OF PAPERS

Comes now Teresa R. Jacobs, bankruptcy administrator for this district, and transmits

certain papers which would be properly filed with the Clerk of the Bankruptcy Court pursuant to

Fed. R. Bankr. Proc. 5005(c) to wit:

A document styled "Reply Response To, Response by Memory & Day To Certain

Documents Filed by Debtor, Kenneth Williford, and William Murray and Accusation Contain

Therein."

The undersigned hereby certifies that the above referenced document was delivered at the

mailing address for the U. S. Bankruptcy Administrator via U. S. Mail on October 10, 2006.


Teresa R. Jacobs
United States Bankruptcy Administrator

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served upon the
parties listed below by regular U. S. Mail, postage prepaid and addressed as indicated, this 17th
day of October 2006.

Teresa R. Jacobs

Kenneth Williford
AIS #229597-B-38
100 Warrior Lane
Bessemer, AL 35023

Charlotte T. Williford
815 Crawford Road
Opelika, AL 36804

Von G. Memory
Memory & Day
P. O. Box 4054
Montgomery, AL 36101

William R. Murray
Attorney at Law
Murray Lane
Northport, AL 35475-4235





KENNETH WILLIFORD
AIS #289897-8-38
100 WARRIOR LANE
BESSEMER, AL, 35023

TERESA RICHARDS JACOBS
U.S. BANKRUPTCY ADMINISTRATOR
I COURT SQ STE 222
MONTGOMERY, AL, 36104-3538

3610433544 C006

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF ALABAMA EASTERN DIVISION

IN RE: CHARLOTTE TERESA WILLIFORD    *    CASE NO. 03-81486 WRS
       KENNETH WILLIFORD              *    CHAPTER 11
       DEBTORS                        *

FILED
OCT 10 2006
U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

REPLY RESPONSE TO, RESPONSE BY MEMORY & DAY TO CERTAIN
DOCUMENTS FILED BY DEBTOR, KENNETH WILLIFORD, AND
WILLIAM MURRAY AND ACCUSATION CONTAIN THEREIN

COMES NOW KENNETH WILLIFORD (KW), AND FOR REPLY
RESPONSE TO THE FOLLOWING:

1) ON PAGE 2, (1), MR (M&D) ON THEIR RESPONSE TO THIS
HONORABLE COURT, NEEDS TO GET THEIR FACTS STRAIGHT. IT
WAS A FOURTEEN YEAR OLD GIRL, NOT A THIRTEEN, THAT I
WAS SUPPOSELY TO HAVE HAD ORAL SEX AND VAGINA SEX,
NOT ANAL SEX, WITH. (M&D) ARE ALREADY ATTEMPTING
TO MAKE BAD SITUATION LOOK WORSE THAN WHAT IT
REALY IS OR WAS.

2). ON PAGE 2, NOS. (2), (3), (4), (5), (6), AND ON PAGE 3, (7)
ARE ALL TRUE

3). ON PAGE 3, NO. (8) THE FACTS ARE, THAT, MARGARET BROWN
WITHDREW AS COUNSEL ON OCT, 22, 2003, AND NO LONGER
REPRESENTED ME AFTER THAT POINT AND TIME, THE LEE COUNTY
CIRCUIT COURT GRANTED THE WITHDREWAL ON DEC, 24, 2003.

(1)

4). ON PAGES 3, 4, No.'S (9),(10),(11),(12),(13), AND (14) ALL OF THESE ARE ALSO TRUE.

5). ON PAGE 4, NO.(15) IS PART TRUE AND PART FALSE. "IT WAS UNEQUIVOCALLY STATED, ON MORE THAN ONE OCCASION, THAT (M&D) WOULD NOT GIVE ADVICE, RENDER AID, OR OTHERWISE PARTICIPATE IN THE PENDING DOMESTIC ACTION". EVEN THO (M&D) DID ADISE ME (RW), NOT TO TURN IN OR FILE FOR THE CHAPTER 11 §362 (d) FOR THE DIVISION OF PROPERTY. WOULD THIS NOT BE CONSIDERED RENDING AID IN (CW) BEHALF? WHEN (M&D) ADICE TO (RW) WAS FOR ME NOT TO FILE THIS §362 (d) UNTIL AFTER THE PLAN WAS CONFIRMED.

HOWEVER, THIS CAN NOT BE AN EXCUESS FOR (M&D) NOT DOING THEIR DUTIES AS BANKRUPTCY ATTORNEY'S. THE FACTS ARE, WHEN (CW) AND (RW) FILED BANKRUPTCY, OUR ATTORNEYS (M&D) WERE SUPPOST TO HAVE GOTTEN IN TOUCH WITH "EVERY" BODY, NOT JUST WHO THEY CHOOSE TOO. THE CIRCUIT COURT JUDGE SHOULD HAVE BEEN NOTIFIED OF THE BANKRUPTCY, AS WELL AS THIS HONORABLE BANKRUPTCY COURT SHOULD HAD BEEN NOTIFIED ABOUT THE ILLEGAL PROPERTY DIVISION, FROM THE CIRCUIT COURT.

FURTHERMORE, THERE HAD BEEN SEVERAL DISCUSSIONS, NOT ABOUT (M&D) REPERSENTATION, BUT ABOUT THE AUTOMATIC STAY, AND THE IMPACT ON THE DOMESTIC RELATIONS CASE AS IT APPLIED TO THE BANKRUPTCY. (M&D) RESPONSE IN SO MANY WORDS WOULD BE FOR ME (RW) NEED'S TO BACK OFF UNTIL THE PLAN WAS CONFIRMED.

(2)

6). ON PAGE 4, No. (16) THIS IS TRUE, I DID RECEIVE THESE DOCUMENTS OF JUNE 29, 2005 (ECF DOC 193) AND JULY 5, 2005 (ECF DOC. 195). BUT, AFTER MR. DAYS ADICE TO ME ON JUNE 8, 2005, THAT I SHOULDN'T ROCK THE APLE CART AND, THAT, I SHOULD WAIT UNTIL AFTER JUDGE SAWYER CONFIRMED THE PLAN BEFORE I ASK FOR DIVISION OF THE PROPERTY.

7). ON PAGE 4, No. (17) THIS IS COMPLETLY FALSE.
IN FACT THE MOBILE HOME PARKS ALONE VALUE FOR MORE THAN $4,500,000.00 MILLION DOLLARS. (M&D) WERE TOLD BY ME (RW) THAT THE FIGURES THAT THEY WERE WERE WRONG. MR. DAY, SAYS TO ME AND I QOUTE HIM "THIS IS NO TIME TO BRAG ABOUT WHAT YOU HAVE", I SAID TO DAY, THAT, I WASN'T BRAGGING THAT IT WAS FACT. SO WHAT (M&D) AND (CW) DECIDED TO DO WAS TO USE THE APPRAISAL FROM THE TAX COLLECTOR OFFICE WHICH WOULD HAVE BROUGHT THE VALUE TO THE FIGURES THAT THEY SHOWED, "MAYBE". THIS SHOULD BE NO MORE THAN COMMON SENSE, I (RW) WOULD BE CONSIDERED A FINANCAL WIZARD, IF, I COULD TALK BANKERS INTO FINANCEING PROPERTY FOR MORE THAN WHAT THE PROPERTY IS WORTH, AND I CAN INSURE THIS COURT OR ANY OTHER COURT, I'M NO FINANCAL WIZARD. IF, THIS HONORABLE COURT WANTS PROOF OF THE ABOVE, ALL THIS COURT WOULD HAVE TO IS SUBPONEA THE BANKS RECORDS ON SAID PROPERTY.

8). ON PAGE 5 NO. (18), (RW) IS NOT COMPLETLY SURE JUST WHAT (M&D) ARE TRYING TO SAY HERE. BUT THIS I AM SURE OF, I WAS ADAMANT ABOUT COLONIAL BANK. BECAUSE, COLONIAL BANK HAD REPOED FOUR PIECES OF EQUIPMENT, THAT, I ONLY OWED $75,000.00 DOLLARS ON, RIGHT AFTER I WAS INCARCERATED, AND SOLD THE BEST PIECE, A D8R BULL DOZER, WHICH WAS VALUED AT $60,000.00 DOLLARS, AND WAS SOLD FOR $20,000,00 AND THEN COLONIAL SAID, I OWED THEM $55,000.00 DOLLARS. I (RW) TOLD (M&D), BY NO MEANS SHOULD THEY GET ONE DIME, AND THEY DIDN'T.

9) ON PAGE 5, NO. (19), THIS SHOWS THE VALUE OF TRAILER PARKS (TP), MANUFACTURED HOMES (MH), TRACTOR, 1 TON 4×4 TRUCK, AND OUR HOMESTEAD (HK). LETS GO DOWN THE LIST AS (M&D) THINK.

| CREDITOR | COLLATERAL | DEBT | VALUE OF PROPERTY |
|----------|-----------|------|-------------------|
| PEOPLES B&T | FIVE (TP.) | $2,844,872.00 | 2,891,826.50 |
| TRUE | TRUE | TRUE | FALSE |

THE BANKS APPRAISAL'S ARE MORE IN LINE WITH $4,500,000.00 DOLLARS THAN THEY ARE WITH $2,9 MILLION DOLLARS. (M&D) KNEW THIS, I TOLD THEM, THEIR RESPONSE WAS, "DON'T BRAG!" (CW) KNEW THIS, SHE WAS WITH ME AT THE BANKS AND THE CLOSINGS, AND CO-SIGNED ON THE PROPERTYS. I THINK, NOT FOR SURE THO, THAT, (M&D) MAY HAVE TALKED (CW) INTO DEFRAUD-ING THE COURTS ON THIS AND THE FOLLOWING ISSUES.

| PEOPLES B&T | (MH) | $100,815.58 | $92,000.00 |
|-------------|------|-------------|------------|
| TRUE | TRUE | NOT FOR SURE, BUT THINK SO | FALSE |

FIRST OF ALL, THE MOBILE HOMES THAT WE OWN, WERE NOT ALL PUT BEFORE THIS HON. COURT. IN OAK-HAVEN M.H.P. ALONE, WE HAD SIX DOUBLE WIDES, COST AVERAGE ON THESE WERE $15,000.00 A PIECE, WHICH WOULD TOTAL TO $90,000.00 DOLLARS, AND THEN THERE WERE AT LEAST EIGHT SINGLE WIDES, COST AVERAGE ON THESE WERE $10,000.00 DOLLARS, WHICH WOULD TOTAL TO $80,000.00 DOLLARS.

NOW THE INSURANCE CO. CAME IN AND MADE US INSURE THESE HOMES AT THEIR VALUE, NOT WHAT THEY COST US TO BUY, THE INSU-RANCE CO. INSURED THE SIX DOUBLE WIDES FOR ABOUT $243,000.00 DOLLARS, WHICH WAS ABOUT THE VALUE OF THESE SIX HOMES. THE INSURANCE CO. ALSO INSURED THE EIGHT SINGLE WIDES FOR ABOUT $150,000.00 DOLLARS, WHICH WAS THE TRUE VALUE OF THESE EIGHT HOMES. I THINK THAT THERE WERE MORE HOMES THAN THIS IN OAK-HAVEN M.H.P

(4)

| CREDITOR | COLLATERAL | DEBT | VALUE OF PROPERTY |
|---|---|---|---|
| PEOPLES B&T | FIVE (MTH) | $38,000.00 | $112,000.00 |
| TRUE | TRUE | | |

THESE HOMES ARE IN "FIELD'S" M.H.P. WHICH DON'T SEEM TO BE PART OF WHAT HAS BEEN TURNED IN TO THIS HON. COURT. THE COST OF THESE HOMES ARE ABOUT $38,000.00 DOLLARS, WHICH THE INSURANCE CO. HAD INSURED FOR ABOUT $112,000.00 DOLLARS, WOULD BE THE TRUE VALUE OF THESE HOMES.

IN "BEN-MOR VILLAGE" M.H.P., THERE ARE 12 MOBILE HOMES, TWO DOUBLE WIDES, AND 10 SINGLE WIDES WITH A TOTAL COST OF "$0" ZERO DOLLARS AND INSURED VALUE OF ABOUT $150,000.00 DOLLARS

IN "HICKORY HAVEN" M.H.P., THERE ONLY TWO SINGLE WIDES, WITH A COST OF $16,000.00 DOLLARS, AND INSURED VALUE OF ABOUT $50,000.00 DOLLARS.

SO WHAT WE HAVE HERE IS A TOTAL COST OF $224,000.00 DOLLARS WITH AN INSURED VALUE OF $205,000.00 DOLLARS. THIS IS A CONSIDERABLE LARGER AMOUNT THAN WHAT WAS GIVEN TO THIS HON. COURT. WHICH WAS, DEBT $100,815.58 DOLLARS AND VALUE OF $92,000.00 DOLLARS. I COULD BE WRONG ABOUT SOME OF THIS, BUT I THINK THAT THERE ARE MORE HOMES THAN WHAT I HAVE SHOWN TO THIS HON. COURT.

| AGRI-CREDIT | LONG 45 TRACTOR | $3,202.98 | $6,360.87 |
|---|---|---|---|
| TRUE | TRUE | TRUE | FALSE |

THIS TRACTOR WAS BOUGHT FOR ABOUT $13,000.00 DOLLARS BACK IN MARCH, OR APRIL OF 2003. THE TRACTOR WAS BRAND NEW AT THAT TIME. THERE IS NO WAY THAT THIS TRACTOR CAN DROP TO LESS THAN HALF OF ITS ORIGINAL VALUE IN LESS THAN THREE YEARS.

(5)

| CREDITOR | COLLATERAL | DEBT | VALUE OF PROPERTY |
|---|---|---|---|
| AUBURN BANK TRUE | 2008 FORD, 1 TON 4X4, TRUCK TRUE | 9,714.80 TRUE | $21,000.00 TRUE |
| PEOPLES B & T DON'T KNOW NOW | (H5) TRUE | $125,000.00 FALSE | $115,420.00 FALSE |

WHEN (KW) WAS NOT INCARCERATED, THE CREDITOR TO OUR (H5) WAS SOUTHTRUST BANK, NOT PEOPLES BANK. WE OWED $97,000.00 DOLLARS, NOT $125,000.00 DOLLARS, AND THE VALUE WOULD BE MORE LIKE $300,000.00 DOLLARS PLUS, NOT $115,420.00 DOLLARS. WHEN (KW) BUILT THE HOUSE BACK IN JUNE, OF 1995, IT COST ME $125,000.00 TO BUILD IT MYSELF. IF I HAD, HAD A CONTRACTOR TO BUILD IT FOR US, IT WOULD HAVE COST ABOUT $250,000.00 DOLLARS TO BUILD BACK IN 1995. FRIST, I HAVE NEVER HEARD 3,500 SQ. FT. BRICK HOME DROPING IN VALUE, THIS IS NOT A (MH). IT IS A 3,500 SQ. FT. BRICK HOME WITH A IN GROUND SWIMMING, A FISHING POND, ALL SITTING ON TEN ACRES OF LAND INSIDE THE CITY LIMITS. THERE IS NO WAY THAT THIS HOME COMES CLOSE TO THE VALUE OF $115,420.00 DOLLARS ARE, THAT, WE OWE MORE THAN THE VALUE OF OUR HOME.

I WROTE TO (MH D) ABOUT SUCH AS THIS AND TOLD THEM THAT THE FIGURES WERE WRONG IN A LETTER, I RECEIVED NO RESPONSE BACK FROM THEM. WHEN I DID RECEIVE A LETTER FROM (MH D), IT WAS AS IF I HAD SAID NOTHING AT ALL TO THEM ABOUT THIS, NO REPLY WHAT SO EVER.

10). ON PAGE 5, NO. (20), (1) THIS IS TRUE, (2) THIS IS TRUE, AND (3) I REFER THIS HONORABLE COURT BACK TO PAGE 3 OF THIS RESPONSE

11). ON PAGES 5, 6, NO. (21), (22) AND (23) ARE ALL TRUE. IT SEEMS (MH D) WANTS A PAT ON THE BACK, "JOB WELL DONE" GUY'S.

(6)

12), ON PAGES 6 THRU 16, I REFUESS TO ARGUE ALL THESE PAGES IN THIS RESPONSE BACK TO MR. (M&D) RESPONSE. I ASK THIS COURT TO LOOK AT THEIR RESPONSE. THESS ATTORNEYS ARE STILL SUPPOST TO BE REPRESENTING BOTH (RW) AND (CW) AT THIS POINT. EVERY THING THAT (M&D) SAY IS NEGATIVE TOWARD (RW) AND POSITIVE TOWARD (CW). THIS ALONE IS NOT RIGHT. I HAVE ALWAYS BEEN THE MAIN SIGNATURE ON ALL OF OUR NOTES AND (CW) WAS JUST LIKE A CO-SIGNER ON ALL THE NOTES TO THE CREDITORS, THAT, IS, ALL THEM, THAT SHE WAS ON. RIGHT UP TO THE TIME THIS HONORABLE COURT CONFIRMED THIS BANK-RUPTCY PLAN, PEOPLES B&T KELP SENDING ME (RW) THE NOTES TO BE REVIEWED EVERY TIME AS THE MAIN SIGNATURE TO THE NOTES, NOT UNTIL ABOUT SIX MONTHS BEFORE OUR BANKRUPTCY PLAN WAS CONFIRMED DID THIS STOP. SO I GUESS YOU COULD SAY, THAT, EVEN THO (M&D) ARE TRYING TO ARGUE THEIR RESPONSE ON BEHALF OF (CW), IN REALITY THEIR ARGUEMENT IS IN MY FAVOR.

13), ON PAGE 8, SECOND PARAGRAPH THIS IS FALSE. IT'S TRUE THAT WIDE KNOWLEDGE OF THE BANKRUPTCY WAS GOING ON BY ALL FOUR ATTORNEYS. TWO OF THE ATTORNEYS OR, (M&D), ONE WAS "MARGARET BROWN" (MB) WHICH WAS MY DIVORCE ATTORNEY AT THE TIME AND SHE WITHDREW AS COUNSEL FROM ME ON OCT, 22, 2003, BY LETTER, THEN THEIR WAS "BEVERLY BRADY" (BB) WHICH WAS (CW) DIVORCE ATTORNEY. WHY WOULD SHE SAY ANYTHING, IT APPEARS SHE WROTE UP THE DIVORCE DEGEE, AND HAD JUDGE LANE GIVE THEM EVER-THING THAT THEY ASK FOR.

FURTHERMORE, IN THE THIRD PARAGRAPH ON PAGE 8, I HAD DISCUESSED THE 11 U.S.C. § 362(d) FOR THE AUTOMATIC STAY WITH MR. DAY AND WAS TOLD NOT TO ROCK THE APPLE-CART, THAT, I SHOULD WAIT UNTIL THIS HON. COURT CONFIRMED THE PLAN, THAT, I WAS GOING TO MESS EVERY-THING UP, AND THAT JUDGE SAWYER WOULD PULL US OUT OF

(7)

CHAPTER 11 AND PUT US INTO CHAPTER 7, AND LIQUIDATE ALL OUR ASSETS. THIS IS THE ONLY REASON I DID NOT PERSONALLY FILL FOR THE § 362(d) BEFORE THE PLAN WAS COMFIRMED, WAS ON THE ADVICE OF ATTORNEYS (MLD) TO WAIT UNTIL AFTER THE PLAN WAS COMFIRMED.

14). ON PAGE 10, NO. (2), (3), (4) AND (5)

     EVEN THO WHAT IS SAID HERE ABOUT THE COMFLICT AND WAIVERS MAY BE TRUE, THIS DOES NOT MEAN THAT (MLD) COULD OR SHOULD NEGATE THEIR DUTIES AS BANKRUPTCY ATTORNEYS AND NOT INFORM THE LEE COUNTY CIRCUIT COURT OR REFUSE TO INFORM THIS HONORABLE COURT ABOUT HOW THE CIRCUIT COURT HAD, MADE THIS ILLEGAL DIVISION OF PROPERTY WHILE IN AN "AUTOMATIC STAY" WITH THE U.S. BANKRUPTCY COURT.

WITHOUT ARGUING ANY FURTHER, THE FACTS ARE AS FOLLOWS:

    I). (CW) AND (RW) WENT TO DIVORCE COURT ON SEPT, 22, 2003

    II). ON OCT, 7, 2003, (CW) AND (RW) FILED JOINT BANKRUPTCY AS HUSBAND AND WIFE, AND A AUTOMATIC STAY WAS IN ACTED.

    III). ON OCT, 31, 2003, JUDGE LANE OF THE LEE COUNTY DIVORCE COURT, MADE DIVISION OF PROPERTY AND WENT TO THE EXTREMES TO BE UNFAIR AND UNJUST ABOUT THE DIVISION.

    IV). ATTORNEYS (BB), (MB), AND (MLD) ALL KNEW ABOUT ALL OF THE ABOVE, AND REFUSSED TO CONTACT OR INFORM THE LEE COUNTY CIRCUIT COURT.

(8)

OR THE UNITED STATES BANKRUPTCY COURT. EVEN AFTER BEING CONFRONTED ABOUT THE ISSUE.

V). EVEN THO I (RW) HAD ON NOV, 18, 2003, FILED A MOTION TO INTERVENE, IT APPEARS THAT JUDGE LANE OF THE CIRCUIT COURT IGNORED (RW) MOTION TO INTERVENE, THINKING THAT I STILL HAD COUNSEL REPRESENTATION THOUGH (MB). BECAUSE ON THE "CASE ACTION SUMMARY SHEET" IT SHOWS THAT, THE CIRCUIT COURT DIDN'T RECEIVE NOTICE OF (MB) WITHDREWAL UNTIL DEC, 4, 2003, AND WAS GRANTED ON DEC, 24, 2003. WHEN IN FACT, (RW) RECEIVED NOTICE OF (MB) WITHDRAWAL BY LETTER ON OCT, 22, 2003, WHICH WAS THE REASON FOR (RW) FILING A MOTION TO INTERVENE ON NOV, 18, 2003, PRO-SE.

PETITIONER (RW) CAN NOT MATCH WITS WITH THESE ATTORNEYS. FIRST, I AM NOT EDUCATED IN THE ARTS OF LAW. MY EDUCATION BARELY GETS ME OUT OF HIGH SCHOOL. THERE ARE ONLY TWO THINGS I KNOW FOR SURE. FIRST, IS THAT JESUS CHRIST IS MY LORD AND SAVIOR, AND SECONDLY, I DO KNOW "RIGHT FROM WRONG", AND WHAT HAS HAPPENED IN THIS CASE WAS AND IS STILL WRONG. (RW) ESTATE HAS PAID ATTORNEYS TO PROTECT ME AND MY ESTATE. IN RETURN WHAT HAPPENS, IS (RW) WRONGFUL ADICE, SO (MT D) CAN RENDER AID TO (RW), AND THEY TRY TO PUSH ME UNDER THE RUG TO KEEP MY MOUTH CLOSED.
    FURTHER MORE; THE LEE COUNTY CIRCUIT COURT HAS UNFAIRLY AND UNJUSTLY, AND UNLAWFULLY DIVIDED MY ESTATE WHILE UNDER A "AUTOMATIC STAY". IT SEEMS THAT THE LEE COUNTY CIRCUIT COURT SYSTEM WANTS TO PUNISH (RW) AS MANY TIMES AND BAD AS THEY POSSIBLY CAN, FOR A CRIME THAT HE DIDN'T COMMITT THE FIRST

(9)

TIME. THIS IS WHY (KW) COMES TO THIS HONORABLE
COURT FOR RELIEF, PRAYING THAT THIS HONORABLE COURT
WILL MAKE FAIR AND JUST, DIVISION OF MARITAL
PROPERTY AND BUSINESS PROPERTY.

THIS LETTER IS JUST A REPLY RESPONSE TO (MID)
RESPONSE LETTER ON SEPT, 11, 2006, THIS IS NOT (KW)
MEMORANDUM.

RESPECTFULLY SUBMITTED

KENNETH H. WILLIFORD

DONE ON THIS DATE OCT, 5, 2003

(10)

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT I HAVE SERVED A COPY OF THE FOREGOING DOCUMENTS ON THE FOLLOWING BY PLACING SAME IN THE UNITED STATES MAIL, POSTAGE PREPAID ADDRESSED ON OCT, 5, 2006

TERESA RICHARDS JACOBS
U.S. BANKRUPTCY ADMINISTRATOR
1 COURT SQ STE 221
MONTGOMERY, AL 36104-3538

CHARLOTTE T. WILLIFORD
815 CRAWFORD ROAD
OPELIKA, AL, 36804

MEMORY, DAY, & AZAR
469 S. McDONOUGH STREET (36104)
MONTGOMERY, AL,

RESPECTFULLY SUBMITTED
KENNETH H. Williford

RECEIVED
OCT 1 0 2006
U.S. BANKRUPTCY ADMINISTRATOR
MIDDLE DISTRICT OF ALABAMA



FILED

OCT 1 7 2006

U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

AVSO352

DR 2003 000175.00
JUDGE: RICHARD D. LANE

```
|----------------------------------------------------------------------|
|                   ALABAMA JUDICIAL DATA CENTER                        |
|                  CASE ACTION SUMMARY CONTINUATION                     |
|                          CIRCUIT CIVIL                                |
|----------------------------------------------------------------------|
|   IN THE CIRCUIT  COURT OF    LEE    COUNTY                           |
|                                                                      |
|    CHARLOTTE D WILLIFORD  VS  KENNETH H WILLIFORD                     |
|   FILED:  04/09/2003 TYPE:  CONTESTED DIVORCE    TYPE TRIAL:  NON-JURY  TRACK: |
|**********************************************************************|
|  DATE1:              CA:                   CA DATE:                   |
|  DATE2:              AMT:         $.00  PAYMENT:                      |
|**********************************************************************|
```

8-11-03    At the appointed time Hon. Beverlye Brady appeared together with her client,
Hon. Margaret Brown was excused, however, the Court did not receive any
instructions on this case, therefore, it is being set for trial on September 22, 2003
at 8:00 A.M. by separate order. Upon request of any of the counsel for the
appearance of Mr. Williford from the Department of Corrections the Court will
consider the same upon a motion being filed with an order presented for
transportation to the trial. Clerk to mail a copy of this to all respective parties
and/or counsel    RD2    FILED IN OFFICE - AUG 1 3 2003

8/13/03   ORDER SETTING CASE FOR TRIAL   9-22-03 @ 8am

9/19/03   ORDER GRANTING MOTION FOR TRANSPORT

10/31/03   JUDGMENT OF DIVORCE

STATE OF ALABAMA
LEE COUNTY
I, CORINNE T. HURST, do hereby certify that this is a
true and correct copy of the original on file in this office.
Witness my hand and seal of Court this 12 day
Sept. 2003
CORINNE T. HURST, Circuit Clerk

CAG   04/09/2003




AVSO352                                                    DR 2003 000175.00
                                              JUDGE: RICHARD D. LANE

```
-------------------------------------------------------------------
              ALABAMA JUDICIAL DATA CENTER
              CASE ACTION SUMMARY CONTINUATION
                      CIRCUIT CIVIL
-------------------------------------------------------------------
    IN THE CIRCUIT  COURT OF    LEE    COUNTY                      |
    CHARLOTTE D WILLIFORD   VS   KENNETH H WILLIFORD
    FILED:  04/09/2003 TYPE:  CONTESTED DIVORCE    TYPE TRIAL:  NON-JURY  TRACK:
*******************************************************************
   DATE1:            CA:                  CA DATE:
   DATE2:            AMT:         $ .00   PAYMENT:
*******************************************************************
```

6-3-03   CERTIFICATE FOR PLAINTIFF/~~DEFENDANT~~ ATTENDING
~~TRANSPARENTING SEMINAR~~

6-13-03    At the appointed time there appeared Hon. Thomas Jones together with his client,
Plaintiff, and Hon. Margaret Brown filing an appearance and a motion to set aside
application for default herein and her client, Kenneth H. Williford. The Court has
considered the oral arguments on the same and is of the opinion that the motion to
set aside the application for default is well taken and should be granted, and be
and hereby is granted and the application for default is set aside. Defendant is
allowed fourteen (14) days in which to file an answer in this matter and leave is
granted to that effect to Hon. Margaret Brown. This case is placed on the docket
for July 14, 2003 at 8:00 o'clock A.M. The parties are noticed that this case will
probably be set sometime in the middle or latter part of August or early
September, 2003, and the Court is ordering that the parties conduct discovery
accordingly. Court reserves the right to order mediation in this case.

*RL*                                        FILED IN OFFICE   JUN 1 8 2003

6/18/03   APPEARANCE OF COUNSEL & MOTION TO SET ASIDE APPLICATION FOR DEFAULT

6-1-03   Notice of Appearance - Hon. Beverye Brady

7-14-7   Case continued, reset for 8-11-2003
          at ____ o'clock ____ in the Family Courtroom
          Clerk to send notices to all parties.

          Leave right to mediate   *RL*   FILED IN OFFICE   JUL 1 5 2003

                                    ~~FILED IN OFFICE   JUL 1  2003~~

7-7-03   DEFENDANT ANSWER

CAG    04/09/2003

 

```
| AVSO351                                              DR 2003 000175.00 |
|                                                                        |
|                                           JUDGE: RICHARD D. LANE       |
|------------------------------------------------------------------------|
|                    ALABAMA JUDICIAL DATA CENTER                        |
|                        CASE ACTION SUMMARY                             |
|                          CIRCUIT CIVIL                                 |
|------------------------------------------------------------------------|
|   IN THE CIRCUIT  COURT OF    LEE        COUNTY                        |
|                                                                        |
|   CHARLOTTE D WILLIFORD  VS  KENNETH H WILLIFORD                       |
|   FILED:  04/09/2003 TYPE: CONTESTED DIVORCE    TYPE TRIAL: NON-JURY  TRACK: |
```

**DATE1:**          CA:              CA DATE:
**DATE2:**          AMT:        $.00  PAYMENT:
**DATE3:**

PLAINTIFF  001: WILLIFORD CHARLOTTE D        *Hon. Beverlye Brady*
               815 CRAWFORD RD        ATTORNEY: JONES THOMAS E
                                      JON053     P O BOX 1567
               OPELIKA, AL  36804-0000
               PHONE: (334)000-0000            AUBURN, AL  36831
ENTERED: 04/09/2003 ISSUED:        TYPE:            (205)826-6707
SERVED:         ANSWERED:          JUDGEMENT:

DEFENDANT  001: WILLIFORD KENNETH H
               C/O LEE COUNTY JAIL         ATTORNEY: *Hon. Margaret*
               2311 GATEWAY DR                       *Brown*
               OPELIKA, AL  36801-0000
               PHONE: (334)000-0000
ENTERED: 04/09/2003 ISSUED: 04/09/2003 TYPE:  SHERIFF
SERVED:         ANSWERED:          JUDGEMENT:

| Date | Action | Code |
|------|--------|------|
| 04/09/2003 | ASSIGNED TO JUDGE: RICHARD D. LANE | (AV07) |
| 04/09/2003 | BENCH/NON-JURY TRIAL REQUESTED | (AV07) |
| 04/09/2003 | CASE ASSIGNED STATUS OF: ACTIVE | (AV07) |
| 04/09/2003 | WILLIFORD CHARLOTTE D ADDED AS C001 | (AV02) |
| 04/09/2003 | LISTED AS ATTORNEY FOR C001: JONES THOMAS E | (AV02) |
| 04/09/2003 | SUMMONS AND COMPLAINT | |
| 04/09/2003 | NOTICE O/AUTOMATIC COURT ORDERS | |
| 04/09/2003 | TRANSPARENTING ORDER | |
| 04/09/2003 | VS FORM; CS INFO SHEET | |
| 04/09/2003 | WILLIFORD KENNETH H ADDED AS D001 | (AV02) |
| 04/09/2003 | SHERIFF ISSUED: 04/09/2003 TO D001 | (AV02) |
| 04/09/2003 | S & C FILED AND SENT TO LCSO FOR SERVICE | (AV02) |

4-10-03   SUMMONS AND COMPLAINT SERVED

5/14/03   APPLICATION, AFFIDAVIT AND ENTRY OF DEFAULT

5/14/03   AFFIDAVIT

5-22-23   SET FOR TRIAL 6-1-13/2003
          at _____ o'clock ___ M in the
          Family Courtroom. Clerk to send
          notices to all parties/counsel.

CAG   04/09/2003                              DR 2003 000175.00

                            *P2*

                    FILED IN OFFICE  MAY 30 2003

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA
FAMILY COURT DIVISION

| | | |
|---|---|---|
| **CHARLOTTE D. WILLIFORD,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **Civil Action No. DR-2003-175** |
| | * | |
| **KENNETH H. WILLIFORD,** | * | |
| | * | |
| **Defendant.** | * | |

## JUDGMENT OF DIVORCE

This case was called for trial and was heard by the Court on September 22, 2003 and September 23, 2003. The Court has considered the oral testimony of the parties and the evidence submitted by each of the parties. The Court is of the opinion that the Plaintiff is entitled to the relief prayed for in her Complaint.

It is therefore, **ORDERED, ADJUDGED and DECREED** by the Court as follows:

1.     The bonds of matrimony heretofore existing between the Plaintiff (Wife) and the Defendant (Husband) are dissolved, and the said CHARLOTTE D. WILLIFORD is forever divorced from the said KENNETH H. WILLIFORD on the ground of incompatibility.

2.     Neither party shall marry again except to each other until Sixty (60) days after the date of this Judgment of Divorce, and if an appeal is taken (which must be instituted within Forty-Two (42) days from this Judgment, or from the date that post-trial motion is denied), then neither party shall again marry except to each other during the pendency of the appeal.

3.    The absolute and sole care, custody and control of the minor children of the parties, namely AMY B. WILLIFORD, d/o/b 06/13/1984 (who was a minor child at the time of the filing of the Complaint and has since attained the age of her majority), and MATTHEW WILLIFORD, d/o/b 06/15/1998, is hereby awarded to the Plaintiff, Charlotte D. Williford. The Defendant, Kenneth H. Williford, shall have reasonable rights of visitation with said minor children at times and places to be arranged in advance by the parties.

4.    The Court makes the following findings of fact in this case:

a.    The marriage of the parties has been irretrievably broken as a direct result of the Defendant's commission and conviction of two (2) heinous criminal offenses, i.e., Sodomy in the First Degree and Rape in the First Degree (See Plaintiff's Exhibits 1 & 2);

b.    The Defendant has been incarcerated as a result of said criminal convictions since on or about February 26, 2003;

c.    The Defendant was sentenced in the Circuit Court of Lee County, Alabama on May 8, 2003 to Fifteen (15) years in the State Penitentiary and Twenty-Five (25) years in the State Penitentiary as a result of said convictions, the sentences to run concurrently, (See Plaintiff's Exhibits 1 & 2), and, although he has an appeal pending, the Defendant, Kenneth H. Williford, has remained in the custody of the Alabama Department of Corrections;

d.    The Court finds that the Defendant, Kenneth H. Williford, is voluntarily unemployed (as a result of his criminal actions and the consequences of the same), and imputes his income at $2,800.00 per month for purposes of calculating child support in accordance with the guidelines established by Rule 32, Alabama Rules of Judicial Administration;

2

e.    The Defendant, as a result of his willful actions, has abrogated the running of the family business, i.e., the trailer parks, to the Plaintiff, Charlotte D. Williford; and, further, the Defendant has abrogated all of his responsibilities and obligations to his family, children, and the Plaintiff, Charlotte D. Williford.

f.    The Plaintiff, Charlotte D. Williford, is now solely responsible (and has been since the Defendant's incarceration) for the daily operation and responsibilities of the family business, i.e., the trailer parks of the parties.  And, further, it is the Plaintiff's, Charlotte D. Williford's, sole responsibility to meet the obligations of her family and household, including supporting (at the time of the filing of the Complaint) two (2) minor children, namely Amy B. Williford (who has attained the age of nineteen (19) and is now a college student) and Matthew Williford;

g.    Numerous civil judgments, which are liens against the property of the parties, have been recorded in the Office of the Judge of Probate of Lee County, Alabama (See Wife's Divorce Forms 1-5 and Plaintiff's Exhibits 4, 8, 9, 10, 11, & 13);

h.    The Plaintiff, Charlotte D. Williford, has assumed, from the time of the incarceration of the Defendant, Kenneth H. Williford, until the present, all responsibilities and obligations of the family in regard to paying the mortgage on the homeplace and the Two Million Eight Hundred Thousand Dollar ($2,800,000.00) Note (secured) to the Peoples Bank and Trust Company (See Plaintiff's Exhibit 4) regarding the business of the parties, i.e., the trailer parks and real estate of the parties;

i.    The Plaintiff, Charlotte D. Williford, is incurring legal fees, expenses and costs, not only in the instant divorce case but in other litigation, including:  the pending litigation in Chambers County, Alabama (the civil judgment, plus interest, in the approximate total amount

3

of Four Hundred Twenty-Nine Thousand Three Hundred Thirty-Seven and 75/100 Dollars ($429,337.75)) (See Plaintiff's Exhibit 9) which the opposing counsel in said case has duly recorded in Lee County, Alabama, and is actively pursuing execution of the same, in pending litigation in federal court regarding an action for declaratory judgment filed by the parties' (Plaintiff's and Defendant's) insurance company; and other matters as testified to in the instant case.

5.    The Defendant shall pay to the Plaintiff as support and maintenance for the minor son of the parties, Matthew Williford, the sum of Five Hundred Twelve Dollars ($512.00) per month. The first payment shall be due and payable on the first day of November, 2003 and subsequent payments shall be due and payable on the first day of each month thereafter. All support payments shall be paid through the Office of the Circuit Clerk of Lee County, Alabama. Said support shall continue for the minor child, Matthew Williford, until said child reaches the age of nineteen (19) years, marries, or otherwise becomes self-supporting. This is in accordance with the guideline forms submitted based on the wages imputed to the Defendant.

As to the daughter of the parties, namely Amy B. Williford, who was a minor at the time of the Complaint was filed, who has since attained the age of majority, and who is currently a college student, the Court is of the opinion that to order the Defendant, Kenneth H. Williford, to pay any additional amounts for said child's post-minority educational support at this time would impose an undue hardship on said Defendant. However, the Court reserves the issue of post-minority educational support for the parties' daughter, Amy B. Williford, in the event that the Defendant is, for any reason, released from prison prior to her completing her post-secondary education. Also, the Court reserves the issue of post-minority educational support for the parties' minor son, Matthew Williford, in the event that the Defendant is, for any reason,

4

released from prison prior to the youngest child, Matthew Williford, reaching the age of majority.

      6.    It shall be the responsibility of the Plaintiff, Charlotte D. Williford, to maintain a policy of health and medical insurance on the minor child of the parties, Matthew Williford. The Plaintiff, Charlotte D. Williford also shall be responsible for payment of any uninsured health and medical expenses in regard to said minor child.

      7.    Title to the homeplace of the parties, located at 815 Crawford Road, Opelika, Lee County, Alabama is hereby divested out of both parties to destroy the joint tenancy with right of survivorship provision of the former deed to the parties and is hereby conveyed to and vested in the Plaintiff, Charlotte D. Williford, solely and absolutely, and any and all interest in and to said property is divested out of the Defendant, Kenneth H. Williford, including the right to survivorship. Said property is more particularly described as follows:

> **Commencing at an iron pin found purportedly marking the Southeast corner of the Northeast Quarter (NE1/4) of Section 29, Township 19 North, Range 27 East, Lee County, Alabama, run thence for the following bearings and distances to the Point of Beginning (P.O.B.): thence North 0 degrees 03 minutes 21 seconds West 303.86 feet to a point marked by an iron pin set and the P.O.B. of the herein described lot or parcel of land. Thence from said P.O.B. run for the following bearings and distances: thence South 89 degrees 25 minutes 46 seconds West 442.30 feet to a point marked by a Manhole, thence North 56 degrees 54 minutes 53 seconds East 116.45 feet to a point marked by a Manhole, thence North 16 degrees 19 minutes 49 seconds West 276.36 feet to a point marked by a Manhole, thence North 5 degrees 48 minutes 35 seconds East, 122.18 feet to a point marked by a Manhole, thence North 27 degrees 53 minutes 09 seconds East 70.03 feet to a point marked by a Manhole, thence North 28 degrees 00 minutes 39 seconds East 102.21 feet to a point marked by a Manhole, thence North 12 degrees 25 minutes 14 seconds East 93.34 feet to a point marked by a Manhole, thence North 6 degrees 56 minutes 37 seconds East, 109.64 feet to a point marked by an iron pin found, thence North 40 degrees 55 minutes 27 seconds West, 185.72 feet to a point marked by an iron pin found, thence North 41 degrees 55 minutes 19 seconds East 86.95 feet to a point marked by an iron pin found, thence North 18 degrees 38 minutes 46 seconds East 72.13 feet to a point marked by an iron pin found, thence North 40 degrees 48 minutes 07 seconds East**

**202.05 feet to a point marked by an iron pin set on the Southerly Right of Way (R/W) of Alabama Highway 169, thence South 54 degrees 00 minutes 29 seconds East 251.47 feet to a point marked by an iron pin found on the Southerly R/W of said highway, thence South 0 degrees 03 minutes 09 seconds East 477.77 feet to a point marked by an iron pin found, thence South 0 degrees 02 minutes 51 seconds East 302.38 feet to a point marked by an iron pin found, thence South 0 degrees 03 minutes 21 seconds East 296.43 feet to a point marked by an iron pin set and the aforementioned P.O.B. of the herein described parcel of land containing 9.63 acres, more or less, and being more particularly described on plat of survey prepared by Walter Pryor White, RLS Ala. Reg. No. 12504, dated January 9, 1995, and entitled "Hickory Haven Subdivision, First Addition, A Re-division of Lot 2, Hickory Haven Subdivision for Kenneth H. and Charlotte Williford", and filed for record in the Office of the Judge of Probate of Lee County, Alabama, in Town Plat Book 17, at Page 94.**

The Plaintiff, Charlotte D. Williford, shall be responsible for the payment of all insurance, taxes and mortgage payments relating to the aforesaid property and shall hold the Defendant, Kenneth H. Williford, harmless from any liability thereon.

It is Ordered that the Lee County Circuit Clerk shall execute and deliver to the said Charlotte D. Williford a Clerk's Deed conveying to her all of the right, title, claim, and interest of the said Charlotte D. Williford and the said Kenneth H. Williford in and to the aforesaid described land.

8.     As to the division of the parties' business, i.e., the mobile home parks of the parties, all of the assets of the parties' business (including all real estate and all personal property) are hereby conveyed and title transferred to the Plaintiff, Charlotte D. Williford who is left solely responsible for the support of herself and her family. All of said assets are hereby conveyed and titles transferred as follows:

6

a.      Title to the real property known as Hickory Haven Subdivision, located in

Lee County, Alabama is hereby vested in the Plaintiff, Charlotte D. Williford, and the same is

divested out of the Defendant, Kenneth H. Williford, including any and all right to survivorship.

Said property is more particularly described as follows:

> Commencing at the Northeast corner of Section 29, Township 19 North, Range 27 East, Lee County, Alabama, run thence for the following bearings and distances to the Point of Beginning (P.O.B.): thence South 89 degrees 46 minutes 00 seconds West 1620.00 feet to a point on the Southwest margin of Highway No. S-169; thence South 53 degrees 55 minutes 00 seconds East 898.60 feet to a point marked by an iron pin found on the Southwest margin of Highway No. S-169; thence South 53 degrees 55 minutes 00 seconds East 100.00 feet to a point marked by an iron pin set on the Southwest margin of said highway and the P.O.B. of the herein described lot or parcel of land. Thence from said P.O.B. run for the following bearings and distances: thence South 27 degrees 30 minutes 49 seconds West 65.00 feet to a point marked by an iron pin, thence South 0 degrees 23 minutes 14 seconds East 137.14 feet to a point marked by an iron pin, thence South 51 degrees 39 minutes 50 seconds East 269.67 feet to a point marked by an iron pin, thence South 51 degrees 39 minutes 50 seconds East, 377.44 feet to a point marked by an iron pin, thence South 18 degrees 38 minutes 46 seconds West 72.13 feet to a point marked by an iron pin, thence South 41 degrees 55 minutes 19 seconds West 86.95 feet to a point marked by an iron pin, thence South 40 degrees 55 minutes 27 seconds East 185.72 feet to a point marked by an iron pin, thence South 6 degrees 56 minutes 37 seconds West 109.64 feet to a point marked the center point of a manhole, thence South 12 degrees 25 minutes 14 seconds West 93.34 feet to a point marked by the center point of a manhole, thence South 28 degrees 00 minutes 39 seconds West 102.21 feet to a point marked by the center point of a manhole, thence South 27 degrees 53 minutes 09 seconds West 70.03 feet to a point marked by the center point of a manhole, thence South 5 degrees 48 minutes 35 seconds West 122.18 feet to a point marked by the center point of a manhole, thence South 16 degrees 19 minutes 49 seconds East 276.36 feet to a point marked by the center point of a manhole, thence South 56 degrees 54 minutes 53 seconds West 116.45 feet to a point marked by the center point of a manhole, thence South 37 degrees 21 minutes 33 seconds West 112.29 feet to a point marked by the center point of a manhole, thence North 60 degrees 08 minutes 55 seconds West 135.65 feet to a point marked by the center point of a manhole, thence North 85 degrees 21 minutes 31 seconds West 254.44 feet to a point marked by the center point of a manhole, thence North 31 degrees 43 minutes 16 seconds West 109.05 feet to a point marked by an iron pin, thence North 88 degrees 21 minutes 53 seconds West 372.67 feet to a point marked by an iron pin, thence North 0 degrees 17 minutes 20 seconds West 1497.50 feet to a

point marked by an iron pin, thence North 89 degrees 45 minutes 35 seconds East 254.83 feet to a point marked by an iron pin, thence South 53 degrees 56 minutes 21 seconds East 210.54 feet to a point marked by an iron pin found on the Westerly margin of a paved access road, thence North 0 degrees 23 minutes 14 seconds West 254.03 feet to a point marked by an iron pin found at the point of intersection of the Southwesterly margin of State Highway (S-169) with the westerly margin of the access road, thence South 53 degrees 55 minutes 00 seconds East 100.00 feet to a point marked by an iron pin and the aforementioned P.O.B. of the herein described parcel of land containing 30.74 acres, more or less. All according to that certain plat of survey prepared by Walter Pryor White, RLS Ala. Reg. No. 12504, entitled "Survey for Kenneth. H. and Charlotte Williford and SouthTrust Bank" dated April 23, 1993.

The Plaintiff, Charlotte D. Williford, shall be responsible for the payment of all insurance, taxes and mortgage payments relating to the aforesaid property and shall hold the Defendant, Kenneth H. Williford, harmless from any liability thereon.

It is Ordered that the Lee County Circuit Clerk shall execute and deliver to the said Charlotte D. Williford a Clerk's Deed conveying to her all of the right, title, claim, and interest of the said Charlotte D. Williford and the said Kenneth H. Williford in and to the aforesaid described land.

   b.     Title to the real property known as Brook Haven Subdivision, located in Lee County, Alabama is hereby vested in the Plaintiff, Charlotte D. Williford, and the same is divested out of the Defendant, Kenneth H. Williford, including any and all right to survivorship. Said property is more particularly described as follows:

Parcel One: From the northwest corner of Section 18, Township 19 North, Range 27 East in Opelika, Alabama, run thence South 3,011.9 feet; thence East 1,485. 6 feet to a point on the southwesterly margin of Hurst Street in said city, and the point of beginning of the land herein to be described: From said point of beginning run thence South 16 deg. 39 min. East along the southwesterly margin of Hurst Street 669.0 feet to the point of intersection of said margin of said street with the northerly margin of Hardaway Avenue; thence run South 88 des. 27 min. West, along the northerly margin of Hardaway Avenue 283.6 feet; thence South 82 deg. 34 min. West along the said avenue 238.3 feet; thence continuing along the

margin of said avenue in a southwesterly direction, run along a curve in said avenue, whose radius is 874.3 feet, for a distance of 300.6 feet; thence continue along said avenue, South 62 deg. 52 min. West 637.7 feet to the point of intersection of said avenue with the east margin of Long Street; thence run North 03 deg. 20 min. West along the easterly margin of Long Street 317.8 feet; thence along a curve in Long Street, in a Northeasterly direction, run a distance of 404.9 feet, the radius of said curve being 464.6 feet, and said curve intersecting the southerly margin of East Avenue at about the mid-point of said curve; thence run North 46 deg. 36 min. East along the southeasterly margin of East Avenue 239.3 feet; thence run South 06 deg. 55 min. East, leaving said avenue, 306.4 feet; thence run North 58 deg. 31 min. East along an old fence and hedge row 990.1 feet to the point of beginning, and containing 15.14 acres, more or less.

Parcel Two: From the northwest corner of Section 18, Township 19 North, Range 27 East, Lee County, Alabama, run thence South 3,011.9 feet; thence run East 1,485.6 feet to a point on the southwesterly margin of Hurst Street in the City of Opelika, Lee County, Alabama; thence run South 16 deg. 39 min. East, along the southwesterly margin of Hurst Street 669.0 feet to the point of intersection of said margin of said street with the northerly margin of Hardaway Avenue; thence run North 88 deg. 27 min. East 61.2 feet to the southwesterly corner of Lot 1, Block 233, as shown on the Totten Official Real Estate Map of the City of Opelika, 1930, of record in the Lee County Probate Office in Town Plat Book 2. at Page 9, and the point of beginning of the tract of land herein to be described and conveyed: From said point of beginning, run North 16 deg. 39 min. West 617.0 feet, along the northeasterly margin of Hurst Street; thence leaving said street, run North 69 deg. 18 min. East 218.2 feet; thence North 62.deg. 25 min. East 292.7 feet; thence North 85 deg. 14 min. East 26.8 feet; the last bearing describing a distance along the southerly margin of Marion Avenue in Opelika; thence leaving said avenue, run South 01 deg. 01 min. West 182.8 feet; thence North 82 deg. 16 min. East 353.4 feet; thence South 05 deg. 35 min. East 606.4 feet to a point on the westerly margin of Hardaway Avenue; thence South 84 deg. 32 min. West, along the northerly margin of Hardaway Avenue, 300.0 feet; thence leaving said avenue, run North 05 deg. 28 min. West 100.0 feet; thence parallel with Hardaway Avenue, South 84 deg. 32 min. West 60.0 feet; thence South 05 deg. 28 min. East 100.0 feet to a point on the northerly margin of Hardaway Avenue; thence South 84 deg. 32 min. West, along the northerly margin of said avenue, 402.5 feet to the point of beginning, and containing 12.03 acres, more or less, in Lee County, Alabama.

Parcel Three: From the point of intersection of the southerly margin of Hardaway Avenue with the easterly margin of Hurst Street in the City of Opelika, Alabama, run North 84 deg. 32 min. East along the southerly margin of Hardaway Avenue 100.0 feet; thence South 11 deg. 26 min. East

9

10.1 feet to the point of beginning of the parcel herein to be described and conveyed: From said point of beginning run North 84 deg. 32 min. East, along Hardaway Avenue, 390.0 feet; thence leaving said avenue, run South 05 deg. 28 min. East 170.0 feet; thence South 11 deg. 26 min. East 325.7 feet; thence South 76 deg. 17 min. West 60.0 feet; thence North 11 deg. 26 min. West 312.8 feet; thence South 84 deg. 32 min. West 309.5 feet; thence North 11 deg. 26 min. West 192.5 feet to the point of beginning of the property described and conveyed, containing 2.10 acres, more or less, in Lee County. Alabama.

**LESS AND EXCEPT FROM SAID CONVEYANCES** the right-of-way deeded to the City of Opelika on June 25, 1998, by Grantor, to-wit: Commencing at the southwest corner of Section 18, Township 19 North, Range 27 East, Lee County, Alabama, run thence northwardly along the west line of said Section 18, 1,162.1 feet to Station 239+ 79 on the centerline of Highway Project 9280-B on record in the City Engineer's Office of the City of Opelika, Alabama; thence run along said centerline 17.65 feet to the point of beginning of the property herein to be described and excepted; thence departing said centerline run North 01 deg. 08 min. 14 sec. West along the east right-of-way of Long Street, 119.00 feet to a point 110 feet northwardly from and perpendicular to the aforementioned project centerline at Station 240+42.06; thence run South 56 deg. 56 min. 50 sec. East along said right-of-way line 59.88 feet to a point 60 feet northwardly of and perpendicular to said centerline at Station 240+75; thence run North 66 deg. 25 min. 58 sec. East, along said right-of-way line, 373.32 feet to P.C. Station 244+48.32; thence run northeastwardly along a curve to the left having a radius of 821.47 feet an arc distance of 490.83 feet (the chord bears North 49 deg. 18 min. 56 sec. East and measures 483.56 feet); thence run North 57 deg. 48 min. 05 sec. West, along said right-of-way 70.00 feet to a point 130 feet northwestwardly from centerline 249+ 75; thence run North 28 deg. 56 min. 54 sec. East, along said right-or-way, 85.21 feet to a point 130 feet northwestwardly from centerline Station 250+75; thence run North 62 deg. 55 min. 51 sec. East, along said right of way, 86.08 feet to a point 75 feet northwardly from centerline Station 251 +50; thence run North 18 deg. 13 min. 11 sec. East, along said right-of-way. 79.47 feet to the Grantor's north property line; thence run along Grantor's north property line North 61 deg. 36 min. 31 sec. East, 180.38 feet to the south right-of-way line of aforementioned project; thence run South 01 deg. 43 min. 33 sec. West. 84.61 feet to a point 80 feet eastwardly from centerline Station 252 + 75; thence run South 17 deg. 38 min. 32 sec. West, along said right-of-way line, 102.55 feet to a point 80 feet eastwardly from centerline Station 251 +75; thence run South 26 deg. 23 min. 07 sec. West, along said right-of-way line, 190.14 feet to a point 75 feet eastwardly from centerline Station 250+00; thence run South 49 deg. 39 min. 07 sec. East, 106.39 feet to a point 180 feet eastwardly from the project centerline and on the west right-or-way line of Hardaway Street; thence run Southwestwardly along the west right-of-way

line of Hardaway Street, 1,100 feet, more or less, to the east right-of-way line of Long Street; thence run North 01 deg. 08 min. 14 sec. West along said east right-of-way line, 7.81 feet to the point of beginning. Said tract contains 3.61 acres, more or less, and is shown as Parcel 12-2 of the right-of-way map of Project 92801-B on record in the Office of the City Engineer of the City of Opelika.

The Plaintiff, Charlotte D. Williford, shall be responsible for the payment of all insurance, taxes and mortgage payments relating to the aforesaid property and shall hold the Defendant, Kenneth H. Williford, harmless from any liability thereon.

It is Ordered that the Lee County Circuit Clerk shall execute and deliver to the said Charlotte D. Williford a Clerk's Deed conveying to her all of the right, title, claim, and interest of the said Charlotte D. Williford and the said Kenneth H. Williford in and to the aforesaid described land.

      c.      Title to the real property known as Oak Haven Subdivision, located in Lee County, Alabama is hereby vested in the Plaintiff, Charlotte D. Williford, and the same is divested out of the Defendant, Kenneth H. Williford, including any and all right to survivorship. Said property is more particularly described as follows:

**PARCEL ONE:** Commence at the Northwest corner of the Southeast of the Southwest quarter of section 29, Township 19 North, Range 27 East, Lee County, Alabama; run thence South 83° 22' 18" East for 90.0 feet to the POINT OF BEGINNING of the parcel of land to be herein described and conveyed: From said point of beginning run thence along the following courses: North 03° 07' 42" East for 200.30 feet; North 87° 07' 10" West for 150.00 feet; South 36° 37' 50" West for 234.89 feet; North 86° 13' 11" West for 95.64 feet; South 02° 18' 13" West for 1,303.57 feet; North 75° 21' 23" West for 203.14 feet; North 83° 14' 34" West for 209.65 feet; North 00° 19' 03" West for 119.38 feet; North 02° 03' 06" East for 442.83 feet; North 02° 39' 32" East for 207.34 Feet; North 01° 49' 55" East for 200.09 feet; North 02° 22' 34" East for 285.07 feet; North. 86° 33' 42" West for 102.13 feet; North 87° 23' 25" West for 200.39 feet; North 83° 59' 56" West for 99.74 feet; North 85° 47' 27" West for 216.45 feet; North 03° 17' 19" East for 1,522.29 feet along the East margin of 80 foot right-of-way, Alabama Highway 51; thence South 86° 15' 42" East for 272.54 feet; South 86° 18' 27" East for 349.24 feet; South 86° 00' 30" East for 203.62 feet; South 86°

31' 40" East for 348.75 feet; South 85° 54' 14" East for 155.91 feet; South
86° 30' 34" East for 416.23 feet; South 86° 38' 48" East for 214.25 feet,
South 85° 35' 47" East for 204.14 feet; South 01° 54' 29" West for 198.32
feet; North 87° 15' 04" East for 390.08 feet South 00° 03' 53" East for
212.60 feet; South 03° 34' 36" West for 147.09 feet; South 04° 21' 22" West
for 127.89 feet; South 03° 50' 40" West for 227.28 feet; South 01° 49' 03"
West for 115.83 feet; South 03° 38' 41" West for 118.66 feet; South 04° 09'
37" West for 244.19 feet; South 02° 49' 08" West for 166.81 feet; North 86°
45' 23" West for 349.04 feet; North 86° 14' 38" West for 325.81 feet; North
88° 41' 11" West for 153.10 feet; North 85° 29' 09" West for 131.56 feet;
North 97° 25' 59" West for 196.07 feet to the POINT OF BEGINNING.
Containing 99.14 acres ±.

LESS AND EXCEPT that certain public road as described in that certain
affidavit to Elouise Frederick Lipscomb of record in Deed Book 1409, at
Page 18, in the office of the Judge of Probate of Lee County, Alabama.

(Note: The foregoing Parcel One is described in Deed Book 2177, at Page
769, of record in the Office of the Judge of Probate of Lee County, Alabama
on February 12, 1999.)

PARCEL TWO:  A road lying in Section 29, Township 19 North, Range 27
East, Lee County, Alabama; the centerline being more particularly
described as follows: Commence at a capped rebar (#8113) found a the
Northeast corner of Lot 8 of C and M Subdivision No.2 as recorded in Plat
Book 7 page 16 in the Probate Office in Lee County, Alabama; thence North
02°22'34" East, 285.07 feet; thence North 86°33'42" West, 102.13 feet;
thence North 87°23'25" West, 200.39 feet; thence North 83°59'56" West,
99.74 feet; thence North 85°47'27" West, 216.45 feet to a point on the east
right of way (R.O.W.) line of Alabama Highway 51; thence North 03°17'19"
East, along said east R.O.W., 1345.78 feet to the point of beginning of
centerline of said road; thence along said centerline the following courses;
North 86°27'44" East, 193.89 feet;
South 88°13'30" East, 64.31 feet;
South 79°16'39" East, 69.57 feet;
South 78°09'16" East, 136.45 feet;
South 86°26'36" East, 132.00 feet;
South 77°13'29" East, 162.90 feet;
South 62°39'39" East, 178.60 feet;
South 64°09'26" East, 215.46 feet;
South 62°09'01" East, 149.53 feet;
South 63°12'28" East, 144.79 feet;
South 64°15'26" East, 180.61 feet;
South 62°28'05" East, 83.54 feet;
South 31°00'33" East, 29.84 feet;
South 05°58'57" East, 70.28 feet;

South 23°39'00" West, 45.40 feet;
South 35°31'24" West, 302.14 feet;
South 36°02'54" West, 483.61 feet;
South 32°08'00" West, 119.32 feet to the point of ending.

(Note:  The hereinabove described road comprising Parcel Two was conveyed by the City of Opelika, Alabama to Kenneth H. Williford and Charlotte D. Williford and described in Deed Book 2188, at Page 838, of record on December 7, 1999 in the Office of the Judge of Probate of Lee County, Alabama.)

The Plaintiff, Charlotte D. Williford, shall be responsible for the payment of all

insurance, taxes and mortgage payments relating to the aforesaid property and shall hold the

Defendant, Kenneth H. Williford, harmless from any liability thereon.

It is Ordered that the Lee County Circuit Clerk shall execute and deliver to the said

Charlotte D. Williford a Clerk's Deed conveying to her all of the right, title, claim, and interest

of the said Charlotte D. Williford and the said Kenneth H. Williford in and to the aforesaid

described land.

d.    Title to the real property known as Fields Trailer Park, located in Lee

County, Alabama is hereby vested in the Plaintiff, Charlotte D. Williford, and the same is

divested out of the Defendant, Kenneth H. Williford, including any and all right to survivorship.

Said property is more particularly described as follows:

Commencing at the Northwest corner of the Northeast quarter of the Southeast quarter of Section 21, Township 19 North, Range 27 East in Lee County, Alabama; thence run South 0 degrees 42 minutes West a distance of 75.6 feet to a point on the Southerly margin of the 60 foot right-of-way of Lee County Highway No. 34 which is the point of beginning; thence run South 87 degrees 49 minutes East along the Southerly margin of the said 60 foot right-of-way of said Lee County Highway No. 34 a distance of 526.5 feet; run thence South 89 degrees 19 minutes East along the said Southerly margin of the 60 foot right-of-way of the said Lee County Highway No. 34 for a distance of 233.9 feet to a point on the Northwest margin of a 60 foot right-of-way of Alabama Power Company; run thence South 47 degrees 38 minutes West along said Alabama Power easement for a distance of 916.4 feet to a point on the Northerly margin of the 100 foot right-of-way of the

Central of Georgia Railway Company; run thence North 80 degrees 27
minutes West along said Northerly margin of said Central of Georgia
Railway Company right-of-way a distance of 92.2 feet; run thence North 0
degrees 42 minutes East a distance of 624.4 feet to the point of beginning,
containing 5-1/2 acres, more or less, in Lee County, Alabama, and more
particularly shown by the survey of T. Richard Fuller, L.S. Alabama
Register No. 7384, dated February 9, 1968. Also being a part of the 100
acres, more or less, conveyed to S.L. Fields by H.R. Dudley by deed dated
November 25, 1942, and recorded at Book 246, Page 355, in the Office of
the Judge of Probate of Lee County, Alabama, and further being a part of
62.42 acres, more or less, of the said property conveyed from Dudley to
Fields, which said 62.42 acres is more particularly shown by certain survey
of George L. Boles, Certificate No. 2055, being dated March 28, 1960,
together with all improvements and appurtenances thereunto appertaining.

The Plaintiff, Charlotte D. Williford, shall be responsible for the payment of all

insurance, taxes and mortgage payments relating to the aforesaid property and shall hold the

Defendant, Kenneth H. Williford, harmless from any liability thereon.

It is Ordered that the Lee County Circuit Clerk shall execute and deliver to the said

Charlotte D. Williford a Clerk's Deed conveying to her all of the right, title, claim, and interest

of the said Charlotte D. Williford and the said Kenneth H. Williford in and to the aforesaid

described land.

e.      Title to the real property known as Ben-Mor Trailer Park, located in

Chambers County, Alabama is hereby vested in the Plaintiff, Charlotte D. Williford, and the

same is divested out of the Defendant, Kenneth H. Williford, including any and all right to

survivorship.  Said property is more particularly described as follows:

Starting at the NW corner of Section 34, Township 22 North, Range 28
East, Chambers County, Alabama; Thence South 1 degree 0' East along the
Section Line a distance of 2,640 feet; thence North 87 degrees 45' East a
distance of 338.5 feet; thence South 28 degrees 0' East a distance of 575 feet;
thence South 82 degrees 30' East a distance of 731 feet; thence North 43
degrees 30' East a distance of 268.2 feet; thence South 41 degrees 30' East of
distance of 341 feet to the Northwesterly margin of the Blacktop highway
from Hugley to West Point; thence North 41 degrees 15' East along the
Northwesterly margin of said Highway a distance of 226 feet; thence North

14

47 degrees 45' West a distance of 171 feet; thence North 14 degrees 30' East a distance of 210 feet; thence South 87 degrees 30' West a distance of 377.5 feet; thence North 0 degrees 30' East a distance of 234 feet; thence South 87 degrees 45' West a distance of 474 feet; thence North 1 degrees 0' West a distance of 2,574 feet to the North Line of Section 34; thence South 88 degrees 10' West along the Section Line a distance of 990 feet to the starting point, containing 74.45 acres, more or less. Said property being a part of the NW 1/4 and a part of the SW 1/4 Section 34, Township 22 North, Range 28 East, Chambers County, Alabama. A plat of the above described property made by Frank H. McCarley dated July 19,1960, is attached to that certain deed recorded in Deed Volume 182, Page 981 in the Office of the Judge of Probate of Chambers County, Alabama, and is incorporated herein by reference. This being the same property acquired by James David Monk and Rose Marie Monk by deed recorded in Deed Book 255, Page 191 in the Office of the Judge of Probate of Chambers County, Alabama.

The Plaintiff, Charlotte D. Williford, shall be responsible for the payment of all insurance, taxes and mortgage payments relating to the aforesaid property and shall hold the Defendant, Kenneth H. Williford, harmless from any liability thereon.

It is Ordered that the Lee County Circuit Clerk shall execute and deliver to the said Charlotte D. Williford a Clerk's Deed conveying to her all of the right, title, claim, and interest of the said Charlotte D. Williford and the said Kenneth H. Williford in and to the aforesaid described land.

9.    Title to the following personal property is hereby transferred to and vested in the Plaintiff, Charlotte D. Williford, and the same is divested out of the Defendant, Kenneth H. Williford:

a.    All mobile/modular homes and trailers listed on Plaintiff's Exhibit 5, being more specifically described as follows:

| Lot | Year Make | VIN |
|-----|-----------|-----|
| B-69 | 1989 Weston | 5387 |
| B-82 | 1990 Buccaneer Parkwood | ALBUS14071B |
| B-49 | 1987 Redman | RD241634 |
| B-20 | 1991 Parkwood | ALBUS152200 |
| B-27 | 1991 Peachstate | PSHGA9543 |

15



| Lot | Year Make | VIN |
|---|---|---|
| OH-182 | 2001 General Augustine | GMHGA6240001190AB |
| OH-183 | 2001 Legend Royal Leg. | HL59796AAL |
| OH-199 | 1998 Legend HL1035 | HL9239AL |
| OH-137 | 1999 Westfie Broadmore | GAFLW07A43117BB12 |
| F-4 | 1986 Schult | 205331 |
| F-14 | 1989 Clayton Allendale | CLFL91325 |
| F-27 | 1989 Fleetwood | 419887 |
| OH-138 | 1998 Clayton Atlantis | CLA044529TN |
| OH-180 | 1998 Fleetwood | 1343 |
| OH-181 | 2000 Redman Riverview | 14904351A/14904351B |
| OH-185 | 2001 Fleetwood 3483S | GAFLY54AB85966ET11 |
| B-77 | ____ Mays | 1076 |
| OH-125 | 1988 Fleetwood | 350741994 |
| OH-206 | 1994 Spiral | S228A/S228B |
| B-6 | 1995 Redman | 14715110 |
| B-12 | 1986 Cedar Lakewood | TWIALBS110492 |

The Plaintiff, Charlotte D. Williford, shall be responsible for paying any indebtedness on any of the said mobile/modular homes and trailers previously owned or financed by the parties.

The Plaintiff, Charlotte D. Williford, who is currently in possession of said property, has the right to enter any of the premises where the same is located and to take immediate possession of said property.

The Court, having hereby transferred the aforesaid said mobile/modular homes and trailers to the Plaintiff, Charlotte D. Williford, and vested title and possession of the same in the said Charlotte D Williford, does hereby retain and reserve jurisdiction of personal property matters in this case until the transfer of title and possession of said mobile/modular homes and trailers to the Plaintiff, Charlotte D. Williford, is complete.

b.    All other personal property of the parties and title to the same is hereby vested in the Plaintiff, Charlotte D. Williford, and the same is divested out of the Defendant, Kenneth H. Williford, less and except the Defendant's, Kenneth H. Williford's, personal effects,

which shall be appropriately boxed and delivered to Hon. Margaret Brown, counsel for the Defendant, or to such other person as may be directed by counsel for the Defendant.

      c.     The Defendant, Kenneth H. Williford owns certain guns and weapons as listed on Plaintiff's Exhibit 12, which have a total estimated value of approximately Five Thousand Dollars ($5,000.00). Because the Defendant is a convicted felon and will not likely be entitled to ever have said weapons in his possession, it is the **ORDER** of the Court that the Plaintiff, Charlotte D. Williford, shall arrange for the sale of the aforesaid guns and weapons within six (6) months from the date of this decree and that the proceeds from said sale, less expenses for the sale and less funds used to pre-pay three (3) annual premiums for Liberty National Life Insurance policy no. A5217528 as provided in Paragraph 11 hereinbelow, shall be delivered to Hon. Margaret Brown, counsel for the Defendant, Kenneth H. Williford, who shall disburse said proceeds, less said sale expenses and insurance premiums, in accord with the directions of the Defendant, Kenneth H. Williford, who is currently incarcerated with the Alabama Department of Corrections.

      The Plaintiff, Charlotte D. Williford, shall have absolute discretion concerning the sale of the aforesaid weapons, whether advertised or not, and she shall not be required to give any detailed accounting concerning the sale of the same other than the amount received for each weapon and the expenses concerning the same. In the event she obtains an estimate or appraisal from a reputable gun dealer concerning any individual weapon or the group of items listed as weapons on Plaintiff's Exhibit 12, which shall not be required, any expense incurred as a result thereof may be deducted from the gross sales proceeds of the aforesaid weapons listed on Plaintiff's Exhibit 12 prior to disbursing the net proceeds received to Hon. Margaret Brown, counsel for the Defendant, Kenneth H. Williford.

In the event that any weapon is determined to be of no value, which must be stated in writing by a reputable gun dealer of her choosing, or in the event that any of the weapons cannot be sold for illegality or other good reason, which must be stated in writing by a reputable gun dealer of her choosing, said weapon(s) shall be delivered by the Plaintiff, Charlotte D. Williford, to any law enforcement agency for destruction or for use by the law enforcement agency at its sole discretion.

       d.     The 1-Ton Ford pickup truck, VIN# 1FTWX33F12ED39895, is hereby transferred to and vested in the Plaintiff, Charlotte D. Williford, and the same is divested out of the Defendant, Kenneth H. Williford.

       e.     The Chevy Tahoe, VIN#1GNEC13T41R216253, is hereby transferred to and vested in the Plaintiff, Charlotte D. Williford, and the same is divested out of the Defendant, Kenneth H. Williford.

       f.     The farm tractor, financed through Agri-Credit, VIN# 313384, and the backhoe, Case 580K-8098, are hereby transferred to and vested in the Plaintiff, Charlotte D. Williford, and the same are divested out of the Defendant, Kenneth H. Williford.

       g.     Three (3) old pickup trucks (not currently in running condition), including a black F150, VIN# 1FTEF1449FNA32158, and two others with unknown VIN#'s, are hereby transferred to and vested in the Plaintiff, Charlotte D. Williford, and the same are divested out of the Defendant, Kenneth H. Williford.

       h.     Each party shall timely execute and deliver to the other all necessary and appropriate legal documents to effectuate the conveyance of the property in Paragraph 9(a.) through Paragraph 9(g.). In this regard, the Defendant, Kenneth H. Williford, is hereby **ORDERED** to execute and deliver to the Plaintiff, Charlotte D. Williford, a limited power of

attorney within thirty (30) days of the date of this decree designating the Plaintiff, Charlotte D. Williford, as his attorney-in-fact for the limited purpose of executing necessary and appropriate legal documents to effectuate the conveyance of the mobile homes, modular homes, trailers and all other personal property awarded pursuant to Paragraph 9(a.) through Paragraph 9(g.) above.

10.    As to the payment of the debts listed on the Plaintiff's Divorce Form 2, the following indebtednesses have been assumed by the Plaintiff, Charlotte D. Williford, who shall hold the Defendant, Kenneth H. Williford, harmless from the collection of the same:

a.    The Peoples Bank and Trust Company's indebtedness regarding the five (5) mobile home parks as evidenced by the Promissory Note, dated September 1, 2003;

b.    The SouthTrust Bank Note regarding the marital residence of the parties;

c.    The AuburnBank Note regarding the 2001 Chevy Tahoe;

d.    The Agri-Credit indebtedness regarding the tractor.

The following debts shall be the responsibility of the Defendant, Kenneth H. Williford, who shall hold the Plaintiff, Charlotte D. Williford, harmless from any liability thereon:

a.    The SouthTrust Bank Note, formerly with an approximate balance of One Hundred Thirty-Five Thousand One Hundred Thirty-Seven and 59/100 Dollars ($135,137.59), which current balance at this time may be approximately more than One Hundred Fifty-Three Thousand and 00/100 Dollars ($153,000.00+);

b.    The AuburnBank Note for the 1-ton Ford;

c.    The Colonial Bank Note for the tractor that was repossessed by Colonial Bank, with an approximate deficiency of Fifty-Five Thousand and 00/100 Dollars ($55,000.00);

d.      The MBNA account with an approximate balance of Eighteen Thousand and 00/100 Dollars ($18,000.00);

e.      The Chambers County civil judgment in the approximate amount of Three Hundred Eighty-Three Thousand and 00/100 Dollars ($383,000.00), plus any additional interest and costs assessed.

11.     The life insurance policy insuring the life of the Defendant, Kenneth H. Williford, issued by the Liberty National Life Insurance Company, being policy no. A5217528 (dated April 1, 1995), which is currently assigned as security for loan no. 7536924017 (dated 09/01/03), to the Peoples Bank and Trust Company, 1431 Gateway Drive, Opelika, Alabama 36803, shall be maintained by the Defendant, Kenneth H. Williford – however, the Plaintiff, Charlotte D. Williford, is hereby authorized to pay the next three (3) annual premiums on said policy as they become due, or in advance, from the proceeds of the sale of the weapons of the Defendant, Kenneth H. Williford (See Plaintiff's Exhibit 12; see also Paragraph 10c. herein) or from any other source she deems fit; and, in the event that thereafter the Defendant, Kenneth H. Williford, fails to pay any premium when due or to keep said policy in effect, the Plaintiff, Charlotte D. Williford, shall have the right to pay said premium(s) to keep said policy from going into default.

Whenever the aforesaid life insurance policy becomes free and clear from its present encumbrance, then the Defendant, Kenneth H. Williford (or the Plaintiff, Charlotte D. Williford, in the event of said Defendant's default), shall be required to maintain said policy of life insurance at its current face amount naming Charlotte D. Williford as the irrevocable beneficiary for the use of the minor child, Matthew Williford, d/o/b 06/15/1998, for so long as said child remains a minor.  Said policy shall not thereafter be transferred or encumbered in any manner.

12.     Each party shall be solely responsible for the payment of that party's attorney's fees.

13.     The Defendant, Kenneth H. Williford, shall not at any time or in any way, directly or indirectly, harm, harass, or intimidate the Plaintiff, Charlotte D. Williford and the Defendant, Kenneth H. Williford, shall not at any time or in any way infringe upon the premises or any of the property of the Plaintiff, Charlotte D. Williford.

14.     This Court retains and reserves jurisdiction in this case for all matters relating to periodic alimony.

15.     Each party shall timely execute and deliver to the other all necessary and appropriate legal documents to effectuate the terms of this agreement.

16.     As to custody and visitation and relocation of a parent, the parties are informed pursuant to the Alabama Parent-Child Relationship Protection Act there are certain acts and responsibilities to which the parents are subject.  Accordingly, those matters are set forth herein and attached to this decree as Exhibit "A" and made a part of this decree as if set forth fully herein.

17.     Copies of this Judgment of Divorce shall be served upon counsel for the parties by placing said copies in their boxes in the Clerk's Office of the Lee County Justice Center:

Hon. Beverlye Brady                    Hon. Margaret Brown
Attorney for the Plaintiff              Attorney for the Defendant

**DONE** this 31st day of October, 2003.

_____
**RICHARD D. LANE, CIRCUIT JUDGE**

F I L E D

OCT 3 1 2003

IN OFFICE

21



## EXHIBIT "A"

Alabama law requires each party in this action who has either custody of or the right of visitation with a child to notify other parties who have custody of or the right of visitation with the child of any change in his or her address or telephone number, or both, and of any change or proposed change of principal residence and telephone number or numbers of a child. This is a continuing duty and remains in effect as to each child subject to the custody or visitation provisions of this decree until such child reaches the age of majority or becomes emancipated and for so long as you are entitled to custody of or visitation with a child covered by this order. If there is to be a change of principal residence by you or by a child subject to the custody or visitation provisions of this order, you must provide the following information to each other person who has custody or visitation rights under this decree as follows:

(1) The intended new residence, including the specific street address, if known.

(2) The mailing address, if not the same as the street address.

(3) The telephone number or numbers at such residence, if known.

(4) If applicable, the name, address, and telephone number of the school to be attended by the child, if known.

(5) The date of the intended change of principal residence of a child.

(6) A statement of the specific reasons for the proposed change of principal residence of a child, if applicable.

(7) A proposal for a revised schedule of custody of or visitation with a child, if any.

(8) Unless you are a member of the Armed Forces of the United States of America and are being transferred or relocated pursuant to a non-voluntary order of the government, a warning to the non-relocating person that an objection to the relocation must be made within 30 days of receipt of the notice or the relocation will be permitted.

You must give notice by certified mail of the proposed change of principal residence on or before the 45th day before a proposed change of principal residence. If you do not know and cannot reasonably become aware of such information in sufficient time to provide a 45-day notice, you must give such notice by certified mail not later than the 10th day after the date that you obtain such information.

Your failure to notify other parties entitled to notice of your intent to change the principal residence of a child may be taken into account in a modification of the custody of or visitation with the child.

If you, as the non-relocating party, do not commence an action seeking a temporary or permanent order to prevent the change of principal residence of a child within 30 days after receipt of notice of the intent to change the principal residence of the child, the change of principal residence is authorized.

AVS613

ALABAMA JUDICIAL DATA CENTER
LEE COUNTY CIRCUIT COURT
NOTICE TO DEFENDANT
INCOME WITHHOLDING FOR SUPPORT

DR 1995 000255.01
JUDGE: ROBERT M. HARPER

--------------------------------------------------------------------------------

JADE CLARK MONTGOMERY VS RICHEY D MONTGOMERY                          D001

    THIS NOTICE IS BEING GIVEN TO YOU TO EXPLAIN THAT A PORTION OF YOUR
WAGES OR SALARY MAY BE WITHHELD BY YOUR EMPLOYER BY ORDER OF THIS COURT,
TO ENFORCE YOUR OBLIGATION TO PAY CHILD SUPPORT AND, IN APPROPRIATE CASES,
SPOUSAL SUPPORT.  YOU HAVE CERTAIN LEGAL RIGHTS.  YOUR EMPLOYER MAY NOT
FIRE YOU SOLEY BECAUSE YOUR WAGES ARE SUBJECTED TO THIS WITHHOLDING ORDER.
IF YOU ARE CURRENTLY SUPPORTING A SPOUSE OR FAMILY, IN ADDITION TO THE
ONE(S) FOR WHICH THIS ORDER HAS BEEN ENTERED, NO MORE THAN 50% OF YOUR
DISPOSABLE EARNINGS MAY BE WITHHELD.  IF YOU ARE NOT SUPPORTING AN
ADDITIONAL SPOUSE OR FAMILY, UP TO 60% OF YOUR DISPOSABLE EARNINGS MAY BE
WITHHELD.  THESE AMOUNTS CAN GO UP TO 55% AND 65% RESPECTIVELY, IF YOU ARE
MORE THAN THREE (3) MONTHS IN ARREARS.  SECTION 30-3-64, CODE OF ALABAMA
1975, PROVIDES THAT YOU MAY ASK THE COURT TO MODIFY OR TERMINATE ITS ORDER
FOR CERTAIN LIMITED REASONS.  ADDITIONALLY, SECTION 30-3-62, CODE OF
ALABAMA 1975, PROVIDES THAT IF YOU PAY THE TOTAL AMOUNT OF ANY ARREARAGES
UNDER THE SUPPORT ORDER YOU MAY ASK THE COURT TO TERMINATE THIS WITHHOLDING
ORDER.  HOWEVER, IF YOU AGAIN GET IN ARREARS IN YOUR SUPPORT PAYMENTS YOU
MAY NOT AGAIN PETITION THE COURT FOR TERMINATION OF A NEW INCOME
WITHHOLDING ORDER.  IF YOU FEEL THAT YOU DO NOT UNDERSTAND THE NATURE OF
THESE PROCEEDINGS OR YOU HAVE ANY QUESTIONS ABOUT YOUR LEGAL RIGHTS,
CONTACT A LAWYER.

    READ THE APPROPRIATE PORTION OF THIS NOTICE CHECKED BELOW.  IT WILL
INFORM YOU OF THE ACTION THAT IS NOW BEING TAKEN.

_____  WITHHOLDING ORDER SERVED AT THIS TIME

    THE COURT HAS ORDERED YOU TO PAY SUPPORT IN THE AMOUNT(S) PRESCRIBED
    IN ITS ORDER.  ADDITIONALLY, THE COURT HAS ENTERED AN ORDER TO YOUR
    EMPLOYER AS REQUIRED BY SECTION 30-3-61 OR SECTION 30-3-62, CODE OF
    ALABAMA 1975, DIRECTING YOUR EMPLOYER TO WITHHOLD THESE AMOUNTS FROM
    YOUR WAGES OR SALARY.  THIS ORDER IS BEING SERVED UPON YOUR EMPLOYER
    AT THIS TIME.  YOUR EMPLOYER IS REQUIRED BY LAW TO FILE AN ANSWER
    WITH THE COURT AND WILL BEGIN WITHHOLDING WITHIN FOURTEEN (14) DAYS
    OF THE SERVICE OF THIS COURT ORDER UPON HIM.

_____  WITHHOLDING ORDER HAS NOT BEEN SERVED TO EMPLOYER AT THIS TIME

    THE COURT HAS ORDERED YOU TO PAY SUPPORT IN THE AMOUNT(S) PRESCRIBED
    IN ITS ORDER.  AN INCOME WITHHOLDING ORDER DIRECTED TO YOUR EMPLOYER
    HAS BEEN MADE A PART OF THAT ORDER AS IS REQUIRED BY SECTION 30-3-61
    OR SECTION 30-3-62, CODE OF ALABAMA 1975.  HOWEVER, THIS ORDER TO
    WITHHOLD CHILD SUPPORT FROM YOUR WAGES OR SALARY HAS NOT BEEN SERVED
    ON YOUR EMPLOYER AT THIS TIME.  SHOULD YOU BECOME DELINQUENT IN YOUR
    PAYMENTS, THE ORDER MAY BE SERVED AT THAT TIME.  YOU SHOULD MAKE
    YOUR SUPPORT PAYMENTS AS ORDERED BY THE COURT.

_____  AFFIDAVIT OF ARREARAGE:  WITHHOLDING ORDER SERVED AT THIS TIME

    THE INCOME WITHHOLDING ORDER PREVIOUSLY ENTERED BY THE COURT AND
    WHICH IS ENCLOSED IS NOW BEING SERVED UPON YOUR EMPLOYER BECAUSE
    THE RECIPIENT HAS MADE OATH TO THIS COURT THAT YOUR ARE DELINQUENT
    IN YOUR SUPPORT PAYMENTS.  YOUR EMPLOYER WILL BE INSTRUCTED TO BEGIN
    WITHHOLDING THE AMOUNT(S) ORDERED FROM YOUR WAGES OR SALARY AND TO
    PAY THEM TO THE APPROPRIATE OFFICE.  YOUR EMPLOYER IS REQUIRED
    BY LAW TO FILE AN ANSWER WITH THE COURT AND WILL BEGIN WITHHOLDING
    WITHIN FOURTEEN (14) DAYS OF THE SERVICE OF THIS ORDER UPON HIM.

DO NOT DISREGARD THIS NOTICE.  THIS IS AN IMPORTANT LEGAL PROCEEDING.  THIS
IS A CONTINUING ORDER AND MAY BE SERVED ON YOUR PRESENT AND ANY FUTURE
EMPLOYER.  THEREFORE, IT IS YOUR RESPONSIBILITY TO KEEP TRACK OF THE AMOUNTS
APPLIED TO THE SUPPORT OBLIGATION(S) AND IT IS ALSO YOUR RESPONSIBILITY TO
NOTIFY THE COURT OF ANY CHANGES, INCLUDING REDUCTIONS IN THE TOTAL
AMOUNT(S) OWED.

--------------------------------------------------------------------------------

OPERATOR: NIF
PREPARED: 09/12/2006

AVS612

ALABAMA JUDICIAL DATA CENTER
LEE COUNTY CIRCUIT COURT
INSTRUCTIONS FOR EMPLOYER

FORM CS-34 03/01

43 DR 1995 000255.01
JUDGE: ROBERT M. HARPER

--------------------------------------------------------------------

JADE CLARK MONTGOMERY VS RICHEY D MONTGOMERY                    D001

READ THE ATTACHED INCOME WITHHOLDING ORDER (IWO) CAREFULLY.  THE IWO WILL
INSTRUCT YOU AS TO THE AMOUNT(S) TO BE WITHHELD AND WHERE THE PAYMENTS
SHOULD BE MADE.  THIS CONTINUING ORDER FOR THE ENFORCEMENT OF SUPPORT HAS
BEEN SERVED UPON YOU, THE EMPLOYER OF THE OBLIGATED PARENT OR SPOUSE, AS IS
REQUIRED BY BOTH FEDERAL AND STATE LAW.  THIS IWO IS EFFECTIVE IMMEDIATELY
AND SHALL REMAIN IN EFFECT AND BE BINDING UPON ANY EMPLOYER UPON WHOM IT IS
SERVED UNTIL FURTHER NOTICE OF THE COURT.

EMPLOYER'S ANSWER (CS-35).  YOU MUST FILE THE ENCLOSED ANSWER FORM (CS-35)
WITH THE CLERK OF COURT WITHIN FOURTEEN (14) DAYS OF SERVICE OF THIS ORDER
ON YOU.  FAILURE TO ANSWER MAY LEAD TO A JUDGMENT AGAINST YOU FOR THE
AMOUNT(S) OF SUPPORT ORDERED.

PRIORITY.  WITHHOLDING UNDER THIS ORDER/NOTICE HAS PRIORITY OVER ANY OTHER
LEGAL PROCESS UNDER STATE LAW AGAINST THE SAME INCOME INCLUDING WRITS OF
GARNISHMENT, WHETHER SUCH WRIT OR ORDER WAS SERVED PRIOR OR SUBSEQUENT TO
THE IWO.  FEDERAL TAX LEVIES IN EFFECT BEFORE RECEIPT OF THIS ORDER HAVE
PRIORITY.

IF YOU ARE UNABLE TO HONOR ALL SUPPORT DUE TO FEDERAL OR STATE WITHHOLDING
LIMITS, YOU MUST COMPLY WITH THE LAW OF THE STATE OF THE EMPLOYEE'S/
OBLIGOR'S PRINCIPAL PLACE OF EMPLOYMENT.  WHERE THE EMPLOYEE'S/OBLIGOR'S
PRINCIPAL PLACE OF EMPLOYMENT IS IN ALABAMA, SECTION 30-3-67, ALA.CODE
1975, PROVIDES THAT IF AN OBLIGOR'S INCOME IS SUBJECT TO MORE THAN ONE IWO
(OR A CURRENT WRIT FOR GARNISHMENT FOR CHILD SUPPORT AND AN IWO), THE TOTAL
AMOUNTS WITHHELD MAY NOT EXCEED THE STATUTORY MAXIMUM LIMITS AND THE
CURRENT MONTH'S SUPPORT PAYMENTS SHALL BE SATISFIED BEFORE ANY ARREARAGES
ARE SATISFIED.  YOU MUST HONOR ALL ORDERS/NOTICES TO THE GREATEST EXTENT
POSSIBLE.

WITHHOLDING LIMITS.  YOU MUST WITHHOLD THE TOTAL DOLLAR AMOUNT(S) STATED
IN THE COURT'S ORDER UNLESS THE TOTAL DOLLAR AMOUNT(S) EXCEED THE
PERCENTAGE OF THE EMPLOYEE'S AGGREGATE DISPOSABLE WEEKLY EARNINGS (ADWE)
AS INDICATED IN THE COURT'S ORDER.  IF THE TOTAL DOLLAR AMOUNT(S) EXCEED
THE PERCENTAGE OF ADWE, ONLY WITHHOLD THAT PERCENTAGE OF THE EMPLOYEE'S/
OBLIGOR'S ADWE.

YOU MAY NOT WITHHOLD MORE THAN THE LESSER OF: 1) THE AMOUNT ALLOWED BY THE
FEDERAL CONSUMER CREDIT PROTECTION ACT (15 U.S.C. 1673(B)); OR 2) THE
AMOUNT ALLOWED BY THE STATE OF THE EMPLOYEE'S/OBLIGOR'S PRINCIPAL PLACE OF
EMPLOYMENT.  THE FEDERAL LIMIT APPLIES TO THE (ADWE).  ADWE IS THE NET
INCOME LEFT AFTER MAKING MANDATORY DEDUCTIONS SUCH AS STATE, FEDERAL, AND
LOCAL TAXES, SOCIAL SECURITY TAXES, AND MEDICARE TAXES.

--------------------------------------------------------------------

OPERATOR: NIF
PREPARED: 09/12/2006

AVS612
ALABAMA JUDICIAL DATA CENTER
LEE COUNTY CIRCUIT COURT
INSTRUCTIONS FOR EMPLOYER

FORM CS-34 03/01

43 DR 1995 000255.01
JUDGE: ROBERT M. HARPER

---

JADE CLARK MONTGOMERY VS RICHEY D MONTGOMERY                    D001

GENERALLY, THE FEDERAL LAW AND ALABAMA LAW ALLOW THE EMPLOYER TO WITHHOLD
FOR CHILD SUPPORT AN AMOUNT NOT TO EXCEED SIXTY PER CENTUM (60%) OF THE
EMPLOYEE'S/OBLIGOR'S ADWE IF THE OBLIGOR IS NOT PROVIDING SUPPORT TO A
SPOUSE OR DEPENDENT CHILD OTHER THAN THAT FOR WHICH SUPPORT IS ORDERED.
WHERE THE EMPLOYEE/OBLIGOR IS SUPPORTING ANOTHER SPOUSE OR DEPENDENT CHILD
OTHER THAN THAT FOR WHICH SUPPORT IS ORDERED, THE AMOUNT WITHHELD CANNOT
EXCEED FIFTY PER CENTUM (50%) OF THE EMPLOYEE'S/OBLIGOR'S ADWE.  THE
MAXIMUM LIMITS SHALL BE 65 PER CENTUM (65%) AND 55 PER CENTUM (55%),
RESPECTIVELY, TO THE EXTENT SUCH EARNINGS ARE TO ENFORCE AN ORDER/NOTICE
WITH RESPECT TO A PERIOD WHICH IS PRIOR TO THE TWELVE-WEEK PERIOD WHICH
ENDS WITH THE BEGINNING OF THE SUCH WORKWEEK.  IF YOU HAVE QUESTIONS
CONCERNING THESE WITHHOLDING LIMITS, PLEASE CONTACT YOUR ATTORNEY.

LUMP SUM PAYMENTS.  YOU MAY BE REQUIRED TO REPORT AND WITHHOLD FROM LUMP
SUM PAYMENTS SUCH AS BONUSES, COMMISSIONS, OR SEVERANCE PAY.  IF YOU HAVE
ANY QUESTIONS ABOUT LUMP SUM PAYMENTS, CONTACT THE CLERK OF COURT'S OFFICE.

---

COURT COSTS INFORMATION

COSTS IN THIS PROCEEDING ARE  $_____  AND HAVE BEEN TAXED AGAINST THE
DEFENDANT/OBLIGOR.  IN ACCORDANCE WITH THE PROVISION OF 30-3-63(A), THE
AMOUNT OF COURT COSTS SHALL BE WITHHELD FROM THE FIRST PAY PERIOD COVERED
BY THIS ORDER AND SHALL BE OVER AND ABOVE ANY MONIES WITHHELD FOR SUPPORT
BUT MAY NOT EXCEED THE MAXIMUM WITHHOLDING LIMITS ESTABLISHED BY STATE AND
FEDERAL LAW.  THIS AMOUNT WITHHELD FOR COURT COSTS SHALL BE PAID DIRECTLY
TO THE COURT CLERK AT:
CLERK/REGISTER BY SEPARATE CHECK AT:
                    CORINNE T. HURST                  (CLERK)
                    LEE COUNTY CIRCUIT COURT
                    2311 GATEWAY DRIVE RM 104
                    OPELIKA  AL  36801-6847
                    (334)737-3526

---

REMITTANCE INFORMATION.  YOU MUST BEGIN WITHHOLDING NO LATER THAN THE FIRST
PAY PERIOD OCCURRING 14 WORKING DAYS AFTER THE DATE THIS ORDER WAS SERVED
ON YOU.  PAYMENTS MUST BE SENT WITHIN SEVEN (7) BUSINESS DAYS OF THE DATE
THE OBLIGOR IS PAID THE PAYCHECK FROM WHICH THE AMOUNT IS WITHHELD.  YOU
ARE ENTITLED TO DEDUCT A FEE TO DEFRAY THE COST OF WITHHOLDING. SECTION
30-3-71, ALA.CODE 1975, ALLOWS YOU TO WITHHOLD AND RETAIN A FEE OF UP TO
$2.00 FOR EACH MONTH TO COVER YOUR EXPENSES OF ADMINISTERING THIS ORDER.
SUCH FEE IS IN ADDITION TO THE SUPPORT AMOUNTS WITHHELD EACH MONTH.

COMBINING PAYMENTS.  YOU CAN COMBINE WITHHELD AMOUNTS FOR CHILD SUPPORT
FROM MORE THAN ONE EMPLOYEE'S/OBLIGOR'S INCOME IN A SINGLE PAYMENT.  YOU
MUST, HOWEVER, SEPARATELY IDENTIFY EACH EMPLOYEE'S/OBLIGOR'S SOCIAL
SECURITY NUMBER, CASE IDENTIFIER AS SET FORTH IN THE IWO, THE PAYDATE OR
WITHHOLDING DATE, AND THE PORTION OF THE SINGLE PAYMENT THAT IS
ATTRIBUTABLE TO EACH EMPLOYEE/OBLIGOR.  DO NOT COMBINE CHILD SUPPORT
PAYMENTS WITH OTHER COURT ORDERED WITHHOLDINGS INCLUDING COURT COSTS,
GARNISHMENTS, OR RESTITUTION.

---

OPERATOR: NIF
PREPARED: 09/12/2006

AVS612
ALABAMA JUDICIAL DATA CENTER
LEE COUNTY CIRCUIT COURT
INSTRUCTIONS FOR EMPLOYER

FORM CS-34 03/01

43 DR 1995 000255.01
JUDGE: ROBERT M. HARPER

---

JADE CLARK MONTGOMERY VS RICHEY D MONTGOMERY                          D001

REPORTING THE PAYDATE/DATE OF WITHHOLDING.  YOU MUST REPORT THE PAYDATE/
DATE OF WITHHOLDING WHEN SENDING THE PAYMENT.  THE PAYDATE/DATE OF
WITHHOLDING IS THE DATE ON WHICH THE AMOUNT WAS WITHHELD FROM THE
EMPLOYEE'S WAGES.  YOU MUST COMPLY WITH THE LAW OF THE STATE OF
EMPLOYEE'S/OBLIGOR'S PRINCIPAL PLACE OF EMPLOYMENT WITH RESPECT TO THE
TIME PERIODS WITHIN WHICH YOU MUST IMPLEMENT THE IWO AND FORWARD THE CHILD
SUPPORT PAYMENTS.  IN ALABAMA, PAYMENTS ARE REQUIRED TO BE SUBMITTED
WITHIN SEVEN (7) BUSINESS DAYS OF THE DATE THE OBLIGOR IS PAID THE
PAYCHECK FROM WHICH THE AMOUNT IS WITHHELD.

TERMINATION OF EMPLOYMENT.  YOU MUST PROMPTLY NOTIFY THE CLERK OF COURT
AND THE OBLIGEE WHEN THE EMPLOYEE/OBLIGOR IS NO LONGER WORKING FOR YOU.
PLEASE PROVIDE THE FOLLOWING INFORMATION TO THE CLERK OF COURT/
REQUESTING AGENCY:

          EMPLOYEE'S/OBLIGOR'S NAME
          EMPLOYEE'S/OBLIGOR'S CASE IDENTIFIER
          EMPLOYEE'S/OBLIGOR'S LAST KNOWN HOME ADDRESS
          DATE OF SEPARATION
          NEW EMPLOYER'S NAME AND ADDRESS

LIABILITY.  IF YOU WILLFULLY FAIL OR REFUSE TO WITHHOLD OR PAY THE AMOUNTS
AS THE ORDER/NOTICE DIRECTS, YOU MAY BE HELD IN CONTEMPT OF COURT AND MAY
BE PERSONALLY LIABLE TO THE OBLIGEE FOR FAILURE TO ANSWER OR WITHHOLD.
IN SUCH CASES, A CONDITIONAL AND FINAL JUDGMENT FOR THE AMOUNTS ORDERED
TO BE WITHHELD MAY BE ENTERED BY THE COURT AND AGAINST YOU.

NO EMPLOYER WHO COMPLIES WITH A WITHHOLDING ORDER OF THE COURT FOR
CHILD SUPPORT ACCORDING TO ITS TERMS SHALL BE LIABLE TO THE OBLIGOR OR
TO ANY OTHER PERSON CLAIMING RIGHTS DERIVED FROM THE OBLIGOR FOR
WRONGFUL WITHHOLDING.

ANTI-DISCRIMINATION.  YOU SHALL NOT DISCHARGE AN EMPLOYEE OR REFUSE TO
HIRE A PERSON BECAUSE OF THE ENTRY OR SERVICE OF AN IWO.  ANY EMPLOYER
WHO VIOLATES THESE PROVISIONS MAY BE HELD IN CONTEMPT OF COURT.

---

ADDITIONAL INFORMATION

FOR INFORMATION CONCERNING THE PROVISIONS OF THIS INCOME WITHHOLDING
ORDER, PLEASE CONSULT AN ATTORNEY.

PLEASE CONTACT THE ALABAMA CHILD SUPPORT PAYMENT CENTER AT 1-866-252-4453
FOR ANY QUESTIONS CONCERNING REMITTANCE OF PAYMENTS TO THEM.

---

OPERATOR: NIF
PREPARED: 09/12/2006

AVS617

ALABAMA JUDICIAL DATA CENTER
LEE COUNTY CIRCUIT COURT
EMPLOYER'S ANSWER TO ORDER OF
INCOME WITHHOLDING FOR SUPPORT

DR 1995 000255.01
JUDGE: ROBERT M. HARPER

-------------------------------------------------------------------------

JADE CLARK MONTGOMERY VS RICHEY D MONTGOMERY                          H002

   EMPLOYEE: MONTGOMERY RICHEY D              SOC SEC NO: 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

    ADDRESS: 468 LEE ROAD 120
             OPELIKA   AL 36801 0000


   EMPLOYER: K.D. INDUSTRIES OF AUBURN

    ADDRESS: 355 INDUSTRY DRIVE
             AUBURN           AL 36830 0000


AFTER READING THE ENCLOSED COURT DOCUMENTS, CHECK THE APPROPRIATE ANSWER(S)
BELOW AND SIGN.  RETURN TO THIS COURT AT THE ADDRESS BELOW SO THAT IT WILL
ARRIVE AT THE COURT WITHIN FOURTEEN (14) DAYS OF THE DATE THESE DOCUMENTS
WERE SERVED UPON YOU.  MAKE A COPY FOR YOUR RECORDS.

I.  _____   OBLIGOR IS EMPLOYED.  AFTER DEDUCTING FEDERAL INCOME TAX, STATE
               TAXES, SOCIAL SECURITY TAXES, CITY TAXES AND OTHER AMOUNTS
               REQUIRED BY LAW TO BE WITHHELD, OBLIGOR'S "DISPOSABLE EARNINGS"

               ARE: $_____ PER _____,
               (WEEK, BI-WEEK, MONTH).  EMPLOYER FURTHER ANSWERS THAT:

     (A)  _____   HE WILL BEGIN WITHHOLDING OBLIGOR'S DISPOSABLE EARNINGS
                     THE TOTAL DOLLAR AMOUNTS ORDERED FOR ALL SUPPORT PAYMENTS
                     IN THE COURT'S ORDER; OR

     (B)  _____   THE TOTAL AMOUNT WITHHELD EXCEEDS THE _____%
                     MAXIMUM OF OBLIGOR'S DISPOSABLE EARNINGS INDICATED IN THE
                     COURT'S ORDER AND THEREFORE, IN KEEPING WITH THE COURT'S
                     ORDER, THE EMPLOYER WILL WITHHOLD AND PAY OVER ONLY THAT
                     PERCENTAGE OF THE OBLIGOR'S DISPOSABLE EARNINGS.

II. _____   OBLIGOR IS NOT EMPLOYED BY THIS EMPLOYER AND EMPLOYER WAS NOT
               INDEBTED TO THE OBLIGOR WHEN THIS PROCESS WAS RECEIVED, OR WHEN
               MAKING THIS ANSWER OR DURING INTERVENING TIME.

III. _____   OTHER (EXPLAIN): _____

                _____

                _____

                _____


                                       ADDRESS OF COURT
                                     CORINNE T. HURST
SWORN TO AND SUBSCRIBED BEFORE ME THIS THE    CIRCUIT COURT  OF LEE COUNTY
                                     2311 GATEWAY DRIVE RM 104
DAY OF _____   OPELIKA  AL  36801-6847
                                     (334) 737-3526

_____
EMPLOYER`S SIGNATURE

_____
NOTARY / CLERK / REGISTER (SIGNATURE)

                       NOTICE TO EMPLOYER

YOU MUST FILE AN ANSWER WITH THE CLERK OF THE COURT INDICATED ABOVE AND
BEGIN WITHHOLDINGS WITHIN FOURTEEN (14) DAYS OF SERVICE OF THIS ORDER ON
YOU.  FAILURE TO ANSWER MAY LEAD TO A JUDGMENT AGAINST YOU FOR THE AMOUNT(S)
OF SUPPORT ORDERED.

-------------------------------------------------------------------------

OPERATOR: NIF
PREPARED: 09/12/2006

DR 03-175

### CLERK'S DEED

STATE OF ALABAMA  )
COUNTY OF LEE     )

KNOW ALL MEN BY THESE PRESENTS, that whereas, on the 31st day of October, 2003, a decree was rendered by the Circuit Court of Lee County, Alabama, in a certain cause pending in the said Court, wherein **Charlotte Williford**, is the plaintiff and Kenneth Williford, an incarcerated man, is the defendant, wherein and whereby it is ordered and decreed that said Clerk execute and deliver to Charlotte Williford a deed conveying all the right, title, claim, and interest of Kenneth Williford, the defendant, in said cause, in and to said land; and

Now Therefore, in consideration of the premises and of the payment of the sum of One Dollar ($1.00) and other good and valuable consideration, the receipt whereof is hereby acknowledged, I, Corinne T. Hurst, Clerk of the Circuit Court of Lee County, Alabama, under and by virtue of the authority vested in me by said decree of said Court, do hereby grant, bargain, sell, and convey unto Charlotte Williford, all the right, title, claim, and interest of the said Kenneth Williford, in and to the following described tracts or parcels of land lying and being in Lee and Chambers Counties, in the State of Alabama, to-wit:

Attached as Exhibit "A" is the legal description of the property to be conveyed.

Attached as Exhibit "B" is the Judgment of Divorce authorizing the conveyance of the property.

TO HAVE AND TO HOLD unto the said Charlotte Williford, her heirs and assigns, forever.

IN WITNESS WHEREOF, I have hereunto signed my name as clerk aforesaid, and have affixed the seal of this court, this 28 day of February, 2006.

_Corinne T. Hurst_
Corinne T. Hurst
Clerk of Circuit Court of Lee County, Alabama

STATE OF ALABAMA  )
COUNTY OF LEE     )

I, the undersigned, a Notary Public in and for said state and County, hereby certify that **Corinne T. Hurst, as Clerk of the Circuit Court of Lee County, Alabama**, whose name is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day, that being informed of the contents of said instrument, she executed the same voluntarily on the day the same bears date.

GIVEN under my hand and official seal this 28 day of February, 2006.

_Jennie Ruth Powell_
NOTARY PUBLIC
My commission expires: _____

State of Alabama, Notary At Large
My Commission Expires April 10, 2007

APPROVED:

_Richard D. Lane_
Richard D. Lane
Circuit Court Judge, Lee County

THIS INSTRUMENT PREPARED BY:
James E. Bridges, III
Samford & Denson, LLP
Post Office Box 2345
Opelika, Alabama 36803-2345
334/745-3504

Commencing at the Northeast corner of Section 29, Township 19 North, Range 27 East, Lee County, Alabama, run thence for the following bearings and distances to the Point of Beginning (P.O.B.): thence South 89 degrees 46 minutes 00 seconds West 1620.00 feet to a point on the Southwest margin of Highway No. S-169; thence South 53 degrees 55 minutes 00 seconds East 898.60 feet to a point marked by an iron pin found on the Southwest margin of Highway No. S-169; thence South 53 degrees 55 minutes 00 seconds East 100.00 feet to a point marked by an iron pin set on the Southwest margin of said highway and the P.O.B. of the herein described lot or parcel of land. Thence from said P.O.B. run for the following bearings and distances: thence South 27 degrees 30 minutes 49 seconds West 65.00 feet to a point marked by an iron pin, thence South 0 degrees 23 minutes 14 seconds East 137.14 feet to a point marked by an iron pin, thence South 51 degrees 39 minutes 50 seconds East 269.67 feet to a point marked by an iron pin, thence South 51 degrees 39 minutes 50 seconds East, 377.44 feet to a point marked by an iron pin, thence South 18 degrees 38 minutes 46 seconds West 72.13 feet to a point marked by an iron pin, thence South 41 degrees 55 minutes 19 seconds West 86.95 feet to a point marked by an iron pin, thence South 40 degrees 55 minutes 27 seconds East 185.72 feet to a point marked by an iron pin, thence South 6 degrees 56 minutes 37 seconds West 109.64 feet to a point marked the center point of a manhole, thence South 12 degrees 25 minutes 14 seconds West 93.34 feet to a point marked by the center point of a manhole, thence South 28 degrees 00 minutes 39 seconds West 102.21 feet to a point marked by the center point of a manhole, thence South 27 degrees 53 minutes 09 seconds West 70.03 feet to a point marked by the center point of a manhole, thence South 5 degrees 48 minutes 35 seconds West 122.18 feet to a point marked by the center point of a manhole, thence South 16 degrees 19 minutes 49 seconds East 276.36 feet to a point marked by the center point of a manhole, thence South 56 degrees 54 minutes 53 seconds West 116.45 feet to a point marked by the center point of a manhole, thence South 37 degrees 21 minutes 33 seconds West 112.29 feet to a point marked by the center point of a manhole, thence North 60 degrees 08 minutes 55 seconds West 135.65 feet to a point marked by the center point of a manhole, thence North 85 degrees 21 minutes 31 seconds West 254.44 feet to a point marked by the center point of a manhole, thence North 31 degrees 43 minutes 16 seconds West 109.05 feet to a point marked by an iron pin, thence North 88 degrees 21 minutes 53 seconds West 372.67 feet to a point marked by an iron pin, thence North 0 degrees 17 minutes 20 seconds West 1497.50 feet to a



point marked by an iron pin, thence North 89 degrees 45 minutes 35 seconds East 254.83 feet to a point marked by an iron pin, thence South 53 degrees 56 minutes 21 seconds East 210.54 feet to a point marked by an iron pin found on the Westerly margin of a paved access road, thence North 0 degrees 23 minutes 14 seconds West 254.03 feet to a point marked by an iron pin found at the point of intersection of the Southwesterly margin of State Highway (S-169) with the westerly margin of the access road, thence South 53 degrees 55 minutes 00 seconds East 100.00 feet to a point marked by an iron pin and the aforementioned P.O.B. of the herein described parcel of land containing 30.74 acres, more or less. All according to that certain plat of survey prepared by Walter Pryor White, RLS Ala. Reg. No. 12504, entitled "Survey for Kenneth H. and Charlotte Williford and SouthTrust Bank" dated April 23, 1993.

Parcel One: From the northwest corner of Section 18, Township 19 North, Range 27 East in Opelika, Alabama, run thence South 3,011.9 feet; thence East 1,485. 6 feet to a point on the southwesterly margin of Hurst Street in said city, and the point of beginning of the land herein to be described: From said point of beginning run thence South 16 deg. 39 min. East along the southwesterly margin of Hurst Street 669.0 feet to the point of intersection of said margin of said street with the northerly margin of Hardaway Avenue; thence run South 88 des. 27 min. West, along the northerly margin of Hardaway Avenue 283.6 feet; thence South 82 deg. 34 min. West along the said avenue 238.3 feet; thence continuing along the margin of said avenue in a southwesterly direction, run along a curve in said avenue, whose radius is 874.3 feet, for a distance of 300.6 feet; thence continue along said avenue, South 62 deg. 52 min. West 637.7 feet to the point of intersection of said avenue with the east margin of Long Street; thence run North 03 deg. 20 min. West along the easterly margin of Long Street 317.8 feet; thence along a curve in Long Street, in a Northeasterly direction, run a distance of 404.9 feet, the radius of said curve being 464.6 feet, and said curve intersecting the southerly margin of East Avenue at about the mid-point of said curve; thence run North 46 deg. 36 min. East along the southeasterly margin of East Avenue 239.3 feet; thence run South 06 deg. 55 min. East, leaving said avenue, 306.4 feet; thence run North 58 deg. 31 min. East along an old fence and hedge row 990.1 feet to the point of beginning, and containing 15.14 acres, more or less.

**Parcel Two:** From the northwest corner of Section 18, Township 19 North, Range 27 East, Lee County, Alabama, run thence South 3,011.9 feet; thence run East 1,485.6 feet to a point on the southwesterly margin of Hurst Street in the City of Opelika, Lee County, Alabama; thence run South 16 deg. 39 min. East, along the southwesterly margin of Hurst Street 669.0 feet to the point of intersection of said margin of said street with the northerly margin of Hardaway Avenue; thence run North 88 deg. 27 min. East 61.2 feet to the southwesterly corner of Lot 1, Block 233, as shown on the Totten Official Real Estate Map of the City of Opelika, 1930, of record in the Lee County Probate Office in Town Plat Book 2. at Page 9, and the point of beginning of the tract of land herein to be described and conveyed: From said point of beginning, run North 16 deg. 39 min. West 617.0 feet, along the northeasterly margin of Hurst Street; thence leaving said street, run North 69 deg. 18 min. East 218.2 feet; thence North 62.deg. 25 min. East 292.7 feet; thence North 85 deg. 14 min. East 26.8 feet; the last bearing describing a distance along the southerly margin of Marion Avenue in Opelika; thence leaving said avenue, run South 01 deg. 01 min. West 182.8 feet; thence North 82 deg. 16 min. East 353.4 feet; thence South 05 deg. 35 min. East 606.4 feet to a point on the westerly margin of Hardaway Avenue; thence South 84 deg. 32 min. West, along the northerly margin of Hardaway Avenue, 300.0 feet; thence leaving said avenue, run North 05 deg. 28 min. West 100.0 feet; thence parallel with Hardaway Avenue, South 84 deg. 32 min. West 60.0 feet; thence South 05 deg. 28 min. East 100.0 feet to a point on the northerly margin of Hardaway Avenue; thence South 84 deg. 32 min. West, along the northerly margin of said avenue, 402.5 feet to the point of beginning, and containing 12.03 acres, more or less, in Lee County, Alabama.

**Parcel Three:** From the point of intersection of the southerly margin of Hardaway Avenue with the easterly margin of Hurst Street in the City of Opelika, Alabama, run North 84 deg. 32 min. East along the southerly margin of Hardaway Avenue 100.0 feet; thence South 11 deg. 26 min. East 10.1 feet to the point of beginning of the parcel herein to be described and conveyed: From said point of beginning run North 84 deg. 32 min. East, along Hardaway Avenue, 390.0 feet; thence leaving said avenue, run South 05 deg. 28 min. East 170.0 feet; thence South 11 deg. 26 min. East 325.7 feet; thence South 76 deg. 17 min. West 60.0 feet; thence North 11 deg. 26 min. West 312.8 feet; thence South 84 deg. 32 min. West 309.5 feet; thence North 11 deg. 26 min. West 192.5 feet to the point of beginning of the property described and conveyed, containing 2.10 acres, more or less, in Lee County. Alabama.

## LESS AND EXCEPT FROM SAID CONVEYANCES the right-of-way

deeded to the City of Opelika on June 25, 1998, by Grantor, to-wit: Commencing at the southwest corner of Section 18, Township 19 North, Range 27 East, Lee County, Alabama, run thence northwardly along the west line of said Section 18, 1,162.1 feet to Station 239+ 79 on the centerline of Highway Project 9280-B on record in the City Engineer's Office of the City of Opelika, Alabama; thence run along said centerline 17.65 feet to the point of beginning of the property herein to be described and excepted; thence departing said centerline run North 01 deg. 08 min. 14 sec. West along the east right-of-way of Long Street, 119.00 feet to a point 110 feet northwardly from and perpendicular to the aforementioned project centerline at Station 240+42.06; thence run South 56 deg. 56 min. 50 sec. East along said right-of-way line 59.88 feet to a point 60 feet northwardly of and perpendicular to said centerline at Station 240+75; thence run North 66 deg. 25 min. 58 sec. East, along said right-of-way line, 373.32 feet to P.C. Station 244+48.32; thence run northeastwardly along a curve to the left having a radius of 821.47 feet an arc distance of 490.83 feet (the chord bears North 49 deg. 18 min. 56 sec. East and measures 483.56 feet); thence run North 57 deg. 48 min. 05 sec. West, along said right-of-way 70.00 feet to a point 130 feet northwestwardly from centerline 249+ 75; thence run North 28 deg. 56 min. 54 sec. East, along said right-or-way, 85.21 feet to a point 130 feet northwestwardly from centerline Station 250+75; thence run North 62 deg. 55 min. 51 sec. East, along said right of way, 86.08 feet to a point 75 feet northwardly from centerline Station 251 +50; thence run North 18 deg. 13 min. 11 sec. East, along said right-of-way. 79.47 feet to the Grantor's north property line; thence run along Grantor's north property line North 61 deg. 36 min. 31 sec. East, 180.38 feet to the south right-of-way line of aforementioned project; thence run South 01 deg. 43 min. 33 sec. West, 84.61 feet to a point 80 feet eastwardly from centerline Station 252 + 75; thence run South 17 deg. 38 min. 32 sec. West, along said right-of-way line, 102.55 feet to a point 80 feet eastwardly from centerline Station 251 +75; thence run South 26 deg. 23 min. 07 sec. West, along said right-of-way line, 190.14 feet to a point 75 feet eastwardly from centerline Station 250+00; thence run South 49 deg. 39 min. 07 sec. East, 106.39 feet to a point 180 feet eastwardly from the project centerline and on the west right-or-way line of Hardaway Street; thence run Southwestwardly along the west right-of-way line of Hardaway Street, 1,100 feet, more or less, to the east right-of-way line of Long Street; thence run North 01 deg. 08 min. 14 sec. West along said east right-of-way line, 7.81 feet to the point of beginning. Said tract contains 3.61 acres, more or less, and is shown as Parcel 12-2 of the right-of-way map of Project 92801-B on record in the Office of the City Engineer of the City of Opelika.

**PARCEL ONE**: Commence at the Northwest corner of the Southeast of the Southwest quarter of section 29, Township 19 North, Range 27 East, Lee County, Alabama; run thence South 83° 22' 18" East for 90.0 feet to the POINT OF BEGINNING of the parcel of land to be herein described and conveyed: From said point of beginning run thence along the following courses: North 03° 07' 42" East for 200.30 feet; North 87° 07' 10" West for 150.00 feet; South 36° 37' 50" West for 234.89 feet; North 86° 13' 11" West for 95.64 feet; South 02° 18' 13" West for 1,303.57 feet; North 75° 21' 23" West for 203.14 feet; North 83° 14' 34" West for 209.65 feet; North 00° 19' 03" West for 119.38 feet; North 02° 03' 06" East for 442.83 feet; North 02° 39' 32" East for 207.34 Feet; North 01° 49' 55" East for 200.09 feet; North 02° 22' 34" East for 285.07 feet; North. 86° 33' 42" West for 102.13 feet; North 87° 23' 25" West for 200.39 feet; North 83° 59' 56" West for 99.74 feet; North 85° 47' 27" West for 216.45 feet; North 03° 17' 19" East for 1,522.29 feet along the East margin of 80 foot right-of-way, Alabama Highway 51; thence South 86° 15' 42" East for 272.54 feet; South 86° 18' 27" East for 349.24 feet; South 86° 00' 30" East for 203.62 feet; South 86° 31' 49" East for 348.75 feet; South 85° 54' 14" East for 155.91 feet; South 86° 30' 34" East for 416.23 feet; South 86° 38' 48" East for 214.25 feet, South 85° 35' 47" East for 204.14 feet; South 01° 54' 29" West for 198.32 feet; North 87° 15' 04" East for 390.06 feet South 00° 03' 53" East for 212.60 feet; South 03° 34' 36" West for 147.09 feet; South 04° 21' 22" West for 127.89 feet; South 03° 50' 40" West for 227.28 feet; South 01° 49' 03" West for 115.83 feet; South 03° 38' 41" West for 118.66 feet; South 04° 09' 37" West for 244.19 feet; South 02° 49' 08" West for 166.81 feet; North 86° 45' 23" West for 349.04 feet; North 86° 14' 38" West for 325.81 feet; North 88° 41' 11" West for 153.10 feet; North 85° 29' 09" West for 131.56 feet; North 97° 25' 59" West for 196.07 feet to the POINT OF BEGINNING. Containing 99.14 acres ±.

LESS AND EXCEPT that certain public road as described in that certain affidavit to Elouise Frederick Lipscomb of record in Deed Book 1409, at Page 18, in the office of the Judge of Probate of Lee County, Alabama.

(Note: The foregoing Parcel One is described in Deed Book 2177, at Page 769, of record in the Office of the Judge of Probate of Lee County, Alabama on February 12, 1999.)

**PARCEL TWO:** A road lying in Section 29, Township 19 North, Range 27 East, Lee County, Alabama; the centerline being more particularly described as follows: Commence at a capped rebar (#8113) found at the Northeast corner of Lot 8 of C and M Subdivision No.2 as recorded in Plat Book 7 page 16 in the Probate Office in Lee County, Alabama; thence North 02°22'34" East, 285.07 feet; thence North 86°33'42" West, 182.13 feet; thence North 87°23'25" West, 200.39 feet; thence North 83°59'56" West, 99.74 feet; thence North 85°47'27" West, 216.45 feet to a point on the east right of way (R.O.W.) line of Alabama Highway 51; thence North 03°17'19" East, along said east R.O.W., 1345.78 feet to the point of beginning of centerline of said road; thence along said centerline the following courses;
North 86°27'44" East, 193.89 feet;
South 88°13'30" East, 64.31 feet;
South 79°16'39" East, 69.57 feet;
South 78°09'16" East, 136.45 feet;
South 86°26'36" East, 132.00 feet;
South 77°13'29" East, 162.90 feet;
South 62°39'39" East, 178.60 feet;
South 64°09'26" East, 215.46 feet;
South 62°09'01" East, 149.53 feet;
South 63°12'28" East, 144.79 feet;
South 64°15'26" East, 180.61 feet;
South 62°28'05" East, 83.54 feet;
South 31°00'33" East, 29.84 feet;
South 05°58'57" East. 70.28 feet;
South 23°39'00" West, 45.40 feet;
South 35°31'24" West, 302.14 feet;
South 36°02'54" West, 483.61 feet;
South 32°08'00" West, 119.32 feet to the point of ending.

(Note: The hereinabove described road comprising Parcel Two was conveyed by the City of Opelika, Alabama to Kenneth H. Williford and Charlotte D. Williford and described in Deed Book 2188, at Page 838, of record on December 7, 1999 in the Office of the Judge of Probate of Lee County, Alabama.)

Commencing at the Northwest corner of the Northeast quarter of the Southeast quarter of Section 21, Township 19 North, Range 27 East in Lee County, Alabama; thence run South 0 degrees 42 minutes West a distance of 75.6 feet to a point on the Southerly margin of the 60 foot right-of-way of Lee County Highway No. 34 which is the point of beginning; thence run South 87 degrees 49 minutes East along the Southerly margin of the said 60 foot right-of-way of said Lee County Highway No. 34 a distance of 526.5 feet; run thence South 89 degrees 19 minutes East along the said Southerly margin of the 60 foot right-of-way of the said Lee County Highway No. 34 for a distance of 233.9 feet to a point on the Northwest margin of a 60 foot right-of-way of Alabama Power Company; run thence South 47 degrees 38 minutes West along said Alabama Power easement for a distance of 916.4 feet to a point on the Northerly margin of the 100 foot right-of-way of the

Central of Georgia Railway Company; run thence North 80 degrees 27 minutes West along said Northerly margin of said Central of Georgia Railway Company right-of-way a distance of 92.2 feet; run thence North 0 degrees 42 minutes East a distance of 624.4 feet to the point of beginning, containing 5-1/2 acres, more or less, in Lee County, Alabama, and more particularly shown by the survey of T. Richard Fuller, L.S. Alabama Register No. 7384, dated February 9, 1968. Also being a part of the 100 acres, more or less, conveyed to S.L. Fields by H.R. Dudley by deed dated November 25, 1942, and recorded at Book 246, Page 355, in the Office of the Judge of Probate of Lee County, Alabama, and further being a part of 62.42 acres, more or less, of the said property conveyed from Dudley to Fields, which said 62.42 acres is more particularly shown by certain survey of George L. Boles, Certificate No. 2055, being dated March 28, 1960, together with all improvements and appurtenances thereunto appertaining.

Starting at the NW corner of Section 34, Township 22 North, Range 28 East, Chambers County, Alabama; Thence South 1 degree 0' East along the Section Line a distance of 2,640 feet; thence North 87 degrees 45' East a distance of 338.5 feet; thence South 28 degrees 0' East a distance of 575 feet; thence South 82 degrees 30' East a distance of 731 feet; thence North 43 degrees 30' East a distance of 268.2 feet; thence South 41 degrees 30' East of distance of 341 feet to the Northwesterly margin of the Blacktop highway from Hugley to West Point; thence North 41 degrees 15' East along the Northwesterly margin of said Highway a distance of 226 feet; thence North 47 degrees 45' West a distance of 171 feet; thence North 14 degrees 30' East a distance of 210 feet; thence South 87 degrees 30' West a distance of 377.5 feet; thence North 0 degrees 30' East a distance of 234 feet; thence South 87 degrees 45' West a distance of 474 feet; thence North 1 degrees 0' West a distance of 2,574 feet to the North Line of Section 34; thence South 88 degrees 10' West along the Section Line a distance of 990 feet to the starting point, containing 74.45 acres, more or less. Said property being a part of the NW 1/4 and a part of the SW 1/4 Section 34, Township 22 North, Range 28 East, Chambers County, Alabama. A plat of the above described property made by Frank H. McCarley dated July 19,1960, is attached to that certain deed recorded in Deed Volume 182, Page 981 in the Office of the Judge of Probate of Chambers County, Alabama, and is incorporated herein by reference. This being the same property acquired by James David Monk and Rose Marie Monk by deed recorded in Deed Book 255, Page 191 in the Office of the Judge of Probate of Chambers County, Alabama.

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA
FAMILY COURT DIVISION

CHARLOTTE D. WILLIFORD,       *

       Plaintiff,       *

                        *

vs.                    *     Civil Action No. DR-2003-175

                        *

KENNETH H. WILLIFORD,       *

       Defendant.       *

## JUDGMENT OF DIVORCE

This case was called for trial and was heard by the Court on September 22, 2003 and September 23, 2003. The Court has considered the oral testimony of the parties and the evidence submitted by each of the parties. The Court is of the opinion that the Plaintiff is entitled to the relief prayed for in her Complaint.

It is therefore, **ORDERED, ADJUDGED and DECREED** by the Court as follows:

     1.     The bonds of matrimony heretofore existing between the Plaintiff (Wife) and the Defendant (Husband) are dissolved, and the said CHARLOTTE D. WILLIFORD is forever divorced from the said KENNETH H. WILLIFORD on the ground of incompatibility.

     2.     Neither party shall marry again except to each other until Sixty (60) days after the date of this Judgment of Divorce, and if an appeal is taken (which must be instituted within Forty-Two (42) days from this Judgment, or from the date that post-trial motion is denied), then neither party shall again marry except to each other during the pendency of the appeal.



3.    The absolute and sole care, custody and control of the minor children of the parties, namely AMY B. WILLIFORD, d/o/b 06/13/1984 (who was a minor child at the time of the filing of the Complaint and has since attained the age of her majority), and MATTHEW WILLIFORD, d/o/b 06/15/1998, is hereby awarded to the Plaintiff, Charlotte D. Williford. The Defendant, Kenneth H. Williford, shall have reasonable rights of visitation with said minor children at times and places to be arranged in advance by the parties.

4.    The Court makes the following findings of fact in this case:

a.    The marriage of the parties has been irretrievably broken as a direct result of the Defendant's commission and conviction of two (2) heinous criminal offenses, i.e., Sodomy in the First Degree and Rape in the First Degree (See Plaintiff's Exhibits 1 & 2);

b.    The Defendant has been incarcerated as a result of said criminal convictions since on or about February 26, 2003;

c.    The Defendant was sentenced in the Circuit Court of Lee County, Alabama on May 8, 2003 to Fifteen (15) years in the State Penitentiary and Twenty-Five (25) years in the State Penitentiary as a result of said convictions, the sentences to run concurrently, (See Plaintiff's Exhibits 1 & 2), and, although he has an appeal pending, the Defendant, Kenneth H. Williford, has remained in the custody of the Alabama Department of Corrections;

d.    The Court finds that the Defendant, Kenneth H. Williford, is voluntarily unemployed (as a result of his criminal actions and the consequences of the same), and imputes his income at $2,800.00 per month for purposes of calculating child support in accordance with the guidelines established by Rule 32, Alabama Rules of Judicial Administration;

2

e.    The Defendant, as a result of his willful actions, has abrogated the running of the family business, i.e., the trailer parks, to the Plaintiff, Charlotte D. Williford; and, further, the Defendant has abrogated all of his responsibilities and obligations to his family, children, and the Plaintiff, Charlotte D. Williford.

f.    The Plaintiff, Charlotte D. Williford, is now solely responsible (and has been since the Defendant's incarceration) for the daily operation and responsibilities of the family business, i.e., the trailer parks of the parties. And, further, it is the Plaintiff's, Charlotte D. Williford's, sole responsibility to meet the obligations of her family and household, including supporting (at the time of the filing of the Complaint) two (2) minor children, namely Amy B. Williford (who has attained the age of nineteen (19) and is now a college student) and Matthew Williford;

g.    Numerous civil judgments, which are liens against the property of the parties, have been recorded in the Office of the Judge of Probate of Lee County, Alabama (See Wife's Divorce Forms 1-5 and Plaintiff's Exhibits 4, 8, 9, 10, 11, & 13);

h.    The Plaintiff, Charlotte D. Williford, has assumed, from the time of the incarceration of the Defendant, Kenneth H. Williford, until the present, all responsibilities and obligations of the family in regard to paying the mortgage on the homeplace and the Two Million Eight Hundred Thousand Dollar ($2,800,000.00) Note (secured) to the Peoples Bank and Trust Company (See Plaintiff's Exhibit 4) regarding the business of the parties, i.e., the trailer parks and real estate of the parties;

i.    The Plaintiff, Charlotte D. Williford, is incurring legal fees, expenses and costs, not only in the instant divorce case but in other litigation, including: the pending litigation in Chambers County, Alabama (the civil judgment, plus interest, in the approximate total amount

3

of Four Hundred Twenty-Nine Thousand Three Hundred Thirty-Seven and 75/100 Dollars ($429,337.75)) (See Plaintiff's Exhibit 9) which the opposing counsel in said case has duly recorded in Lee County, Alabama, and is actively pursuing execution of the same, in pending litigation in federal court regarding an action for declaratory judgment filed by the parties' (Plaintiff's and Defendant's) insurance company; and other matters as testified to in the instant case.

5.    The Defendant shall pay to the Plaintiff as support and maintenance for the minor son of the parties, Matthew Williford, the sum of Five Hundred Twelve Dollars ($512.00) per month. The first payment shall be due and payable on the first day of November, 2003 and subsequent payments shall be due and payable on the first day of each month thereafter. All support payments shall be paid through the Office of the Circuit Clerk of Lee County, Alabama. Said support shall continue for the minor child, Matthew Williford, until said child reaches the age of nineteen (19) years, marries, or otherwise becomes self-supporting. This is in accordance with the guideline forms submitted based on the wages imputed to the Defendant.

As to the daughter of the parties, namely Amy B. Williford, who was a minor at the time of the Complaint was filed, who has since attained the age of majority, and who is currently a college student, the Court is of the opinion that to order the Defendant, Kenneth H. Williford, to pay any additional amounts for said child's post-minority educational support at this time would impose an undue hardship on said Defendant. However, the Court reserves the issue of post-minority educational support for the parties' daughter, Amy B. Williford, in the event that the Defendant is, for any reason, released from prison prior to her completing her post-secondary education. Also, the Court reserves the issue of post-minority educational support for the parties' minor son, Matthew Williford, in the event that the Defendant is, for any reason,

4

released from prison prior to the youngest child, Matthew Williford, reaching the age of majority.

6.      It shall be the responsibility of the Plaintiff, Charlotte D. Williford, to maintain a policy of health and medical insurance on the minor child of the parties, Matthew Williford. The Plaintiff, Charlotte D. Williford also shall be responsible for payment of any uninsured health and medical expenses in regard to said minor child.

7.      Title to the homeplace of the parties, located at 815 Crawford Road, Opelika, Lee County, Alabama is hereby divested out of both parties to destroy the joint tenancy with right of survivorship provision of the former deed to the parties and is hereby conveyed to and vested in the Plaintiff, Charlotte D. Williford, solely and absolutely, and any and all interest in and to said property is divested out of the Defendant, Kenneth H. Williford, including the right to survivorship. Said property is more particularly described as follows:

> Commencing at an iron pin found purportedly marking the Southeast corner of the Northeast Quarter (NE1/4) of Section 29, Township 19 North, Range 27 East, Lee County, Alabama, run thence for the following bearings and distances to the Point of Beginning (P.O.B.): thence North 0 degrees 03 minutes 21 seconds West 303.86 feet to a point marked by an iron pin set and the P.O.B. of the herein described lot or parcel of land. Thence from said P.O.B. run for the following bearings and distances: thence South 89 degrees 25 minutes 46 seconds West 442.30 feet to a point marked by a Manhole, thence North 56 degrees 54 minutes 53 seconds East 116.45 feet to a point marked by a Manhole, thence North 16 degrees 19 minutes 49 seconds West 276.36 feet to a point marked by a Manhole, thence North 5 degrees 48 minutes 35 seconds East, 122.18 feet to a point marked by a Manhole, thence North 27 degrees 53 minutes 09 seconds East 70.03 feet to a point marked by a Manhole, thence North 28 degrees 00 minutes 39 seconds East 102.21 feet to a point marked by a Manhole, thence North 12 degrees 25 minutes 14 seconds East 93.34 feet to a point marked by a Manhole, thence North 6 degrees 56 minutes 37 seconds East, 109.64 feet to a point marked by an iron pin found, thence North 40 degrees 55 minutes 27 seconds West, 185.72 feet to a point marked by an iron pin found, thence North 41 degrees 55 minutes 19 seconds East 86.95 feet to a point marked by an iron pin found, thence North 18 degrees 38 minutes 46 seconds East 72.13 feet to a point marked by an iron pin found, thence North 40 degrees 48 minutes 07 seconds East

5

202.05 feet to a point marked by an iron pin set on the Southerly Right of Way (R/W) of Alabama Highway 169, thence South 54 degrees 00 minutes 29 seconds East 251.47 feet to a point marked by an iron pin found on the Southerly R/W of said highway, thence South 0 degrees 03 minutes 09 seconds East 477.77 feet to a point marked by an iron pin found, thence South 0 degrees 02 minutes 51 seconds East 302.38 feet to a point marked by an iron pin found, thence South 0 degrees 03 minutes 21 seconds East 296.43 feet to a point marked by an iron pin set and the aforementioned P.O.B. of the herein described parcel of land containing 9.63 acres, more or less, and being more particularly described on plat of survey prepared by Walter Pryor White, RLS Ala. Reg. No. 12504, dated January 9, 1995, and entitled "Hickory Haven Subdivision, First Addition, A Re-division of Lot 2, Hickory Haven Subdivision for Kenneth H. and Charlotte Williford", and filed for record in the Office of the Judge of Probate of Lee County, Alabama, in Town Plat Book 17, at Page 94.

The Plaintiff, Charlotte D. Williford, shall be responsible for the payment of all insurance, taxes and mortgage payments relating to the aforesaid property and shall hold the Defendant, Kenneth H. Williford, harmless from any liability thereon.

It is Ordered that the Lee County Circuit Clerk shall execute and deliver to the said Charlotte D. Williford a Clerk's Deed conveying to her all of the right, title, claim, and interest of the said Charlotte D. Williford and the said Kenneth H. Williford in and to the aforesaid described land.

8.      As to the division of the parties' business, i.e., the mobile home parks of the parties, all of the assets of the parties' business (including all real estate and all personal property) are hereby conveyed and title transferred to the Plaintiff, Charlotte D. Williford who is left solely responsible for the support of herself and her family. All of said assets are hereby conveyed and titles transferred as follows:

6

a.     Title to the real property known as Hickory Haven Subdivision, located in Lee County, Alabama is hereby vested in the Plaintiff, Charlotte D. Williford, and the same is divested out of the Defendant, Kenneth H. Williford, including any and all right to survivorship.

Said property is more particularly described as follows:

Commencing at the Northeast corner of Section 29, Township 19 North, Range 27 East, Lee County, Alabama, run thence for the following bearings and distances to the Point of Beginning (P.O.B.): thence South 89 degrees 46 minutes 00 seconds West 1620.00 feet to a point on the Southwest margin of Highway No. S-169; thence South 53 degrees 55 minutes 00 seconds East 898.60 feet to a point marked by an iron pin found on the Southwest margin of Highway No. S-169; thence South 53 degrees 55 minutes 00 seconds East 100.00 feet to a point marked by an iron pin set on the Southwest margin of said highway and the P.O.B. of the herein described lot or parcel of land. Thence from said P.O.B. run for the following bearings and distances: thence South 27 degrees 30 minutes 49 seconds West 65.00 feet to a point marked by an iron pin, thence South 0 degrees 23 minutes 14 seconds East 137.14 feet to a point marked by an iron pin, thence South 51 degrees 39 minutes 50 seconds East 269.67 feet to a point marked by an iron pin, thence South 51 degrees 39 minutes 50 seconds East, 377.44 feet to a point marked by an iron pin, thence South 18 degrees 38 minutes 46 seconds West 72.13 feet to a point marked by an iron pin, thence South 41 degrees 55 minutes 19 seconds West 86.95 feet to a point marked by an iron pin, thence South 40 degrees 55 minutes 27 seconds East 185.72 feet to a point marked by an iron pin, thence South 6 degrees 56 minutes 37 seconds West 109.64 feet to a point marked the center point of a manhole, thence South 12 degrees 25 minutes 14 seconds West 93.34 feet to a point marked by the center point of a manhole, thence South 28 degrees 00 minutes 39 seconds West 102.21 feet to a point marked by the center point of a manhole, thence South 27 degrees 53 minutes 09 seconds West 70.03 feet to a point marked by the center point of a manhole, thence South 5 degrees 48 minutes 35 seconds West 122.18 feet to a point marked by the center point of a manhole, thence South 16 degrees 19 minutes 49 seconds East 276.36 feet to a point marked by the center point of a manhole, thence South 56 degrees 54 minutes 53 seconds West 116.45 feet to a point marked by the center point of a manhole, thence South 37 degrees 21 minutes 33 seconds West 112.29 feet to a point marked by the center point of a manhole, thence North 60 degrees 08 minutes 55 seconds West 135.65 feet to a point marked by the center point of a manhole, thence North 85 degrees 21 minutes 31 seconds West 254.44 feet to a point marked by the center point of a manhole, thence North 31 degrees 43 minutes 16 seconds West 109.05 feet to a point marked by an iron pin, thence North 88 degrees 21 minutes 53 seconds West 372.67 feet to a point marked by an iron pin, thence North 0 degrees 17 minutes 20 seconds West 1497.50 feet to a

7

point marked by an iron pin, thence North 89 degrees 45 minutes 35 seconds East 254.83 feet to a point marked by an iron pin, thence South 53 degrees 56 minutes 21 seconds East 210.54 feet to a point marked by an iron pin found on the Westerly margin of a paved access road, thence North 0 degrees 23 minutes 14 seconds West 254.03 feet to a point marked by an iron pin found at the point of intersection of the Southwesterly margin of State Highway (S-169) with the westerly margin of the access road, thence South 53 degrees 55 minutes 00 seconds East 100.00 feet to a point marked by an iron pin and the aforementioned P.O.B. of the herein described parcel of land containing 30.74 acres, more or less. All according to that certain plat of survey prepared by Walter Pryor White, RLS Ala. Reg. No. 12504, entitled "Survey for Kenneth H. and Charlotte Williford and SouthTrust Bank" dated April 23, 1993.

The Plaintiff, Charlotte D. Williford, shall be responsible for the payment of all insurance, taxes and mortgage payments relating to the aforesaid property and shall hold the Defendant, Kenneth H. Williford, harmless from any liability thereon.

It is Ordered that the Lee County Circuit Clerk shall execute and deliver to the said Charlotte D. Williford a Clerk's Deed conveying to her all of the right, title, claim, and interest of the said Charlotte D. Williford and the said Kenneth H. Williford in and to the aforesaid described land.

      b.    Title to the real property known as Brook Haven Subdivision, located in Lee County, Alabama is hereby vested in the Plaintiff, Charlotte D. Williford, and the same is divested out of the Defendant, Kenneth H. Williford, including any and all right to survivorship.

Said property is more particularly described as follows:

Parcel One: From the northwest corner of Section 18, Township 19 North, Range 27 East in Opelika, Alabama, run thence South 3,011.9 feet; thence East 1,485.6 feet to a point on the southwesterly margin of Hurst Street in said city, and the point of beginning of the land herein to be described: From said point of beginning run thence South 16 deg. 39 min. East along the southwesterly margin of Hurst Street 669.0 feet to the point of intersection of said margin of said street with the northerly margin of Hardaway Avenue; thence run South 88 des. 27 min. West, along the northerly margin of Hardaway Avenue 283.6 feet; thence South 82 deg. 34 min. West along the said avenue 238.3 feet; thence continuing along the

margin of said avenue in a southwesterly direction, run along a curve in said avenue, whose radius is 874.3 feet, for a distance of 300.6 feet; thence continue along said avenue, South 62 deg. 52 min. West 637.7 feet to the point of intersection of said avenue with the east margin of Long Street; thence run North 03 deg. 20 min. West along the easterly margin of Long Street 317.8 feet; thence along a curve in Long Street, in a Northeasterly direction, run a distance of 404.9 feet, the radius of said curve being 464.6 feet, and said curve intersecting the southerly margin of East Avenue at about the mid-point of said curve; thence run North 46 deg. 36 min. East along the southeasterly margin of East Avenue 239.3 feet; thence run South 06 deg. 55 min. East, leaving said avenue, 306.4 feet; thence run North 58 deg. 31 min. East along an old fence and hedge row 990.1 feet to the point of beginning, and containing 15.14 acres, more or less.

**Parcel Two:** From the northwest corner of Section 18, Township 19 North, Range 27 East, Lee County, Alabama, run thence South 3,011.9 feet; thence run East 1,485.6 feet to a point on the southwesterly margin of Hurst Street in the City of Opelika, Lee County, Alabama; thence run South 16 deg. 39 min. East, along the southwesterly margin of Hurst Street 669.0 feet to the point of intersection of said margin of said street with the northerly margin of Hardaway Avenue; thence run North 88 deg. 27 min. East 61.2 feet to the southwesterly corner of Lot 1, Block 233, as shown on the Totten Official Real Estate Map of the City of Opelika, 1930, of record in the Lee County Probate Office in Town Plat Book 2. at Page 9, and the point of beginning of the tract of land herein to be described and conveyed: From said point of beginning, run North 16 deg. 39 min. West 617.0 feet, along the northeasterly margin of Hurst Street; thence leaving said street, run North 69 deg. 18 min. East 218.2 feet; thence North 62.deg. 25 min. East 292.7 feet; thence North 85 deg. 14 min. East 26.8 feet; the last bearing describing a distance along the southerly margin of Marion Avenue in Opelika; thence leaving said avenue, run South 01 deg. 01 min. West 182.8 feet; thence North 82 deg. 16 min. East 353.4 feet; thence South 05 deg. 35 min. East 606.4 feet to a point on the westerly margin of Hardaway Avenue; thence South 84 deg. 32 min. West, along the northerly margin of Hardaway Avenue, 300.0 feet; thence leaving said avenue, run North 05 deg. 28 min. West 100.0 feet; thence parallel with Hardaway Avenue, South 84 deg. 32 min. West 60.0 feet; thence South 05 deg. 28 min. East 100.0 feet to a point on the northerly margin of Hardaway Avenue; thence South 84 deg. 32 min. West, along the northerly margin of said avenue, 402.5 feet to the point of beginning, and containing 12.03 acres, more or less, in Lee County, Alabama.

**Parcel Three:** From the point of intersection of the southerly margin of Hardaway Avenue with the easterly margin of Hurst Street in the City of Opelika, Alabama, run North 84 deg. 32 min. East along the southerly margin of Hardaway Avenue 100.0 feet; thence South 11 deg. 26 min. East

9

10.1 feet to the point of beginning of the parcel herein to be described and conveyed: From said point of beginning run North 84 deg. 32 min. East, along Hardaway Avenue, 390.0 feet; thence leaving said avenue, run South 05 deg. 28 min. East 170.0 feet; thence South 11 deg. 26 min. East 325.7 feet; thence South 76 deg. 17 min. West 60.0 feet; thence North 11 deg. 26 min. West 312.8 feet; thence South 84 deg. 32 min. West 309.5 feet; thence North 11 deg. 26 min. West 192.5 feet to the point of beginning of the property described and conveyed, containing 2.10 acres, more or less, in Lee County, Alabama.

LESS AND EXCEPT FROM SAID CONVEYANCES the right-of-way deeded to the City of Opelika on June 25, 1998, by Grantor, to-wit: Commencing at the southwest corner of Section 18, Township 19 North, Range 27 East, Lee County, Alabama, run thence northwardly along the west line of said Section 18, 1,162.1 feet to Station 239+ 79 on the centerline of Highway Project 9280-B on record in the City Engineer's Office of the City of Opelika, Alabama; thence run along said centerline 17.65 feet to the point of beginning of the property herein to be described and excepted; thence departing said centerline run North 01 deg. 08 min. 14 sec. West along the east right-of-way of Long Street, 119.00 feet to a point 110 feet northwardly from and perpendicular to the aforementioned project centerline at Station 240+42.06; thence run South 56 deg. 56 min. 50 sec. East along said right-of-way line 59.88 feet to a point 60 feet northwardly of and perpendicular to said centerline at Station 240+75; thence run North 66 deg. 25 min. 58 sec. East, along said right-of-way line, 373.32 feet to P.C. Station 244+48.32; thence run northeastwardly along a curve to the left having a radius of 821.47 feet an arc distance of 490.83 feet (the chord bears North 49 deg. 18 min. 56 sec. East and measures 483.56 feet); thence run North 57 deg. 48 min. 05 sec. West, along said right-of-way 70.00 feet to a point 130 feet northwestwardly from centerline 249+ 75; thence run North 28 deg. 56 min. 54 sec. East, along said right-or-way, 85.21 feet to a point 130 feet northwestwardly from centerline Station 250+75; thence run North 62 deg. 55 min. 51 sec. East, along said right of way, 86.08 feet to a point 75 feet northwardly from centerline Station 251 +50; thence run North 18 deg. 13 min. 11 sec. East, along said right-of-way, 79.47 feet to the Grantor's north property line; thence run along Grantor's north property line North 61 deg. 36 min. 31 sec. East, 180.38 feet to the south right-of-way line of aforementioned project; thence run South 01 deg. 43 min. 33 sec. West, 84.61 feet to a point 80 feet eastwardly from centerline Station 252 + 75; thence run South 17 deg. 38 min. 32 sec. West, along said right-of-way line, 102.55 feet to a point 80 feet eastwardly from centerline Station 251 +75; thence run South 26 deg. 23 min. 07 sec. West, along said right-of-way line, 190.14 feet to a point 75 feet eastwardly from centerline Station 250+00; thence run South 49 deg. 39 min. 07 sec. East, 106.39 feet to a point 180 feet eastwardly from the project centerline and on the west right-or-way line of Hardaway Street; thence run Southwestwardly along the west right-of-way

10

line of Hardaway Street, 1,100 feet, more or less, to the east right-of-way line of Long Street; thence run North 01 deg. 08 min. 14 sec. West along said east right-of-way line, 7.81 feet to the point of beginning. Said tract contains 3.61 acres, more or less, and is shown as Parcel 12-2 of the right-of-way map of Project 92801-B on record in the Office of the City Engineer of the City of Opelika.

The Plaintiff, Charlotte D. Williford, shall be responsible for the payment of all insurance, taxes and mortgage payments relating to the aforesaid property and shall hold the Defendant, Kenneth H. Williford, harmless from any liability thereon.

It is Ordered that the Lee County Circuit Clerk shall execute and deliver to the said Charlotte D. Williford a Clerk's Deed conveying to her all of the right, title, claim, and interest of the said Charlotte D. Williford and the said Kenneth H. Williford in and to the aforesaid described land.

c.    Title to the real property known as Oak Haven Subdivision, located in Lee County, Alabama is hereby vested in the Plaintiff, Charlotte D. Williford, and the same is divested out of the Defendant, Kenneth H. Williford, including any and all right to survivorship. Said property is more particularly described as follows:

PARCEL ONE: Commence at the Northwest corner of the Southeast of the Southwest quarter of section 29, Township 19 North, Range 27 East, Lee County, Alabama; run thence South 83° 22' 18" East for 90.0 feet to the POINT OF BEGINNING of the parcel of land to be herein described and conveyed: From said point of beginning run thence along the following courses: North 03° 07' 42" East for 200.30 feet; North 87° 07' 10" West for 150.00 feet; South 36° 37' 50" West for 234.89 feet; North 86° 13' 11" West for 95.64 feet; South 02° 18' 13" West for 1,303.57 feet; North 75° 21' 23" West for 203.14 feet; North 83° 14' 34" West for 209.65 feet; North 00° 19' 03" West for 119.38 feet; North 02° 03' 06" East for 442.83 feet; North 02° 39' 32" East for 207.34 Feet; North 01° 49' 55" East for 200.09 feet; North 02° 22' 34" East for 285.07 feet; North. 86° 33' 42" West for 102.13 feet; North 87° 23' 25" West for 200.39 feet; North 83° 59' 56" West for 99.74 feet; North 85° 47' 27" West for 216.45 feet; North 03° 17' 19" East for 1,522.29 feet along the East margin of 80 foot right-of-way, Alabama Highway 51; thence South 86° 15' 42" East for 272.54 feet; South 86° 18' 27" East for 349.24 feet; South 86° 00' 30" East for 203.62 feet; South 86°

11

31' 40" East for 348.75 feet; South 85° 54' 14" East for 155.91 feet; South 86° 30' 34" East for 416.23 feet; South 86° 38' 48" East for 214.25 feet, South 85° 35' 47" East for 204.14 feet; South 01° 54' 29" West for 198.32 feet; North 87° 15' 04" East for 390.08 feet South 00° 03' 53" East for 212.60 feet; South 03° 34' 36" West for 147.09 feet; South 04° 21' 22" West for 127.89 feet; South 03° 50' 40" West for 227.28 feet; South 01° 49' 03" West for 115.83 feet; South 03° 38' 41" West for 118.66 feet; South 04° 09' 37" West for 244.19 feet; South 02° 49' 08" West for 166.81 feet; North 86° 45' 23" West for 349.04 feet; North 86° 14' 38" West for 325.81 feet; North 88° 41' 11" West for 153.10 feet; North 85° 29' 09" West for 131.56 feet; North 97° 25' 59" West for 196.07 feet to the POINT OF BEGINNING. Containing 99.14 acres ±.

LESS AND EXCEPT that certain public road as described in that certain affidavit to Elouise Frederick Lipscomb of record in Deed Book 1409, at Page 18, in the office of the Judge of Probate of Lee County, Alabama.

(Note: The foregoing Parcel One is described in Deed Book 2177, at Page 769, of record in the Office of the Judge of Probate of Lee County, Alabama on February 12, 1999.)

PARCEL TWO: A road lying in Section 29, Township 19 North, Range 27 East, Lee County, Alabama; the centerline being more particularly described as follows: Commence at a capped rebar (#3113) found a the Northeast corner of Lot 8 of C and M Subdivision No.2 as recorded in Plat Book 7 page 16 in the Probate Office in Lee County, Alabama; thence North 02°22'34" East, 285.07 feet; thence North 86°33'42" West, 102.13 feet; thence North 87°23'25" West, 200.39 feet; thence North 83°59'56" West, 99.74 feet; thence North 85°47'27" West, 216.45 feet to a point on the east right of way (R.O.W.) line of Alabama Highway 51; thence North 03°17'19" East, along said east R.O.W., 1345.78 feet to the point of beginning of centerline of said road; thence along said centerline the following courses; North 86°27'44" East, 193.89 feet;
South 88°13'30" East, 64.31 feet;
South 79°16'39" East, 69.57 feet;
South 78°09'16" East, 136.45 feet;
South 86°26'36" East, 132.00 feet;
South 77°13'29" East, 162.90 feet;
South 62°39'39" East, 178.60 feet;
South 64°09'26" East, 215.46 feet;
South 62°09'01" East, 149.53 feet;
South 63°12'28" East, 144.79 feet;
South 64°15'26" East, 180.61 feet;
South 62°28'05" East, 83.54 feet;
South 31°00'33" East, 29.84 feet;
South 05°58'57" East, 70.28 feet;

12

South 23°39'00" West, 45.40 feet;
South 35°31'24" West, 302.14 feet;
South 36°02'54" West, 483.61 feet;
South 32°08'00" West, 119.32 feet to the point of ending.

(Note: The hereinabove described road comprising Parcel Two was conveyed by the City of Opelika, Alabama to Kenneth H. Williford and Charlotte D. Williford and described in Deed Book 2188, at Page 838, of record on December 7, 1999 in the Office of the Judge of Probate of Lee County, Alabama.)

The Plaintiff, Charlotte D. Williford, shall be responsible for the payment of all insurance, taxes and mortgage payments relating to the aforesaid property and shall hold the Defendant, Kenneth H. Williford, harmless from any liability thereon.

It is Ordered that the Lee County Circuit Clerk shall execute and deliver to the said Charlotte D. Williford a Clerk's Deed conveying to her all of the right, title, claim, and interest of the said Charlotte D. Williford and the said Kenneth H. Williford in and to the aforesaid described land.

d.    Title to the real property known as Fields Trailer Park, located in Lee County, Alabama is hereby vested in the Plaintiff, Charlotte D. Williford, and the same is divested out of the Defendant, Kenneth H. Williford, including any and all right to survivorship. Said property is more particularly described as follows:

Commencing at the Northwest corner of the Northeast quarter of the Southeast quarter of Section 21, Township 19 North, Range 27 East in Lee County, Alabama; thence run South 0 degrees 42 minutes West a distance of 75.6 feet to a point on the Southerly margin of the 60 foot right-of-way of Lee County Highway No. 34 which is the point of beginning; thence run South 87 degrees 49 minutes East along the Southerly margin of the said 60 foot right-of-way of said Lee County Highway No. 34 a distance of 526.5 feet; run thence South 89 degrees 19 minutes East along the said Southerly margin of the 60 foot right-of-way of the said Lee County Highway No. 34 for a distance of 233.9 feet to a point on the Northwest margin of a 60 foot right-of-way of Alabama Power Company; run thence South 47 degrees 38 minutes West along said Alabama Power easement for a distance of 916.4 feet to a point on the Northerly margin of the 100 foot right-of-way of the

Central of Georgia Railway Company; run thence North 80 degrees 25 minutes West along said Northerly margin of said Central of Georgia Railway Company right-of-way a distance of 92.2 feet; run thence North 0 degrees 42 minutes East a distance of 624.4 feet to the point of beginning, containing 5-1/2 acres, more or less, in Lee County, Alabama, and more particularly shown by the survey of T. Richard Fuller, L.S. Alabama Register No. 7384, dated February 9, 1968. Also being a part of the 100 acres, more or less, conveyed to S.L. Fields by H.R. Dudley by deed dated November 25, 1942, and recorded at Book 246, Page 355, in the Office of the Judge of Probate of Lee County, Alabama, and further being a part of 62.42 acres, more or less, of the said property conveyed from Dudley to Fields, which said 62.42 acres is more particularly shown by certain survey of George L. Boles, Certificate No. 2055, being dated March 28, 1960, together with all improvements and appurtenances thereunto appertaining.

The Plaintiff, Charlotte D. Williford, shall be responsible for the payment of all insurance, taxes and mortgage payments relating to the aforesaid property and shall hold the Defendant, Kenneth H. Williford, harmless from any liability thereon.

It is Ordered that the Lee County Circuit Clerk shall execute and deliver to the said Charlotte D. Williford a Clerk's Deed conveying to her all of the right, title, claim, and interest of the said Charlotte D. Williford and the said Kenneth H. Williford in and to the aforesaid described land.

e.    Title to the real property known as Ben-Mor Trailer Park, located in Chambers County, Alabama is hereby vested in the Plaintiff, Charlotte D. Williford, and the same is divested out of the Defendant, Kenneth H. Williford, including any and all right to survivorship. Said property is more particularly described as follows:

Starting at the NW corner of Section 34, Township 22 North, Range 28 East, Chambers County, Alabama; Thence South 1 degree 0' East along the Section Line a distance of 2,640 feet; thence North 87 degrees 45' East a distance of 338.5 feet; thence South 28 degrees 0' East a distance of 575 feet; thence South 82 degrees 30' East a distance of 731 feet; thence North 43 degrees 30' East a distance of 268.2 feet; thence South 41 degrees 30' East of distance of 341 feet to the Northwesterly margin of the Blacktop highway from Hugley to West Point; thence North 41 degrees 15' East along the Northwesterly margin of said Highway a distance of 226 feet; thence North

14

47 degrees 45' West a distance of 171 feet; thence North 14 degrees 30' East a distance of 210 feet; thence South 87 degrees 30' West a distance of 377.5 feet; thence North 0 degrees 30' East a distance of 234 feet; thence South 87 degrees 45' West a distance of 474 feet; thence North 1 degrees 0' West a distance of 2,574 feet to the North Line of Section 34; thence South 88 degrees 10' West along the Section Line a distance of 990 feet to the starting point, containing 74.45 acres, more or less. Said property being a part of the NW 1/4 and a part of the SW 1/4 Section 34, Township 22 North, Range 28 East, Chambers County, Alabama. A plat of the above described property made by Frank H. McCarley dated July 19,1960, is attached to that certain deed recorded in Deed Volume 182, Page 981 in the Office of the Judge of Probate of Chambers County, Alabama, and is incorporated herein by reference. This being the same property acquired by James David Monk and Rose Marie Monk by deed recorded in Deed Book 255, Page 191 in the Office of the Judge of Probate of Chambers County, Alabama.

The Plaintiff, Charlotte D. Williford, shall be responsible for the payment of all insurance, taxes and mortgage payments relating to the aforesaid property and shall hold the Defendant, Kenneth H. Williford, harmless from any liability thereon.

It is Ordered that the Lee County Circuit Clerk shall execute and deliver to the said Charlotte D. Williford a Clerk's Deed conveying to her all of the right, title, claim, and interest of the said Charlotte D. Williford and the said Kenneth H. Williford in and to the aforesaid described land.

9.      Title to the following personal property is hereby transferred to and vested in the Plaintiff, Charlotte D. Williford, and the same is divested out of the Defendant, Kenneth H. Williford:

a.      All mobile/modular homes and trailers listed on Plaintiff's Exhibit 5, being more specifically described as follows:

| Lot | Year Make | VIN |
|-----|-----------|-----|
| B-69 | 1989 Weston | 5387 |
| B-82 | 1990 Buccaneer Parkwood | ALBUS14071B |
| B-49 | 1987 Redman | RD241634 |
| B-20 | 1991 Parkwood | ALBUS152200 |
| B-27 | 1991 Peachstate | PSHGA9543 |

15

| Lot | Year Make | VIN |
|-----|-----------|-----|
| OH-182 | 2001 General Augustine | GMHGA6240001190AB |
| OH-183 | 2001 Legend Royal Leg. | HL59796AAL |
| OH-199 | 1998 Legend HL1035 | HL9239AL |
| OH-137 | 1999 Westfie Broadmore | GAFLW07A43117BB12 |
| F-4 | 1986 Schult | 205331 |
| F-14 | 1989 Clayton Allendale | CLFL91325 |
| F-27 | 1989 Fleetwood | 419887 |
| OH-138 | 1998 Clayton Atlantis | CLA044529TN |
| OH-180 | 1998 Fleetwood | 1343 |
| OH-181 | 2000 Redman Riverview | 14904351A/14904351B |
| OH-185 | 2001 Fleetwood 3483S | GAFLY54AB85966ET11 |
| B-77 | ___ Mays | 1076 |
| OH-125 | 1988 Fleetwood | 350741994 |
| OH-206 | 1994 Spiral | S228A/S228B |
| B-6 | 1995 Redman | 14715110 |
| B-12 | 1986 Cedar Lakewood | TWIALBS110492 |

The Plaintiff, Charlotte D. Williford, shall be responsible for paying any indebtedness on any of the said mobile/modular homes and trailers previously owned or financed by the parties.

The Plaintiff, Charlotte D. Williford, who is currently in possession of said property, has the right to enter any of the premises where the same is located and to take immediate possession of said property.

The Court, having hereby transferred the aforesaid said mobile/modular homes and trailers to the Plaintiff, Charlotte D. Williford, and vested title and possession of the same in the said Charlotte D Williford, does hereby retain and reserve jurisdiction of personal property matters in this case until the transfer of title and possession of said mobile/modular homes and trailers to the Plaintiff, Charlotte D. Williford, is complete.

b.     All other personal property of the parties and title to the same is hereby vested in the Plaintiff, Charlotte D. Williford, and the same is divested out of the Defendant, Kenneth H. Williford, less and except the Defendant's, Kenneth H. Williford's, personal effects,

16

which shall be appropriately boxed and delivered to Hon. Margaret Brown, counsel for the Defendant, or to such other person as may be directed by counsel for the Defendant.

c.    The Defendant, Kenneth H. Williford owns certain guns and weapons as listed on Plaintiff's Exhibit 12, which have a total estimated value of approximately Five Thousand Dollars ($5,000.00). Because the Defendant is a convicted felon and will not likely be entitled to ever have said weapons in his possession, it is the **ORDER** of the Court that the Plaintiff, Charlotte D. Williford, shall arrange for the sale of the aforesaid guns and weapons within six (6) months from the date of this decree and that the proceeds from said sale, less expenses for the sale and less funds used to pre-pay three (3) annual premiums for Liberty National Life Insurance policy no. A5217528 as provided in Paragraph 11 hereinbelow, shall be delivered to Hon. Margaret Brown, counsel for the Defendant, Kenneth H. Williford, who shall disburse said proceeds, less said sale expenses and insurance premiums, in accord with the directions of the Defendant, Kenneth H. Williford, who is currently incarcerated with the Alabama Department of Corrections.

The Plaintiff, Charlotte D. Williford, shall have absolute discretion concerning the sale of the aforesaid weapons, whether advertised or not, and she shall not be required to give any detailed accounting concerning the sale of the same other than the amount received for each weapon and the expenses concerning the same. In the event she obtains an estimate or appraisal from a reputable gun dealer concerning any individual weapon or the group of items listed as weapons on Plaintiff's Exhibit 12, which shall not be required, any expense incurred as a result thereof may be deducted from the gross sales proceeds of the aforesaid weapons listed on Plaintiff's Exhibit 12 prior to disbursing the net proceeds received to Hon. Margaret Brown, counsel for the Defendant, Kenneth H. Williford.

17

In the event that any weapon is determined to be of no value, which must be stated in writing by a reputable gun dealer of her choosing, or in the event that any of the weapons cannot be sold for illegality or other good reason, which must be stated in writing by a reputable gun dealer of her choosing, said weapon(s) shall be delivered by the Plaintiff, Charlotte D. Williford, to any law enforcement agency for destruction or for use by the law enforcement agency at its sole discretion.

d.    The 1-Ton Ford pickup truck, VIN# 1FTWX33F12ED39895, is hereby transferred to and vested in the Plaintiff, Charlotte D. Williford, and the same is divested out of the Defendant, Kenneth H. Williford.

e.    The Chevy Tahoe, VIN#1GNEC13T41R216253, is hereby transferred to and vested in the Plaintiff, Charlotte D. Williford, and the same is divested out of the Defendant, Kenneth H. Williford.

f.    The farm tractor, financed through Agri-Credit, VIN# 313384, and the backhoe, Case 580K-8098, are hereby transferred to and vested in the Plaintiff, Charlotte D. Williford, and the same are divested out of the Defendant, Kenneth H. Williford.

g.    Three (3) old pickup trucks (not currently in running condition), including a black F150, VIN# 1FTEF1449FNA32158, and two others with unknown VIN#'s, are hereby transferred to and vested in the Plaintiff, Charlotte D. Williford, and the same are divested out of the Defendant, Kenneth H. Williford.

h.    Each party shall timely execute and deliver to the other all necessary and appropriate legal documents to effectuate the conveyance of the property in Paragraph 9(a.) through Paragraph 9(g.). In this regard, the Defendant, Kenneth H. Williford, is hereby **ORDERED** to execute and deliver to the Plaintiff, Charlotte D. Williford, a limited power of

attorney within thirty (30) days of the date of this decree designating the Plaintiff, Charlotte D. Williford, as his attorney-in-fact for the limited purpose of executing necessary and appropriate legal documents to effectuate the conveyance of the mobile homes, modular homes, trailers and all other personal property awarded pursuant to Paragraph 9(a.) through Paragraph 9(g.) above.

10.    As to the payment of the debts listed on the Plaintiff's Divorce Form 2, the following indebtednesses have been assumed by the Plaintiff, Charlotte D. Williford, who shall hold the Defendant, Kenneth H. Williford, harmless from the collection of the same:

a.    The Peoples Bank and Trust Company's indebtedness regarding the five (5) mobile home parks as evidenced by the Promissory Note, dated September 1, 2003;

b.    The SouthTrust Bank Note regarding the marital residence of the parties;

c.    The AuburnBank Note regarding the 2001 Chevy Tahoe;

d.    The Agri-Credit indebtedness regarding the tractor.

The following debts shall be the responsibility of the Defendant, Kenneth H. Williford, who shall hold the Plaintiff, Charlotte D. Williford, harmless from any liability thereon:

a.    The SouthTrust Bank Note, formerly with an approximate balance of One Hundred Thirty-Five Thousand One Hundred Thirty-Seven and 59/100 Dollars ($135,137.59), which current balance at this time may be approximately more than One Hundred Fifty-Three Thousand and 00/100 Dollars ($153,000.00+);

b.    The AuburnBank Note for the 1-ton Ford;

c.    The Colonial Bank Note for the tractor that was repossessed by Colonial Bank, with an approximate deficiency of Fifty-Five Thousand and 00/100 Dollars ($55,000.00);

19

     d.    The MBNA account with an approximate balance of Eighteen Thousand and 00/100 Dollars ($18,000.00);

     e.    The Chambers County civil judgment in the approximate amount of Three Hundred Eighty-Three Thousand and 00/100 Dollars ($383,000.00), plus any additional interest and costs assessed.

     11.    The life insurance policy insuring the life of the Defendant, Kenneth H. Williford, issued by the Liberty National Life Insurance Company, being policy no. A5217528 (dated April 1, 1995), which is currently assigned as security for loan no. 7536924017 (dated 09/01/03), to the Peoples Bank and Trust Company, 1431 Gateway Drive, Opelika, Alabama 36803, shall be maintained by the Defendant, Kenneth H. Williford – however, the Plaintiff, Charlotte D. Williford, is hereby authorized to pay the next three (3) annual premiums on said policy as they become due, or in advance, from the proceeds of the sale of the weapons of the Defendant, Kenneth H. Williford (See Plaintiff's Exhibit 12; see also Paragraph 10c. herein) or from any other source she deems fit; and, in the event that thereafter the Defendant, Kenneth H. Williford, fails to pay any premium when due or to keep said policy in effect, the Plaintiff, Charlotte D. Williford, shall have the right to pay said premium(s) to keep said policy from going into default.

     Whenever the aforesaid life insurance policy becomes free and clear from its present encumbrance, then the Defendant, Kenneth H. Williford (or the Plaintiff, Charlotte D. Williford, in the event of said Defendant's default), shall be required to maintain said policy of life insurance at its current face amount naming Charlotte D. Williford as the irrevocable beneficiary for the use of the minor child, Matthew Williford, d/o/b 06/15/1998, for so long as said child remains a minor.  Said policy shall not thereafter be transferred or encumbered in any manner.

20

12.     Each party shall be solely responsible for the payment of that party's attorney's fees.

13.     The Defendant, Kenneth H. Williford, shall not at any time or in any way, directly or indirectly, harm, harass, or intimidate the Plaintiff, Charlotte D. Williford and the Defendant, Kenneth H. Williford, shall not at any time or in any way infringe upon the premises or any of the property of the Plaintiff, Charlotte D. Williford.

14.     This Court retains and reserves jurisdiction in this case for all matters relating to periodic alimony.

15.     Each party shall timely execute and deliver to the other all necessary and appropriate legal documents to effectuate the terms of this agreement.

16.     As to custody and visitation and relocation of a parent, the parties are informed pursuant to the Alabama Parent-Child Relationship Protection Act there are certain acts and responsibilities to which the parents are subject. Accordingly, those matters are set forth herein and attached to this decree as Exhibit "A" and made a part of this decree as if set forth fully herein.

17.     Copies of this Judgment of Divorce shall be served upon counsel for the parties by placing said copies in their boxes in the Clerk's Office of the Lee County Justice Center:

Hon. Beverlye Brady                     Hon. Margaret Brown
Attorney for the Plaintiff              Attorney for the Defendant

**DONE** this 31st day of October, 2003.

STATE OF ALABAMA,
LEE COUNTY
   I, CORINNE T. HURST do hereby certify that the
true and correct copy of the original on file in this office.
   Witness my hand and seal of Court this _____ day
of _____
                    CORINNE T. HURST, Circuit Clerk

_____
**RICHARD D. LANE, CIRCUIT JUDGE**

F I L E D

OCT 3 1 2003

IN OFFICE

21

## EXHIBIT "A"

Alabama law requires each party in this action who has either custody of or the right of visitation with a child to notify other parties who have custody of or the right of visitation with the child of any change in his or her address or telephone number, or both, and of any change or proposed change of principal residence and telephone number or numbers of a child. This is a continuing duty and remains in effect as to each child subject to the custody or visitation provisions of this decree until such child reaches the age of majority or becomes emancipated and for so long as you are entitled to custody of or visitation with a child covered by this order. If there is to be a change of principal residence by you or by a child subject to the custody or visitation provisions of this order, you must provide the following information to each other person who has custody or visitation rights under this decree as follows:

(1) The intended new residence, including the specific street address, if known.

(2) The mailing address, if not the same as the street address.

(3) The telephone number or numbers at such residence, if known.

(4) If applicable, the name, address, and telephone number of the school to be attended by the child, if known.

(5) The date of the intended change of principal residence of a child.

(6) A statement of the specific reasons for the proposed change of principal residence of a child, if applicable.

(7) A proposal for a revised schedule of custody of or visitation with a child, if any.

(8) Unless you are a member of the Armed Forces of the United States of America and are being transferred or relocated pursuant to a non-voluntary order of the government, a warning to the non-relocating person that an objection to the relocation must be made within 30 days of receipt of the notice or the relocation will be permitted.

You must give notice by certified mail of the proposed change of principal residence on or before the 45th day before a proposed change of principal residence. If you do not know and cannot reasonably become aware of such information in sufficient time to provide a 45-day notice, you must give such notice by certified mail not later than the 10th day after the date that you obtain such information.

Your failure to notify other parties entitled to notice of your intent to change the principal residence of a child may be taken into account in a modification of the custody of or visitation with the child.

If you, as the non-relocating party, do not commence an action seeking a temporary or permanent order to prevent the change of principal residence of a child within 30 days after receipt of notice of the intent to change the principal residence of the child, the change of principal residence is authorized.

22

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

IN RE:
KENNETH WILLIFORD AND
CHARLOTTE T. WILLIFORD

CASE NO: 03-81486-WRS

CHAPTER 11

DEBTORS

FILED

OCT 17 2006

U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

KENNETH WILLIFORD'S MEMORANDUM AND
MOTION TO SHOW THE HONORABLE JUDGE SAWYER,
JURISDICTION AND AUTHORITY TOO MAKE
PROPERTY DIVISION IN THIS CASE

COMES NOW KENNETH WILLIFORD (KW) IN THE
ABOVE STYLE CAUSE, AND MATTER, AND MOVES THIS
HONORABLE COURT TO ACCEPT (KW) MEMORANDUM AND
MOTION TO SHOW JURISDICTION AND AUTHORITY TOO
MAKE PROPERTY DIVISION IN THIS CASE. WHICH WAS
REQUESTED BY THE HONORABLE JUDGE SAWYER ON
SEPTEMBER, 12TH, 2006, AND THEREBY STATES (KW) VIEWS
AS FOLLOWS:

# JURISDICTION

The bankruptcy court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334(a); 28 U.S.C. § 157(a) and the standing order of the united states district court for the district of Alabama referring all cases under title 11 and all proceedings arising under title 11 of the united states code to the bankruptcy judges in this district.

This motion is a core proceeding that may be heard and decided by a bankruptcy judge pursuant to 28 U.S.C. § 157(a);

The court jurisdiction is invested in 28 U.S.C. 1334, which gives this court exclusive jurisdiction over (all) matter dealing; title 11 section 362 or core proceeding relating to title. Marital property attachment to title 11 section 362(a) conform the marital property into a core proceeding, see in re Wood

Once the bankruptcy court acquired jurisdiction over the debtor's property, that jurisdiction continued to determine all controversies relating to claims of any and all parties to that property, thus the bankruptcy court could determine the priorities between the parties; id at in re Gardner, 913 F.2d 1520 (10th Cir. 1990).

The automatic stay of 11 U.S.C. § 362(a)(3), with regard to property of the estate, stays any act to exercise control over property of the estate.

In re Howell 311 B.R. id at 177 (BRKTCY. D.N.J. 2004) the filing of a bankruptcy petition creates an estate under code section 541 which consists essentially of all lien or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541, the debtor's interest in property which is jointly owned with a

NON-DEBTOR SPOUSE THEREFORE BECOMES PROPERTY OF THE BANKRUPTCY ESTATE UPON THE FILING OF A BANKRUPTCY PETITION.

BANKRUPTCY CODE SECTION, 362 (a)(1) AND (3) OPERATE AS AN AUTOMATIC STAY OF JUDICIAL PROCEEDINGS TO RECOVER PREPETITION CLAIMS AGAINST THE DEBTOR, AND OF ACTS TO EXERCISE CONTROL OVER PROPERTY OF THE ESTATE. THUS, THE FILING OF A BANKRUPTCY PETITION STAYS EQUITABLE DISTRIBUTION IN A DIVORCE CASE OF A DEBTOR'S INTEREST IN MARITAL ASSETS.

UNDER N.J. STAT. ANN. 2A:34-23, THE SUPERIOR COURT IS AUTHORIZED IN CONNECTION WITH A JUDGMENT OF DIVORCE TO MAKE AN EQUITABLE DISTRIBUTION OF PROPERTY ACQUIRED BY EITHER OR BOTH SPOUSES DURING THE MARRIAGE.

IT SHOULD BE FURTHER STATED THAT ELEVENTH AMENDMENT DOES NOT BAR BANKRUPTCY FROM GRANTING PROSPECTIVE INJUNCTIVE RELIEF WHERE RELIEF IS BASED ON STATES VIOLATION OF AUTOMATIC STAY. IN RE BECKER, 136 B.R. 113, 116 (BANKR. D, N.J. 1992), THE FILING OF A BANKRUPTCY PETITION STAYS THE DETERMINATION IN A DIVORCE CASE OF THE INTERESTS OF THE DEBTOR IN PROPERTY OF THE ESTATE, ANY EXERCISE OF CONTROL OVER SUCH PROPERTY, AND ANY MONETARY CLAIMS AGAINST DEBTOR OTHER THAN FOR ALIMONY, MAINTENANCE AND SUPPORT; OTHER ASPECTS OF A DIVORCE CASE, SUCH AS THE DISSOLUTION OF THE MARRIAGE ARE NOT STAYED.

# AUTHORITY

PURSUANT TO THE FOLLOWING CASES THIS HONORABLE COURT HAS AUTHORITY TO DETERMINE ALL CONTROVERSIES RELATING TO CLAIMS OF ANY AND ALL PARTIES TO THAT PROPERTY, THUS THE BANKRUPTCY COURT COULD DETERMINE THE PRIORITIES BETWEEN THE PARTIES, SEE IN RE CARDNER 913 F.2d 1520 (10TH CIR. 1990); IN RE HOWELL 311 B.R. 177 (BKRTCY. D.N.J. 2004): N.J. STAT. ANN 2A; 34-23; 11 U.S.C. § 541; MATTER OF PASO DEL MORTE OIL CO. 755 F.2d 421. " IN RE COLLINS 173 F.3d 924, CERT. DENIED, VIRGINIA V. COLLINS, 120 S.Ct 785, 528 U.S. 1073, 145 L.Ed. 2d 663; IN RE STORM TECHNOLOGY, INC. 260 B.R. 152. EXCLUSIVE JURISDICTION IN MATTERS AND PROCEEDING IN BANKRUPTCY MEANT MARSHALLING AND DISTRIBUTION OF ASSETS, AND DISCHARGE OF BANKRUPT, AND SUCH LIKE POWERS.

IN RE GIBSON (1915 D.C. WASH) 225 F 420; IN RE MORGAN 286 B.R. 678; HUNTER V. HUNTER 706 So.2d 753 (ALA. CIV. APP. 1987); IN RE PALMER 78 B.R. 402 (BANKR. E.D. N.Y. 1987); DEVINE V. DEVINE, 812 So. 2d 1278 (ALA. CIV. APP. 2001); IN RE WOOD, 825 F.2d 90, 96 (5TH CIR. 1987); IN RE BECKER, 136 B.R. 118; PERLOW V. PERLOW, 128 B.R. 412 (E.D. N.C. 1991); IN RE GREEN-WALD, 134 B.R. 729, 731 (BANKR. S.D. N.Y. 1991); IN RE NILSEN, 100 B.R. 708, 711 (BANKR. S.D. N.Y. 1989); IN RE THOMAS, 331 B.R. 798 (BKRTCY. W.D. ARK 2005); IN RE ABMA, 215 B.R. 148, 152 (BANKR. N.D. ILL. 1992); ROBERGE V. RUIS, 95 F.3d 42 (4TH CIR. 1996); WELCH V. WELCH, 708 So.2d 179 (ALA. CIV. APP 1997); NOWELL V. NOWELL, 474 So.2d 1128 (ALA. CIV. APP 1985); ROBINSON V. ROBINSON, 795 So.2d 729 (ALA. CIV. APP. 2001); CITED IN BAGGETT V. BAGGETT, 855 So.2d 556 (ALA. CIV. APP 2003); PATE V. PATE, 849 So.2d 972 (ALA. CIV. APP. 2002); ROBINSON V. ROBINSON, 840 So. 2d 180 (ALA. CIV. APP. 2002); EX PARTE LAMOREAUX, 845 So.2d 801 (ALA. 2002); SMITH V. SMITH, 886 So. 2d 893 (ALA. CIV. APP. 2002); GATES V. GATES, 830 So. 2d 746 (ALA. CIV. APP. 2002); LONG V. LONG, 824 So.2d 718 (ALA. CIV. APP. 2002)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

IN RE:
CHARLOTTE T. WILLIFORD AND
KENNETH WILLIFORD
DEBTORS                              CASE NO: 03-81486-WRS
                                     CHAPTER  11

---

This is  in response too, Judge Sawyer giving Kenneth Williford
(KW),30 days too,give the Honorable Judge Sawyer the authority and
jurisdiction to divid up MARITAL, AND BUSINESS PROPERTY, and
            KENNETH WILLIFORD  MEMORANDUM

---

Comes now Kenneth Williford's (KW) inthe above style cause, and
matter, and moves this Honorable court to accept (KW) memorandum,
and to show this Honroable court it's authority ,jurisdiction too
divid up marital,and business property, and hereby states his view
as follows:

1) (KW) ask thst attorney's "BEVERLY BRADY and MARGARET BROWN" would
have to put up a considerable bond for their part in defrauding the
circuit court system and (KW) also..

2)  (KW) ask that attorneys "VON MEMORY and JAMES DAY"have to put up
a considerable bond for their part in this fraud to the "circuit
court and to this Honroable U.S. Bankruptcy court", and to (KW) also
. "(READ REPLY RESPONSE LETTER FROM (KW), TO(M&D'S) RESPONSE LETTER)

3)(KW) ask that attorney's (M&D)'not be allowed to with draw from
this case, that, ........................

4)(KW) ask that all business and martial property be divided up
equally and fairly. As in "Welch V. Welch, 708 So.2d 179 (Ala.Civ.
App. 1997), The appellate court note, that, "Property division which
awarded th husband, in addition to half of the marital home, and a
portion  of the furnishings, other property"s, two vehicles, and all
his retirement, and 401(K) benefits,and awarded to the wife, half
the , aportion of the furnishings, and one vehicle subject toindeb-
tedness, was totaly inequitable, and unfair, and was reversible erro
r on part of the trial court"
  As in Nowell v.Nowell, 474 so. 2d 1128 (Ala.civ. app.1985)"[3] that
the trial court, however, ............................... in
husband and made no montary award as to a division of property to
................. holing, the trial court abused it's liscodity .Reversed
    [4]  In view of the evidence, the wife is  at least .........
to be compensated in a..........................................
............................................... ))
When the appellate court void-: "the trial court .................
contravened Ala code 1975,8 30-2-5 and was irequitable, and ...just
inthat it left the husband with virtually no assets from which to
pay the wifes $51,000.00 award and forced him to presrve the one
remaining asset, his, busibesss, from the marital real estate at
his own ex grase "

(4)

CI_ED IN:, Baggett v. Baggett,855 so. 2d 556 (Ala. civ. app.2003);
Pate v. Pate,849 so.2d 972 (Ala.civ. app.2002); Robinson v.Robinson
840 so.2d 180 (Ala.civ.app.2002); Ex parte Lamoreaux, 845 so.2d 801
(Ala. 2002); Smith v. Smith,836 so.2d 893 (Ala.civ.app 2002);
Gates v. Gates, 830 so2d 746 (Ala.civ. app 2002); Long v.Long, 824
so. 2d778 (Ala. civ.app. 2002); Exparte Killough,728 so2d 589 (Ala.
1998).

Defineing "Equitable" (1) Characterized by equity; FAIR, JUST; an
equitable settlement. (2) Law, relating to, valid in, or existing
in equity, as distinguished from common law or civil law.
Equity" (1) Quality of being impartial, FAIR and JUST. (2) Some-
thing that is FAIR and JUST. (3) Law, (a) Juistice by ethical
judgment and fairness rather than established principle of law.

(HW) and (CW) own five mobile home parks (M.H.P.), Oak-haven
m.h.p. with 120 lot's, plus mobile homes, Brock-haven m.h.p.
with 60 lot's, with no mobile homes, Field's m.h.p. with 27 lot;s
plus mobile homes . This would make 207 lot's total, with about
20 mobile homes, if not more. This is what (HW) is asking for to
be my share of the business.

(CW) would receive hickory -Haven , m.h.p. with 126 lot's,
plus three moblie homes, Ben -Mor village m.h.p. with 81 lot's
plus 15 mobile homes. This would make 207 lot's total, 18 mobile
homes , if not more.

This is what (HW) is asking for this Honorable court todo is,
divid this property equally, justly , and fairly. Something that
the Alabama state judge's can not seem to do. Even when it means
following their own state statutes, and case law 's.The state does
not seem to be free from bias or favoritism in (HW) case..

This is why (HW) think's this Honorable court should divid said
property. Any and all bill's owed through the bankruptcy plan,
can be split addordingly, and paid by both parties, have their
equal share, and all the creitors still get paid jusas the
bankruptcy plan has been worked out.

As for the marital property and assets there should be a
60/40 percent split , with 60 percent to (CW, and 40 percent to
(HW).. Everthing left to (HW) by his father when he died,
should be given to (HW) without a split which only exist of a
ROLEX WATCH and a couple of diamond rings. As far as the
furishings, with a value of about $30,200.00 , should also be

split 60/40, 60 to(CW) and (40) to (KW) .

5). All cost to either sides attorney's, (KW) or (CW) should
be taken from the estates account. This includes " Mr, Murray's "
fees, but not limited just there to Mr.Murray.

6). The plan, that, this Honorable court has comfirmed should not
be dismissed , or dismantled, for any reason other than to divid
the businesses and marital property, and equally and fairly.

7). All property, titles, deedes, and note payments, that has been
devasted out of my (KW) name and put solely into (CW) name should
be reversed, and put back into (KW) name again.

8). (KW) feel's , that , any and all cost for any of this that
acures through these proceedings should be at the cost of (M&D)
sense they are the one's who defrauded (KW) and this Honorable
court.

9).So, this Honorable court can know just how (KW) and (CW) did
their business was unuseal compared to other business practices.
(KW) has all ways been the main debtor in all their financal
businesses, and (CW) was only a co-signer in all of the loans ever
made.. Which makes (KW) the main debtor in this bankruptcy case
and (CW) the co-debtor or non-debtor spouse in this bankrupstcy
cas.
        The only reason ,that it seem's to be the other way around
is because of the illegal division of property, by the lee county
circuit court, or (divorce court), bydividing property unequit-
allely, unfairly, and unjustly , while they were in a bankruptcy
stay. Not to forget that the Lillifords were still husband and
wife when they filed for bankruptcy.
  It has always been known between (KW) & (CW) that the reason
we never had what most people would call a pension plan, or
retirement plan, or a 401(K) plan, was because (KW)&(CW) both
knew and agreed that these mobile home parks were our retirement
plans. We Knew that when or by the time we managed to get our
kids thoughcollege that most or all of the loans would either
be paid off or paid down so low that didn't matter along with
the growth of the businesses which would be three to four times
greater than at this prsent time. THESE BUSINESSES ARE (KW) AND

(CW) RETIREMENT PLAN.

As in: BANKRUPTCY KEY 2546

(5) Property owned individually by debetor or co-ewned with non-debtor spouse will become part of bankruptcy estate upon the the filing of bankruptcy petition.11 U.S.C.A §541 (a) (1).

(6)BANKRUPTCY KEY 2546

State law principles of equitable distribution are not determnate of bankruptcy estate s interest in marital property belonging to debtor as of commencement of bankruptcy case , where petition for divorce is filed after one spouse's filing of bankruptcy petition.

[5,6]In accordance with the bankruptcy code, property owned individually by the debtor or co-owned with a non-debtor spouse will become part of the bankruptcy estate upon the filing of the petition. Roberge v.Roberge (In re Roberge), 188 B.R.366, 367 (E.D.Va 1995) citing 11 U.S.C. § 541 (a)(1) (2000); Inre Becker, 136 B.R. 113 115 (Bankr.D.N.J. 1992)),... Roberge v.Ruis, 95 F.3d 42 (4th Cir 1996).Where a divorce is filed after one spouse's filing of a bankruptcy petition , principles of equitable distribution under state law are not determinative of the bankruptcy estate's interest in propoerty belonging to the debtor on the date of the bankruptcy petition. In re Becker, 136 B.R. at 118.

One bankruptcy court has observed that a bankruptcy filing is "the equivalent of a levy by the trustee upon all the debtor's property as of the petition date" Inre Becker, 136 B.R.an 118

See also In re Abma, 215B.R. 148,152 (Bankr.N.D. ILL. 1997) (if award of marital dissolution has not been made at time of bankruptcy filing, the trustee's satus as a hypothetical lien creditor cuts off non-debtor spouse's inchoate rights in marital property, and such property becomes property of the estate, free claims of the non-debtor spouse) (quoting In re Cole, 202 B.R.at 360; Inre Palmer, 778 B.R. 402, 406 (Bankr.E.D.N.Y. 1987)); IN re Vann, 113, B.R. 704, 706 (Bankr.D.Colo.1990)

(non-debtor spouse's interest in debtor's share of marital property ,which is the subject of equitable distribution proceedings in a divorce action commenced prior to bankruptcy , are cut off by the bankruptcy filing if property division has not been finalized) (citing Perlow v.Perlow, 128 B.R. 412 (E.D.N.C.1991); In re Greenwald, 134 B.R.729,731 (Bankr.S.D.N.Y.1989),rev'd on other grounds..119 B.R.435 (S.D.N.Y.1990)).

Furthermore, Linda Thomas's motives for filing for divorce are highly suspect. She admitted that although her husband was convicted of frad in state court and is due to serve timein in jail, she still does not live separate and apart from him. They attended the bankruptcy court hearing together, and the Debtor testified that his wife stood by him during his state court trial. Strong evidence was adduced at the bankruptcy hearing that the divorce action isthe result of collusion between spouses who intend to shield their principal assets from the claims of creditors.. See also Ark. Code Ann § 9-12-308 (Michie 2002)......

(7)

As in; <u>Devine v. Devine</u>, 812 so.2d 1278 (Ala.civ.app.2001),
state's on  6) <u>BANKRUPTCY KEY 2062</u>
"trial court has jurisdiction to fashion a property division
in a divorce action where the bankruptcy court enters an order
lifting the  automatic stay as to the divorce action."

WHICH IN THIS CASE WAS NOT DONE."

7) <u>BANKRUPTCY KEY 2062</u>
Because of the parties pending bankruptcy action, the trial
court was without jurisdiction to enter that portion of it's
divorce judgment that divided the parties marital property, given
that  bankruptcy court did not enter an order lifting the automatic
stay. see <u>Hunter v.. Hunter,</u> supra..

"WHICH IN THIS CASE WAS NOT DONE."

As in <u>Hunter v. Hunter</u>, 706 so.2d 753 (Ala..civ.app.1997),
2)<u>BANKRUPTCY KEY 2062, 2401</u>
".....,It did apply to wife's claims on appeal that the trial
court  inequitably divided marital property, which sought enlar-
gment  of her property rights at expense of husband chapter 13
debtor property rights, so that absent stay relief order, state
appellate court had no jurisdiction over appeal. Bankr.code 11
U.S.C.A. § 362(a,d)."
however, we must reverse that portion of the trial court's
judgment related to the division of marital property.

<u>In re wood</u>,825 F2d 90,96 (5th cir. 1987); 2. <u>Bankruptcy key
293 (1)</u>  Test for whether matter is  related to'' bankruptcy,
within meaning of jurisdictional statue, is whether outcome of
proceedings could conceivably have any affect on estate being
administered in bankruptcy. <u>28 U.S.C.A. §1334</u>
(2) for the purpose of determining whether a particular matter
falls within bankruptcy jurisdiction, it is not necessary to
distinguish between proceedings "arising u der","arising in a
case under", or"related"to a case under", title 11. These references
operate conjunctively to define the scope of jurisdiction.
Therefore, it is necessary only to determins whether a matter
is at least relatedt " the bankruptcy..the act does not define
"related   matters.Court have articulated various definitions
of "related ", but the definition of the ciart of appeals for
the third circuit appears to have the most support;"whether the
outcome of that proceedi  could conceivably have any effect
on the estate being  administered in bankruptcy." This definition
comports  with the legislative history of the statutory predecessor
to section 1334, neither marathon nor ge eral concerns of comity
counsel aginst its use. We adopt it as our own."

"BKRTCY, E.D. WIS. 2002. IN POSTPETITION DISSOLUTION PROCEEDING, WISCONSIN FAMILY COURT HAD NO JURISDICTION IN AWARD TO NON DEBTOR WIFE, OR TO ANYONE ELSE, REAL PROPERTY THAT WAS THE MARITAL PROPERTY OF HER AND CHAPTER 7 DEBTOR-HUSBAND NO STAY RELIEF WAS REQUESTED WHEN WIFE FILED THE DISSOLUTION ACTION AND BY THEN, THE HOUSE IN QUESTION WAS ALREADY UNDER THE JURISDICTION OF THE FLORIDA BANKRUPTCY COURT, AS PROPERTY OF DEBTOR-HUSBAND'S BANKRUPTCY ESTATE. "BANKR. CODE 11 U.S.C.A. §§ 362, 541 (a) (2) (A) — IN RE MORGAN, 286 B.R. 678."

"IN RE GIBBONS CONSTR. INC. (1984, E.D N.Y) 46 B.R. 193, 12 BCD 463. WHERE DISTRICT JUDGES OF EASTERN DISTRICT COURT OF KENTUCKY ISSUED STANDING REFERENCE ORDER PURSUANT TO 28 U.S.C.A. § 157, BANKRUPTCY COURT IS EMPOWERED TO HEAR ANY OR ALL CASES ARISING UNDER TITLE 11 OF THE UNITED STATES CODE, EXCEPT, PERSONAL INJURY, TORT, OR WRONGFUL DEATH CLAIMS."

"C.A. 5 (TEX) 1985, BANKRUPTCY COURT JURISDICTION ATTACHES OVER DEBTOR AND HIS PROPERTY, IF AT ALL, AT TIME CHAPTER 11 PETITION IS FILED. BANKR. ACT, § 311, 11 U.S.C. (1976 Ed.) § 711, MATTER OF PASO DEL NORTE OIL CO., 755 F. 2d 421"

"C.A. 4 (VA) 1999, ONCE A BANKRUPTCY PETITION IS FILED, THE BANKRUPTCY COURT HAS JURISDICTION OVER THE CASE WITH AUTHORITY TO RESOLVE ALL CLAIMS AGAINST THE ESTATE AND DISCHARGE THE DEBTOR, REGARDLESS OF WHETHER A STATE IS A CREDITOR. IN RE COLLINS, 173 F.3d 924, CERTIORARI DENIED, VIRGINA V. COLLINS, 120 S.Ct. 785, 528 U.S. 1073, 145 L.Ed. 2d. 663."

(9)

"BKRTCY. N.D. CAL. 2001. JURISDICTION GRANT TO BANKRUPTCY COURTS IS BOARD, 28 U.S.C.A. §§ 157(a), 1334(b).
In Re STORM TECHNOLOGY INC. 260 B.R. 152
BOARD GRANT OF JURISDICTION TO BANKRUPTCY COURTS PROMOTES THE EFFICIENT AND EXPEDITIOUS RESOLUTION OF ALL MATTERS CONNECTED WITH THE BANKRUPTCY ESTATE. 28 U.S.C. §§ 157(a), 1334(b). In Re STORM TECHNOLOGY INC. 260 B.R. 152."

"DISTRICT COURT WITH ADMIRALTY JURISDICTION OVER SHIPS OWNED BY DEBTOR WHO FILED PETITION IN ANOTHER DISTRICT MUST ABIDE BY AUTOMATIC STAY BECAUSE BANKRUPTCY FILING PLACES EXCLUSIVE JURISDICTION OVER ALL PROPERTY IN OTHER DISTRICT COURTS. UNITED STATES V. LE BOUF BROS. TOWING CO. (1985, ED La) 45 B.R. 887, 12 BCD 1051, 12 CBC 2d 356."

"AS IN MATTER OF PALMER, 78 B.R. 402 (BKRTCY. E.D.N.Y. 1987) "[4] IT IS WITH THE DISTRIBUTION OF PROPERTY OF THE ESTATE AS DEFINED IN 11 U.S.C. § 541(a), HOWEVER, THAT THE FEDERAL QUESTION ARISES. 28 U.S.C. § 1334 GIVES THE DISTRICT COURT EXCLUSIVE JURISDICTION OVER BOTH PROPERTY OF THE ESTATE AND PROPERTY OF DEBTOR....." "THE STAY IS CONTINUED, HOWEVER, WITH REGARD TO ENFORCEMENT OF ANY DECREE OF THE MATRIMONIAL COURT TO THE EXTENT THAT IT AWARDS PROPERTY OF THE ESTATE TO ANY ENTITY OTHER THAN THE DEBTOR. ANY DISTRIBUTION OF PROPERTY OF THE ESTATE SHALL PROCEED ONLY IN THIS COURT PURSUANT TO THE APPLICABLE PROVISIONS OF TITLE 11.""

IN RE GARDNER 913 F.2d 1515 (10TH CIR. 1990) ID. AT 1520
"STATES THAT ONCE THE BANKRUPTCY COURT ACQUIRED JURIS-DICTION OVER THE DEBTOR'S PROPERTY, THAT, JURISDICTION CONTINUED TO DETERMINE ALL CONTROVERSIES RELATING TO CLAIMS OF ANY AND ALL PARTIES TO THAT PROPERTY." THE

BANKRUPTCY COURT COULD DETERMINE THE PRIORITIES
BETWEEN THE PARTIES."

10). (RW) HAS BEEN SINCE "1979" THE MAIN DEBTOR BETWEEN
(RW) AND (CW), ALL OUR RECORDS WILL SHOW (RW) AS MAIN
DEBTOR AND (CW) AS CO-SIGNER OR CO-DEBTOR. EVEN AS TO
THE FILING OF THIS BANKRUPTCY PETITION "SHOULD" SHOW
(RW) AS MAIN DEBTOR AND (CW) AS CO-DEBTOR.

11). SINCE THE AWARD OF MARITAL DISSOLUTION WAS NOT AT
TIME BANKRUPTCY FILING, (RW) IS FREE FROM CLAIMS OF THE
NON-DEBTOR SPOUSE, AS IN IN RE COLE; IN RE PALMER; AND
IN RE VANN, PLEASE REFER BACK TO PAGE ( ); NOR WAS THE
DISTRIBUTION PROCEEDINGS IN THE DIVORCE ACTION FINALIZED
AT THE TIME OF BANKRUPTCY FILING, AS IN "PERLOW V.
PERLOW; IN RE GREENWALD; REFER BACK TO PAGE ( )

12). (RW) HAS SHOWN THIS HONORABLE COURT THAT, THE CIRCUIT COURT
(DIVORCE COURT) JUDGMENT OF DIVORCE DEGREE, IS NULL AND VOID,
ACCORDING TO BANKRUPTCY STATUE, AND CASE LAW. (RW) HAS
ALSO SHOWN THAT THIS MOTION IS A CORE PROCEEDING THAT
MAY BE HEARD AND DECIDED BY A BANKRUPTCY JUDGE PURSUANT
TO 28 U.S.C. § 157(a); 28 U.S.C. § 1334(a). FURTHMORE, (RW)
BELIEVES THAT THE JURISDICTION AND THE AUTHORITY THAT
HAS BEEN SHOWN IN THIS MOTION, CLEARLY GIVES THE
HONORABLE JUDGE SAWYER, HIS AUTHORITY AND JURISDICTION
TO BE ABLE TO MAKE THE PROPERTY DIVISION, THAT, (RW) IS
ASKING FOR.

13). SOMEHOW, IN THIS CASE, IT HAS BECOME THE ASSUMPTION
THAT (RW) WAS THE CO-DEBTOR AND (CW) WAS THE MAIN DEBTOR,
BUT IF THIS HONORABLE COURT WILL CAREFULLY REVIEW THE
BANK RECORDS AND THE BANKRUPTCY RECORDS, THIS COURT WILL
SEE THAT THIS IS IN "ERROR"

14). LAST, BUT NOT LEAST, (KW) ASK FOR THIS HONORABLE COURT TO ORDER MEDIATIONS BETWEEN (KW) AND (CW), TO LET US TRY TO WORK THIS PROPERTY DIVISION OUT FIRST. IF THE MEDIATIONS FAIL TO MAKE SATISFACTORY RESULTS, THEN (KW) ASK FOR THIS HONORABLE COURT TO BE THE ARBITRATOR AND SETTLE THIS, ONCE AND FOR ALL.

WHEREFORE, THIS PETITIONER (KW) HUMBLY PRAYS FOR THE FOLLOWING RELIEF, THAT THIS HONORABLE COURT WOULD MAKE A FAIR, JUST, AND EQUITABLE DIVISION OF MARITAL AND BUSINESS PROPERTY.

RESPECTFULLY SUBMITTED

KENNETH H. WILLIFORD
AIS # 229597-B-38
100 WARRIOR LANE
BESSEMER, AL, 35023

CERTIFICATE OF SERVICE

I HEREBY CERTIFY, THAT I HAVE SERVED A TRUE AND CORRECT COPY OF THE ABOVE STATED PETITION ON THE FOLLOWING; CHARLOTTE WILLIFORD, OAK-HAVEN OFFICE, 3503 MARVYN PWY, OPELIKA, AL, 36804 / MEMORY & DAY ATTORNEYS AT LAW 469 S. McDONOUGH STREET, MONTGOMERY, AL, C36104 / THE HON. JUDGE SAWYER, CLERK TERESA RICHARDS JACOBS, U.S. BANKRUPTCY ADMINISTRATOR, 1 COURT SQ STE 221 MONTGOMERY, AL, 36104-3538, THIS 6TH DAY OF OCTOBER, 2006, BY PLACING SAME IN THE U.S. MAIL BOX POSTAGE PREPAID AND CORRECTLY ADDRESS.

KENNETH H. WILLIFORD

SWORN TO AND SUBSCRIBED BEFORE ME THIS THE 6 DAY OF OCTOBER, 2006,

Bruce A. Willis
NOTARY PUBLIC

10/12/2008
MY COMMISSION EXPIRES

(12)

RECEIVED

OCT 24 2006

U.S. BANKRUPTCY ADMINISTRATOR
MIDDLE DISTRICT OF ALABAMA

10/22/06

TERESA R. JACOBS,

I KENNETH WILLIFORD, (KW) "CASE NO. 03-81496-WRS / CHAPTER 11" WROTE TO YOU ON OCT, 17, 2006, ABOUT TWO DOCUMENTS THAT I HAD SENT TO YOU ON OCT, 5TH, 2006 AND OCT, 6TH, 2006. THAT SAME AFTERNOON OCT, 17, 2006, I RECEIVED A LETTER FROM YOU STATING THAT YOU HAD CORRECTED "ONE" OF MY ERRORS. THE DOCUMENT STYLED "REPLY RESPONSE TO RESPONSE BY MEMORY & DAY TO CERTAIN DOCUMENTS FILED BY DEBTOR." I TRULY APPRECIATE YOU CORRECTING "THAT" ERROR FOR ME.

BUT, I NEED TO KNOW AS SOON AS POSSIBLE IF THE SECOND ERROR WAS CORRECTED ALSO. THE DOCUMENT STYLED "KENNETH WILLIFORD'S MEMORANDUM, AND MOTION TO SHOW THE HONORABLE JUDGE SAWYER, JURISDICTION AND AUTHORITY TWO MAIN PROPERTY DIVISION IN THIS CASE.", THAT, WAS MAILED TO YOU ON OCT, 6TH, 2006.

THANK YOU FOR YOUR TIME AND COOPERATION WITH THIS MATTER

_Kenneth Williford_
KENNETH WILLIFORD

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, THAT I HAVE SERVED A TRUE CORRECT COPY TO TERESA R. JACOBS UNITED STATES BANKRUPTCY ADMINISTRATOR.

_Kenneth Williford_
KENNETH WILLIFORD

10/17/06

DEAR MS. TERESA RICHARDS JACOBS,

I KENNETH WILLIFORD, (AW) MAILED TO YOU A COPY OF MY LETTERS THE "REPLY RESPONSE LETTER TO MEMORY & DAYS RESPONSE LETTER" ON OCT, 5TH, 2006, AND THE REQUEST THAT THE HON. JUDGE SAWYER TOLD ME TO SEND TO HIM THE "JURISDICTION AND AUTHORITY FOR PROPERTY DIVISION AND (AW) MEMORANDUM" BACK ON OCT, 6TH, 2006."

IT HAS COME TO MY ATTENTION THAT NEITHER OF THESE DOCUMENTS HAVE BEEN FILED. THIS IS BECAUSE I THOUGHT WHEN I SENT THESE DOCUMENTS TO YOU, THAT YOU WAS SUPPOST TO GIVE THEM TO JUDGE SAWYER. I THINK I HAVE MISTAKEN YOU FOR THE COURTS CLERK.

AT ANY RATE, I AM REQUESTING OF YOU AND I WOULD APPRECIATE IT VERY MUCH IF YOU WOULD FORWARD THESE TWO DOCUMENTS ON TO THE HON. JUDGE SAWYER.

I HAVE ALREADY WRITTEN TO THE HON. JUDGE SAWYER AND TOLD HIM ABOUT THE MISTAKE THAT I HAVE MADE, AND ASK HIM TO RETRIEVE THESE DOCUMENTS FROM YOUR OFFICE ALSO. I APOLOGIZE FOR THE MISTAKE, AND APPRECIATE YOUR COOPERATION WITH THIS MATTER. YOU HAVE THE COURTS "ORIGINAL COPIES."

I DO HEREBY VERIFY AND AFFIRM UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT AND CERTIFY THAT I HAVE PLACED A COPY OF THE FOREGOING IN THE UNITED STATES MAIL ADDRESSED TO THE FOLLOWING: TERESA RICHARDS JACOBS, U.S. BANKRUPTCY ADMINISTRATOR 1 COURT SQ STE 221 MONT. AL 36104-3538.

RESPECTFULLY SUBMITTED

KENNETH H. WILLIFORD

10/22/06

Dear Hon, Judge Sawyer,          Case No. 03-81486 -WRS Chapter 11

I Kenneth Williford (KW), did receive from Ms. Teresa R. Jacobs, a letter on, or about Oct. 11th, 2006, that, She had forwarded my "Reply Response to, Response by memory & Day to certain documents filed by debtor..."

But I have not received any thing showing that the document styled "Kenneth Williford's memorandum and motion to show the Honorable Judge Sawyer, Jurisdiction and Authority too make property division in this case," was ever forwarded to your office, or filed with the clerk of the Bankruptcy Court. So, (KW) is sending to this Hon. Court, (KWS) only, and last, readable copy of this document, to be filed with this Hon, Court. If this Honorable Court, has already received their original copy from Ms. Teresa R. Jacobs Bankruptcy Administrator, (KW) would appreciate it, if this Hon. Court would stamp this copy filed and return this copy back to (KW). Thank you for your time and cooperation,

Respectfully   submitted        Kenneth Williford

                                Kenneth Williford

## CERTIFICATE OF SERVICE

I hereby certify, that I have served a true and correct copy to the Honorable Judge Sawyer, of the Middle District of Alabama, Bankruptcy Court Eastern Division.

                                Kenneth Williford

                                Kenneth Williford

# JURISDICTION

THE BANKRUPTCY COURT HAS JURISDICTION OVER THIS MOTION PURSUANT TO 28 U.S.C. § 1334 (a); 28 U.S.C. § 157 (a) AND THE STANDING ORDER OF THE UNITED STATES DISTRICT COURT FOR __ DISTRICT OF ALABAMA REFERRING ALL CASES UNDER TITLE 11 AND ALL PROCEEDINGS ARISING UNDER TITLE 11 OF THE UNITED STATES CODE TO THE BANKRUPTCY JUDGES IN THIS DISTRICT.

THIS MOTION IS A CORE PROCEEDING THAT MAY BE HEARD AND ___ DECIDED BY A BANKRUPTCY JUDGE PURSUANT TO 28 U.S.C. § 157 (a);

THE COURT JURISDICTION IS INVESTED VIA 28 U.S.C. 1334, WHICH GIVES THE COURT EXCLUSIVE JURISDICTION OVER ALL MATTERS INVOLVING TITLE 11 SECTION 362 OR CORE PROCEEDING RELATIONS TO TITLE. MARITAL PROPERTY ATTACHMENT IN TITLE 11 SECTION 62 (a) CONFIRM THE MARITAL PROPERTY INTO A CORE PROCEEDING. SEE IN RE WOOD

ONCE THE BANKRUPTCY COURT ACQUIRED JURISDICTION OVER THE DEBTOR'S PROPERTY, THAT JURISDICTION CONTINUES TO DETERMINE ALL CONTROVERSIES RELATING TO RIGHTS OF ANY AND ALL PARTIES TO THE ESTATE, THUS THE BANKRUPTCY COURT COULD DETERMINE THE PRIORITIES BETWEEN THE PARTIES. Id AT IN RE SANDERS 913 F. 2d 1320 (11TH CIR. 1990).

THE AUTOMATIC STAY OF 11 U.S.C. § 362 (a)(3) WITH REGARD TO PROPERTY OF THE ESTATE STAYS ANY ACT TO EXERCISE CONTROL OVER PROPERTY OF THE ESTATE.

IN RE MOWELL 311 B.R. 7d AT 177 (CERTREY, E.D. S. 2004) THE FILING OF A BANKRUPTCY PETITION CREATES AN ESTATE UNDER CODE SECTION 541 WHICH CONSISTS ESSENTIALLY OF ALL LEGAL OR EQUITABLE INTERESTS OF THE DEBTOR IN PROPERTY AS OF THE COMMENCEMENT OF THE CASE. 11 U.S.C. § 541, THE DEBTOR'S INTEREST IN PROPERTY WHICH IS JOINTLY OWNED WITH A

(1)

Non-Debtor spouse transfers becomes property of the bankruptcy estate upon the filing of a bankruptcy petition.

Bankruptcy Code §§ 362(a)(1) and (3) operate as an automatic stay of judicial proceedings to recover prepetition claims against the debtor and of acts to exercise control over property of the estate. Thus, the filing of a bankruptcy petition stays equitable distribution in a divorce case of a debtor's interest in marital assets.

Under N.J. Stat. Ann. § A:34-23, the superior court is authorized in connection with a judgment of divorce to make an equitable distribution of property acquired by either or both spouses during the marriage.

It should be further stated that although this amount does not bar bankruptcy from granting prospective injunctive relief where there is a continuous violation of automatic stay. In re Bicker, 106 B.R. 113, 116 (Bankr. D.N.J. 1992), the filing of a bankruptcy petition stays the determination in a divorce case of the interests of the debtor in property of the estate, any exercise of control over such property and the enforcement of claims against debtor other than for alimony, maintenance and support. Other aspects of a divorce case, such as the dissolution of the marriage are not stayed.

## AUTHORITY

Pursuant to the following cases that honorable court has authority to determine all equitable issues relating to the filing of any and all parties to that property, that the bankruptcy court based is determine that parties rights between the parties, See In re Singer, 711 F.2d 1820(10th Cir. 1991); In re Howell 711 F.2d, 1191(Bankr. N.J. 2008); N.J. Stat. Ann 2A; 34-23; 11 U.S.C. 8 541; Matter of V+50 Del Monte Oil Co. 755 F.2d 421. " In re Collins 173 F.3d 924 Cert. Denied, Virginia V. Collins, 120 S.Ct 985; 528 U.S. 1075; 145 L.Ed. 2d 663; In re Storm Technology, Inc. 260 B.R. 152. Exclusive jurisdiction in matters and prosecution and summary judgment survey proceeding and liquidation of assets and recovering of exempt and such other issues.

In re Gibson (1915 D.C. Wash) 225 F. 420; In re Morgan 286 B.R. 678; Hoover V. Hoover 700 So.2d 755 (Ala. Civ. App. 1997); In re Premier 78 B.R. 402 (Bankr. E.D.N.Y. 1987); Miller V. Burns, 812 So.2d 1278 (Ala. Civ. App. 2001); In re Wood, 825 F.2d 90 90 (5th Cir. 1987); In re Becker, 136 B.R. 11; Harlow V. Harlow 188 B.R. 412 (E.D.N.C. 1994); In re Green-Wald, 184 B.R. 729, 731 (Bankr. S.D.N.Y. 1990); In re Gibson, 100 B.R. 768, 771 (Bankr. S.D.N.Y. 1989); In re Thomas, B.R. 798 (Bankr. W.D. Ark 2005); In re Arma, 615 B.R. 148; 152 (Bankr. N.D. Ill. 1992); Roberts V. Ruiz, 95 F.3d 46 (4th Cir. 1996); Welch V. Welch, 208 So.2d 179 (Ala. Civ. App. 1997); Howell V. Howell, 474 So.2d 1128 (Ala. Civ. App. 1985); Robinson V. Robinson, 795 So.2d 929 (Ala. Civ. App. 2001); Cited in, Baggett V. Baggett, 855 So.2d 556 (Ala. Civ. App. 2003); Pate V. Pate, 849 So.2d 972 (Ala. Civ. App. 2002); Robinson V. Robinson, 840 So.2d 180 (Ala. Civ. App. 2002); Ex parte Lamere Auh, 845 So.2d 801 (Ala. 2002); Smith V. Smith, 836 So.2d 973 (Ala. Civ. App. 2002); (Gates V. Gates, 830 So.2d 746 (Ala. Civ. App. 2002); Long V. Long, 824 So.2d 778 (Ala. Civ. App. 2002).

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

IN RE:
CHARLOTTE T. WILLIFORD AND
KENNETH WILLIFORD
DEBTORS                                CASE NO: 03-81486-WRS
                                       CHAPTER 11

-----

This is in response too, Judge Sawyer giving Kenneth Williford
(KW),30 days too give the Honorable Judge Sawyer the authority and
jurisdiction to divid up MARITAL, AND BUSINESS PROPERTY, and
KENNETH WILLIFORD  MEMORANDUM

Comes now Kenneth Williford's (KW) inthe above style cause, and no
matter, and moves this Honorable court to accept (KW) memorandum,
and to show this Honreable court it's authority ,jurisdiction too
divid up marital,and business property, and hereby states his view
as follows:

1) (KW) ask that attorney's "BEVERLY BRADY and MARGARET BROWN" would
have to put up a considerable bond for their part in defrauding the
circuit court system and (KW) also..

2)  (KW) ask that attorneys "VON MEMORY and JAMES DAY have to put up
a considerable bond for their part in this fraud to the "circuit
court and to this Honreable U.S. Bankruptcy court", and to (KW) also
. "(READ REPLY RESPONSE LETTER FROM (KW), TO(M&D'S) RESPONSE LETTER)

3)(KW) ask that attorney's (M&D) "not be allowed to with draw from
this case, that, (M&D) manageto screw up..

4)(KW) ask that all business and martial property be divided up
equally and fairly. As in "Welch V. Welch, 708 So.2d 179 (Ala.Civ.
App. 1997), The appellate court note, that, "Property division which
awarded th husband, in addition to half of the marital home, and a
portion  of the furnishings, other property"s, two vehicles, and all
his retirement, and 401(k) benefits,and awarded to the wife, half
the , apertion of the furnishings, and one vehicle subject toindeb-
tedness, was totaly inequitable, and unfair, and was reversible erro
r on part of the trial court"
As in Nowell V.Nowell, 474 so. 2d 1128 (Ala.civ. app.1985) "[1]that
the trial court, however, awarded both pieces of real estate to the
husband and made no montary award as to a division of property to
wife. In so holing, the trial court abused it's discretion .Reversed
 (4)  In view of the evidence, the wife is "at least" entitled
to be compensated in an amount  equal to one-half .....
As in  Robinson v.Robinson, 795 so. 2d 729 (Ala. civ.app.2001)
When the appellate court noted;" the trial court pro perty award
contravened Ala code 1975,§ 30-2-5 and was inequitable, and unjust
inthat it left the husband with virtually no assets from which to
pay the wifes $51,000.00  award and forced him to remove the one
remaining asset, his,,bumbiness, from the marital real estate at
his own expence "

(4)

CITED IN; Baggett v. Baggett,855 so. 2d 556 (Ala. civ. app.2003);
Pate v. Pate,849 so.2d 972 (Ala.civ. app.2002); Robinson v.Robinson
840 so.2d 180 (Ala.civ.app.2002); Ex parte Lamoreaux, 805 so.2d 601
(Ala. 2002); Smith v. smith,856 so2d 893 (Ala.civ.app 2002);
Gates v. Gates, 830 so2d 746 (Ala.civ. app 2002); Long v. Long, 824
so. 2d772 (Ala. civ.app. 2002); Exparte Killough,728 so2d 589 (Ala.
1998).

Defineing "Equitable" (1) Characterized by equity; FAIR, JUST; an
equitable settlement. (2) Law, relating to, valid in, or existing
in equity, as distinguished from common law or civil law.
Equity" (1, quality of being impartial, FAIR and JUS . (2) some-
thing that is FAIR and JUST. (3) Law, (a) Juistice by ethical
judgment and fairness rather than established principle of law.


(HW) and (CW) own five mobile home parks (M.H.P.), Oak-haven
m.h.p. with 120 lot's, plus mobile homes, Brook-haven m.h.p.
with 60 lot's, With no mobile homes, Field's m.h.p. with 27 lot's
plus mobile homes .  this would make 207 let's total, with about
20 mobile homes, if not more.  This is what (HW) is asking for to
be my share of the business.

(CW) would receive hickory -haven , m.h.p.  with 126 lot's,
plus three moblie homes, BEN-MONT VILLAGE m.h.p. with 81 lot's
plus 15 mobile homes. This  would make 207lot's total, 18 mobile
homes , if not more.

This is what (HW) is asking for th s Honorable court todo is,
divid this property equally, justly , and fairly. Something that
the Alabama state judge's can not seem to do. Even when it means
following their own state statutes, and case lawg's.The state does
not seem to be free from bias or favoritism in (HW) case..

This is why (HW) think's this Honorable court should divid said
property. Any and all bill's owed through the bankruptcy plan,
can be split addordingly, and paid by both parties, have their
equal share, and all the creitors still get paid just as the
bankruptcy plan has been worked out.

As for the marital property and assets there should be a
60/40 percent  splir , with 60 percent to (CW; and 40 percent to
(HW).. Everthing left  to (HW) by his father  when he died,
should  be given to (HW) without a splite which only exist of a
ROLEX WATCH  and a couple of diamond rings. As far as the
furishings, with a value of about $30,200.00 , should also be

(5)

split 60/40, 60 to(CW) and (40) to (KW) .

5). All cost to either sides attorney's, (KW) or (CW) should
be taken from the estates account. his includes  Mr, Murray's "
fees, but not limited just there to Mr.Murray.

6). The plan, that, this Honorable court has comfirmed should not
be dismissed , or dismantled, for any reason ether than to divid
the  businesses and marital property, and  equally and fairly.

7). All property, titles, deedes, and note payments, that has been
devasted out of my (KW) name and put solely into (CW) name should
be reversed, andppput back  into (KW) name again.

8), (KW) feel's , that , any and all cost for any of this that
acures through these proceedings should be at the cost of (WKD)
sense they are the one's who defrauded (KW) and this Honorable
court.

9).So, this Honorable  court  can know just how (KW) and (CW) did
their business was unuseal compared to other business practices.
(KW) has all ways been the main debtor in all their financal
businesses, and (CW) was only a co-signer in all of the loans ever
made.. which  makes (KW) the main debtor in this bankruptcy case
and (CW) the co-debtor or non-debtor spouse in this bankruptcy
cas.

    The only reason ,that  it seem's to be the other way around
is because of the illegal division of property, by the lee county
circuit court, or (divorce court),  bydividing property unequit-
ablely, unfairly, and unjustly , while they were in a bankruptcy
stay.  Not to forget that the WILLJFORDS WERE STILL HUSBAND AND
wife when they filed for bankruptcy.

 It has  always been known between (KW) & (CW) that the reasth
we never had what most people would call a pension plan, or
retirement  plan, or a 401(K) plan, was because (KW)&(CW) both
knew and agreed that these mobile home parks were our retirement
plans.  We Knew that when or  by the time we managed to ger our
kids thoughcollege that most or all of the loans would either
be paid off or paid down so low that didn't matter along with
the growth of the businesses which would be three to four times
greater than at this prsent time.  THOSE BUSINESSES AR (KW) AND

(6)

(two ... assignment ...

As in ... BANKRUPTCY KEY 2540

(50 ... property owned individually by debtor or co-owned with non-debtor spouse will become part of bankruptcy estate upon the the filing of bankruptcy petition.11 U.S.C.A. §541 (a) (1).

(6)BANKRUPTCY KEY 2546

State law principles of equitable distribution are not determinative of bankruptcy estate's interest in marital property ... in ... debtor as of commencement of bankruptcy case , where petition for divorce is filed after one spouse's filing of bankruptcy petition.

[...] In accordance with the bankruptcy code, property owned individually by the debtor or co-owned with a non debtor spouse will become part of the bankruptcy estate upon the filing of the petition. Roberge v.Roberge (In re Roberge), 188 B.R.366, 367 (E.D.Va 1995) citing 11 U.S.C. § 541 (a)(1) (2000) ; In re Becker, 136 B.R. 113 115 (Bankr.D.N.J. 1992) ... Roberge v.Ruls, 45 F.3d 42 (4th Cir 199 1996 ..where ... divorce is filed after one spouse's filing of a bankruptcy petition , principles of equitable distribution under state law are not determinative of the bankruptcy estate's interest in property belonging to the debtor on the date of the bankruptcy petition. In re Becker, 136 B.R. at 115.

One bankruptcy court has observed that a bankruptcy filing is "the equivalent of a levy by the trustee upon all the debtor's property as of the petition date" In re Becker, 136 B.R.an 118 see also In re Homa, 215 B.R. 148,152 (Bankr.N.D. I L. 1997 (if award of marital dissolution has not been made at time of bankruptcy filing, the trustee's status as a hypothetical lien creditor cuts off non-debtor spouse's inchoate rights in marital property, and such property becomes property of the estate, free claims of the non-debtor spouse (quoting In re Cole, 202 B.R.at 360; In re Palmer, 778 B.R. 402, 406 ( and n.4 D. N.Y. 1987 ; In re Perry, 113, B.R. 704, 706 (Bankr.D.Colo.1990)

(non-debtor spouse's interest in debtor's share of marital property ,which is the subject of equitable distribution proceedings in a divorce action commenced prior to bankruptcy , are cut off by the bankruptcy filing if property division has not been finalized (citing Perry v.Perry, 128 B.R. 412 (D.D.N.C.1991); In re Greenwold, 134 B.R.729,731 (Bankr.W.D.N.C.1989),rev'd on other grounds..119 B.R.435 (S.D.N.Y.1990)).

Furthermore, Linda Thomas's motives for filing for divorce are highly suspect. She admitted that although her husband was convicted of fraud in state court and is due to serve time in jail, she still does not live separate and apart from him . She attended the bankruptcy court hearing together, and the debtor testified that his wife stood by him during his state court trial. Strong evidence was adduced at the bankruptcy hearing that the divorce action is the result of collusion between spouses who intend to shield their principal assets from the claims of creditors.. See also Ala. Code Ann. § 9-12-308 (Michie 2002,.......

As in; Devine v. Devine, 812 so.2d '278 (Ala.civ.app,.2001),
at e's on 60 ALA R OF CY BY 20/2

"Trial court has jurisdiction to fashion a property division
in a divorce action where the bankruptcy court enters an order
lifting the automatic stay as to the divorce action."

WHICH IN HIS CASE WAS NOT DONE.

77 ALA OF CY BY 2062
Because of the parties pending bankruptcy action, the trial
court was without jurisdiction to enter that portion of it's
divorce judgment that divided the parties marital property, Even
that bankruptcy court did not enter an order lifting the automatic
stay see Hunter v. Hunter, supra..

WHICH IN THIS CASE WAS DONE."

so in Hunter v. Hunter, 700 so 2d 753 ( Ala.civ.app.1977,
2)LABOR R OF CY BY 2062, 2401
".....it did apply to wife's claims on appeal that the trial
court inequitably divided marital property, which sought give-
ment of her property rights at expense of husband chapter 13
debtor property rights, so that absent stay relief order, state
appellate court had no jurisdiction over appeal. BANKR.CODE 11
U.S.C.A. 362 a,d .'

However, we must reverse that portion of the trial court's
judgment related to the division of marital property.

In re Wood,825 F2d 90,96 (6th cir. 1987) 2. BANKRUPTCY KEY
293 (1) Test for whether matter is related to' bankruptcy,
within meaning of jurisdictional statute, is whether outcome of
proceedings could conceivably have any affect on estate being
administered in bankruptcy.28 U.S.C.A. 1334
" for the purpose of determining whether a particular matter
falls within bankruptcy jurisdiction, it is not necessary to
distinguish between proceedings arising under , arising in a
case under, or related to a case under , title 11. These references
operate conjunctively to define the scope of jurisdiction.
Therefore, it is necessary, only to determine whether a matter
is at least related to the bankruptcy.The courts hold of the
related matters.court have articulated various definitions
of related", but the definition of the court of appeals for
the third circuit appears to have the most support : whether the
outcome of that proceeding could conceivably have any affect
on the estate being administered in bankruptcy" This definition
comports with the legislative history of the statute, predecessor
to section 334, neither more nor general courts of courts.
considering its case adopt it is our own."

(8)

"BKRTCY. E.D. WIS. 2002. IN POSTPETITION DISSOLUTION PROCEEDING, WISCONSIN FAMILY COURT HAD NO JURISDICTION IN AWARD TO NON-DEBTOR WIFE, OR TO ANYONE ELSE, REAL PROPERTY THAT WAS THE MARITAL PROPERTY OF HER AND CHAPTER 7 DEBTOR-HUSBAND NO STAY RELIEF WAS REQUESTED WHEN WIFE FILED THE DISSOLUTION ACTION AND BY THEN THE HOUSE IN QUESTION WAS ALREADY UNDER THE JURISDICTION OF THE FLORIDA BANKRUPTCY COURT, AS PROPERTY OF DEBTOR-HUSBAND'S BANKRUPTCY ESTATE. "BANKR. CODE 11 U.S.C. 1, §§ 362, 541 (a) (2) (A) - IN RE MORGAN, 286 B.R. 678. "

"IN RE GIBBONS CONSTR. INC. (1984, E.D. KY) 46 B.R. 193, 12 BCD 453, WHERE DISTRICT JUDGES OF EASTERN DISTRICT COURT OF KENTUCKY ISSUED STANDING REFERENCE ORDER PURSUANT TO 28 U.S.C. 1 § 157, BANKRUPTCY COURT IS EMPOWERED TO HEAR ANY OR ALL CASES ARISING UNDER TITLE 11 OF THE UNITED STATES EXCEPT PERSONAL INJURY TORT OR WRONGFUL DEATH CLAIMS "

"C.A. 5 (TEX) 1985, BANKRUPTCY COURT JURISDICTION ATTACHES OVER DEBTOR AND HIS PROPERTY, IF AT ALL, AT TIME CHAPTER 11 PETITION IS FILED, BANKR. ACT § 711 11 U.S.C. (1976 Ed.) § 711, MATTER OF PASO DEL NORTE OIL CO., 755 F.2d 421"

"C.A. 4 (VA) 1999, ONCE A BANKRUPTCY PETITION IS FILED, THE BANKRUPTCY COURT HAS JURISDICTION OVER THE CASE WITH AUTHORITY TO RESOLVE ALL CLAIMS AGAINST THE ESTATE AND DISCHARGED THE DEBTOR, REGARDLESS OF WHETHER A STATE IS A CREDITOR, IN RE COLLINS, 173 F.3d 924, CERTIORARI DENIED, VIRGINIA V. COLLINS, 120 S. Ct. 785, 528 U.S. 1073, 145 L. Ed. 2d 662. "

(9)

"BARTEY. N.D. CAL. 2001. JURISDICTION GRANT TO BANKRUPTCY COURTS IS BOARD. 28 U.S.C.A. §§ 157(a), 1334(b).
IN RE STORM TECHNOLOGY INC. 260 B.R. 152
BROAD GRANT OF JURISDICTION TO BANKRUPTCY COURTS PROMOTES THE EFFICIENT AND EXPEDITIOUS RESOLUTION OF ALL MATTERS CONNECTED WITH THE BANKRUPTCY ESTATE. 28 U.S.C.A. §§ 157(a), 1334(b), IN RE STORM TECHNOLOGY INC. 260 B.R. 152."

"DISTRICT COURT WITH ADMIRALTY JURISDICTION OVER SHIPS OWNED BY DEBTOR WHO FILED PETITION IN ANOTHER DISTRICT, MUST ABSTAIN BY AUTOMATIC STAY BECAUSE BANKRUPTCY FILING PLACES EXCLUSIVE JURISDICTION OVER ALL PROPERTY IN OTHER DISTRICT COURTS. UNITED STATES V. LE BOUF BROS. TOWING CO. (1987, E.D. LA) 45 B.R. 887, 12 BCD, 1051, 12 C.B.C. 2d 336."

"AS IN MATTER OF PALMER, 78 B.R. 402 (BANKTCY. E.D. N.Y. 1987)
"[A] IT IS WITH THE DISTRIBUTION OF PROPERTY OF THE ESTATE AS DEFINED IN 11 U.S.C. §541(a), MOREOVER, THAT THE FEDERAL JURISDICTION IN ISSUE. 28 U.S.C. § 1334 GIVES THE DISTRICT COURT FEDERAL JURISDICTION OVER BOTH PROPERTY OF THE ESTATE AND PROPERTY OF DEBTOR....." "THE STAY IS CONTINUED HOWEVER, WITH REGARD TO ENFORCEMENT OF ANY ISSUES OF THE NONBANKRUPTCY COURT TO THE EXTENT THAT IT AWARDS PROPERTY OF THE ESTATE TO ANY ENTITY OTHER THAN THE DEBTOR, ANY DISTRIBUTION OF PROPERTY OF THE ESTATE SHALL PROCEED ONLY IN THIS COURT PURSUANT TO THE APPLICABLE PROVISIONS OF TITLE 11."

IN RE BIRDNECK 91? F. 2d 1515 (11TH CIR. 1990) AT 1520
"STATE THAT ONCE THE BANKRUPTCY COURT ACQUIRES JURIS-DICTION OVER THE DEBTOR'S PROPERTY, THAT JURISDICTION CONTINUED TO DETERMINE ALL CONTROVERSIES RELATING TO CLAIMS OF ANY AND ALL PARTIES TO THAT PROPERTY." THE

(11.)

14), [illegible] NOT [illegible] COURT [illegible] INSTRUCTIONS [illegible] [illegible] OUT FORTH [illegible] THE [illegible] FAIL TO MAKE [illegible] FACT [illegible] ATOR [illegible], ONCE [illegible].

WHEREFORE, [illegible] COURT [illegible] MAKE A [illegible] FACTUAL [illegible]

RESPECTFULLY SUBMITTED,

Kenneth B. Williford

KENNETH B. WILLIFORD
AIS # [illegible]
[illegible] LANE
[illegible]

CERTIFICATE OF SERVICE

I [illegible] THAT I HAVE [illegible] TRUE AND CORRECT [illegible] OF THE ABOVE [illegible] PETITION ON THE FOLLOWING [illegible] OFFICE [illegible] 469 [illegible] MONTGOMERY, [illegible] TREA[illegible] MONTGOMERY [illegible] THIS 6TH [illegible] SAME IN THE [illegible] MAIL FOR [illegible] AND CORRECT[illegible].

Kenneth B. Williford

KENNETH B. WILLIFORD

SWORN TO AND SUBSCRIBED BEFORE ME THIS THE 6 DAY OF [illegible], 2006

Bruce A. Wilkes

NOTARY PUBLIC

10/12/2008

MY COMMISSION EXPIRES



# United States Bankruptcy Administrator
## Middle District of Alabama
ONE CHURCH STREET
MONTGOMERY, ALABAMA 36104

**TERESA R. JACOBS**
BANKRUPTCY ADMINISTRATOR

TELEPHONE: (334) 954-3900
FACSIMILE: (334)954-3901

October 24, 2006

## MEMORANDUM

TO:  Richard S. Oda
    Clerk, U. S. Bankruptcy Court

FROM: Teresa R. Jacobs

RE:  Transmittal of Papers
    Charlotte Teresa and Kenneth Williford
    Chapter 11 Case No. 03-81486

Pursuant to Fed. R. Bankr. Proc. 5005©, I am transmitting certain papers which were sent via U. S. Mail addressed to a former mailing address for the U. S. Bankruptcy Administrator. The correspondence dated 10/17/06 was received on October 20, 2006. The correspondence dated October 22, 2006 was received on October 24, 2006.

I note that the document referenced in the October 22, 2006 correspondence, "Memorandum and Motion to Show the Honorable Judge Sawyer, Jurisdiction and Authority Too (sic) Make Property Division In This Case" was docketed by your staff on October 17, 2006 at docket entry 307.

c:  Kenneth Williford

United States Bankruptcy Court
Middle District of Alabama
Honorable Judge Sawyer
Ref: Charlotte Teresa Williford
        Kenneth Williford
        Debtors
Case No. 03-81486 WRS
Chapter 11
October 8, 2006

**FILED**

**NOV 09 2006**

U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

<div align="center">

Memorandum by Charlotte Williford
in reference to property settlement

</div>

Kenny and I were married for 24 years. We have three children, Amanda, Amy and Matthew. Amanda the oldest has graduated from Auburn and is working with AFLAC, Amy has graduated from Southeastern Bible College and is working at Discovery Channel in Chicago and Matthew is a student at Southern Union College in Opelika. All of the children have helped with the mobile home parks.

In 1991, we acquired the first park, Hickory Haven. The total lots in the park is 127. The appraisal according to the Lee County Appraisal Department is $369,330.00 for tax year 2006. Gross income is approximately $9,790.00.

In 1996, Ben-Mor was bought with total lots of 82. The appraisal according to the Chambers County Appraisal Department is $679,300.00. Gross income is approximately $9,719.75

In 1997, Brooke-Haven was bought with total lots of 80. The appraisal according to the Lee County Appraisal Department is $199,000.00. Gross income is $5,440.00.

Field's was purchased with total lots of 27. The appraisal according to the Lee County Appraisal Department is $132,870.00 for tax year 2006. Gross income is approximately $4,898.00.

In 1999, construction began on Oak-Haven. The front section of the park was opened in 2000. The back section was finished except for paving of the driveways and the road. When complete the park will be a 204 lot community.

The park office for all of the communities is located at Oak-Haven. Oak-Haven is the most desirable one of the five to move into because of it being the newest, the lots are the largest and there is a security gate. The current appraisal according to the Lee County Appraisal Department is $1,028,640.00. Gross income is approximately $16,000.00.

There is one loan on all the communities. The balance is $2,743,158.00. The payment each month is $19,429.06. The value of each park varies greatly. Oak Haven is the

newest with the rest of the communities being at least 25 years or older. The lot rent is different for each community.

It was during the construction phase of Oak-Haven, December of 1999, criminal charges were pressed against Kenny. In March of 2000, we were served with papers from Chuck Reynolds in reference to the Emerton's lawsuit. In September of 2002, we went to trial on the Emerton case. February 2003, Kenny went to trial on his criminal charges. Kenny was incarcerated immediately. March 2003, Chuck Reynolds began trying to collect on the judgment in the Emerton case. He did this by sending out garnishments to all local banks in the area. I was listed on my parent's accounts. This including their CD's, checking and savings accounts. My parents were retired from the local textile and sewing plant in Opelika. This money was their retirement money. This was a very difficult time for them. I am so very sorry they had to go through this situation. Thankfully their money was released from the garnishment. They are 80 and 78 now and help me in the parks with their continuous support. My Dad advises me with the equipment and Mother is considered our "Park Hostess".

In April 2003, I filed for divorce from Kenny. Our marriage was never the ideal marriage. When the criminal charges surfaced, I and the children had a very hard time being able to deal with it. However, we all tried to believe he was innocent and to defend his innocence. He will never know or understand the embarrassment, shame or humiliation he has put not only me through but the children. Regardless, they do love their Dad and still would like to have a relationship with him.

In May 2003, Kenny was sentenced for 25 years on the Rape I and 15 years on the Sodomy I.

In September 2003, our divorce case was held. Kenny was transported from Donaldson. Judge Lane heard the case over a two day period. In October 2003, Judge Lane awarded a the property to me. Kenny has appealed Judge Lane's decision to the Appeal's Court. However, Judge Lane's decision was not overturned. I feel Kenny is using the Bankruptcy Court to try again to get Judge Lane's decision changed.

After Kenny was incarcerated in February 2003, Chuck Reynolds, attorney for the Emertons, was diligently trying to collect on his judgment. Kenny and I were concerned he was going to try to collect on his judgment by going after the mobile home park communities. In October 2003, things were really starting to come to a crucial point. Kenny and I knew of no other way but to file bankruptcy. I met with Mr. Memory then Mr. Day. I talked with them several times in person and by phone. They in turn traveled to Donaldson and talked with Kenny in person and by phone. We were both fully aware of what needed to be done. We both signed the necessary papers to file the bankruptcy. Mr. Memory and Mr. Day made it very clear they were not going to get in the middle of our divorce. They advised us numerous times they represented both of us. They cautioned Kenny and me if we could not work together on the bankruptcy, we would have to seek other attorneys.

Mr. Memory and Mr. Day have worked tirelessly on this case. As you know, the judgment on the Emerton case was reduced to $100,000 and a settlement was made with Wachovia (South Trust). People's Bank and Trust loaned money in the amount of $165,000. This paid $50,000 to the Emertons and paid off Wachovia (South Trust) including the settlement and the home loan. The home was put up for collateral with People's on this loan. The balance of $50,000 due to the Emertons is being made in payments of $1,500 a month.

All loans are being paid appropriately. I am staying a month ahead with payments to Mr. Reynolds, attorney for the Emertons.

I understand Kenny is asking for Oak Haven, Field's and Brooke-Haven Communities. This will leave me with Ben-Mor and Hickory Haven. He says he will pay 1/2 of the payments out of the income that is taken in off of these parks. Then I will pay 1/2. Please note Oak Haven is the newest community. This will be a 204 lot park when complete. Our office for all the parks is at Oak Haven. If Kenny is awarded these three communities, it is my understanding he will allow a sister of his to manage them. His sister to my knowledge has never had any experience in property management. When Kenny's dad was living and he still owned Field's, he asked someone besides this daughter to operate the community because he was concerned she would not be able to handle the park. I know this sister has been very loyal to Kenny during his incarceration but I do not feel she would be competent to run the communities. She and I would in effect be partners. She would have to do as Kenny advised her to do. If he decided, for her not to give me the appropriate money to make the payments, she would have to abide by his wishes. Ben-Mor and Hickory Haven could not handle all the payments. I think it would be extremely difficult even to pay 1/2 the payments and obligations from income from Ben Mor and Hickory Haven. On the management aspect, there are decisions that come up almost daily that need to be handled immediately. It would seem very difficult for Kenny to be able to handle that from prison.

I am very concerned about People's Bank and Trust. According to the loan papers, they can demand full payment if *"we do or fail to do something which causes them to believe that they will have difficulty collecting the amount that is owed"*.

Judge Sawyer, I respectfully request you keep the property settlement as Judge Lane decided. I will pay off all the creditors as has been agreed on. Also, I will continue making the parks a nice and safe place for our residents to call home. Finally, I hope as I am sure Kenny does, that one day the communities can be passed onto the children.

Sincerely,

Charlotte Williford

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing has been served upon the parties listed below by regular U.S. Mail, postage prepaid and addressed as in indicated, this 09th day of November 2006.

Charlotte T. Williford

Teresa R. Jacobs
U S Bankruptcy Administrator
1 Court Square Suite 221
Montgomery, AL 36104-3538


Kenny Williford
AIS #229597 B-38
100 Warrior Lane
Bessemer, AL 35023


Von G. Memory
Memory and Day
P O Box 4054
Montgomery, AL 36101


William R. Murray
Attorney at Law
Murray Lane
Northport, AL 35475-4235

Dear Hon. Judge Sawyer

FILED 10/17/06

NOV 28 2006
U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

Comes now Kenneth Williford, I (KW), have written to this Hon. Court a "Reply Response Letter to Memory & Days Response Letter" back on Oct. 5, 2006, and also turned in your Request for "Jurisdiction and Authority for Property Division and (KW) Memorandum" back on Oct. 6, 2006.

It has just come to my attention that neither of these two documents have been filed in this Hon. Court as of today Oct. 17, 2006. I think the mistake may be on my part. I thought that when I addressed the letter to: "The Hon. Judge Sawyer, Clerk, Teresa Richards Jacobs
U.S. Bankruptcy Administrator
1 Court Sq Ste 221
Montgomery, AL, 36104-3538."

That Ms. Jacobs was suppose to give this Hon. Court the copies that I sent to her office. I most be wrong about this assumption, since it apears that the documents haven't been filed. I am at this very time trying to get up some more copies of these documents to sent to this Hon. Court. By being in prison it may take me until Oct, 23 or 24, 2006 before I'm able to sent more copies. I apologize to this Hon. Court for ignorance on this matter and pray that I have the correct address this time

(2)

FURTHERMORE, I ASK IF, MAYBE THIS COURT CAN POSSIBLE RETRIEVE THE ORIGINAL COPIES FROM MS. JACOBS THE "BANKRUPTCY ADMINISTRATOR", BECAUSE THEY ARE THE "ORIGINAL COPIES" FOR THIS HON. COURT. AGAIN I APOLOGIZE FOR MY IGNORANCE IN THIS MATTER.

PETITIONER'S VERIFICATION UNDER PENALTY OF PERJURY. I DO HEREBY VERIFY AND AFFIRM UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

CERTIFICATE OF SERVICE

I DO HEREBY CERTIFY THAT I HAVE PLACED A COPY OF THE FOREGOING IN THE UNITED STATES MAIL ADDRESSED TO THE FOLLOWING

"THE HON. JUDGE SAWYER
UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION
P.O. BOX 1248
MONTGOMERY, AL, 36102-1248"
THIS DONE ON THE 17TH DAY OF OCTOBER, 2006

RESPECTFULLY SUBMITTED

KENNETH H. WILLBORN

CHAPTER 11
CASE NO. 03-81486-CWRS

Kenneth Williford's Reply to
"Memorandum by Charlotte Williford in
Reference to Property Settlement"

First Paragraph (PRGH) on Page 1 of Charlotte Williford's
(CW) Memorandum first page, this is all true.

(PRGH's) 2, 3, 4, 5, 6, and 7, on Page one, is where it would be
considered a smoke screen, as to the appraisal values of the
property's

(PRGH) 2 on page one states that "Hickory-Haven" with 127 lots,
appraise's for $369,330.⁰⁰ according to the Lee County Appraisal
Department, tax year 2006. This is the Lee County Tax Assessor's
Value. The Brown Agency's appraised this property for about one
million dollars, back in 1997. We bought this park back in 1991, for
$300,000.⁰⁰; I built on to it three different times, at a cost of
$150,000⁰⁰ the first time, $135,000.⁰⁰ the second time, and $110,000⁰⁰
the third time. This comes to $685,000⁰⁰; no banker in their right mind
would loan $685,000⁰⁰ for a piece of property that only appraised
for $369,330⁰⁰. (CW) says the gross income is $9,790.⁰⁰; this may be the
monthly income, but it surely isn't the gross income. When I
was incarcerated the monthly income was approximately
$12,500.⁰⁰

(PRGH) 3 on page one, states, that, "Ben-Mor" with 82 lots appraise's
for $679,300⁰⁰ by the Chambers County, Appraisal Department, for
tax year 2006. Again this is the tax assessor's value. The Brown
Agency appraises this property for about $950,000⁰⁰ back in
1998. The bank would have loaned me the money for $800,000⁰⁰
to buy property appraised at $679,300⁰⁰. (CW) says the gross income
is $9,919.75. Again this may be the monthly income, but it surely
isn't the gross income. When I was incarcerated the monthly
income was approximately $13,600⁰⁰;

(1)

(PRGH) 4 ON PAGE ONE, STATES, THAT, "BROOK-HAVEN" WITH 80 LOTS. THIS IS NOT EXACTLY TRUE. IF, MOBILE HOMES WERE STILL BUILT 12x60, THIS FIGURE WOULD BE TRUE. SINCE THEY ONLY MAKE 14x70's AND 16x80's AND UP THESE DAYS, WE HAD TO CUT ABOUT 20 OF THESE LOTS TO ACCOMMODATE THE LARGER HOME'S. SO THERE IS NOT BUT ABOUT 60 OR MAYBE 65 LOT'S USEABLE, THAT, EXIST IN THIS PARK NOW. (CW) SAYS THE LEE COUNTY APPRAISAL DEPARTMENT HAS THIS PARK AT $199,000°°. AGAIN THIS THE TAX ASSESSOR'S VALUE. I PAID $275,000°° FOR THIS PARK. THE BROWN-AGENCY APPRAISES IT FOR APPROXIMATELY $575,000°°. AGAIN THE $5,440°° IS NOT A GROSS, BUT A MONTH INCOME.

(PRGH) 5 ON PAGE ONE, STATES THAT "FIELDS" WITH 27 LOTS, THIS IS TRUE. (CW) SAYS THE LEE COUNTY APPRAISAL DEPARTMENT IS $132,870.°° AGAIN THIS IS THE TAX ASSESSOR'S VALUE, THE BROWN AGENCY APPRAISES THIS PROPERTY FOR APPROXMIATELY $275,000.°° (CW) SAYS THE GROSS INCOME IS $4,898.°°. AGAIN THIS IS NOT A GROSS BUY A MONTHLY INCOME, AND SEEMS HIGH , JUST, FOR 27 LOTS. THIS PARK IS ALSO MY INHERITANCE, FROM MY DADDY "WALTER WILLIFORD." I TOOK OVER THIS PARK IN 2002 ON JAN, 22, THE DAY MY DADDY DIED.

(PRGH) 6 ON PAGE ONE, STATES "OAK-HAVEN", THAT THE FRONT SECTION WAS FINISHED, AND THE BACK SECTION WAS FINISHED, ALL EXPECT PAVING THE ROADS AND DRIVEWAYS, AND WHEN COMPLETED WOULD BE A 204 LOT COMMUNITY, WHICH IS ALL TRUE, BUT, WHAT IS ALSO TRUE IS, THAT, SINCE I HAVE BEEN INCARCERATED, NOT ONE INCH OF ASPHALT HAS BEEN LAID DOWN FOR THE BACK SECTION OF OAK-HAVEN. WHY? BECAUSE (CW) NOR HER 80 YEAR OLD DADDY HAS ANY KNOWLEDGE ON HOW TO DO THIS KIND OF CONSTRUCTION WORK, IF SHE HAS TO PAY SOMEONE TO DO THIS, THE COST WILL BE EXTREMELY HIGH. (CW) 80 YEAR OLD DADDY IS A RETIRED MILL WORKER AND DOES NOT HAVE ANY KNOWLEDGE NOR THE EXPERIENCE FOR THIS TYPE OF WORK. BEING 80 YEARS OLD AND IN BAD HEALTH SHOULD NOT EVEN BE THINKING ABOUT TAKING ON SUCH A PHYSICAL TASK.

(2)

(CW) makes it sound like, that, paving is all this section of the park needs. When in fact, you need to have the proper ditching for the water drainage, the building of the drive-ways, the building of the road base, exct., all this is extremely costly when you have to pay some one else to do it, not like when I was doing it myself.

(PRGH) 7 on page one, states, that, "Oak-Haven" is the parks office for all the communities. This is not true, "Hickory-Haven", "Oak-Haven", and "Ben-Mor" all have their own seperate offices. "Brook-Haven", and "Fields" pays either at "Oak-Haven" or "Hickory-Haven" offices. (CW) again says the Lee County Appraisal Department for "Oak-Haven" is $1,028,640.00, this is the Tax Assessors value. The Brown Ageucy appraised "Oak-Haven" in 2000 for $2,000,000.00, (CW) says the gross income is $16,000.00, this is not the gross but the monthly income.

(PRGH) 8 on pages one and page two is true

(PRGH) 9 on page two, all of what (CW) says there is true, other than about her mother. Their is no such job as a "mobile home park hostess". Her mother has "Alzheimer's Disease" and (CW) has her there just so she can watch over her. But this has no bareing on the issues at hand.

(PRGH) 10 on page two, this just (CW) emotion's and opinions and have no bareing on the issue at hand.

(PRGH) 11 on page two, has no bareing on the issues at hand

(PRGH) 12 on page two, is true, I am trying to get this thru court to over turn Judge Lane's decision. Because, was it not only unjust, unfair, and unequitable, it was also against the LAW.

THIS HON. BANKRUPTCY COURT HAD OUR ESTATE IN AN "AUTO-MATIC STAY" AND BY LAW JUDGE LANE HAD NO JURISDICTION TO DIVID OUR PROPERTY, AS I HAVE SHOWN TO THIS HON. COURT IN MY MEMORANDUM THIS PAST OCTOBER, 2006.

(PR&H) 13 ON PAGE TWO, WHAT (CW) SAYS HERE IS TRUE, BUT, THAT, DOES NOT GIVE "MR. MEMORY AND MR. DAY" (M&D) AN EXCUESS FOR NOT DOING THEIR DUTIES AS ATTORNEY'S IN A BANKRUPTCY CASE. THEY FAILED TO CONTACT JUDGE LANE, BEFORE HIS DECISION, TO LET HIM KNOW, HE DIDN'T HAVE JURISDICTION OVER THE PROPERTY DIVISION, NOR DID (M&D) EVER ADVISE THIS HON. COURT THAT SUCH A MISCARRIAGE OF JUSTICE HAD TAKEN PLACE ON THE HON. COURT.

(PR&H) 14 ON PAGE THREE, THIS HAS NO BAREING ON THE ISSUES AT HAND.

(PR&H) 15 ON PAGE THREE, THIS HAS NO BAREING ON THE ISSUES AT HAND.

(PR&H) 16 ON PAGE THREE, (CW) SAYS THAT MY SISTER DIANE WILLIAMS, TO HER KNOWLEDGE HAS NEVER HAD ANY EXPERIENCE IN PROPERTY MANAGEMENT. THIS IS A FLAT OUT LIE. (CW) KNOWS THAT AFTER MY MOTHER DIED, THAT, DIANE HELP OUR DADDY MANAGE AND OPERATE "FEILDS M. H. P." THE ONLY REASON DADDY HAD TO GET SOME ONE ELSE, WAS BECAUSE DIANE HAD TO MOVE BECAUSE OF HER JOB AT THE TIME. DIANE HAS BEEN WORKING WITH A NATIONAL KNOWN PROPERTY MANAGEMENT COMPANY " " SOME TIME, AND IS MORE THAN QUALIFIED TO MANAGE THESE PROPERTIES, DIANE LIKE ME CROW HAS BEEN RAISED IN AND AROUND BUSINESSES ALL OUR LIFE'S. BACK IN THE EARLY 70'S MY DAD HAD A NIGHT CLUB DIANE HELP WITH THIS BUSINESS. IN 1972 DADDY SOLD THE BUSINESS. IN 1976 MOMA AND DADDY OPENED UP A SMALL SEAFOOD RESTAURANT THAT ONLY SAT 16 PEOPLE, FOUR YEARS LATER WE GREW

(4)

TO SEATING OVER 200 PEOPLE. FOR SEVENTEEN YEARS ME AND MY FAMILY WERE IN THE RESTAURANT BUSINESS. DURING THIS TIME I OWNED TWO DIFFERENT RESTAURANTS ONE IN "CAMP HILL AL," AND IN "COLUMBUS GA, AND AT BOTH PLACES OF BUSINESSES DIANE HAS AT ONE TIME OR THE OTHER, SOME SHAPE, OR FORM, OR FASHION HAS HELP US MANAGE OUR BUSINESSES. DIANE USE TO HELP US MANAGE OUR CONVENIENT STORE IN THE LATE 90'S. DIANE IS EXTREMELY INTELLIGENT, AND EXTREMELY GOOD WITH PUBLIC RELATIONS, HAS BEEN ALL HER LIFE. UNLIKE (CW), SHE WAS NOT INTRODUCED TO THE BUSINESS WORLD UNTIL WE MARRIED. AS TO MAKING THE PAYMENTS ON TIME, ITS NOT (CW) THAT HAS A BAD TRACK RECORD. I HAVE NEVER BEEN LATE WITH ANY PAYMENT AND HAVE NEVER HAD ANYTHING REPOED FROM ME IN MY LIFE. UNTILL AFTER I WAS INCARCERIATED. THE ONLY REASON MY HEAVY EQUIPMENT WAS REPOED, WAS BECAUSE (CWS) DECISION NOT TO KEEP UP THE PAYMENTS AFTER I WAS INCARCERIATED, AND THE SAME WITH "SOUTH TRUST BANK" AND THE UNSECURED NOTE THAT I HAD THERE. IT WAS (CWS) DECISION NOT TO PAY THE NOTE AFTER I WAS INCARCERIATED, NOT (CWS). THESE TWO NOTES AND (PROH) 13 ON PAGE THREE WERE THE DECIDING FACTORS THAT REALLY CAUSE US TO HAVE TO GO BANKRUPT. (CW) IS RIGHT WHEN SHE SAYS, DIANE LOYALTY WOULD BE TO (CW) AND RIGHTFUL IT SHOULD BE THAT WAY. DIANE IS NOT BEING HIRED TO PLEASE (CW), SHE IS BEING HIRED TO RUN AND TO CONDUCT MY BUSINESS FOR (CW) NOT FOR (CW). (CW) SAYS THAT SHE THINKS IT WOULD BE EXTREMELY DIFFICULT FOR HER TO EVEN PAY ½ THE PAYMENTS AND OBLIGATIONS FROM INCOME OFF "BEN-MOR AND HICKORY HAVEN." LOOKING AT THE EXTREMELY LOW FIGURE SHE IS SHOWING FROM THESE TWO PARKS, THAT, SHE HAS GIVEN IN (PROH'S) 2, & 3 ON PAGE ONE, IT DOESNT LOOK THAT WAY.

AFTER PAYING ½ THE PAYMENTS AND OBLIGATION'S FROM THE FIXTURES SHE IS SHOWING, (CW) WOULD STILL BE CLEARING OVER $9,000.⁰⁰ PER MONTH.

(5.)

IF THESE TWO PARKS WERE BROUGHT BACK UP TO THEIR FULL POTENTIAL, AS THEY WERE BEFORE MY INCARCERATION, (CW) WOULD BE CLEARING OVER $11,386.00 PER MONTH. BUT DUE TO POOR MANAGEMENT BY (CW) THIS FIGURE HAS FALLEN TO JUST OVER $9,000.00 PER MONTH. WHAT (CW) HAS FAILED TO MENTION IS THAT, BEN-MOR (M.H.P.) ALSO HAS THE POTENTIAL FOR ANOTHER 125 TO 150 LOTS TO BE PUT IN, BY JUST PAVING THE ROADS AS SHE WOULD SAY IT. WHICH WOULD INCREASE THIS PARK (BEN-MOR) POTENTIAL TO 231 LOTS

(CW) SAYS "IT WOULD SEEM VERY DIFFICULT FOR KENNY (KW) TO BE ABLE TO HANDLED THAT FROM PRISON". AGAIN THIS IS JUST ONE OF (CW) SMOKE SCREENS. I AM ALREADY IN WEEKLY CONTACT WITH MY SISTER BY PHONE FROM HERE, AND WHEN THIS HON, COURT GRANTS (KW) THE RELIEF WE ASK FOR. (KW) WILL BE IN DAILY CONTACT WITH DIANE BY PHONE, JUST IN CASE SHE MIGHT RUN ACROSS SOME PROBLEM THAT SHE MIGHT NOT BE ABLE TO HANDLE, WITHOUT MY ADVICE.

(PRGH) 17 ON PAGE THREE, (CW) IS JUST STATING STANDARD PROCEDURE WITH ANY BANKING INSTITUTION; WHEN ANYBODY SIGNS A LOAN WITH ANY BANK, IF THEY READ THE FINE PRINT, THEY WILL FIND THIS SENTENCE ON ALL NOTES. THIS HAS NO BEARING ON THE ISSUES AT HAND.

(PRGH) 18 ON PAGE THREE, HAS NO BEARING ON THE ISSUES AT HAND.

## Conclusion

In (CW) memorandum, she has not refuted any of the Alabasion's or issues that have been addressed to this Hon. Court. (CW) has not presented any facts or law to support her claim to 100% percent of our property or our businesses. (CW) has not presented any case law to support her claim to 100% percent of our businesses or property. (CW) has not presented, or refuted (KW's) claim to our home or the property inside the home. (CW) has only attempted to miss lead this Hon. Court with "Lee County, and Chamber County, Tax Assessor's Value" with the true appraised values of all the properties. Since (CW) was not able to refute any of the Alabasion's, laws, or issues in (KW's) memorandum, all of (KW's) claims, Alabasions, and issue's or to be assumed fact and true.

Kenneth Williford respectfully request that this Hon. Court give's me the relief I have ask for, and make this property division

Respectfully Submitted

Kenneth Williford

(7)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT I HAVE A COPY OF THE FOREGOING HAS BEEN SERVED UPON THE PARTIES LISTED BELOW BY REGULAR U.S. MAIL, POSTAGE PREPAID AND ADDRESSED AS INDICTED THIS 16th DAY OF November 2006.

_Kenneth Williford_
KENNETH WILLIFORD

CHARLOTTE T. WILLIFORD
OAK-HAVEN OFFICE
3503 MARVYN PWY
OPELIKA, AL 36804

United States Bankruptcy Court
Middle District of Alabama
Honorable Judge Sawyer
Ref: Charlotte Teresa Williford
        Kenneth Williford
        Debtors
Case No. 03-81486 WRS
Chapter 11
October 8, 2006

<div align="center">

Memorandum by Charlotte Williford
in reference to property settlement

</div>

Kenny and I were married for 24 years. We have three children, Amanda, Amy and Matthew. Amanda the oldest has graduated from Auburn and is working with AFLAC. Amy has graduated from Southeastern Bible College and is working at Discovery Channel in Chicago and Matthew is a student at Southern Union College in Opelika. All of the children have helped with the mobile home parks.

In 1991, we acquired the first park, Hickory Haven. The total lots in the park is 127. The appraisal according to the Lee County Appraisal Department is $369,330.00 for tax year 2006. Gross income is approximately $9,790.00.

In 1996, Ben-Mor was bought with total lots of 82. The appraisal according to the Chambers County Appraisal Department is $679,300.00. Gross income is approximately $9,719.75

In 1997, Brooke-Haven was bought with total lots of 80. The appraisal according to the Lee County Appraisal Department is $199,000.00. Gross income is $5,440.00.

Field's was purchased with total lots of 27. The appraisal according to the Lee County Appraisal Department is $132,870.00 for tax year 2006. Gross income is approximately $4,898.00.

In 1999, construction began on Oak-Haven. The front section of the park was opened in 2000. The back section was finished except for paving of the driveways and the road. When complete the park will be a 204 lot community.

The park office for all of the communities is located at Oak-Haven. Oak-Haven is the most desirable one of the five to move into because of it being the newest, the lots are the largest and there is a security gate. The current appraisal according to the Lee County Appraisal Department is $1,028,640.00. Gross income is approximately $16,000.00.

There is one loan on all the communities. The balance is $2,743,158.00. The payment each month is $19,429.06. The value of each park varies greatly. Oak Haven is the

<div align="center">

(1)

</div>

newest with the rest of the communities being at least 25 years or older. The lot rent is different for each community.

It was during the construction phase of Oak-Haven, December of 1999, criminal charges were pressed against Kenny. In March of 2000, we were served with papers from Chuck Reynolds in reference to the Emerton's lawsuit. In September of 2002, we went to trial on the Emerton case. February 2003, Kenny went to trial on his criminal charges. Kenny was incarcerated immediately. March 2003, Chuck Reynolds began trying to collect on the judgment in the Emerton case. He did this by sending out garnishments to all local banks in the area. I was listed on my parent's accounts. This including their CD's, checking and savings accounts. My parents were retired from the local textile and sewing plant in Opelika. This money was their retirement money. This was a very difficult time for them. I am so very sorry they had to go through this situation. Thankfully their money was released from the garnishment. They are 80 and 78 now and help me in the parks with their continuous support. My Dad advises me with the equipment and Mother is considered our "Park Hostess".

In April 2003, I filed for divorce from Kenny. Our marriage was never the ideal marriage. When the criminal charges surfaced, I and the children had a very hard time being able to deal with it. However, we all tried to believe he was innocent and to defend his innocence. He will never know or understand the embarrassment, shame or humiliation he has put not only me through but the children. Regardless, they do love their Dad and still would like to have a relationship with him.

In May 2003, Kenny was sentenced for 25 years on the Rape I and 15 years on the Sodomy I.

In September 2003, our divorce case was held. Kenny was transported from Donaldson. Judge Lane heard the case over a two day period. In October 2003, Judge Lane awarded a the property to me. Kenny has appealed Judge Lane's decision to the Appeal's Court. However, Judge Lane's decision was not overturned. I feel Kenny is using the Bankruptcy Court to try again to get Judge Lane's decision changed.

After Kenny was incarcerated in February 2003, Chuck Reynolds, attorney for the Emertons, was diligently trying to collect on his judgment. Kenny and I were concerned he was going to try to collect on his judgment by going after the mobile home park communities. In October 2003, things were really starting to come to a crucial point. Kenny and I knew of no other way but to file bankruptcy. I met with Mr. Memory then Mr. Day. I talked with them several times in person and by phone. They in turn traveled to Donaldson and talked with Kenny in person and by phone. We were both fully aware of what needed to be done. We both signed the necessary papers to file the bankruptcy. Mr. Memory and Mr. Day made it very clear they were not going to get in the middle of our divorce. They advised us numerous times they represented both of us. They cautioned Kenny and me if we could not work together on the bankruptcy, we would have to seek other attorneys.

Mr. Memory and Mr. Day have worked tirelessly on this case. As you know, the judgment on the Emerton case was reduced to $100,000 and a settlement was made with Wachovia (South Trust). People's Bank and Trust loaned money in the amount of $165,000. This paid $50,000 to the Emertons and paid off Wachovia (South Trust) including the settlement and the home loan. The home was put up for collateral with People's on this loan. The balance of $50,000 due to the Emertons is being made in payments of $1,500 a month.

All loans are being paid appropriately. I am staying a month ahead with payments to Mr. Reynolds, attorney for the Emertons.

I understand Kenny is asking for Oak Haven, Field's and Brooke-Haven Communities. This will leave me with Ben-Mor and Hickory Haven. He says he will pay 1/2 of the payments out of the income that is taken in off of these parks. Then I will pay 1/2. Please note Oak Haven is the newest community. This will be a 204 lot park when complete. Our office for all the parks is at Oak Haven. If Kenny is awarded these three communities, it is my understanding he will allow a sister of his to manage them. His sister to my knowledge has never had any experience in property management. When Kenny's dad was living and he still owned Field's, he asked someone besides this daughter to operate the community because he was concerned she would not be able to handle the park. I know this sister has been very loyal to Kenny during his incarceration but I do not feel she would be competent to run the communities. She and I would in effect be partners. She would have to do as Kenny advised her to do. If he decided, for her not to give me the appropriate money to make the payments, she would have to abide by his wishes. Ben-Mor and Hickory Haven could not handle all the payments. I think it would be extremely difficult even to pay 1/2 the payments and obligations from income from Ben Mor and Hickory Haven. On the management aspect, there are decisions that come up almost daily that need to be handled immediately. It would seem very difficult for Kenny to be able to handle that from prison.

I am very concerned about People's Bank and Trust. According to the loan papers, they can demand full payment if "we do or fail to do something which causes them to believe that they will have difficulty collecting the amount that is owed".

Judge Sawyer, I respectfully request you keep the property settlement as Judge Lane decided. I will pay off all the creditors as has been agreed on. Also, I will continue making the parks a nice and safe place for our residents to call home. Finally, I hope as I am sure Kenny does, that one day the communities can be passed onto the children.

Sincerely,

Charlotte Williford

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing has been served upon the parties listed below by regular U.S. Mail, postage prepaid and addressed as indicated this 30th day of November, 2006.

_Gordon T. Odom_
Gordon T. Widihger

Clerk of Court
U.S. Bankruptcy Administrator
1 Court Square, Suite 110
Montgomery, AL 36104-3558

Kenas Williford
AIS #229597 B-38
100 Warrior Lane
Bessemer, AL 35023

Von L. Memory
Memory and Day
P.O. Box Drawer
Montgomery, AL 36101

Wesley H. Blacut
Attorney at Law
P.O. Box 1234
Scottsport, AL 35478-4233

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| **Charlotte T. WILLIFORD and** | ) | **Case No: 03-81486-WRS** |
| **Kenneth WILLIFORD,** | ) | |
| Debtors | ) | |

| | | |
|---|---|---|
| Related case: | ) | |
| | ) | Adversary Proceeding |
| Charlotte T. WILLIFORD and | ) | AP-04-08015-WRS |
| Kenneth WILLIFORD | ) | Appealed as CV-05-857-MHT |
| v. | ) | Appealed as 11th Cir. 06-15119-HH |
| Mr. Kenneth Funderburk, Esq. et al. | ) | (briefing currently in progress) |
| | ) | |

## SPECIAL COUNSEL MURRAY'S REBUTTAL TO

## SEPT. 11, 2006 "RESPONSE BY THE FIRM OF MEMORY

## & DAY TO CERTAIN DOCUMENTS..." (DOC. 301)

**1.** Special Counsel Murray ("MURRAY") hereby **Rebuts** the contents of Doc.

301 ("RESPONSE"), filed September 11, 2006 by attorneys Memory and Day

("M&D"), appended hereto as "Ex. #1," divided into 39 "sections." for **Rebuttal.**

2. Because several related actions are of some concern herein, they are listed as

follows:

Page 1 of  38

**BK-03-81486-WRS:** The action in which this **Rebuttal** is filed, in which Joint Debtors Charlotte WILLIFORD and Kenneth WILLIFORD, wife and husband prior to October 31, 2003, are represented by attorneys Von G. Memory and James L. Day of the law firm of "Memory & Day" ("M&D"). This Voluntary Joint Chapter 11 Bankruptcy Case was filed on October 3, 2003, and its PLAN was Confirmed on January 30, 2006 (Doc. 255) (Note 1)

**AP-04-08015-WRS:** The Adversary Proceeding in which Special Counsel Murray was approved to represent Joint Debtors Charlotte WILLIFORD and Kenneth WILLIFORD (wife and husband prior to October 31, 2003), in their "Alabama Legal Services Liability Act" claims against their former attorneys Mr. Funderburk, Mr. Worthy, and their law firm. That Adversary Proceeding was filed Sept. 13, 2004 as AP-04-08015-WRS. This Court awarded Summary Judgment (Doc. 75) to all Defendants on July 21, 2005.

**CV-05-857-MHT:** The Appeal by the Joint Debtors (WILLIFORDS) from the adverse Summary Judgment ruling in AP AP-04-08015-WRS. District Judge Myron H. Thompson affirmed This Court's Memorandum Decision (Docs. 18, 19) on September 7, 2006.

**No. 06-15119-H:** The presently-pending appeal to the U.S. Court of Appeals for the Eleventh Circuit, filed September 26, 2006, from the District Court's affirmance of This Court's adverse Summary Judgment ruling. Appellants' Principal Brief was filed on Nov. 2, 2006. The Appeal underwent unsuccessful mandatory mediation on Nov. 15, 2006, and briefing is in process.

3. The "RESPONSE" (Doc. 301) by attorneys M&D Day is rather lengthy. MURRAY has taken the liberty of dividing that RESPONSE, a copy of which is attached hereto as Exhibit "#1," into 39 "sections" for this **Rebuttal**.

_____

_____

Note 1. The law firm of "Memory & Day" is now named "Memory, Day & Azar." However, the best information and belief of Special Counsel Murray, attorney Azar has not had any relevant involvement with this case.

Page 2 of  38

**4.**                          **Rebuttal to "Section #1"**

MURRAY does not dispute the listing of documents provided by M&D. M&D

have the right to list any documents they deem pertinent.


**5.**                          **Rebuttal to "Section #2"**

MURRAY does not dispute the contents of "Section #2" except to note that there is

presently pending a "Rule 32 – Ineffective Assistance of Counsel" motion in both

cases (CC-00-248 & 249), asserted against Mr. Williford's defense attorney, Mr.

Funderburk, who also represented both of the Willifords in the Emerton case. It is

pertinent to state that an examination of the trial record and trial transcript show a

shocking lack of attention by defense counsel (Funderburk) to the central issue of

DNA contamination and the repeated DNA testing which had consistently returned

an "inconclusive" DNA result.


**6.**                          **Rebuttal to "Section #3"**

MURRAY does not dispute the accuracy of the contents of "Section #3," but would

ask the reader to note that the Willifords' attorney, Mr. Funderburk, did not even

attend the Emerton trial even though paid at least $50,000 to represent the

Willifords. Further, and in direct violation of directives issued by Kenneth Willi-

ford, Mr. Funderburk sent a junior associate, Mr. Worthy, who had only about 1

Page 3 of  38

year of experience, to defend the Willifords. In addition, attorney Susan Harmon,

never retained by either of the Willifords, put in an appearance to allegedly "help

select a jury," but ended up trying the <u>Emerton</u> case when attorney Funderburk

failed to appear.


7.                          **<u>Rebuttal to "Sections #4" and #5"</u>**

These "Sections #4 and #5" exclude a number of critical facts, which tend to mask

several wrongdoings by the attorneys involved in both the Willifords' divorce action

(DR-03-175, Lee County) and this Case (BK-03-8 1486-WRS, M.D. Ala.).

<u>First</u>, it is critical to note the dates: The Willifords, represented by M&D, filed their

Voluntary Chapter 11 Petition on October 3, 2003. Therefore, pursuant to 11 U.S.C.

§ 362, all matters (with few exceptions not pertinent hereto) in every Court which

impacted upon the Joint Debtors' (Willifords') Estate was automatically "Stayed" as

of that date.  Nevertheless, the Lee County Circuit Court entered its Judgment of

Divorce on October 31, 2003, approximately 4 weeks after the "automatic stay" had

become effective, or should have become effective, awarding Charlotte Williford

100% of the parties' $1+ million assets, jointly amassed during the parties' 24 years

of marriage, leaving Kenneth Williford destitute, without separate representation,

and incarcerated.

Page 4 of  38

Second, "Sections #4 and #5" fail to acknowledge that the Record in DR-03-175 lacks any indication that Circuit Judge Lane knowingly violated the "automatic stay" of 11 U.S.C. § 362, even though M&D here present information indicating otherwise.

Third, "Sections #4 and #5" fail to state that none of the four (2) attorneys who were in a position of awareness of the "automatic stay" notified any Court of the potential violation. Those 4 attorneys were:

a. Mr. Kenneth Williford's attorney, Ms. Margaret Brown, and Ms. Charlotte Williford's attorney, Mr. Beverlye Brady, failed to submit any pleading in DR-03-175 advising Circuit Judge Lane of the existence of the "automatic stay" demanded by the October 3, 2003 filing of this case. Further, they both failed to advise the Bankruptcy Court in this case (BK-03-81486-WRS) of the existence of DR-03-175 in Lee County, and of Circuit Judge Lane's impending unlawful division of marital (Estate) assets, even though both knew of this Bankruptcy; and

b. Mr. Von G. Memory and Mr. James L. Day, the Willifords' attorney in this Bankruptcy Case, similarly failed to file a pleading in the Willi-fords' Lee County divorce action, DR-03-173, advising Circuit Judge Lane of the existence of the "automatic stay" demanded by 11 U.S.C. § 362. Further, they both failed to advise This Court that DR-03-175 should have been immediately stayed as of October 3, 2003.

c. Thus, according to the Records on both cases, Lee County DR-03-175 and Bankr, M.D. Ala. BK-03-81486-WRS, and because of the negligence of the respective attorneys, the Lee County Circuit Court was not aware of this Bankruptcy case, and This Court was not aware of the impending unlawful division of marital (Estate) assets in the Divorce action.

<u>Fourth,</u> it should also be mentioned that the phrase in Sentence #9, that "Mr. Williford requested and was granted transport" fails to state that Mr. Kenneth Williford was transported to the Lee County Circuit Court in prison garb, and that he also was shackled. That lack of regard for personal dignity, and the antipathetic attitude of Circuit Judge Lane which it reinforced, were not challenged on the Record by his attorney.

**8.**                    <u>**Rebuttal to "Section #6"**</u>

MURRAY does not have sufficient information to rebut the statements contained in this "Section #6." However, MURRAY knows, from more than 50 visits with Mr. Kenneth Williford, that bankruptcy attorneys M&D did not keep him informed of either what was happening in this Bankruptcy Case (BK-038 1486-WRS) nor did they advise him of their own terribly biased opinions against him. Those matters are discussed in various paragraphs below.

**9.**                    <u>**Rebuttal to "Section #7"**</u>

MURRAY submits that his "Section #7" avoids some of the essential facts in M&D's relation with their clients, the Willifords.

<u>First,</u> M&D's assertion that they repeatedly advised the Willifords that they "would not participate in the pending domestic action" is merely an acknowledge-

Page 6 of  38

ment of the existence of Rule 1.7 of the Alabama Rule of Professional Conduct

(Conflict of Interest). M&D were prohibited from <u>participating,</u> in the sense of

representing either party to the detriment of another, in both the Williford's divorce

(DR-03-175) and their Joint Chapter 11 Bankruptcy (BK-03-81486-WRS).

<u>Second,</u> M&D's implied assertion, that filing a "Notice of Stay" would constitute

"participation" in the Willifords' divorce action, is not well taken. M&D were under

a duty to convey that "Stay" information to the Lee County Circuit Court, for M&D

were the only attorneys with absolute knowledge, on October 3, 2003, that a Volun-

tary Joint Chapter 11 Petition had been filed in This Court by the Willifords.   Of

course, the Willifords' respective divorce attorneys, Mr. Brown and Ms. Brady,

similarly violated the "law" and "Rules of Professional Conduct."

<u>Third,</u> and of even greater concern, is the M&D assertion that:

> "Finally, at no time ... was there a concern raised or communicated
> on the part of Mr. Williford about a conflict in representation, the
> automatic stay, or the impact of the domestic relations case as it
> applied to the bankruptcy, or *vice versa.*"

This sentence is somewhat shocking.   It is not the client's duty to keep the attorney

from violating the "law" or the "Rules of Professional Conduct." Such duties are

placed upon solely attorneys, not only because of their education, but also as

"Officers of the Court." Any other interpretation of the law and rules of conduct

would lead to the unacceptable doctrine that a client is responsible for the transgressions and omissions of his or her attorney.

10.                    **Rebuttal to "Section #8"**

MURRAY alleges that his "Section #8" is rather confusing. The assets of the Estate may have been "fully encumbered" by debt as of the date of the filing of the Voluntary Petition in this case on October 3, 2003. However, one of the major purposes of any Chapter 11 proceeding is the restructuring and, hopefully, the reduction of debt. In that, M&D have been successful, and nowhere in any filing by Mr. Williford or Special Counsel Murray is there any contrary allegation. For just one example, the Emerton verdict of $383,000, increased to almost $429,000 by interest, was settled for $100,000. Coupled with other debt adjustments allowed by various creditors, by the time of the Confirmation of the PLAN on January 31, 2006, the Willifords' assets far exceeded their debt, and the monthly income from those assets exceeded $50,000, which is well in excess of the monthly debt payment. Stated summarily, it is fair to state that the Williford Estate, which is now owned solely by Charlotte Williford, has a net value of more than a million dollars.

11.                           **Rebuttal to "Section #9"**

Special Counsel MURRAY does not have access to the documents required to

prove or disprove the accuracy of M&D's assertions. However, his discussions

with Mr. Kenneth Williford yield figures widely divergent from those stated by

M&D. According to Ms. Williford herself (unnumbered Doc. Dated 11/09/06), the

total debt is just less than $2,750,000. The total value of the assets is much more

than listed by Ms. Williford, who provides "Lee County Appraisal Values" rather

than the true appraisal (loan) values.  Income from those assets exceeds $50,000

per month.    Therefore, it is inaccurate for M&D to assert that:

> "... all of the assets, before **and after bankruptcy,** were fully
> encumbered by debt, leaving little equity in the estate."
> (bold type and underlining added for emphasis)

MURRAY asserts that the truth of these matters can only be ascertained through

the appointment of a qualified appraiser and CPA, to advise This Court of the

value of each asset, its related indebtedness, and the income related thereto.


12.                          **Rebuttal to "Section #10"**

MURRAY asserts that the "Automatic Stay" of 11 U.S.C. applies not only to both

of the Joint Debtors, but also to any "third party," such as a State Court.    Stated another way, no entity

may move the ownership of, or change the indebtedness related to, any element of

the Estate (absent various exceptions, not pertinent hereto) without approval of the

Page 9 of 38

Bankruptcy Court. That is the essential reason why a PLAN must be Confirmed.

Thus, no lower Court, such as the Lee County Circuit Court, which should be

considered a "third party," could lawfully divide or change the ownership of the

Willifords' marital (Estate) assets after October 3, 2003, when this case was filed,

without This Court's permission. This issue is covered more fully in "Sections #16

through #21," below.

**13.**                          **Rebuttal to "Section #11"**

MURRAY asserts that bankruptcy attorneys M&D certainly did have an obligation

to inform the Lee County Circuit Court of the pendency of this case. This issue is

covered more fully below in regarding "Sections #22 -#25," below.

**14.**                          **Rebuttal to "Section #12"**

MURRAY asserts that bankruptcy attorneys M&D had an absolute duty to inform

This Court of the pendency of the property division (i.e., division of Estate assets)

in Willifords' Lee County divorce proceeding (DR-03-175). This issue is covered

more fully below in regarding "Sections #26 – #28," below.

Page 10 of 38

**15.**                    **<u>Rebuttal to "Section #13"</u>**

MURRAY asserts that he did not initiate any pleading asking for the dismissal of

this case. In fact, it was M&D who filed such a pleading on 07/27/2006 (Doc. 279).

Further, MURRAY did not advise Mr. Williford with regard to his pleading asking

that the PLAN be either vacated or modified. All such pleadings were initiated

either by Mr. Williford or by bankruptcy attorneys M&D.   It was only in response to

such pleadings that Special Counsel MURRAY filed his own various pleadings.

These issues are covered more fully below in regard to "Sections #29-#3 1," below.


**16.**                    **<u>Rebuttal to "Section #14"</u>**

MURRAY asserts that bankruptcy attorneys M&D should not be permitted to

withdraw from this bankruptcy case: their acts and omissions have created a "fire-

storm" of difficulties, and, until these have been resolved, they should remain in this

case. This issue is covered more fully below in regard to "Sections #32-#33."


**17.**                    **<u>Rebuttal to "Section #15"</u>**

MURRAY asserts that he has never represented Mr. Williford individually. He has

only represented the Willifords jointly in their Adversary Proceeding AP-04-08015-

WRS, its appeal to the District Court as CV-05-857-MHT, and its presently-


Page 11 of  38

pending appeal to the 11th Circuit as No. 06-15119-HH. This issue is covered more fully in regard to "Sections #34-#36," below.

18.                    **Rebuttal to "Section #16"**

MURRAY alleges that the argument of M&D in this "Section #16" seems to be rather confusing.  Of course, Section 362 of the Bankruptcy Code focuses primarily upon actions against the Debtors themselves. Because the central purpose of 11 U.S.C. § 362 ("Automatic Stay") is to prevent the dissolution or disintegration of the assets of the Estate, which remain under the jurisdiction of the Bankruptcy Court, it focuses upon actions which would affect any of the Estate assets. However, as M&D themselves argue in the 2d paragraph of "Section 16:"

> "By filing a petition in bankruptcy it [11 U.S.C. § 362] gives rise to an automatic stay pursuant to Section 362, 'which generally prevents **third parties [i.e.,** the Lee County Circuit Court] from taking action that could affect the property of the bankruptcy estate,' _In re Jason Pharmaceuticals, Inc.,_ 224. 315, 321 (D.Md.1998) (citing _United States v. Caroline Parachute Corp.,_ 907 F.2d 1469, 1471 (4th Cir.1990)), Chapman v. Coho Resources, Inc 2002 WL 1124768, *6 (N.D.Tex., 2002) **[Emphasis added]."**
> (formatting as in original; bracketed material added))

It is clear, therefore, that the Lee County Circuit Court, either knowingly or unknowingly, not having received formal notice of this Bankruptcy Case from either the Willifords' divorce counsel or M&D, unlawfully "took action that could affect the property of the bankruptcy estate."

19.                    **Rebuttal to "Section #17"**

MURRAY submits that M&D's statements are inaccurate. The Willifords them-

selves did not divide their marital (Estate) assets. Those Estate assets were unlaw-

fully divided by a "Third Party," the Lee County Circuit Court, on October 31, 2003,

about 4 weeks after this Bankruptcy Case had been filed. Therefore, even if M&D's

assertion that the "Automatic Stay" of 11 U.S.C. § 362 does not apply to Joint

Debtors such as the Willifords, such an assertion is totally irrelevant in this case,

because the transfer was ordered by the Lee County Circuit Court, not by any Credi-

tor or by the Willifords themselves. Further, Special Counsel MURRAY submits

that the "Automatic Stay" does operate between Joint Debtors, since each Estate

asset has its own separate value, indebtedness, and security which may well depend

upon a specific level of ownership. Stated in another manner: though the Debtors

may have filed a "Voluntary Joint Chapter 11 Petition in Bankruptcy, that does not in

any way mean that they had joint and equal ownership of each asset of the Estate. It

would take a textbook-size presentation to discuss all of the ramifications of the

"Automatic Stay." Suffice it to summarize the discussion by stating that 11 U.S.C. §

362 does not make the distinctions alleged by M&D. Finally, it should be noted that

M&D 's statement of other persons' responsibility is rather disconcerting:


Page 13 of  38

"Finally, in spite of the fact that there was wide knowledge and a clear
understanding regarding the domestic court participants of the pending
bankruptcy, not once did the participants or their legal counsel advance
a suggestion of bankruptcy or otherwise move to stop the domestic action in
Lee County."

M&D are apparently attempting to "shift the blame" for not advising the Lee County

Circuit Court of the existence of this Bankruptcy Case, from themselves to their joint

clients, the Willifords.  Granted, the Willifords' separate divorce action attorneys,

Ms. Brady and Ms. Brown, also violated the "law" and the Alabama Rules of pro-

fessional Conduct. That does not excuse the similar violations by M&D, who were

representing both of the Willifords in this Bankruptcy Case while their "joint owner-

ship of marital (Estate) assets" was being destroyed..

20.                    **Rebuttal to "Section #18"**

Special Counsel MURRAY cannot understand either the "logic" or the "law" of

"Section #18" of M&D's "RESPONSE ...." for at least two reasons:

a. First, it is not logical for M&D, who are experienced "bankruptcy attorneys," to

imply that a "Motion for Relief from Stay" should have been filed by either of the

Willifords, or their respective attorneys, in the Willifords' divorce action. Since

both Ms. Brown and Ms. Brady had previously erred by failing to file a "Suggestion

of Bankruptcy" with the Lee County Circuit Court, it is illogical to argue that either

of those attorneys would provide adequate representation to their respective

clients by filing a "Motion for Relief From Stay" concerning, as far as the Circuit Court may have had knowledge, M&D's bankruptcy filing on October 3, 2003.

b. Second, it is not the "law" that the Willifords have the knowledge or ability to generate and file, separately or jointly, a "Suggestion of Bankruptcy" in the Lee County Circuit Court (Divorce Action DR-03-175) where they were separately represented by counsel, or a "Motion to Enforce Stay" in This Court.

21.                    **Rebuttal to "Section #19"**

Attorney MURRAY submits that this "Section #19" completely misses the mark regarding the division of the Willifords' assets, which were Estate assets, on October 31, 2003, about 4 weeks after this Bankruptcy Case had been filed. A reading of the Lee County Circuit Court's Judgment of Divorce in DR-03-175 demonstrates "judicial moral indignation run amok."

Circuit Judge Lane, not satisfied that a Lee County jury had previously convicted Kenneth Williford of 2 felonies and that the Court had sentenced him to a total of 25 years in the State penitentiary, goes on to take special notice of the "heinous nature" of those 2 felonies, and, in his righteous indignation, assumed the role of a Criminal Court judge, imposed a "re-punishment" by awarding, *inter alia,* 100% of the Willifords' jointly-owned (Estate) assets to Charlotte Williford alone.

Page 15 of  38

Thus, M&D's citation of <u>Moretz,</u> which does not discuss the knowing failure of several attorneys to file any "suggestion of bankruptcy" in the proceedings before their respective Court, nor the existence of an "Automatic Stay," nor the effect of a "100% - 0% " division of marital (Estate) assets accumulated over a 24-year period, is inappropriate. Here, no relief from the "automatic stay" was requested, and the horribly punitive award of 100% of marital assets to one party would not be "within the realm of likely outcomes" absent extreme bias on the part of Judge Lane.

22.                    **Rebuttal to "Section #20"**

Special Counsel MURRAY submits that M&D's statements, as contained in "Section #20," are incorrect.  MURRAY concedes that he does not have access to the actual financial data underlying M&D's assertions. However, during recent conversations at Donaldson, Kenneth Williford, who has first-hand knowledge of the

value of the parties' assets and their related encumbrances, has averred that the current net value of the Estate assets totals well over $1 million, and that the current income from those assets exceeds $50,000 per month.

M&D's remark that "The only credible § 362 issue relates to protecting Mr. Williford personally from the divorce action" is unfounded. There are several

Page 16 of  38

other basic issues presently before This Court, just a few of which are:

a.  Does a Bankruptcy Court have authority to ignore or excuse violations of the "Automatic Stay" provisions of 11 U.S.C. § 362?

b.  Does a Bankruptcy Court have a duty to censure or correct attorneys who violate, knowingly or unintentionally, the "Automatic Stay" provisions of 11 U.S.C. § 362 in State Court (attorneys Brown and Brady in DR-03-175) and Bankruptcy Court (attorneys Memory and Day in BK-03-8 1486-WRS)?

c.  Does a Bankruptcy Court have the authority and duty to "undo" an unlawful division of Estate assets made by a State Circuit Court (DR-03-175) in violation of 11 U.S.C. § 362? and,

d.  Does a Bankruptcy Court have the authority and duty to require an independent investigation of the fair market values of assets, and their related encumbrances, where such value and encumbrance data is con-tested by one of the Joint Debtors? (Note 2)

---

Note 2: It should constantly be remembered that Mr. Kenneth Williford has been incarcerated, financially destitute, and without any access to funds or financial assistance from his former wife Charlotte, that he has had no independent representation, and has almost no ability to conduct any representation for himself, since years before this Bankruptcy Case was filed on October 3, 2003. Therefore, he has been at an extreme disadvantage in this Bankruptcy Case, while his former wife Charlotte has had immediate and continuing access to funds and attorneys.

Page 17 of  38

23.                    **<u>Rebuttal to "Section #21"</u>**

The cases cited by M&D, <u>In re Nat'l Envtl. Waste Corp.,</u> 129 F.3d 1052 (9th Cir.

1997) and the case it cites, <u>In re Kissinger,</u> 72 F.3d 107 (9th Cir. 1995) are inappro-

priate to a discussion or examination of the issues at hand, for several reasons.

<u>First</u>, <u>Nat'l Envtl Waste Corp.</u> is a California appeal to the 9th Circuit. It states

clearly at 1054 that "Actions taken in violation of the automatic stay are void."

However, that opinion then goes on to state that the Bankruptcy Court has the

authority to retroactively annul an automatic stay, and that such a ruling is

reviewed for an abuse of discretion. It is interesting to note the various factors

which the 9th Circuit used in analyzing the Bankruptcy Court's annulment.

<u>Second,</u> <u>Nat'l Envtl Waste Corp., at 1054,</u> cites <u>In re Kissinger,</u> 72 F.3d 107 (9th

Cir. 1995) for the proposition that "a decision retroactively to lift the automatic

stay is reviewed for an abuse of discretion. However, <u>Kissinger</u> at 109 states:

> "Retroactive annulment, however, should be 'applied only in **<u>extreme</u>**
> circumstances.' *In re Shamblin,* 890 F.2d 123, 126 (9th Cir.1989)."
> (spacing as in original; bold type and underlining added))

<u>Third,</u> the two cases <u>(Nat'l Envtl</u> and <u>Kissinger)</u> cited by M&D are both 9th Circuit

cases, involve lawsuits between creditors and debtors, and do not contain even a hint

that all of the attorneys knew of, but violated, the "automatic stay." The Court

balanced the equities between debtors and creditors, and determined that equity

called for the retroactive annulment of the "automatic stay."

Page 18 of  38

<u>Fourth,</u> unlike the cases cited by M&D, we have, in the present case:

    a.  Flagrant violations of 11 U.S.C. § 362 by 4 attorneys (Brown,

        Brady, Memory, and Day);

    b.  Violations of the Alabama Rules of Professional Conduct by

        those same attorneys;

<u>Fifth,</u> M&D's "Section 21" fails to recognize the import of cases such as <u>Devine</u> <u>v.</u>

<u>Devine,</u> 812 So. 2d 1278 (Ala. Civ. App. 2001) which, citing <u>Hunter v. Hunter,</u> 706

So. 2d 753, 754, states at 1281:

> "We note that a trial court has jurisdiction to fashion a property division in a divorce action where the bankruptcy court enters an order lifting the automatic stay as to the divorce action........ However, in this case, the bankruptcy court did not enter an order lifting the automatic stay. We conclude that, because of the parties' pending bankruptcy action, the trial court was without jurisdiction to enter that portion of its divorce judgment that divided the parties' marital property. See *Hunter v. Hunter,* supra."

24.                  **<u>Rebuttal to "Section #22"</u>**

Special Counsel MURRAY submits that this "Section #22" is somewhat confusing.

M&D's document titled "Waiver of Representation and Professional Conduct" is

little more than a written understanding the M&D could not represent either of the

Willifords in their divorce action. In other words, it is simply M&D's acknowl-

edgement that they were prohibited from representing either one or both of the

<div align="center">Page 19 of 38</div>

Willifords in their divorce action by the mandates of Rule 1.7 of the Alabama

Rules of Professional Conduct, just as attorney MURRAY may not represent

Kenneth Williford in his attempts to correct the Lee County Circuit Court's

disastrous destruction of his joint ownership in all marital (Estate) assets.  The fact

that M&D advised Ms. Brady, the attorney for Ms. Charlotte Williford, of such non-

representation by letter dated January 13, 2004 simply underscores the fact that

such communication did not take place until more than 3 months after M&D had

filed the Willifords' Joint Voluntary Chapter 11 Bankruptcy Petition. Surely,

M&D 's "Waiver of Representation and Professional Conflict" did not in any

manner absolve M&D from their statutory and ethical duties to notify both the

Circuit Court of Lee County of the existence of BK-03-81486-WRS, and the U.S.

Bankruptcy Court for the Middle District of Alabama of Circuit Judge Lane's

impending unlawful division of the Joint Debtors' Estate assets in DR-03-175.


25.                    **Rebuttal to "Section #23"**

M&D incorrectly argue that Mr. Kenneth Williford (who is still their client in this

case, BK-03-8 148 6-WRS) advised the Lee County Circuit Court, by letter dated

November 28, 2003, of the existence of this Bankruptcy Case. There are at least 2

reasons why this statement by M&D lacks informational validity:

First, M&D admit, in sentence #8 of "Section #4," that Mr. Kenneth Williford's

attorney, Ms. Margaret Y. Brown, withdrew from representing him on December

24, 2004. However, Mr. Williford was still represented by her when he filed his

letter on November 28, 2003. Thus, while the record in DR-03-175 is silent on the

matter, Mr. Williford's letter, consisting of a filing by a litigant already represented

by an attorney of record, was probably never even considered by Circuit Judge

Lane, whose bias against Kenneth Williford had already been demonstrated; and

Second, Mr. Williford's letter was written almost a month after the Lee County

Circuit Court had unlawfully divided the marital property on October 31, 2003.

Circuit Judge Lane, who had issued the property division in a ruling which openly

demonstrated an extreme example of "moral indignation" about the charges for

which Kenneth Williford had been convicted, by awarding Ms. Charlotte Williford

100% of the parties' million-dollar estate, could not reasonably be expected to

affirmatively consider, in a nonpartisan manner, a *pro se* filing by the very person

whom he had previously excoriated at the divorce hearing, to which Kenneth

Williford had been summoned in shackles and prison garb.


26.                    <u>**Rebuttal to "Section #24"**</u>

Special Counsel MURRAY does not understand this "Section 24."  Because Mr.

Willifiord's attorney, Ms. Brown, did not withdraw until more than a year <u>after</u>

Mr. Williford had written his letter to Circuit Judge Lane, his "Motion to Inter-

was a nullity or at least a document upon which Judge Lane would have placed

little credence under the prevailing rule that only filings by attorneys of record,

and not be litigants themselves, are considered by a trial court. Thus, the single

sentence constituting "Section #24" appears meaningless.

27.                              **Rebuttal to "Section #25"**

Special Counsel MURRAY submits that "Section #25" constitutes  M&D's attempt

to direct the reader's attention away from its own failure to submit any "Suggestion

of Bankruptcy" to the Lee County Circuit Court, and direct it toward submissions

which Mr. or Ms. Williford may have made.  Surely, it is not the rule that litigants,

each represented by an attorney, should submit anything directly to the Court, much

less so critical a pleading as a "Suggestion of Bankruptcy." Rather, it is the sole

responsibility of their respective attorneys.   Thus, whether of not Circuit Judge

Lane had actual or constructive knowledge of the existence of this Bankruptcy Case

(BK-03-81486-WRS), prior to his unlawful division of the parties' marital (Estate)

assets, is not at all germane to any consideration of the duties of the respective

attorneys (Brown, Brady, Memory and Day) to file a respective "Suggestions of

Bankruptcy" or "Motions to Enforce Stay."

28.                              **Rebuttal to "Section #26"**

Attorney MURRAY would rebut M&D's "Section #26" by stating that it is clearly

an admission by M&D that they did not advise This Court, in any timely manner,

that the Lee County Circuit Court was considering an unlawful division of the

Estate assets. In fact, M&D's "Section #26" admits that they did not advise This

Court of the unlawful October 31, 2003 division until they filed their "Amended

Disclosure Statement" on June 29, 2005, about **20 months** later.

The fact that Kenneth Williford's appeal to the Alabama Court of Civil Appeals

was unsuccessful is immaterial.  The Lee County Circuit Court, and the Alabama

Appellate Courts, lost jurisdiction to divide the Willifords' marital (Estate) assets

as of the date (October 3, 2003) of the filing of their Jount Chaopter 11 Petition. As

stated in <u>Devine v. Devine,</u> 812 So. 2d 1278, 1281 (Ala. Civ. App. 2001):

> "We conclude that, because of the parties' pending bankruptcy action,
> the trial court was without jurisdiction to enter that portion of its di-
> vorce judgment that divided the parties' marital property. *See Hunter
> v. Hunter* [706 So. 2d 753 Ala. Civ. App. 1997], supra."
> (bracketed portion added)

Thus, M&D have stated nothing to justify or excuse their failure to either advise

the Lee County Circuit Court of this Bankruptcy Case, or their failure to advise

This Court of the impending Estate property division in that Lee County divorce

action.

29.                    **Rebuttal to "Section #27"**

Special Counsel MURRAY disputes the contents of, and implications reasonably to

be derived from, this "Section #27" by M&D, for several reasons:

First, attorney MURRAY has never represented either of the Willifords in this

Bankruptcy Case. He cannot do so, by virtue of his representation of both of the

Willifords in their Adversary Proceeding AP-04-08015-WRS, a "legal malpractice"

action being prosecuted against the Willifords' former attorneys (Funderburk et al) in

the Emerton case;

Second, Special Counsel MURRAY has been "dragged into" this case by the

unlawful and unethical activities of the Willifords' divorce attorneys in DR-03-175

(Lee County) and M&D's activities in this Bankruptcy Case. Attorney MURRAY

has been "forced" by Rule 8.3 ("Reporting Professional Misconduct") of the

Alabama State Bar's Rules of Professional Conduct to report such acts and

omissions, as he did by letter to the ASB in June, 2006, which has apparently been

filed by This Court of its own accord.

Third, M&D filing of the "Disclosure Plan" is irrelevant to any issue regarding

M&D's violation of law and ethics.   Prior to June 2006, when he received

Kenneth Williford's request for assistance regarding the Lee County's unlawful

property division, MURRAY was not aware of those events, and has only filed

Page 24 of  38

pleadings seeking to protect his own interests in Adversary Proceeding AP-04-08015-WRS.   Thus, even if MURRAY had knowledge of M&D's June 29, 2005 "Amended Disclosure Statement," he had no authority to do anything at all, nor to file any pleadings for or against anything happening in this Bankruptcy Case.

Fourth, it was not until about a year later, in June, 2006, when Mr. Kenneth Williford requested Special Counsel MURRAY to assist him in "undoing" the unlawful division of marital (Estate) assets, that attorney MURRAY wrote to the Alabama State Bar Association Center for Professional Responsibility, requesting advice about whether he could represent Kenneth Williford where such representation might or would work to the disadvantage of Charlotte Williford, both of whom were his clients in AP-04-08015-WRS.  MURRAY was advised that he could not represent Kenneth Williford under such circumstances, and MURRAY was further advised that he should report the any unethical or unlawful acts and omissions to the ASB. Attorney MURRAY did so, and that began the "firestorm" of filings relating to the issues presented in "M&D's RESPONSE" and this "Rebuttal."

Fifth, it is known to M&D that, prior to Confirmation of the PLAN on January 31, 2006, and until assistance was requested by Kenneth Williford sometime in June, 2006, attorney MURRAY had no basis for filing anything with This Court in this

Page 25 of  38

case.  MURRAY's sole involvement prior to June 2006 concerned This Court's

approval of his appointment as Special Counsel to prosecute Adversary Proceeding

AP-04-08015-WRS. He had nothing to do with the PLAN or its approval, or with

any "Disclosure Statements" or "Amended Disclosure Statements."

Sixth, the mere fact that attorney MURRAY, like every other attorney in the United

States (and elsewhere) has the ability to review and download filings in this Bank-

ruptcy Case, is absolutely irrelevant to any investigation of, or consideration of, the

allegedly illegal and unethical acts and omissions by M&D, who have been, at all

times since October 3, 2003, under a duty to represent both Kenneth Williford and

Charlotte Williford jointly, and to do nothing to jeopardize the interests of either one

in favor of the other.   This M&D have not done.


30.                          **Rebuttal to "Section #28"**

Attorney MURRAY submits that this "Section #28" is confusing.  Even if M&D's

allegation is true, the mere fact that the "existence of the divorce proceeding was

repeatedly discussed in open court many times" does not at all equate with any

formal pleading such as a "Suggestion of Bankruptcy" in the Lee County Circuit

Court, or a "Motion to Enforce Stay" filed in this Bankruptcy Court. Further, mere

discussions in open court generally do not generate a formal Record demonstrating

that the judicial tribunal is fully aware of  pertinent facts, laws, and ethics.

Page 26 of  38

31.                    **<u>Rebuttal to "Sections #29 and #30"</u>**

Special Counsel MURRAY submits that the issue of "Dismissal" of this Bankruptcy

Case (BK-03-8 1486-WRS) has already been placed before This Court in earlier

documents. See M&D's "Motion to Dismiss" (Doc. 279), Kenneth Williford's

"Response to Motion to Dismiss" (Doc. 291), and Special Counsel MURRAY's

"Objection to Motion to Dismiss." (Doc. 293) Rather than review those filings,

attorney MURRAY would merely submit that Kenneth Williford has stated

unequivocally that he does not want this case Dismissed, but only that the PLAN be

modified sp as to "undo" the unlawful division of Estate assets.. It is to be

remembered that it was M&D who advised Kenneth Williford not to file anything

about the unlawful property division by the Lee County Circuit Court until after the

PLAN had been confirmed.

Further, if the truth were known, Ms. Charlotte Williford does not really want this

case to be Dismissed, as alleged by M&D.  She is a competent businesswoman. Upon

questioning by This Court after a full disclosure of the potential effects of a dismissal,

she would no doubt state that fact. After all, her primary protection from creditors is

the PLAN, and if this case is Dismissed, she could lose that protection. Though she

may comfortably be able to service the debt on the $50,000+ per month income she

now obtains from the Estate properties, as stated to this Court in her recent filing

concerning the division of the parties' Estate) assets, there is some doubt whether, if this case were Dismissed, she would continue to enjoy the same cooperation from her creditors as she currently experiences. In any event, there is a substantial question of whether one of two Joint Debtors has the authority to unilaterally cause the Dismissal of a Voluntary Chapter 11 Proceeding, regardless of whether that occurs before or, as here, after the Confirmation of the PLAN.

**32.** <u>**Rebuttal to "Section #31"**</u>

Attorney MURRAY submits that this "Section #31" is little more than mere conjecture. Contrary to M&D's assertions, the <u>Dismissal</u> of this Bankruptcy Case (BK-03-8 1486) would bring into question those "loan agreements and/or new notes and security agreements" involved in the PLAN. MURRAY concedes that he is not a "bankruptcy attorney." However, he submits that those "loan agreements and/or new notes and security agreements" were executed with the understanding that a Bankruptcy Court remained in the background as a form of "judicial backup" for the parties and creditors.

**33.** <u>**Rebuttal to "Section #32"**</u>

MURRAY submits that "Section 32" consists of information which is not at all relevant to the issue of whether M&D should be permitted to withdraw in this

matter, since the "conflict" has been caused by the violation of law and ethics by

M&D themselves, in combination with the violations by the Willifords' divorce

attorneys, Brown and Brady.

Any documents regarding withdrawal which the Willifords executed, which were

generated by M&D, should not be interpreted to protect M&D from their own

violation of law or ethics, unless appropriate protection is first afforded by M&D to

protect any person injured as a proximate result of such conflict. Here, the utter

failure of M&D to protect their own client (Kenneth Williford) from the impending

property division disaster in the Lee County Circuit Court (DR-03-175) by failing to

file any "Suggestion of Bankruptcy" there, was only the "tip of the iceburg," so to

speak, which demonstrated M&D's unannounced antipathy against Kenneth Willi-

ford in favor of their other client, Charlotte Williford, both of whom they still

represent in this Bankruptcxy Case (BK-03-8 1486-WRS).

The Emerton case, which is the foundation of pending Adversary Proceeding AP-

0408015-WRS has little if anything to do with the issue of withdrawal by M&D.


34.                    **Rebuttal to "Section #33"**

Special Counsel MURRAY submits that this "Section #33" is also confusing. As

M&D well know, Debtor Kenneth Williford has explained to This Court that, as a

lay person, he meant by his filing (Doc. 278) that he does not want the PLAN

vacated, or the case Dismissed, but wants only that the PLAN be modified to "undo" the Lee County Circuit Court's unlawful division of marital (Estate) assets. Further, M&D's argument that Kenneth Williford's allegations that he has received less than professional services from M&D are "rather incredible," because M&D saved the Willifords approximately $500,000 as a result of this Bankruptcy Case, is itself somewhat incredible. There is no allegation by Kenneth Williford that M&D "screwed up" (in Kenneth Williford's words) this entire case, or that they "screwed up" even a majority of it. The central allegation by Kenneth Williford is that M&D failed in its duty to represent both himself and Charlotte Williford.

35.                              **Rebuttal to "Section #34"**

Attorney MURRAY submits that M&D are far from correct in asserting that his participation in this Bankruptcy Case (BK-03-8 1486-WRS) rests in any part on Ms. Willifird's refusal to make any future expense payments to him.

Initially, it must be observed that MURRAY is Special Counsel representing the Willifords jointly in Adversary Proceeding AP-04-08015-WRS. After an unsuccessful appeal as CV-05-857-MHT, that case is presently pending before the U.S. Court of Appeals for the Eleventh Circuit as No. 06-15 1 19-HH.

Further, the issue of MURRAY's filing seeking intervention (Doc. 280) to protect his potential 1/3 contingency fee in the Adversary Proceeding (if the Willifords are

successful there) was "forced" by M&D's "Motion to Dismiss Case" (Doc. 279). After all, if this Bankruptcy Case is <u>Dismissed,</u> it follows that the Adversary Proceeding will have no forum for trial, and will probably also be dismissed.

Of even more troubling importance is M&D's erroneous assertion that attorney MURRAY is "representing Kenneth Williford." Attorney MURRAY concedes that he would represent Kenneth Williford if he could ethically do so, with regard to the unlawful division of Estate assets in DR-03-175.   However, when MURRAY asked the Alabama State Bar Center for Professional Responsibility whether he could do so under the various pertinent Rules of Professional Conduct, he was ad-vised that he could not represent Kenneth Williford alone, since that might work to the detriment of Charlotte Williford, who was (and still is) MURRAY's joint client in AP-04-08015-WRS.  Thus, MURRAY has never represented Kenneth Williford alone.

It should be noted that, since even before his divorce attorney Margaret Brown withdrew in 2004, Kenneth Williford has been without any funds, incarcerated, and at the mercy of both Charlotte Williford and M&D, all of whom seem to have little regard for his welfare.

36.                    <u>**Rebuttal to "Section #35"**</u>

Attorney MURRAY submits that this "Section #3 5" is merely conjecture without substantial validity, for several reasons:

First, M&D emphasizes that "July 28, 2006" meeting between attorney MURRAY and Kenneth Williford. However, an examination of the visitation records at Donaldson Correctional Facility will show that MURRAY had visited with Mr. Williford at Donaldson more than 50 times prior thereto, because of the need to directly communicate with him about Adversary Proceeding AP-04-08015-WRS. Attorney MURRAY only visited with Ms. Charlotte Williford 3 times, in Opelika, Alabama, because she had advised him that Kenneth Williford, and not herself, had been involved in almost all of the interactions with their attorney, Mr. Funderburk. Therefore, multiple meetings with Charlotte Williford were not required. Further, to reduce expenses by about 75%. MURRAY usually combined his visits with Kenneth Williford, with visits with other inmates at Donaldson.

Second, attorney MURRAY's July 28, 2006 meeting with Kenneth Williford was based primarily upon a need to discuss the Alabama State Bar's advice that MURRAY could not represent Kenneth Williford in any matter which would be detrimental to MURRAY's other client, Charlotte Williford.

Third, and perhaps most seriously erroneous, is M&D's allegation that:

> "Mr. Murray has taken on full representation of Mr. Williford to the exclusion of Ms. Williford, although he had previously represented both."

MURRAY has never represented Mr. Kenneth Williford individually. He is ethically obliged to represent both Kenneth and Charlotte Williford in AP-04-

080 15-WRS, and he is doing so with diligence, as may be deduced from his filings in that case and its appeals, CV-05-857-MHT and 11th Circuit 06-15 1 19-HH. <u>Fourth,</u> a reading of Kenneth Williford's filings, which have all been submitted *pro se,* demonstrate a lack of legal education and the absence of any legal assistance other than that which is generally available, through "jailhouse lawyers," in a large prison such as Donaldson. Surely, if attorney MURRAY had anything to do with those filings, he would have typed them in a more acceptable format and manner.

37.                            **Rebuttal to "Section #36"**

Again, M&D's "Section #36" is incorrect, from a "law of contract" viewpoint.

This Court appointed MURRAY as Special Counsel in AP-04-08015-WRS upon the following pleadings:

| | |
|---|---|
| 10/01/2004 Doc. 117 | Application to Employ Professional Person William R. Murray as Special Counsel filed by James L. Day, Von G. Memory on behalf of Charlotte Teresa Williford, Kenneth Williford.." |
| 10/05/2004 Doc. 120 | Bankruptcy Administrator's Response to Application ... |
| 10/13/2004 Doc. 121 | Notice of Telephone Hearing .. re Doc. 117 ... |
| 11/02/2004 Doc. 127 | Order Authorizing Employment of Attorney (William R. Murray |

It was M&D's request to attorney MURRAY to represent the Willifords which started the entire chain of events leading to this **<u>Rebuttal.</u>**

Thus, it is incorrect for M&D to assert that "there is no contractual relationship between himself [MURRAY] and the firm of Memory & Day." M&D's filing of Doc. 117, requesting permission to employ MURRAY, coupled with This Court's approval (Doc. 127) and MURRAY's performance, are is sufficient evidence under "horn book" contract law, to substantiate an agreement (contract) between M&D and MURRAY. Contract law does not require that such an agreement be contained in any single document.

**38.**                **<u>Rebuttal to "Section #37"</u>**

MURRAY submits that M&D's "Conclusion," as stated in "Section #37," is untrue. As attorneys for both of the Willifords in this Bankruptcy Case, M&D were under both legal and ethical duties to recognize and energize the restrictions imposed by the "Automatic Stay" of 11 U.S.C. § 362, and the requirements of the Alabama Rules of Professional Conduct. For them to argue that the Courts had "sufficient notice" of the Automatic Stay and it implications through the statements of others, such as their clients, is just a click short of disingenuous.

**39.**                **<u>Rebuttal to "Section #38"</u>**

Attorney MURRAY does Rebut this "Section #3 8:" he has not been involved with this Bankruptcy Case or any discussions with Bankruptcy Administrator Jacobs.

40.                    **Rebuttal to "Section #39"**

Attorney MURRAY submits that M&D's reference to the "disagreement between

the joint debtors" utterly fails to recognize that those disagreements have been

generated by M&D's failiure to advise one of the Joint Debtors, Charlottte Willi-

ford, that she was engaging on an course of conduct in DR-03-175 which was

designed to deprive their other client, Joint Debtor Kenneth Williford, of his joint

ownership of all of the parties' marital assets, which as of October 3, 2003 were

Estate assets, without knowledge of the Bankruptcy Court and in clear violation of

the "Automatic Stay" provisions of 11 U.S.C. § 362.  In addition, M&D failed to

advise their bankruptcy clients, Charlotte and Kenneth Williford, that they had no

intention of filing any "Motion to Enforce Stay" in This Court.

Further, M&D's legal and ethical violations, coupled with those of the Willifords'

divorce attorneys (Ms. Brady and Ms. Brown), have led to a situation in which one

of their clients (Kenneth Williford) has been made destitute because their other

client (Charlotte Willifiord) has unlawfully obtained a 100% interest in all of the

Estate property formerly owned by their clients jointly.

Now, M&D argue that they should be permitted to withdraw because of the intra-

client conflict they themselves have caused. Surely, if M&D are permitted to

withdraw, such withdrawal should be conditioned upon filing such bond or similar

undertaking which will protect all persons from any adverse consequences of their

Page 35 of 38

mis-adventures. MURRAY submits that it would be improper to permit M&D to

withdraw providing without such protection.

43. In summary of this **Rebuttal**, attorney MURRAY asks that This Court

consider these remarks when it considers M&D's "RESPONSE." (Doc. 301)


Submitted by:

William R. Murray
Attorney at Law
Murray Lane
Northport, AL 35475 Phone: (205)
/s/ William R. Murray           339-7080 FAX: Permission req'd
William R. Muray                E-mail: bill@dbtech.net
Attorney for Plaintiffs         ID: ASB-1931-A64W
Charlotte T. WILLIFORD and
Kenneth WILLIFORD

**Certificate of Service:** I hereby certify that, in addition to E-filing, I have "snail-
mailed" true copies of this **"Rebuttal** ..(etc.)," properly addressed and with First
Class postage prepaid, to Ms. Charlotte Williford, to Mr. Kenneth Williford, to
counsel (Memory & Day) for the Willifords in Bankruptcy Case No. 03-81486-
WRS, to Mr. Aldos L. Vance, attorney for the Defendants in Adversary Proceeding
AP-04-08015-WRS, and to the Bankruptcy Administrator, as listed below, on
November 28, 2006.

Attorneys for Debtors in Chapter 11 Case No. 03-8 1486:
        Mr. James L. Day, Esq. (jlday@memorylegal.com)
        Mr. Von G. Memory, Esq. (vgmemory@memorylegal.com
        Memory & Day, P.O. Box 4054
        Montgomery, AL 36103-4054

Attorney for Defendants in this Adversary Proceeding 04-08015:
        Mr. Aldos S. Vance, Esq. (alv@starneslaw.com) Starnes
        & Atchison, LLP
        100 Brookwood Place, 7th Floor
        P.O. Box 598512, Birmingham, AL 35259-8512


Page 36 of 38

<u>Bankruptcy Administrator:</u>
    Ms. Teresa R. Jacobs
    Bankruptcy Administrator, M.D. Ala.
    One Court Square, Suite 221, Montgomery, AL 36104

<u>Ms. Charlotte Williford</u>
815 Crawford Road
Opelika, AL 36804

<u>Mr. Kenneth Williford</u> 229597 B-38

100 Warrior Lane
Bessemer, AL 3 5023-7299

/S/ <u>William R. Murray</u>
William R. Murray
Attorney for Charlotte and Kenneth Williford in AP-
04-08015-WRS (Bkcy, M.D. Ala) and related
Appeals, CV-05-587-MHT (M.D. Ala.), and
11th Circuit Appeal 06-15 1 19-HH

Page 37 of 38

# Exhibit #1

(Doc. 301, divided into "Sections" #1 through #39)

_____

## RESPONSE BY THE FIRM OF MEMORY & DAY TO

## CERTAIN DOCUMENTS FILED

## BY DEBTOR, KENNETH WILLIFORD,

## AND WILLIAM MURRAY AND

## ACCUSATIONS CONTAINED THEREIN

_____

Note:

Attorney MURRAY has been unable, due to his "computer illiteracy," to apply proper spacing and pagination to some portions of "Exhibit #1," which was originally filed by M&D in PDF format. In the process of converting it to "Word" format for the addition of "Section" numbers, the pagination of Exhibit #1 became rather confusing. However, the pages in this entire document are sequentially numbered from "Page 1" through "Page 55," as follows:

Pages 1 through Page 37, inclusive:    MURRAY's **Rebuttal**

Page 38:                                              Exhibit #1 "divider sheet"

Pages 39 through 55, inclusive:          M&D's "RESPONSE" (Doc. 301)

Page 38 of 38

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| IN RE: | |
| CHARLOTTE TERESA WILLIFORD and KENNETH WILLIFORD, | Case No. 03-81486-WRS Chapter 11 |
| Debtors. | Response to Various Motions and Documents |

### RESPONSE BY THE FIRM OF MEMORY & DAY TO CERTAIN DOCUMENTS FILED BY DEBTOR, KENNETH WILLIFORD, AND WILLIAM MURRAY AND ACCUSATIONS CONTAINED THEREIN

COMES NOW, the law firm of Memory & Day, and for response to the following

documents, filed on the dates indicated and docketed below:

| Date | ECF# | Entry Title |
|---|---|---|
| 07/25/2006 | 278 | Motion to Vacate Confirmation of Plan Because of Fraud on Court and Request for Relief from Unlawful Division of Estates Assets |
| 07/30/2006 | 280 | Motion by Special Counsel Murray to Intervene to Protect Potential Contingent Fee in AP-04-08015-WRS |
| 08/06/2006 | 285 | Motion by Special Counsel Murray for Correction of This Court's "Order For Status Hearing" |
| 08/09/2006 | 287 | Response to Motion to Vacate Confirmation of Plan and Request for Evidentiary Hearing Filed by Kenneth Williford |
| 08/09/2006 | 288 | Response to Motion to Vacate Confirmation of Plan and Motion to Dismiss Case |
| 08/10/2006 | 291 | Response to Motion to Dismiss Case |
| 08/17/2006 | 293 | Objection to Motion to Dismiss (Doc. 279) |

| 08/22/2006 | 294 | Motion to be Heard at Status Hearing with Suggestions Concerning Issues and Procedures to be followed |
| 08/25/2006 | 296 | Response Motion to Amend Memorandum |

### Background

1.  Kenneth Williford was arrested in Lee County in November of 1999 on felony charges of Rape I and Sodomy I. The charges were based on the allegations that Mr. Williford forced a 13 year old girl to have oral and anal sex in one of the trailers located at a mobile home park owned by Mr. Williford and his wife.

2.  Mr. Williford was indicted by a grand jury in Lee County, Alabama, in April of 2000 on the two felony charges.

3.  A trial was held in the Circuit Court of Lee County, <u>State v. Williford</u>, Case Numbers CC-00-248, 249 in February of 2003. The jury returned guilty verdicts on both the Rape I and the Sodomy I counts.

4.  In May of 2003, Mr. Williford was sentenced to serve 25 years in the state penitentiary and is presently incarcerated at the Donaldson Correctional Facility in Bessemer, Alabama.

5.  Just before Mr. Williford's indictment on the criminal charges, Scott and Kristi Emerton filed suit in the Circuit Court of Chambers County, Alabama against the Debtors, Kenny Williford and Charlotte Williford (hereafter "Debtors" or "Willifords"), March 22, 2000, for conversion and breach of contract. This action was as a result of an altercation between Mr. Williford and the Emertons in December of 1999 incident to an eviction action.

6.  The jury in Chambers County returned verdicts in favor of the Emertons on their conversion and breach-of-contract claims. On the breach-of-contract claim, the jury awarded the



Emertons $25,000.00 in compensatory damages, interest, and costs. On the conversion claim, the jury awarded the Emertons $8,000 in compensatory damages and $350,000 in punitive damages. On September 16, 2002, the trial court entered a judgment in favor of the Emertons in the total amount of $383,000.00 in accordance with the jury verdict. By the time of their Chapter 11 bankruptcy, with interest, this judgment had grown to $428,960.00.

7. Charlotte Williford filed a petition for divorce in the Circuit Court of Lee County, April 9, 2003, case number DR 2003-175.

8. In this state court domestic action Charlotte Williford was represented by Thomas E. Jones, Esq., and Beverlye Nixon Brady, Esq. Kenneth Williford was subsequently represented by Margaret Young Brown, Esq. However, Ms. Brown withdrew from the case during the appeal process, December 24, 2004.

9. A trial was set in the Domestic Relations case for September 22, 2003 at 8:00 AM. Mr. Williford requested and was granted transport.

10. A judgment of divorce was entered October 31, 2003.

11. A notice of appeal and various motions were filed on behalf of Mr. Williford, December 12, 2003 and this matter was on appeal until August 2005.

12. The Debtors filed a joint petition for an order of relief under Chapter 11, Title 11 of the United States Bankruptcy Code, October 3, 2003.

13. Due to the various actions and their associated appeals, the Debtors requested, and were approved five extensions to the exclusivity period; the fifth was filed May 31, 2005, requesting a ten day extension.

14. The Debtors filed their Chapter 11 disclosure and plan, pursuant to the Court's order allowing expansion of the exclusivity period, June 10, 2005. The instant plan and disclosure was

coordinated with and filed after numerous letters, an early visit by Mr. Memory, a phone conference, and after an approximately three hour visitation by Mr. Day with Debtor Kenneth Williford at Donaldson Correctional Facility in Bessemer, Alabama, June 8, 2005.

15. Initially, the undersigned counsel and firm discussed the pending domestic action with the Willifords and its impact on the bankruptcy action. It was unequivocally stated, on more than one occasion, that they would not give advice, render aid, or otherwise participate in the pending domestic action. This same position was discussed when one or all of the domestic lawyers called from time to time during the pendency of the bankruptcy. Finally, at no time during the above-referenced discussions or communications was there a concern raised or communicated on the part of Mr. Williford about a conflict in representation, the automatic stay, or the impact of the domestic relations case as it applied to the bankruptcy, or *vice versa*.

16. The amended disclosure statement and plan were conditionally approved June 29, 2005 (ECF Doc. 193) and a copy was mailed to all creditors and parties in interest July 5, 2005 (ECF Doc. 195). A copy of this amendment was sent to Debtor Kenneth Williford and was available to William Murray through PACER.

17. The plan, as proposed and subsequently approved, made no provisions for the transfer of property, either real property or personal property, from one to the other of the joint debtors. This plan specifically restructured the debts owed the creditors, attempted to "hold off" execution of the judgment of the Emertons, and liquidation of the estate until a settlement could be negotiated. The assertions by William Murray, Esq. and Mr. Williford that the estate represents a million dollars in value fails to take into consideration that all of the assets, before and after the bankruptcy, were fully encumbered by debt, leaving little equity in the estate.

18. The primary issue with respect to the estate was the extent of the imposition of the judgment of the Emertons and deficiency claim of Colonial Bank. Their impact would result in either an estate that had a debt load equal to its value (with no change to the amounts of the judgments), or the addition of approximately $450,000.00 in debt to the estate.

19. The debts and the secured assets of the plan are as follows:

| Creditor | Collateral | Debt | Value of Property |
|---|---|---|---|
| The Peoples Bank & Trust Company | Five Trailer Parks (Real Property) | $2,844,872.00 | $2,891,826.50 [1] |
| The Peoples Bank & Trust Company | Manufactured Homes | $100,815.58 | $92,000.00 |
| Agri-Credit | Long 45 Tractor | $3,202.98 | $6,260.37 |
| Auburn Bank | 2002 Ford, 1 Ton, 4X4, Truck | $9,714.30 | 21,000.00 |
| The Peoples Bank & Trust Company | Homestead | $125,000.00 (Appx) | 115,420.00 |

20. The debts that were significantly restructured were as follows:

    1) SouthTrust Bank - a judgment for $86,164.00. This debt was paid as a result of a new note to The Peoples Bank & Trust Company, secured by the Debtor's homestead. This claim was settled for $42,500.00.

    2) The Emerton judgment - the claim as filed lists the claim as $428,960.00. This claim was settled for $100,000.00.

    3) Deficiency claim of Colonial Bank - for $55,983.34. This claim was reduced to $0.00.

21. The net amount of savings as a result of the reorganization was $428,607.00, not to mention avoidance of liquidation under a Chapter 7. A minimal amount, represented and secured by the equity in the Debtor's homestead, of additional debt was assumed in the reorganization.

---

[1] In the Debtor's second amended plan, this amount was listed as being a median value between the Debtor's scheduled values and the revenue appraised value.

- 5 -

22. The debts to The Peoples Bank & Trust Company for the trailer parks and manufactured homes, Agri-Credit, and Auburn Bank are all essentially being serviced as they were prepetition.

23. There were no other unsecured claims.

### Issues Presented by the Various Pleadings

1) Can the stay of 11 U.S.C. § 362 apply to one of two joint Debtors;

2) Memory & Day had an obligation to inform the Circuit Court of Lee County of the pending bankruptcy proceeding;

3) Memory & Day had an obligation to inform the bankruptcy court of the pendency of the divorce proceeding in Lee County;

4) The issue of dismissal, versus vacating the confirmation order;

5) The issue of withdrawal of Memory & Day from representation of the Debtors; and,

6) The participation of William Murray, Esq., in representing Mr. Williford.

### 1. 11 U.S.C. § 362 as it Applies to Joint Debtors

Under 11 U.S.C. § 302, a joint case is commenced by filing a single bankruptcy petition under the applicable chapter by an individual that may be a debtor under that chapter and the individual's spouse. A joint petition provides for a debtor and their spouse, as well as with respect to creditors and parties in interest, simplicity of administration of the bankruptcy estate.

By filing a petition in bankruptcy it gives rise to an automatic stay pursuant to Section 362, "which generally prevents **third parties** from taking action that could affect the property of the bankruptcy estate," *In re Jason Pharmaceuticals, Inc.,* 224 B.R. 315, 321 (D.Md.1998) (citing *United States v. Carolina Parachute Corp.,* 907 F.2d 1469, 1471 (4th Cir.1990)),

<u>Chapman v. Coho Resources, Inc</u>  2002 WL 1124768, *6 (N.D.Tex.) (N.D.Tex.,2002)

**[Emphasis added]**

Title 11 U.S.C. § 362(a) automatically stays a wide array of collection and enforcement proceedings against the <u>debtor and his or her</u> property. The stay is self-executing and is effective upon the filing of the bankruptcy petition. The stay is intended immediately to put the debtor and the debtor's property under the protection of the bankruptcy court and its availability is often a significant factor in a debtor's decision to commence a bankruptcy case.

In pertinent part, 11 U.S.C. § 362 of the code, with respect to Automatic stay, states:



> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the **debtor** that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> (2) the enforcement, against the **debtor** or against property of the estate, of a judgment obtained before the commencement of the case under this title;

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

> (4) any act to create, perfect, or enforce any lien against property of the estate;

> (5) any act to create, perfect, or enforce against property of the **debtor** any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

> (6) any act to collect, assess, or recover a claim against the **debtor** that arose before the commencement of the case under this title;

> (7) the setoff of any debt owing to the **debtor** that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the **debtor**.

The automatic stay is further expanded in cases under Chapter 13 in that it allows the imposition of a stay with respect to codebtors, who are not otherwise parties to the bankruptcy proceeding, 11 U.S.C. § 1301. However, the legislative history for section 1301 shows that it was planned to protect debtors by insulating them from "indirect pressures from their creditors exerted through friends or relatives that may have co-signed an obligation of the debtor", *See* H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 426 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6381, In re Heghmann, 316 B.R. 395, *402 (1st Cir.BAP (N.H.),2004)

Essentially, the stay operates to protect the debtor and property of the estate from commencement or continuance of actions against the Debtor/ Debtor's estate. It does not operate between joint debtors. In fact, in a review of applicable case law, the undersigned was unable to find any materials that address the imposition of the automatic stay by one joint debtor against the other. Finally, in spite of the fact that there was wide knowledge and a clear understanding regarding the domestic court participants of the pending bankruptcy, not once did the participants or their legal counsel advance a suggestion of bankruptcy or otherwise move to stop the domestic action in Lee County.

Assuming, *arguendo*, that the stay applies with respect to and between joint debtors, the automatic stay remains in effect during the pendency of the bankruptcy proceedings unless a party obtained relief from the automatic stay pursuant to 11 U.S.C. § 362(d), In re Berry 340 B.R. 636, *636 (Bkrtcy.M.D.Ala.,2006). Considering the propriety of the filing of a motion for relief by counsel for the Debtors, the motion would

have been filed by counsel in the domestic action on behalf of one of the Debtors at their insistance.

However, if there was a concern as to the automatic stay, and it was held to be applicable to one of the joint debtors, a motion for relief from the stay would allow the Lee County action to proceed to, based on Mr. Williford's civil and criminal actions, a similar and what would fundamentally be the same and predictable result. The court in Moretz, v. Moretz discussing a post petition state divorce proceeding, stated "… are the substantive terms within the realm of likely outcome that would be expected in a case that was actually litigated? When applying this analysis a court should keep in mind that public policy favors the voluntary resolution of disputes and that federalism demands great deference to state proceedings in domestic relations", Pamela S. Moretz, v. Richard Keith Moretz 1996 WL 33401174 (Bankr.S.D.Ga.) (In Re: Richard Keith Moretz, Br. No. 95-41767).

Moreover, the need for this Court to use 11 U.S.C. §362 to protect the bankruptcy estate itself, or the creditors, is not compelling. The case is essentially a "no asset" Chapter 11. After administration, there are no assets available for liquidation and distribution to creditors. Third-party creditors' rights were not invaded by the domestic action of the joint debtors of which Mr. Williford complains. No assets otherwise available for creditors were diverted and all property went back to the Debtors. The only credible § 362 issue relates to protecting Mr. Williford personally from the divorce litigation.

Other circuits have held that a bankruptcy court has "wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay," Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.), 129 F.3d 1052, 1054-55 (9th

- 9 -

Cir.1997) ; Mataya v. Kissinger (In re Kissinger), 72 F.3d 107, 109 (9th Cir.1995). This latitude

and authority includes annulment and can provide retroactive relief.

### 2. Obligation to Inform the Circuit Court of Lee County of the Pending Bankruptcy Proceeding

Before the instant petition was filed and as a condition of representation, the Debtors

were presented with and required to sign a document entitled "Waiver of Representation and

Professional Conflict". This document was executed by the joint Debtors and the signature of

Mr. Williford was notarized.

In pertinent part, the document states:

> 3. The Willifords have contacted the firm of Memory & Day to file a petition for an order of relief under Chapter 11 of the United States Bankruptcy Code. However, Memory & Day has expressed the concern of a conflict in representing both Mr. and Mrs. Williford in view of the pending domestic action. Also, Memory & Day has disclosed its representation of SouthTrust Bank from time to time.

> 4. We have been fully advised of our rights and the conflicts referenced herein. We have also been advised that we have the right to employ individual counsel to advise us and to protect our interests.

> 5. However, we have agreed to waive the above referenced conflicts, if such are construed or interpreted, now or later, to be considered or treated as conflicts and hereby request that said firm proceed, for both of us, to file a petition for an order of relief in the United States Bankruptcy Court for the Middle District of Alabama.

During the initial stages of representation, Mr. Williford was specifically told that the

firm of Memory & Day represented both Kenneth and Charlotte Williford in the bankruptcy and

as such it could not enter into litigation that pitted one debtor against the other. This was also

specifically represented to Beverlye Brady, Esq. in a letter, January 13, 2004.

However, it appears that this matter is moot in that Mr. Williford, himself, notified the

Lee County court of the existence of a bankruptcy proceeding. In a document entitled "Motion to



Intervene" and filed November 28, 2003, with the Circuit Court of Lee County, in paragraph 10, he states:

> "Approximately one month before this Courts October 31st 2003 order, Defendant and plaintiff condoned and filed Bankruptcy on said family business and their merital estate.
>
> Pursuant to Title 11. U.S.C. § 362 (a), The filing of a bankruptcy petition stays determination in a divorce case of the interests of the debtor in property of the estate…" [sic]

The instant motion to intervene was an attempt to substitute a "family relative" in the domestic action.

Moreover, in a subsequent petition for a Writ of Mandamus filed against the Hon. William R. Sawyer in the United States District Court for the Middle District of Alabama, Mr. Williford, in his own words says (page 2 of 5, paragraph 4):

> "October 31, 2003: Despite his awareness of the existence of Petitioner's joint bankruptcy filing, and despite his constructive knowledge of the existence of the "Automatic Stay" mandate contained in 11 U.S.C. § 362, Family Court Judge Lane, on or about the above date, ordered the division of the parties' property…"

Finally, in Mr. Williford's document entitled "Motion to Vacate Confirmation of Plan Because of Fraud on Court & Request for Relief from Unlawful Division of Estates Assetes" [sic], Mr. Williford specifically states, "Now, while Charlotte and I were in court, we had told Judge Lane that we was looking to go into Bankruptcy" (page 2 paragraph 2).

It appears that Mr. Williford, on more that one occasion, brought the bankruptcy to the attention of the domestic court.

### 3. Memory & Day had an obligation to inform the bankruptcy court of the pendency of the divorce proceeding in Lee County

Upon entry of the divorce decree, Mr. Williford began a steady and interminable process of appeal. The appeal on the petition for divorce was pending on the date the initial disclosure statement was filed, however, when it was determined that the appeal was to be denied, the disclosure statement was subsequently amended, within nineteen days, to reflect the divorce proceeding. The text of the Amended Disclosure Statement, June 29, 2005, on pages 6 and 7 states, in pertinent part:

> *"In September 2003 Charlotte Williford filed a petition for divorce against Kenneth Williford in the Circuit Court of Lee County, Alabama, Case Number DR 2003-175. Pursuant to a judgment of divorce rendered October 31, 2003 the court awarded to Charlotte Williford all property of the estate. This matter was appealed by Kenneth Williford to the Alabama Court of Civil Appeals, Case Number 2030320, and a rehearing was denied, June 17, 2005." [emphasis added]*

As with all other filings, a copy of the disclosure, plan and their subsequent amendments, was provided to Mr. Williford. In addition, copies were served (Fed. R. Bankr. P. 9036) and available to Mr. Murray on PACER and it appears that he has registered his email to receive noticing. **This notice was posted and made available to the parties and all interested persons seven months prior to confirmation.** Not one of the instant matters or issues was raised by Messrs Williford and Murray during the intervening seven month period and prior to confirmation.

In addition, the existence of the divorce proceeding was repeatedly discussed in open court many times as it applied to the various matters associated with this bankruptcy. This issue was discussed, although not formally filed, with the court well before the amended disclosure statement was filed.

### 4. The Issue of Dismissal

- 12 -

11 U.S.C. § 1112 (b) provides that:

> "Except as provided in subsection (c) of this section, on request of a <u>party in interest</u> or the United States trustee or bankruptcy administrator, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including-"

Rule 1017, Dismissal or Conversion of Case; Suspension, provides that:

> (a) Voluntary dismissal; dismissal for want of prosecution or other cause.

> Except as provided in § 707(b), 1208(b), and 1307(b) of the Code, a case shall not be dismissed on motion of the petitioner or for want of prosecution or other cause or by consent of the parties prior to a hearing on notice as provided in Rule 2002.

and Rule 9014. Contested Matters, provides that:

> (a) Motion. In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court directs otherwise.

It was Charlotte Williford's desire to dismiss the instant bankruptcy case. As a joint Debtor and party in interest, it is Ms. Williford's right to request dismissal, regardless of what Mr. Williford has filed or currently suggests. In fact, it was counsel's interpretation that Mr. Williford suggested a dismissal in his initial filing.

Contrary to Mr. Murray and Mr. Williford's assertions about the necessity of keeping the plan in force, all debts are protected by their underlying loan agreements and/or new notes and security agreements. In fact, the case was due for dismissal or a final decree. Substantial consummation had begun. There is nothing that will occur to prejudice the joint debtors or the creditors of this bankruptcy estate by dismissal.

5. The Issue of Withdrawal of Memory & Day from Representation of



- 13 -

**the Debtors**

Mr. and Ms. Williford signed a notarized agreement with Memory & Day entitled "Waiver of Representation and Professional Conflict", October 3, 2002. The agreement expresses concern about the possible conflict of interests with respect to the domestic action that was pending in the Circuit Court of Lee County. It also summarizes the status of the lawsuit with the Emertons. In pertinent part, the agreement specifically addressed the following issues:

1) The right of either party to seek independent counsel

2) A waiver of all conflicts... "if such are construed or interpreted, now or later, to be considered or treated as conflicts..."

3) Disengagement by Memory & Day if a conflict arises.

Upon the filing of the motion to vacate by Mr. Williford and Ms. Williford's desire to dismiss the case, a genuine dispute has developed between the Joint Debtors. In their waiver of representation and professional conflict, the Willifords agreed that there was a concern for a potential "conflict in representing both Mr. and Ms. Williford in view of the domestic action". Pursuant to paragraph 7, the agreement in pertinent parts states that... "at the point and time there is disagreement or a conflict arises, the parties hereto may engage individual counsel and the firm of Memory & Day will immediately resign."

The firm of Memory & Day filed a motion to withdraw representation, based upon the representations, conditions, and agreement of the Debtors as contained in the waiver as well as Mr. Williford's *pro se* filings that are definitely at odds with the representation of Memory & Day and the rules of professional conduct.



- 14 -

Further, the firm of Memory & Day, and its lawyers, find it rather incredible that Mr. Williford alleged that he received less than professional service[2] when the Emerton litigation was settled and when approximately $500,000.00 in debt was forgiven or discharged.

### 6. Participation of William Murray, Esq., in representing Mr. Williford.

The participation of Mr. Murray and pleadings in this matter is troubling at best. Its source seems to be a refusal on the part of Ms. Williford to make any future payments to Mr. Murray or allow further representation of the estate and the protection of his fees.

Of special additional concern is the ex parte meeting between Mr. Murray and Mr. Williford, July 28, 2006. It is now apparent that the withdrawal of Memory & Day from the bankruptcy was timely and appropriate in that Mr. Murray has taken on full representation of Mr. Williford to the exclusion of Ms. Williford, although he had previously represented both Debtors, and there is a genuine issue of disagreement between the joint debtors. It is further believed that Ms. Williford has not consented to this conflict of representation or signed any waiver. Moreover, Mr. Murray seeks to represent Mr. Williford while Mr. Williford continues to file documents with the court *pro se*.

Finally, Mr. Murray alleges that there is an agreement with respect to his representation of the Debtors existing between himself and the firm of Memory & Day. This is factually incorrect. There is no contractual relationship or privity between Memory & Day, its members, and Mr. Murray whatsoever.

---

2 Motion to Amend Memorandum, paragraph 3, "M&D should not be allowed to withdraw from this case, that , they (M&D) have managed to screw up".

## CONCLUSION

Based upon statements made in open court, filings of Mr. Williford, and documents filed on behalf of the Debtors in this Chapter 11 bankruptcy, more than sufficient notice was filed with respect to both the Lee County domestic action and the bankruptcy in the Middle District of Alabama. The idea that there was a "fraud on the court" is simply untrue and not supported by the documents filed.

This case has been pending for over two years. In discussions with the Bankruptcy Administrator it was suggested that because of this extended time, the case be dismissed rather than kept open and the court petitioned for final decree. The Debtors will also have to effectively resolve the issues that arise from the domestic relations case before this matter can continue.

Because of the disagreement between the joint debtors, the firm of Memory & Day can no longer represent both Mr. Williford and Ms. Williford. The firm of Memory & Day respectfully requests that it be allowed to withdraw from the instant Chapter 11 bankruptcy. If the Debtors so desire, and the court determines that dismissal is not proper at this time, they are welcome to employ the services of Mr. Murray or other substitute counsel.

Respectfully submitted September 11, 2006.

MEMORY & DAY

By:   /S/ James L. Day
      James L. Day
      ASB-1256-A55J

      Von G. Memory
      ASB-8137-071V

OF COUNSEL:

Memory & Day
Post Office Box 4054
Montgomery, AL 36103-4054

- 16 -

Tel (334) 834-8000
Fax (334) 834-8001

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the foregoing document on the following, by:

☒ placing same in the United States Mail, postage prepaid, and properly addressed

☒ E-mail or ECF (Pursuant to Fed. R. Bankr. P. 9036)

☒ facsimile

☐ hand delivery

☐ delivered in open court

on September 11, 2006

Teresa Richards Jacobs
U. S. Bankruptcy Administrator
1 Court Sq Ste 221
Montgomery, AL  36104-3538

William R. Murray Esq.
Murray Ln.
Northport, AL  35475-4235

Charlotte Williford
815 Crawford Road
Opelika, AL  36804

Kenneth Williford
AIS 229597 C-1 B-94
W. Jefferson Correctional Facility
100 Warrior Lane
Bessemer, AL  35023

/S/ Von G. Memory
OF COUNSEL

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                                    Case No. 03-81486-WRS
                                                         Chapter 11
KENNETH WILLIFORD and
CHARLOTTE TERESA WILLIFORD,

        Debtors.

## <u>ORDER</u>

For the reasons set forth in the Court's Memorandum Decision of this date:

1. Kenneth Williford's Motion to Vacate the Order of Confirmation (Doc. 278) is DENIED.

2. The automatic stay is modified and annulled in this case to permit the divorce proceedings in <u>Williford v. Williford</u>, Civil Action DR-2003-175, in the Circuit Court for Lee County, Alabama.

3. William Murray's Motion to Intervene (Doc. 280) is DENIED AS MOOT.

4. William Murray's Motion to Correct Order for Status Hearing (Doc. 285) is DENIED.

5. William Murray's Motion to Correct Docket Entry 298 (Doc. 299) is DENIED.

6. William Murray's Motion to Sanction Memory & Day (Doc. 298) is DENIED.

7. Memory & Day's Motion to Dismiss (Doc. 279) is DENIED.

8. Memory & Day's Motion to Withdraw (Doc. 286) is GRANTED.

9. Any other motions which may have been filed in this case subsequent to July 25, 2006 are DENIED.

10. The Clerk of this Court shall send, by first class mail, copies of this Order and the related Memorandum Decision to: Kenneth Williford, 229597-B-38, 100 Warrior Lane,

Bessemer, AL 35023; Charlotte Teresa Williford, 815 Crawford Road, Opelika, AL 36804; The

Hon. Richard D. Lane, Circuit Judge, 2311 Gateway Dr., Opelika, AL 36801; J. Anthony

McLain, General Counsel, Alabama State Bar, 415 Dexter Ave., Montgomery, AL 36104.

    11. It is intended that this is the final order in accordance with Bankruptcy Rule 9021.


    Done this the 8th day of December, 2006.


                     /s/ William R. Sawyer
                     United States Bankruptcy Judge


c: James L. Day, attorney for debtor
  Von G. Memory, attorney for debtor
  Charlotte Williford, debtor
  Kenneth Williford, debtor
  William R. Murray
  Teresa Jacobs, Bankruptcy Administrator

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                          Case No. 03-81486-WRS
                                               Chapter 11
KENNETH WILLIFORD and
CHARLOTTE TERESA WILLIFORD,

      Debtors.

## MEMORANDUM DECISION

This Chapter 11 case is before the Court on motions filed by Kenneth Williford, William Murray, and Memory and Day. The initial motion which has in turn generated a number of filings was Kenneth Williford's motion of July 25, 2006, seeking to vacate this Court's January 30, 2006 Order confirming the Debtors' Chapter 11 Plan. (Doc. 278–Motion to Vacate; Doc. 255–Order Confirming Plan). The Court will begin with a review of the history of this bankruptcy case and, to the extend necessary, the litigation in state court to which Kenneth Williford was a party. In addition, this Court will discuss the following motions filed by William Murray: Motion to Intervene (Doc. 280); Motion to Correct Order for Status Hearing (Doc. 285); and Motion to Correct Docket Entry (Doc. 299). The Court will also address the following motions filed by Memory and Day: Motion to Dismiss (Doc. 279); and Motion to Withdraw (Doc. 286). For the reasons set forth below, the Motion to Withdraw filed by Memory and Day is GRANTED, and all other motions are DENIED.

## I. CASE HISTORY

On October 3, 2003, Kenneth Williford, together with his former spouse Charlotte Williford, filed a joint petition in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code. (Doc. 1). At that time, the Willifords jointly owned five mobile home parks in Lee and

Chambers County, Alabama, which they valued in their bankruptcy schedules at $3,650,000.[1] (Doc. 191, p. 12). The property was encumbered by mortgages in favor of Peoples Bank for about $2,800,000. (Doc. 191, p. 13). There are three parallel story lines which must also be considered here. For purposes of convenience, they will be referred to as: (1) Kenneth Williford's criminal proceedings; (2) the Emerton civil action; and (3) the divorce proceedings.

Kenneth Williford was convicted of one count of rape and one count of sodomy in connection with a sequence of events which took place in an abandoned mobile home in one of Williford's trailer parks. Kenneth Williford was sentenced to 25 years on the rape conviction and 15 years on the sodomy conviction, with the sentences to run concurrently. Williford appealed his convictions, which were affirmed by the Alabama Supreme Court. See Ex parte Williford, 931 So.2d 10 (Ala. 2005). Williford has been in prison during the course of these bankruptcy proceedings.

In other proceedings, Scott and Kristi Emerton brought a civil action against Kenneth and Charlotte Williford. The Emertons purchased a mobile home from the Willifords. Kenneth Williford subsequently evicted the Emertons from the mobile home. The Emertons alleged in their civil action that the Willifords had wrongfully repossessed the mobile home. A jury in Chambers County awarded the Emertons $33,000 in compensatory damages and $350,000 in punitive damages. The trial court's judgment was appealed twice to the Alabama Supreme

---

[1] The Court has not had occasion to make a finding as to the value of the various mobile home parks, or for that matter, any of the Debtors' property. William Murray states in his most recent filing that the Bankruptcy Court should undertake to value the mobile home parks. (Doc. 313, p. 17). As this Court will not disturb the property division effected by the Divorce Court, it is not necessary to value the property here. Values stated in this Memorandum Decision are taken from filings made by the parties and are not the product a judicial finding.

Court.  In the first appeal, the Alabama Supreme Court remanded the case to the trial court to conduct <u>Hammond</u> proceedings.  <u>Williford v. Emerton</u>, 935 So.2d 1150, 1158 (Ala. 2004) (remanding for proceedings in accordance with <u>Hammond v. City of Gadsden</u>, 493 So.2d 1374 (Ala. 1986)).  In the second appeal, the Alabama Supreme Court affirmed the judgment of the trial court.  <u>Emerton v. Williford</u>, 902 So.2d 658 (Ala. 2004).[2]  The liability owed to the Emertons was later compromised and its payment structured in the Chapter 11 Plan, which was confirmed by this Court on January 30, 2006.  (Doc. 255).

On April 9, 2003, Charlotte Williford petitioned the Circuit Court in Lee County, Alabama for a divorce from Kenneth Williford.  <u>Williford v. Williford</u>, Civil No. DR-2003-175.  Notwithstanding the fact that they had filed a joint petition in bankruptcy, Charlotte and Kenneth Williford were unable to agree on a resolution of their divorce case, and the trial was held on September 22-23, 2003.  (Doc. 306).  Judgment was entered on October 31, 2003.  It should be remembered that the Willifords filed their joint petition in bankruptcy on October 3, 2003.  Thus, the petition in bankruptcy was filed after the trial but before entry of judgment of divorce.  Both Charlotte and Kenneth Williford were represented by separate counsel at the September 22-23 trial in the divorce case.  The Circuit Court in Lee County awarded most of the marital assets to Charlotte Williford.  Kenneth Williford prosecuted an appeal to the Alabama Court of Civil Appeals, which affirmed the judgment of the trial court without an opinion by its order dated

---

[2]  Proceedings occurred in State Court in the <u>Emerton</u> case in violation of the automatic stay.  By order dated August 26, 2004, this Court annulled the automatic stay to permit the <u>Emerton</u> case to proceed in the state court system.  (Doc. 102; <u>see</u> <u>also</u>, <u>Emerton v. Williford (In re Williford)</u>, Adv. Pro. No. 04-8003, Doc. 12).

April 29, 2005. <u>Williford v. Williford</u>, Case No. 2030320. Neither Charlotte nor Kenneth filed a motion for relief from the automatic stay in this bankruptcy case.[3]

Returning to the bankruptcy case, after an exhaustive three-year effort to reorganize, a Plan of Reorganization was confirmed, with all classes of creditors consenting, on January 30, 2006.[4] (Doc. 255). Kenneth Williford moved this Court to vacate the Order of Confirmation on July 25, 2006.[5] (Doc. 278). Kenneth Williford has made a number of filings, now acting <u>pro se</u>. On September 12, 2006, this Court conducted a hearing on all pending matters. Charlotte Williford, William R. Murray, Von G. Memory, James L. Day, and Bankruptcy Administrator Teresa Jacobs were present in person. Kenneth Williford appeared telephonically.[6]

---

[3] When a husband and wife file a joint petition in bankruptcy, it is generally thought that they will work together to deal with their common financial problems. The Bankruptcy Code does not require anything more than that the joint petitioners be husband and wife, which the Willifords technically were, as of the date of the petition. 11 U.S.C. § 302. However, it is unusual for a husband and wife to go to divorce court one day, engage in a knock down drag out fight over assets and before entry of judgment of divorce, walk arm-in-arm to bankruptcy court to face their creditors together. With the benefit of hindsight, it is apparent that the joint filing was not a good idea.

[4] In general terms, there are two routes to confirmation of a Chapter 11 Plan. If all of the classes of creditors accept the plan, confirmation may be had pursuant to 11 U.S.C. § 1129(a). On the other hand, if there are one or more classes of dissenting class members, a more arduous route to confirmation is available pursuant to 11 U.S.C. § 1129(b), which is sometimes referred to as a "cram down" because the Plan is essentially crammed down the throats of unwilling creditors. It is worth noting here that the Debtor's Plan of Reorganization was confirmed pursuant to § 1129(a), with all classes of creditors concurring in confirmation.

[5] Subsequent filings, as well as representations made by Kenneth Williford, suggest that he is no longer interested in vacating the Order of Confirmation. His attentions as of late appear to be centered on relitigating in bankruptcy court the state court's property division which was done in conjunction with the Judgment of Divorce.

[6] Kenneth Williford is presently in a state prison in Bessemer, Alabama. He filed a motion asking that he be transported to the Bankruptcy Court in Montgomery for the September 12, 2006 hearing. (Doc. 292). This Court determined that it could adequately determine all pending matters without Kenneth Williford's physical presence in Court. While there are a

## II.  THE ORDER OF CONFIRMATION

The Court will first address the issue of whether the January 30, 2006 Order Confirming the Debtors' Chapter 11 Plan should be revoked.  "On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud."  11 U.S.C. § 1144.  On July 25, 2006, Kenneth Williford filed a timely motion to revoke the Order of Confirmation.  (Doc. 278).

The elements of fraud are as follows:

1. A materially false statement;

2. The false statement must be known to be false by the person making the statement;

3. An intention to deceive and induce reliance;

4. Actual reliance; and

5. The order of confirmation must be entered as a consequence.

Tenn-Fla Partners v. First Union Nat'l Bank of Fla., (In re Tenn-Fla Partners), 226 F.3d 746, 750 (6th Cir. 2000); see also, Westchester Surplus Lines Ins. Co. v. Surfside Resort & Suites, Inc., (In re Surfside Resort & Suites, Inc.), 344 B.R. 179, 189-90 (Bankr. M.D. Fla. 2006).

Kenneth Williford alleges that a fraud was perpetrated on the Court and on the creditors in that the divorce proceedings were not disclosed in the bankruptcy case.  Moreover, Kenneth

---

number of factual allegations in dispute, they are not material to the resolution of the matter at hand, which is a legal dispute.  The Court heard an oral presentation from Kenneth Williford on September 12, and he was given the opportunity to supplement his views with a brief.  In response, Kenneth Williford has filed a number of documents that this Court will accept as briefs.  (Docs. 287, 288, 291, 296, 304, 307, 310).  The Court finds that Kenneth Williford has been given an ample opportunity to represent himself in these proceedings.

Williford faults the lawyers for not advising the Circuit Court of Lee County about the filing of this bankruptcy petition while the divorce petition was still pending.  On June 29, 2005, seven months before the Order of Confirmation was entered, the Debtors filed an Amended Disclosure Statement.  (Doc. 191).  At pages 6 and 7 of the Amended Disclosure Statement, the following is stated:

> **In September 2003 Charlotte Williford filed a petition for divorce against Kenneth Williford in the Circuit Court of Lee County, Alabama, Case Number DR 2003-175.  Pursuant to a judgment of divorce rendered October 31, 2003 the court awarded to Charlotte Williford all property of the estate.  This matter was appealed by Kenneth Williford to the Alabama Court of Civil Appeals, Case Number 2030320, and a rehearing was denied, June 17, 2005.**[7]

(Doc. 191, pp 6-7).

The motion to vacate the Order of Confirmation necessarily fails as no false statement was made.  Because there was no false statement, Kenneth Williford's motion to revoke the Order of Confirmation is denied.

### III.  THE AUTOMATIC STAY

Kenneth Williford also contends that the proceedings in his divorce case subsequent to October 3, 2003, the date the bankruptcy petition was filed, were taken in violation of the automatic stay and are therefore void.  He further requests that the property division effected by the Circuit Court in the divorce proceedings be vacated and that this Court schedule a hearing and make a division of the parties' marital property.  Kenneth Williford seeks a share of the real

---

[7] This representation in the Amended Disclosure Statement is in bold italics characters.

property upon which the mobile home parks sit, which have featured so prominently in these proceedings.

Upon the filing of a petition in bankruptcy, an automatic stay comes into effect. 11 U.S.C. § 362; see also, In re Briskey, 258 B.R. 473 (Bankr. M.D. Ala. 2001). Most proceedings against a debtor and property of the estate are stayed by operation of law. Id. Memory and Day argue in their brief that the automatic stay does not affect divorce proceedings of joint debtors. (Doc. 301, pp. 6-7). However, the fact that the Debtors filed a joint petition does not mean that their estates are consolidated unless the bankruptcy specifically orders consolidation. 11 U.S.C. § 302(b). That has not been done in this case. Therefore, Memory and Day's theory, that a divorce property division does not impinge upon the automatic stay as the division of property is internal, necessarily fails. A division of property by a divorce court of an individual in bankruptcy necessarily entails a transfer of property which by definition violates the automatic stay. See, Elrod v. Elrod (In re Elrod), 91 B.R. 187, 189 (Bankr. M.D. Ga. 1988) (holding that the automatic stay protected debtor's property, but bankruptcy court deferred to state divorce court to make determination as to division of property). In this case, the division of property effected by the Williford divorce decree was done in violation of the automatic stay.

Under the law of this Circuit, actions taken in violation of the automatic stay are void. Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.), 749 F.2d 670, 675 (11th Cir. 1984); see also, Borg-Warner Acceptance Corp. v. Hall, 685 F.2d 1306, 1308-09 (11th Cir. 1982). It is clear that all proceedings affecting the Debtors' property which took place in the Williford divorce case subsequent to the filing of the bankruptcy petition are void as a matter of law.

-7-

At the September 12, 2006 hearing, this Court discussed with those present the available alternatives for dealing with the violation of the automatic stay. In this Court's view, there are three options. First, this Court may declare the divorce proceedings in Lee County void and proceed to hear the property division aspect of the divorce proceeding in Bankruptcy Court. Second, this Court could declare the Lee County proceedings void but grant relief from the automatic stay and remand to Lee County for further proceedings unencumbered by the automatic stay. Third, this Court could annul the automatic stay and thereby retroactively validate the proceedings in Lee County as well as those before the Alabama Court of Civil Appeals, making further proceedings here unnecessary. Kenneth Williford favored the first alternative and opposed the second and third alternatives. Charlotte Williford prefers the third alternative, leaving in place and validating the existing divorce decree.

The Bankruptcy Code gives bankruptcy courts discretion to "annul" the automatic stay. 11 U.S.C. § 362(d); see also, Albany Partners, 749 F.2d at 675 (noting that bankruptcy courts have the power to retroactively annul the automatic stay, validating actions taken in violation of the stay). Having considered the three alternatives described above, annulment of the automatic stay, retroactively giving effect to the Lee County divorce decree, is the best course of action here. The Court concludes that annulment is best for two reasons. First, Kenneth Williford voluntary proceeded with his divorce case knowing of his bankruptcy proceeding and presumably knowing that actions taken in state court were in violation of the automatic stay. Second, under the facts of this case, there is no prejudice to creditors.

As described above, Kenneth Williford, together with his then wife Charlotte, filed a voluntary petition in bankruptcy while their divorce petition was pending in Circuit Court. There

-8-

were three sets of lawyers involved.  Kenneth and Charlotte each had their own lawyers in the

divorce proceedings, and both of them were represented by Memory and Day in this bankruptcy

case.  None of the lawyers advised the Circuit Court of the bankruptcy filing until considerably

later, and no one moved for relief from the automatic stay here to permit the divorce case to

proceed.  The Circuit Court entered judgment of divorce on October 31, 2003, whereupon

Kenneth Williford, through counsel, prosecuted an appeal to the Alabama Court of Civil

Appeals.  It is plainly inconsistent for Kenneth Williford to argue here that the proceedings in

state court are void as violative of the automatic stay, as he nevertheless prosecuted an appeal in

the state court system.  To give Kenneth Williford a federal court "do over" here would do

violence to the principle of comity with the state court system and waste scarce judicial

resources.

　　　　The bankruptcy courts were not created to give parties to divorce proceedings an

alternate means of effecting a division of property.  The overriding interest of the bankruptcy

courts in such proceedings is to protect the interests of creditors who could be harmed by

collusive or fraudulent activities in connection with the division of marital property.  In a

common fraudulent divorce scenario, the party with the majority of the debt, usually a husband

in a failed business, gives up his property to his wife for the purpose of thwarting his creditors.

Once denuded of his assets, the husband can file bankruptcy and discharge his debt, while his

former spouse keeps the majority of the property.

　　　　Such is not the case here.  The divorce decree gives Charlotte Williford the majority of

the marital assets.  Yet, the confirmed Chapter 11 Plan provides that Charlotte Williford will

continue to operate the business and pay all of the business debts.  No creditors have been

harmed.  Indeed, the Court gave all parties in interest notice of the hearing on Kenneth

Williford's motion, and not one creditor made an objection.  The fact that no creditors are

harmed is the overriding factor here.  Combining the fact that Kenneth Williford continued to

litigate in state court, to the extent of prosecuting an appeal, and the fact that creditors have not

been harmed, weigh heavily in favor of annulling the automatic stay and leaving the existing

division of property in place.

       Annulment should be considered against the backdrop of deeply rooted policy concerns

pertaining to the traditional reluctance of federal courts to intrude in domestic relations law,

which is traditionally within the purview of the state courts.  See Ankenbrandt v. Richards, 504

U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992) (explaining the domestic relations exception

to Federal Court jurisdiction).  When there are simultaneous bankruptcy and divorce proceedings

pending, the bankruptcy court will usually give way and permit the state court to divide the

property.  Once the debtor's property interests are delineated, the bankruptcy court may take

jurisdiction over the debtor's property and administer the bankruptcy proceedings. See Harrell v.

Sharp (In re Harrell), 754 F.2d 902, 907 (11th Cir. 1985) (stating that a "bankruptcy court will

not duplicate the functions of state domestic relations courts, and its rulings will impinge on state

domestic relations issues in the most limited manner possible").  However, the bankruptcy courts

may reexamine a distribution of property and make appropriate adjustments in the case of fraud,

collusion, or the like.  See Ingals v. Erlewine (In re Erlewine), 349 F.3d 205, 212-13 (5th Cir.

2003) (finding that the Bankruptcy Court had power to set aside the divorce decree as a

fraudulent conveyance, and that it did not err in finding that debtor had received reasonably

equivalent value, hence no fraudulent conveyance occurred).  While this Court has jurisdiction to

vacate a property division effected by state court, it will not lightly intrude upon the workings of another court and would do so only for weighty reasons, which are not present here. For these reasons, the automatic stay is annulled, thereby validating the property division in the divorce decree.

## IV. WILLIAM MURRAY'S MOTIONS

William Murray has filed several motions which will be addressed. On July 30, 2006, Murray moved to intervene to protect his property interest in the contingent fee in the litigation against the Funderburk law firm. (Doc. 280). As Murray is already a party in interest, he need not intervene in order to be heard. For this reason, his motion to intervene is denied as moot.

Murray has also moved to "correct" this Court's Order of Status Hearing. (Doc. 285). Murray complains that this Court's order of July 31, 2006 is not sufficiently clear in its reference as to whom was defrauded. (Doc. 281). The purpose of the July 31, 2006 Order was to put interested parties on notice as to what the Court would hear at the September 12, 2006 hearing. For that purpose, the Order is clear enough. The motion is denied.

Murray has also moved to correct this Court's docket entry number 298. (Doc. 299). During the pendency of these proceedings, Murray had apparently filed a complaint with the Alabama Bar Association accusing Memory and Day of unethical conduct and sent a copy of the complaint to this Court. In his complaint to the Bar, Murray misrepresents the status of this Court's record. Specifically, Murray failed to advise the State Bar that the Willifords' divorce proceeding was disclosed in the Amended Statement of Financial Affairs. While one may reasonably argue that the matter should have been disclosed earlier, Murray's failure to advise the Bar that a disclosure was made seven months prior to confirmation of the Chapter 11 Plan is

-11-

both a material omission and highly misleading.  Murray argues that he did not "file" his complaint with this Court.  (Doc. 299).  As Murray submitted his complaint to the undersigned, it was clearly "filed" by him.  FED. R. BANKR. P. 5005(a).  Murray's motion to correct Docket Entry 298 is denied.

The Court will also address the matter of the obligation of Charlotte Williford to continue to pay Murray's expenses.  This matter was discussed at the September 12, 2006 hearing and has been raised only obliquely in the pleadings and papers on file.   Murray represents both Charlotte and Kenneth Williford in the Adversary Proceeding 04-8015, wherein it is alleged that the Defendants are liable for malpractice in connection with the Emerton suit.  The undersigned dismissed the complaint in that Adversary Proceeding on September 1, 2005.  The Plaintiffs prosecuted an appeal to the District Court which affirmed the decision of this Court on September 7, 2006.  Williford v. Funderburk, Civil No. 3:05-CV-857-MHT, United States District Court for the Middle District of Alabama.  Kenneth Williford and William Murray want to appeal to the Eleventh Circuit, but Charlotte Williford does not.  This does not pose a problem in and of itself, but Murray wants Charlotte Williford to pay his expenses.  Charlotte Williford complained that Murray had demanded that she pay him an hourly fee if she did not agree to fund the appeal.  There is nothing in the application for employment, or order approving employment, which would obligate her to continue to fund an appeal which she did not wish to join. Nor is she obligated to pay him an hourly fee.  The Court finds that Charlotte Williford is not required to fund an appeal that she does not wish to pursue and that she is not liable to Murray for attorney's fees.

Murray has accused Memory and Day of unethical conduct in their handling of these bankruptcy proceedings. Specifically, Murray states the following in his complaint filed with the State Bar:

> ATTORNEY [Murray] submits that a "fraud" has been committed against:
>
> * * *
>
> b.    A <u>Bankruptcy Court,</u> by the BANKRUPTCY ATTORNEYS' [Memory and Day] failure to advise that Court that the Joint Debtor's assets were being, or had been, divided or altered in violation of the "Automatic Stay" of 11 U.S.C. § 362.

(Doc. 298, pp. 22, which is Page 4 of 6 of Murray's letter of June 30, 2006, to Anthony McLain). As has been discussed above, the divorce proceedings were disclosed in the Amended Disclosure Statement which was filed June 29, 2005. (Doc. 191). To be sure, the divorce proceedings should have been disclosed earlier. Moreover, someone should have timely sought relief from the automatic stay to permit the division of the Willifords' property to proceed. However, not every error and omission in the filing of documents with the Court it tantamount to a fraud. Such is the case here. There is no evidence to show that the earlier omissions in the bankruptcy filings were intentionally false, and there is no evidence of reliance on the part of anyone upon any false statements. Any harm that might have resulted from the incomplete disclosures has been cured by the annulment of the automatic stay. While Memory and Day's conduct here has not been letter perfect, it should be judged in the context of a mass of rapidly moving litigation which, if unabated, would have swamped the Debtors' efforts to reorganize.

### V.  MEMORY AND DAY'S MOTIONS

On July 27, 2006, a Motion to Dismiss was filed by Memory and Day on behalf of the Willifords.  (Doc. 279).  As it appears that the motion was filed based upon a misunderstanding of Kenneth Williford's wishes, that motion is denied.

On August 8, 2006, Memory and Day moved to withdraw their appearance on behalf of the Willifords.  (Doc. 286).  Given the present posture of the Willifords, it does not appear that one could represent them both at the same time without an actual conflict of interest.  For this reason, the motion to withdraw is granted.

Done this the 8th day of December, 2006.

/s/ William R. Sawyer
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY
COURT FOR MIDDLE DISTRICT OF
ALABAMA EASTERN DIVISION

FILED
DEC 20 2006
BANKRUPTCY COURT
MONTGOMERY, ALABAMA

IN RE:                          CASE NO: 03-81486-WRS
KENNETH WILLIFORD AND
CHARLOTTE WILLIFORD            CHAPTER 11
DEBTORS

KENNETH WILLIFORD MOTIONS THIS HONORABLE
COURT FOR RECONSIDERATION, AND A REHEARING, AND
A MOTION FOR A EVIDENTIARY HEARING

COMES NOW KENNETH WILLIFORD (KW) IN THE ABOVE STYLE CAUSE,
AND MATTER, AND MOVES THIS HONORABLE COURT TO RECONSIDER ITS
MEMORANDUM DECISION, AND ASK FOR A REHEARING, AND ALSO ASK
FOR A EVIDENTIARY HEARING, TO PROVE FRAUD AGAINST THIS COURT
AND TO DIVIDE UP MARITAL AND BUSINESS PROPERTY, AND THEREBY
STATES HIS VIEWS AS FOLLOWS:

ON PAGE 2 OF THIS COURTS "MEMORANDUM DECISION" THE COURT
STATES, "THERE ARE THREE PARALLEL STORY LINES WHICH MUST BE
CONSIDERED HERE."

(1) (HIS) CRIMINAL CASE PROCEEDINGS. WHICH IS NOT RELEVANT
TO THIS CASE. UNLESS THIS HON. COURT IS JUST WANTING TO PROSECUTE
(KW) FOR THE THIRD TIME, AS THE DIVORCE COURT HAS ALREADY DONE
FOR THE SECOND TIME.

(2) THE EMERTON CIVIL ACTION IS NOT RELEVANT IN THIS
CASE. IT HAS ALREADY BEEN SETTLED.

(1)

(3) THE DIVORCE PROCEEDING IS THE ONLY CASE RELEVANT TO THIS CASE.

(RW) RESPECTFULLY SUBMITS, THAT, THIS COURT IS IN ERROR ON 2 OF THESE 3 ISSUES

ON PAGE 2 "NOTE 1" SAYS "(1) THE COURT HAS NOT HAD OCCASION TO MAKE A FINDING AS TO THE VALUE OF THE VARIOUS MOBILE HOME PARKS, OR FOR THAT MATTER, ANY OF THE DEBTORS PROPERTY..(2)..(3) AS THIS COURT WILL NOT DISTURB THE PROPERTY DIVISION EFFECTED BY THE DIVORCE COURT, IT IS NOT NECESSARY TO VALUE THE PROPERTY HERE. (4) VALUES STATED IN THIS MEMORANDUM DECISION ARE TAKEN FROM FILINGS MADE BY THE PARTIES AND ARE NOT THE PRODUCT OF A JUDICIAL FINDINGS."

IF THE COURTS WOULD LOOK FOR THE TRUE VALUE OF THE MOBILE HOME PARKS AND DEBTORS PROPERTY, WHICH WOULD BE EASY ENOUGH TO DO, BY SUBPOENING THE "BROWN AGENCY" IN OPELIKA TO SUPPLY THEM WITH IT, THE COURT WOULD FIND THE LIES OR THE FRAUD THAT HAD AND STILL BEING PUT BEFORE THIS HON. COURT. IN THE 3RD SENTENCE, (RW) HAS SHOWN TO THIS HON. COURT, THAT, (RW) WAS THE MAIN DEBTOR, AND THAT, THIS HON. COURT IS SUPPOST TO BE PROTECTING (RW) FROM THE CREITORS AND THE STATE ALSO. AS SHOWN ON PAGE 7 OF (RW'S) MEMORANDUM ON OCT. 6TH, 2006, TO THIS HON. COURT. LOOK ON PAGE 7 OF (RW) MEMORANDUM ON OCT. 6TH, 2006, FOR (G) BANKRUPTCY 74 2546; IN RE ROBERGE; IN RE BECKER; ROBERGE V. RUIS; IN RE ABNA; QUOTING IN RE COLE; IN RE VANN; IN RE PALMER; PERLOW V. PERLOW; IN RE GREENWALD; COURT IS IN ERROR.

ON PAGES 3 & 4 OF THIS COURTS "MEMORANDUM DECISION" SECOND PARAGRAPH, LAST SENTENCE. (RW) DID TRY TO GET A MOTION FOR RELIEF, (RW) EVEN SENT A COPY TO CHARLOTTE WILLIFORD (CCW) AND MEMORY & DAY (M&D) LETTING THEM KNOW, THAT, THIS WAS FIXING HAPPEN, BACK ON MAY, 5TH, 2005, BUT ON THE ADICE OF (M&D), TELLING (RW) NOT TO ASK FOR THIS RELIEF UNTIL AFTER THE CONFIRMATION. IN THIS SAME SENTENCE, IT SAYS, THAT, "THE CIRCUIT COURT OF LEE COUNTY AWARDED MOST OF THE MARITAL ASSETS TO (CW)." WHEN IN FACT THEY AWARDED 100% PERCENT OF ALL THE ASSETS TO (CW). (RW) WAITED UNTIL THE PLAN CONFIRMED, LIKE (M&D) SAID. ON FEB, 5, 2006, A LETTER ASKING FOR RELIEF WAS SENT TO THIS

(2)

Hon. Court. But, I received no reply back, after two and half months. Then decided to go to the Federal District Court, and was advised to start over back in this Hon. Court, which put me on July, 25, 2006.

(RW) Respectfully submits that this court is in error here. On page 5 of this courts "Memorandum Decision", says, you need five elements for fraud.

1) (MSD) have admitted to not notifying either one of the courts about the bankruptcy, or the property division.

2) (RW) has letters showing that (MSD) knew, that their statements were and are still false.

3) (RW) has letters showing that (MSD) were deceiving the courts and induce (RW)'s reliance on them.

4) (RW)'s actual reliance, was for this attorney/s to tell him the truth and to protect him.

5) This order was entered under false statements.

If all of this is not fraud on this Hon. Court, then (RW) ask, just, what is considered fraud? Court is in error here.

On page 6 of this courts "Memorandum Decision" shows that (MSD) notified this Hon. Court of the property division and not the circuit court of the bankruptcy, on (Doc. 191, PPC-7). If it was said, it was said almost three year after the fact, and only after (RW) had raised so much fuss about it, and (MSD) still didn't raise the issue 11 U.S.C. § 362 (d), as ask of (RW). This only goes to show that (MSD) did in fact know about the division of property and did nothing to stop the illegal division. By (MSD) amending this document on June, 17, 2005, shows that (MSD) were trying to cover their tracks of defrauding this Hon. Court earlier. Which, (RW) had warned them about back on May, 5th, 2005, and several other letters a year or two earlier.

(RW) Respectfully submits that this court is in error here.

(3)

ON PAGE 7 OF THIS "MEMORANDUM DECISION", THIS HON. COURT AGREES THAT CIRCUIT COURT WAS IN VIOLATION OF THE AUTOMATIC STAY AND THEIR ACTIONS ARE VOID, AS A MATTER OF LAW, WHICH IS EXACTLY WHAT (RW) HAS BEEN SHOWING THIS HON. COURT ALL THROUGH THIS BRIEFS. THEN ON PAGE 8 OF THIS "MEMORANDUM DECISION" THIS HON. COURT QUOTES "<u>ALBANY PARTNERS</u>, 749 F. 2d at 675," THAT, THE BANKRUPTCY COURTS HAVE THE POWER TO RETROACTIVELY ANNUL THE AUTOMATIC STAY. SO (RW) REFERRES THIS COURT TO "<u>IN RE EDEN ASSOC-IATES, SUPRA</u>," "WE ACKNOWLEDGE THAT THE IMPORTANT CONGRESSIONAL POLICY BEHIND THE AUTOMATIC STAY DEMANDS COURTS BE <u>ESPECIALLY HESITANT</u> TO VALIDATE ACTS COMMITTED DURING THE PENDENCY OF THE STAY, 13 B.R. at 585."

THE WILLIFORD'S CASE IS NOT AT ALL LIKE THE ALBANY PARTNERS CASE. IN THE ALBANY PARTNERS CASE, THERE WAS AN OUTSIDE CREDITOR WHO WAS FORECLOSEING ON THE ALBANY PARTNERS PROPERTY. UNLIKE IN THE WILLIFORD CASE THERE HAD BEEN AN UNEQUITABLE DIVISION AND ILLEGAL DIVISION OF THE PROPERTY. IN ALL THE STATE LAWS AND FEDERAL LAWS IT STATES THAT THERE SHALL BE AN EQUITABLE DIVISION OF PROPERTY, AS SHOWN BY MANY CASE LAW'S OF THIS NATION, WHICH WERE SHOWN TO THIS HON. COURT ALL THROUGH (RW) BRIEFS.

(RW) RESPECTFULLY SUBMITS THAT THIS COURT IS IN ERROR HERE. AS SHOWN ABOVE, IF THE CIRCUIT COURT'S ACTIONS ARE VOID, BY A MATTER OF LAW. THEN THIS HON. COURT SHOULD CORRECT THIS VOILATION BY A MATTER OF LAW, AND DIVIDE THIS PROPERTY EQUITABLY, JUSTLY, AND FAIRLY, JUST LIKE IT HAS BEEN DONE WITH ALL THE OTHER CASE LAW THAT HAS BEEN SHOWN TO THIS HON. COURT.

ON PAGE 9 OF THIS "MEMORANDUM DECISION", THIS HON. COURT SAYS, "(RW) THROUGH COUNSEL, PROSECUTED AN APPEAL TO THE ALABAMA COURT OF CIVIL APPEALS." (RW), FIRST STATES THIS ISN'T TRUE, IN FACT ITS TRUE (RW) DID APPEAL THROUGH CIVIL APPEALS COURT, BUT, NOT WITH COUNSEL, (RW) HAD TO DO THIS PRO-SE. BECAUSE OF THE LACK OF FUNDS THAT (RW) HELD BACK FROM (RW). (RW) FURTHER SUBMITS; THAT, HE HAS NOT ASK FOR A FEDERAL COURT TO DO A QUOTE "DO OVER" UNQUOTE.

(4)

All (RW) is asking this Hon. Court to do is, to make right that, that has been wrongly done to (RW). (RW) has shown back to back case law on the same circumstances as in this case, that, the Federal courts reversed and made those cases right as a matter of law. Unlike this Hon. Court that feel like it would be a quote "waste of searce judicial resources" unquote, as in HUNTER v. HUNTER, 700 So. 2d 753 (Ala. Civ. App. 1997) 2) BANKRUPTCY Key 2062, 2401 on page 8 of (RW) memorandum on Oct, 6th 2006, Here the courts say the property division is quote "Inequitably divided and the wife sought enlargement of her property rights," unlike in the Williford case, (RW) received ZERO property and is only ask for a fair share. This court seems to have become is biase toward (RW) as the circuit court has. The courts reversed the case in Hunter because of the Bankruptcy, and deives (RW) in this case. This court has become extremely biase and is in error in this case.

On page 10 of this "memorandum decision", the court refers to LANKENBRANDT v. RICHARDS, 504 U.S. 689, 112 S. Ct. 2206, 119 L. Ed. 2d 468 (1992), says that when the federal court and divorce court proceedings are simultaneous pending, the Bankruptcy court will usually give way and permitt the state court to divide the property." ... which in the Williford case, this court did not do this, and furthermore the circuit court did not divide anything. The definition of "divide" is to "distribute, apportion; to possess or make use of in common; share in." (The Merriamwebster dictionary page 202). In this, the Willifords case, (RW) wasn't distributed anything, nor did (RW) reseive apportion of anything, nor did (RW) receive a share in anything. In fact the bankruptcy court is suppost to protect (RW) and (CW) interest from creitors, the state, and in this case, each other from being able to take or steal, each others property. (RW) respectfully submitts that this court is in error by permitting this to happen to (RW).

ALSO ON PAGE 10 OF THIS "MEMORANDUM DECISION," SHOWS "HARRELL V. SHARP (IN RE HARRELL), 754 F. 2d 902, 907 (11TH CIR. 1985); THE LAST SENTENCE "HOWEVER, THE BANKRUPTCY COURTS MAY REEXAMINE A DISTRIBUTION OF PROPERTY AND MAKE APPROPRIATE ADJUSTMENTS IN THE CASE OF FRAUD, COLLUSION, OR THE LIKE."

(RW) WAS TOLD BY THIS HON. COURT, TO SHOW THIS HON. COURT THEIR JURISDICTION AND AUTHORITY TO BE ABLE TO MAKE A PROPERTY DIVISION, WHICH IS EXACTLY WHAT (RW) DID IN HIS BRIEFS TO THIS HON. COURT. PRIOR TO THIS HEARING ON SEPT, 12TH, 2006, (RW) WAS TOLD THAT THIS HEARING WAS NOT AN EVIDENTIARY HEARING, THAT, IT WAS A HEARING TO JUST HEAR THE ARGUMENTS AND NOT BRING EVIDENCE TO THE HEARING. (RW) NOT BEING AN ATTORNEY, NOR HAVING THE EXPERIENCE IN THIS LEGAL FIELD, THOUGHT, THAT HIS MEMORANDUM BRIEFS WAS THE ARGUMENTS FOR THEM TO BE ABLE TO SHOW THIS EVIDENCE OF FRAUD) IN A EVIDENTIARY HEARING, TO COME. NOW IT SEEMS THAT EITHER THIS COURT, OR (MW) HAS BROUGHT IN SOME EVIDENCE ON PAGE 6 OF THIS MEMORANDUM DECISION, THERE HAS BEEN EVIDENCE PRODUCED THROUGH (DOC. 191, PP 6-7), THAT (MW) HAVE DONE THINGS THAT (RW) CAN PROVE FRAUD AGAINST, AND IS NOT BEING GIVEN A CHANCE TO DO. (RW) ASK THIS HON. COURT, DOES IT WANT TO KNOW ABOUT THE FRAUD COMMITTED AGAINST OR NOT. IF THIS COURT DOES, THEN GRANT (RW) MOTION HERE AND GIVE US AN EVIDENTIARY HEARING. IF THIS HON COURT DOES NOT WANT TO KNOW ABOUT THE FRAUD AGAINST IT, AS IT APPEARS TO BE FROM THE DECISION THAT HAS BEEN MADE IN THIS MEMORANDUM, THEN THIS COURT IS IN GREAT ERROR HERE.

FURTHERMORE, THIS HON. COURT SAYS, SEE INGALS V. ERLEWINE, (IN RE ERLEWINE), 349 F. 3d 205, 212-13 (5TH CIR. 2003) (FINDING THAT THE BANKRUPTCY COURT HAD POWER TO SET ASIDE THE DIVORCE DECREE AS A FRAUDULENT CONVEYANCE, AND THAT IT DID NOT ERR IN FINDING THAT DEBTOR HAD RECEIVED REASONABLY EQUIVALENT VALUE, HENCE NO FRAUDULENT CONVEYANCE OCCURRED). THIS HON. COURT SEEMS TO BE ADDING "INSULT TO INJURY" HERE. LETS DEFINE "EQUIVALENT VALUE" ACCORDING TO THE MERRIAM-WEBSTER DICTIONARY ON PAGE 258, THIS SIMPLY MEANS "EQUAL: VIRTUALLY IDENTICAL."

(6)

SUCH WAS NOT DONE IN THIS CASE, THIS HON. COURT NEEDS TO REMEMBER, THAT, (CW) RECEIVED 100% PERCENT OF ALL THE BUSINESS AND MARITAL PROPERTY, NOT THE MAJORITY AS STATED ON PAGE 9 LAST PARAGRAPH OF ITS MEMORANDUM DECISION. (RW) RECEIVED ZERO, 0% PERCENT OF THE PROPERTY DIVISION. THERE IS NOTHING ABOUT THIS CASE, THAT, COULD BE CONSIDERED "EQUIVALENT VALUE". MOREOVER, THERE WAS FRAUDULENT CONVEYANCE MADE, WHEN THE DIVISION OF PROPERTY WAS MADE, WHILE UNDER AN AUTOMATIC STAY. FURTHERMORE, THIS HON. COURT GOES ON TO SAY IN THIS SAME PARAGRAPH ON PAGES 10 & 11, THAT, "WHILE THIS COURT HAS JURISDICTION TO VACATE A PROPERTY DIVISION EFFECTED BY STATE COURT, IT WILL NOT LIGHTLY INTRUDE UPON THE WORKINGS OF ANOTHER COURT, AND WOULD DO SO ONLY FOR WEIGHTY REASONS, WHICH ARE NOT PRESENT HERE. FOR THESE REASONS, THE AUTOMATIC STAY IS ANNULLED, THEREBY VALIDATING THE PROPERTY DIVISION IN THE DIVORCE DECREE."

(RW) IN HIS MEMORANDUM TO THIS HON. COURT ON OCT. 6TH, 2006, HAS SHOWN A CONSIDERABLE AMOUNT OF SIMILAR CIRCUMSTANCE'S IN CASE LAW TO THIS HON. COURT, AND THESE CASE'S WERE ALL REVERSED ON THE SIMPLE FACT, OF NOT BEING EQUITABLE, FAIR AND JUST. NOW THIS HON. COURT TELLS (RW) NO, HE CAN HAVE NOTHING, ZERO, OF THIS MARITAL PROPERTY AND BUSINESS.

IF THIS HON. COURT, COULD OR WOULD PROSECUTE THIS CASE ON THE FACTS AND LAW'S PRESENTED BEFORE THIS HON. COURT, INSTEAD OF ITS EMOTION'S AND OPINION'S OF (RW)'S INCARCERATION. THERE WOULD BE NO QUESTION'S ABOUT THIS PROPERTY DIVISION, OR ANY QUESTION'S ABOUT THE FRAUD THAT WAS AND STILL IS BEEING PUT TOWARD THIS HON. COURT. THIS HON. COURT MIGHT HAD AS WELL, KNOCKED (RW) TO THE GROUND, AND RUBED COW MANURE IN HIS FACE, AND SPIT ON HIM, AND CALLED HIM A NO GOOD DOE, A SUB-HUMAN. (RW) WOULD LIKE TO ASK THIS HON. COURT JUST ONE QUESTION. AND THIS HON. COURT ANSWER IT TRUSTFULLY. IF (RW) WASN'T INCARCERATED, WOULD THIS COURT STILL BE MAKING THE SAME DECISION IN THEIR MEMORANDUM DECISION. (RW) THINK'S NOT, THAT, THIS HON. COURT IS MAKING ITS DECISION NOT BASED ON LAW, BUT, BASED ON THE FACT THAT (RW) IS INCARCERATED AT THE SAME TIME HE IS ASKING FOR THIS RELIEF.

(7)

THIS IS THE ONLY CONSIDERABLE REASONING THAT THIS HON. COURT COULD CONSIDER, NOT, TO ABIDE BY THE LAWS AND FACTS PLACED BEFORE IT. WHICH MAKES THIS HON. COURT BIAS AGAINST (RW), AND MAKES THIS HON. COURT'S MEMORANDUM DECISION IN ERROR.

(RW) IS ASKING THIS HON. COURT FOR RECONSIDERATION, AND A REHEARING. (RW) IS ALSO IS ASKING FOR A EVIDENTIARY HEARING, SO (RW) CAN PRODUCE THE EVIDENCE NEEDED TO BE SHOWN TO THIS HON. COURT, TO BE ABLE TO SEE THE FRAUD THAT HAS BEEN LAID UPON THIS HON. COURT.

— DONE THIS THE 16TH DAY OF DECEMBER, 2006

RESPECTFULLY SUBMITTED

Renith Williford

RENITH WILLIFORD

(8)

# CERTIFICATE OF SERVICE

I, KENNETH WILLIFORD, HEREBY CERTIFY THAT I HAVE SERVED A TRUE AND CORRECT COPY OF SAID MOTIONS TO THE HON. JUDGE WILLIAM R. SAWYER, OFFICE OF THE CLERK P.O. BOX 1248, MONTGOMERY, AL, 36102-1248, AND THE PARTIES BELOW, BY PLACING SAME IN THE U.S. MAIL AT DONALDSON CORRECTIONAL FACILITY POSTAGE PREPAID AND PROPERLY ADDRESSED THIS THE __16TH__ DAY OF DECEMBER, 2006.

CHARLOTTE T. WILLIFORD
OAK-HAVEN OFFICE
3503 MARVYN PWY
OPELIKA, AL, 36804

KENNETH WILLIFORD
KENNETH WILLIFORD

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

IN RE:

**CHARLOTTE TERESA WILLIFORD**
**KENNETH WILLIFORD**                        **CHAPTER 11**

**DEBTORS**                                   **CASE NO. 03-81486**

### MOTION FOR ENTRY OF FINAL DECREE

Comes now Teresa R. Jacobs, bankruptcy administrator for this district, and moves for the entry of final decree in accordance with 11 U.S.C. §350 and Fed. R. Bankr. Proc. 3022 and an order closing the instant case and as grounds would state:

1.  This case was filed as a voluntary petition pursuant to chapter 11 of title 11, U. S. Code on October 3, 2003.

2.  A Final Order Approving Disclosure Statement and Confirming Chapter 11 Plan was entered on January 1, 2006 (doc. 255).  A Plan Implementation Order entered on January 31, 2006 (doc. 257) pursuant to 11 U.S.C. §1142 and Fed. R. Bankr. Proc. 3020(d) directing the debtors to commence distribution and perform all acts necessary to carry out the terms of the confirmed plan.

3.  On December 8, 2006, the Court entered an Order denying a Motion to Vacate the Order of Confirmation and a Motion to Dismiss (doc. 314) and a Memorandum Decision/Opinion (doc. 315.)  Pursuant to said order, the attorneys for the debtors was permitted to withdraw from representation.

4.  Upon information and belief, the debtors have commenced payments pursuant to the confirmed plan as asserted in Doc. 301 filed on September 11, 2006.

5.  The debtors have filed quarterly fee statements and paid quarterly fees as required by

28 U.S.C. §1930 for the quarters through September 31, 2006.  Quarterly fee obligations have been incurred for the current quarter, ending on December 31, 2006, but will not be considered delinquent until January 31, 2007.

Wherefore the bankruptcy administrator moves for entry of final decree upon payment of quarterly fees for the quarter ending December 31, 2006, and an order closing the case.

/s/
Teresa R. Jacobs
ASB 5548 S77T
United States Bankruptcy Administrator

U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL 36104
(334)943-3900

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Motion for Final Decree was served as indicated below by first class U. S. Mail, postage prepaid this 29th day of December 2006.

/s/
Teresa R. Jacobs

Ms. Charlotte Teresa Williford
815 Crawford Road
Opelika, AL 36804

Mr. Kenneth Williford
229597 - B - 38
100 Warrior Lane
Bessemer, AL 35023

Mr. William Robert Murray
Attorney at Law
Murray Lane
Northport, AL 35475-4235

Memory & Day

via electronic submission

IN THE UNITED STATES BANKRUPTCY COURT **FILED**
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

JAN 0 9 2007

U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

| | |
|---|---|
| IN RE: KENNETH WILLIFORD AND CHARLOTTE WILLIFORD | CASE NO: 03-81486-WRS CHAPTER 11 |

## MOTION NOT TO ENTER FINAL DECREE

COMES NOW KENNETH WILLIFORD (KW), AND MOVES THIS HONORABLE COURT NOT TO ENTER FINAL DECREE, AS TERESA R. JACOBS, BANKRUPTCY ADMINISTRATOR HAS REQUESTED FOR, AND STATES HIS VIEWS AS FOLLOWS:

AT THE PRESENT TIME (KW) HAS A MOTION FOR RECONSIDERATION, AND A REHEARING, AND A EVIDENTIARY HEARING, BEFORE THIS HON. COURT, AND THERE HAS BEEN A TELEPHONE HEARING SET FOR 1/23/07 at 2:30 P.M. (KW) HAS ALSO SENT IN A "NOTICE OF APPEAL", NOT KNOWING WEATHER OR NOT IF HE WAS SUPPOST TO WAIT UNTIL AFTER THE TELEPHONE HEARING OR WAS TO HAVE HIS "NOTICE OF APPEAL" IN BEFORE 1/8/07, EITHER WAY, (KW) PLANS ON CARRING OUT AN APPEAL, IF THE PROPERTY DIVISION, THAT HE ASK FOR IS NOT CARRIED OUT THROUGH THIS HON. COURT.

FURTHERMORE, (KW) FEELS, THAT, THIS HON. COURT SHOULD KEEP IN TACT THE "AUTOMATIC STAY" UNTIL ALL OF (KW)'S REMEDIES ARE EXHAUSTED, THROUGH THE COURT SYSTEMS,

MOREOVER, SINCE ALL THE CREITORS, AND ALL THE QUARTERLY FEE'S ARE BEING PAID AS REQUESTED BY THE PLAN SET FORTH, AS TERESA R. JACOBS HAS SHOWN IN HER "MOTION FOR ENTRY OF FINAL DECREE" ON 12/29/06, THERE SHOULD BE NO BIG HURRY TO LIFT THE "AUTOMATIC STAY". THIS MEANS THE "AUTOMATIC STAY" SHOULD BE KELP IN PLACE, EVEN IF THIS CASE SHOULD HAVE TO GO ALL THE WAY TO THE U.S. SUPREME COURT.

WHEREFORE, (KW) MOVES THIS HON. COURT NOT TO ENTER A FINAL DECREE UNTIL ALL REMEDIES ARE EXHAUSTED IN THIS CASE.

RESPECTFULLY SUBMITTED

_Kenneth Williford_

KENNETH WILLIFORD

## CERTIFICATE OF SERVICE

I KENNETH WILLIFORD HEREBY CERTIFIES THAT A TRUE AND CORRECT COPY OF THE FOREGOING MOTION NOT TO ENTER FINAL DECREE IS BEING SERVED TO THE PARTIES BELOW. BY PLACING IN THE U.S. MAILBOX AT W.E. DONALDSON CORR. FAC. POSTAGE PREPAID AND PROPERLY ADDRESSED, ON THIS THE 5TH DAY OF JANUARY, 2007.

KENNETH WILLIFORD
KENNETH WILLIFORD

CHARLOTTE T. WILLIFORD
OAK-HAVEN OFFICE
3503 MARVYN PWY
OPELIKA, AL 36804

TERESA R. JACOBS
U.S. BANKRUPTCY ADMINISTRATOR
MIDDLE DISTRICT OF ALABAMA
ONE CHURCH STREET
MONTGOMERY, AL, 36104

TO THE CLERK OF THE U.S. BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA
P.O. BOX 1248
MONTGOMERY, AL, 36102

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re:

Atheal Pierce                                        Case No.05-31205-DHW

     Debtor                                        Chapter 13

**NOTICE OF DEFICIENCY AND DEADLINE TO FILE DESIGNATION OF RECORD**

     Notice is hereby given to the Appellant that the Notice of Appeal filed in the above referenced case on April 21, 2006 (Doc. 106) is deficient for the following reason(s):

- The notice is not accompanied with the full filing fee of $255. The balance is due and payable immediately.

     Notice is also hereby given that the Appellant is required to file and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented within 10 days of the filing of the Notice of Appeal. It must list specifically the documents to be transmitted to District Court and a Statement of the Issues to be presented.

Richard S. Oda
Clerk of Court

United States Bankruptcy Court
Middle District of Alabama

In re
Case No.

Instructions for Filing Appeals

1.    If a transcript is included in the Designation of Record and the clerk of the bankruptcy court
      has not received a copy of the completed Request for Transcript form (attached) within 10
      days from the date of mailing said form to the appellant, this office will notify the transcriber
      of the necessity for a transcript and will direct the transcriber to bill the appellant for the
      transcript.

2.    The parties are directed to refer to Rule 8007(c) of the Bankruptcy Rules which states:

           When the bankruptcy court has ordered retention, the parties shall
           provide to the clerk of the bankruptcy court copies of any papers
           retained and the clerk shall transmit those copies to the district court
           or the bankruptcy appellate panel.

3.    If the parties do not furnish copies of papers listed in their Designation(s) of Record along
      with the filing of their Designation of Record, the bankruptcy clerk's office will provide the
      copies and bill the requesting party for these copies at the rate of $.50 per page.

4.    FURNISHED COPIES MUST BE STAMPED "FILED" AND DATED IN THE U.S.
      BANKRUPTCY COURT.

                                                    Richard S. Oda, Clerk
                                                    U. S. Bankruptcy Court
                                                    P. O. Box 1248
                                                    Montgomery, Alabama 36102
                                                    Telephone: (334) 954-3800

| ✎AO 435<br>(Rev. 1/90) | Administrative Office of the United States Courts | **FOR COURT USE ONLY**<br>**DUE DATE:** |
|---|---|---|
| | **TRANSCRIPT ORDER** | |

*Read Instructions on Back:*

| 1. NAME | | 2. PHONE NUMBER | 3. DATE | |
|---|---|---|---|---|
| 4. MAILING ADDRESS | | 5. CITY | 6. STATE | 7. ZIP CODE |

| 8. CASE NUMBER | 9. JUDICIAL OFFICIAL | DATES OF PROCEEDINGS | |
|---|---|---|---|
| | | 10. FROM | 11. TO |
| 12. CASE NAME | | LOCATION OF PROCEEDINGS | |
| | | 13. CITY | 14. STATE |

**15. ORDER FOR**

| G APPEAL | G CRIMINAL | G CRIMINAL JUSTICE ACT | G BANKRUPTCY |
|---|---|---|---|
| G NON-APPEAL | G CIVIL | G IN FORMA PAUPERIS | G OTHER *(Specify)* |

16. TRANSCRIPT REQUESTED (Specify portion(s) and date(s) of proceeding(s) for which transcript is requested)

| PORTIONS | DATE(S) | PORTION(S) | DATE(S) |
|---|---|---|---|
| G VOIR DIRE | | G TESTIMONY (Specify Witness) | |
| G OPENING STATEMENT (Plaintiff) | | | |
| G OPENING STATEMENT (Defendant) | | | |
| G CLOSING ARGUMENT (Plaintiff) | | G PRE-TRIAL PROCEEDING (Spcy) | |
| G CLOSING ARGUMENT (Defendant) | | | |
| G OPINION OF COURT | | | |
| G JURY INSTRUCTIONS | | G OTHER (Specify) | |
| G SENTENCING | | | |
| G BAIL HEARING | | | |

| 17. ORDER | | | | | |
|---|---|---|---|---|---|
| CATEGORY | ORIGINAL<br>(Includes Free Copy<br>for the Court) | FIRST COPY | ADDITIONAL<br>COPIES | NO. OF PAGES ESTIMATE | COSTS |
| ORDINARY | G | G | NO. OF COPIES | | |
| EXPEDITED | G | G | NO. OF COPIES | | |
| DAILY | G | G | NO. OF COPIES | | |
| HOURLY | G | G | NO. OF COPIES | | |
| CERTIFICATION (18. & 19.)<br>By signing below, I certify that I will pay all charges<br>(deposit plus additional). | | | | ESTIMATE TOTAL | |

| 18. SIGNATURE | PROCESSED BY |
|---|---|
| 19. DATE | PHONE NUMBER |
| TRANSCRIPT TO BE PREPARED BY | COURT ADDRESS |

| | DATE | BY | | |
|---|---|---|---|---|
| ORDER RECEIVED | | | | |
| DEPOSIT PAID | | | DEPOSIT PAID | |
| TRANSCRIPT ORDERED | | | TOTAL CHARGES | |
| TRANSCRIPT RECEIVED | | | LESS DEPOSIT | |
| ORDERING PARTY NOTIFIED<br>TO PICK UP TRANSCRIPT | | | TOTAL REFUNDED | |
| PARTY RECEIVED TRANSCRIPT | | | TOTAL DUE | |

(Previous editions of this form may still be used)

**DISTRIBUTION:**    COURT COPY    TRANSCRIPTION COPY    ORDER RECEIPT    ORDER COPY

AO 435
(Rev. 1/90)

## INSTRUCTIONS
### GENERAL

**Use.** Use this form to order transcript of proceedings. Complete a separate order form for each case number for which transcript is ordered.

**Completion.** Complete Items 1-19. Do *not* complete shaded areas which are reserved for the court's use.

**Order Copy.** Keep a copy for your records.

**Mailing or Delivering to the Court.** Mail or deliver the original, and two copies to the Clerk of Court.

**Deposit Fee.** The court will notify you of the amount of the required deposit fee which may be mailed or delivered to the court. Upon receipt of the deposit, the court will process the order.

**Deliver Time.** Delivery time is computed from the date of receipt of the deposit fee.

**Completion of Order.** The court will notify you when the transcript is completed.

**Balance Due.** If the deposit fee was insufficient to cover all charges, the court will notify you of the balance due which must be paid prior to receiving the completed order.

### SPECIFIC

| | |
|---|---|
| Items 1-19. | These items should always be completed. |
| Item 8. | Only one case number may be listed per order. |
| Item 15. | Place an "X" in each box that applies. |
| Item 16. | Place an "X" in the box for each portion requested. List specific date(s) of the proceedings for which transcript is requested. Be sure that the description is clearly written to facilitate processing. Orders may be placed for as few pages of transcript as are needed. |
| Item. 17. | *Categories.* Only four (4) categories of transcripts may be ordered. These are:<br>*Ordinary*. A transcript to be delivered within thirty (30) calendar days after receipt of an order. (Order is considered received upon receipt of the deposit.)<br>*Expedited*. A transcript to be delivered within seven (7) calendar days after receipt of an order.<br>*Daily*. A transcript to be delivered following adjournment and prior to the normal opening hour of the court on the following morning whether or not it actually is a court day.<br>*Hourly*. A transcript of proceedings ordered under unusual circumstances to be delivered within two (2) hours. |

**NOTE**: Full price may be charged only if the transcript is delivered within the required time frame. For example, if an order for expedited transcript is not completed and delivered within seven (7) calendar days, payment would be at the ordinary *delivery* rate.

| | |
|---|---|
| | *Ordering*. Place an "X" in each box that applies. Indicate the number of additional copies ordered.<br>*Original*. Original typing of the transcript. An original must be ordered and prepared prior to the availability of copies. The original fee is charged only once. The fee for the original includes the free copy for the court.<br>*First Copy*. First copy of the transcript after the original has been prepared. All parties ordering copies must pay this rate for the first copy ordered.<br>*Additional Copies*. All other copies of the transcript ordered by the same party. |
| Item 18. | Sign in this space to certify that you will pay all charges. (This includes the deposit plus any additional charges.) |
| Item 19. | Enter the date of signing. |

Shaded Area. Reserved for the court's use.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA


In Re:                                          Bankruptcy Case No. 03-81486 WRS
Charlotte Teresa Willford
Kenneth Williford


## NOTICE SERVICE OF NOTICE OF APPEAL


In accordance with Bankruptcy Rule 8004, you are hereby served with the enclosed Notice of Appeal.

You are further notified of the requirements of Bankruptcy Rules 8006 (relating to the record and statement of issues on appeal and cross-appeals) and 8005 (relating to stays on appeal).

Dated at Montgomery, Alabama, this day of January 18, 2007.



/s/ Richard S. Oda, Clerk
 United States Bankruptcy Court


/s/ Yvonne Pelham
  Deputy Clerk


cc: Kenneth Williford
     Charlotte Williford

# United States Bankruptcy Court
## Middle District of Alabama

QUARTERLY FEE STATEMENT
Pursuant to Fed. R. Bankr. P. 2015(a)(5)



FILED
JAN 19 2007
U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

| Debtor | Case #: |
|---|---|
| Charlotte and Kenneth Williford | 03-81486 |

FOR CALENDAR QUARTER ENDING    12/31/06

1. **MONTH** | **DISBURSEMENTS\*** |
|---|---|
| October | $46,290.06 |
| November | $43,170.97 |
| December | $56,906.92 |

TOTAL DISBURSEMENTS FOR QUARTER    $146,367.95

2. QUARTERLY FEE OWED PURSUANT TO
28 U.S.C. § 1930(a)(7)    $750.00

3. QUARTERLY FEE PAID
(Attach proof of payment)    $750.00

4. AMOUNT OF UNPAID FEES (IF ANY)    $0.00

I, Charlottte Williford _____, acting as the duly authorized agent for the Debtor-In-Possession (Trustee)
(Plan Administrator) declare under penalty of perjury under the laws of the United States that I have read and certify that the
figures, statements, disbursement itemizations, and account balances as listed in this Quarterly Fee Statement are true and
correct as of the date of this report to the best of my knowledge, information and belief.

Jan. 18-2007
DATE

_____    Charlotte Williford
For the Debtor-In-Possession (Trustee) (Plan Ad

(Print or type name and capacity of person    Charlotte Williford
signing this Declaration)    Debtor

**The check for payment of the quarterly fee should be attached to the original of this Quarterly Fee Statement
filed with the clerk of court.**

\*For periods after plan confirmation, disbursements include all plan payments plus all withdrawal amounts
(checks, direct debits, etc.) posted to each bank account plus any cash payments.

12/21/2006    Quarterly Fee Statement

RINT #: 6002682

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re                                            Case No. 03-81486-WRS
                                                 Chapter 11
CHARLOTTE TERESA WILLIFORD
KENNETH WILLIFORD,

                    Debtors

**ORDER DENYING MOTION FOR RECONSIDERATION**

For the reasons set forth on the record on January 23, 2007, on the motion for

reconsideration filed by Kenneth Williford (Doc. 317), it is

ORDERED that the motion is DENIED.

Done this 24th day of January, 2007.

                                        /s/ William R. Sawyer
                                        United States Bankruptcy Judge

c: Charlotte Williford
   Kenneth Williford
   Teresa R. Jacobs, BA
   William Murray, Esq.

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                         Case No. 03-81486-WRS
                                              Chapter 11
CHARLOTTE TERESA WILLIFORD
KENNETH WILLIFORD,

       Debtors

### FINAL DECREE

       The estate of the above-named debtors having been fully administered, pursuant to

Fed. R. Bankr. Proc. 3022 it is

       ORDERED that the chapter 11 case of the above-named debtors

is closed.

       Done this 24th day of January, 2007.

                   /s/ William R. Sawyer
               United States Bankruptcy Judge


c:  Charlotte Williford, Debtor
    Kenneth Williford, Debtor
    Teresa R. Jacobs, Bankruptcy Administrator