IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KENNETH WILLIFORD, ) | |
| ) | |
| Appellant, ) | |
| ) | CIVIL ACTION NO. 3:07cv105-WKW |
| v. ) | |
| ) | |
| CHARLOTTE WILLIFORD, ) | |
| ) | |
| Appellee. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This action is before this court on an appeal under 28 U.S.C. §158(a) from the order entered by the United States Bankruptcy Court for the Middle District of Alabama on December 8, 2006.[1] Upon consideration of the record and briefs of the parties, it is the RECOMMENDATION of the Magistrate Judge that the decision of the Bankruptcy Court be AFFIRMED.

**BACKGROUND**

Kenneth and Charlotte Williford,[2] joint debtors in the bankruptcy case under review, were husband and wife. On April 9, 2003, Charlotte filed a petition for divorce in the Circuit Court of Lee County. Charlotte was represented in this action by attorney Beverlye Brady; Kenneth was represented by Margaret Brown. The divorce action went to trial on September 22, 2003. (See Doc. # 36-21, pp. 1-3; see also Doc. # 36-6).

---

[1] See Notice of Appeal (Doc. # 1-2, p. 3). The bankruptcy action was closed by final decree entered on January 24, 2007. (Doc. # 36, Exhibit 37).

[2] Because they share a surname, the court will refer to the parties by their first names.

On September 20, 2003 – two days before the divorce trial commenced – the Willifords lost a conversion and breach of contract lawsuit filed against them in the Circuit Court of Chambers County ("the Emerton action"), and that court entered judgment awarding the plaintiffs compensatory damages in the amount of $33,000.00 and punitive damages in the amount of $350,000.00. (Id.; see also Doc. # 33-43, pp. 15-24). On October 3, 2003, Kenneth and Charlotte – both represented by Von Memory and James Day ("Memory & Day") – jointly filed a Chapter 11 voluntary petition in bankruptcy. (Doc. # 33-2, 33-3).

Four weeks later, on October 31, 2003, Judge Richard Lane of the Lee County Circuit Court entered a judgment in the divorce action. Judge Lane found that the marriage had been irretrievably broken as a result of Kenneth's commission and conviction of the criminal offenses of first degree sodomy and first degree rape; that Kenneth was sentenced on May 8, 2003 to concurrent sentences of fifteen and twenty-five years, and that – although he had an appeal pending – he remained in the custody of the Alabama Department of Corrections.[3] Judge Lane further concluded that, as a result of his willful actions, Kenneth had abrogated the running of the family business[4] to Charlotte. He also found that Charlotte was solely

---

[3] Kenneth's conviction was affirmed by the Alabama Court of Appeals on April 23, 2004 and by the Alabama Supreme Court on September 16, 2005. On June 19, 2006, the United States Supreme Court denied his petition for a writ of certiorari. See Williford v. State, 919 So.2d. 1235 (Ala. Crim. App. Apr. 23, 2004)(Table, No. CR-02-1523); Ex parte Williford, 931 So.2d 10 (Ala. 2005); Williford v. Alabama, 126 S.Ct. 2899 (2006). Throughout the bankruptcy proceedings and the pendency of this action, Kenneth remained incarcerated at the W.E. Donaldson Correctional Facility in Bessemer, Alabama. (See Doc. # 33-2, p. 1; Doc. # 33-26, ¶ 33).

[4] During their marriage, the Willifords owned and operated several mobile home parks. (Doc. # 35-15, p. 6).

responsible, and had been since Kenneth's incarceration, for meeting the obligations of her family and household, including supporting two children and paying the mortgage on the family home and the note secured by the parties' business property. He further concluded that Charlotte was incurring legal fees and expenses associated with the Emerton litigation in Chambers County and a declaratory judgment action filed in federal court by the Willifords' insurer. Judge Lane awarded Charlotte the parties' home and the assets of the parties' mobile home business, and ordered that she be solely responsible for insurance, taxes, mortgage payments, and indebtedness on the property. The court awarded all of the parties' personal property, except for Kenneth's personal effects and guns,[5] to Charlotte. (Doc. # 36-21, pp. 4-24). Kenneth appealed the Circuit Court judgment to the Alabama Court of Civil Appeals, which affirmed without opinion. (Doc. # 36-6, p. 2; see Williford v. Williford, 945 So.2d 494 (Ala. Civ. App. Apr. 29, 2005)(Table)). Kenneth sought to appeal the decision of the Court of Civil Appeals, but the Alabama Supreme Court denied certiorari. (Doc. # 36-6, p. 2; see Ex parte Williford, 946 So.2d 545 (Ala. Aug. 12, 2005)(table)).

On January 30, 2006, the bankruptcy court entered a final order approving the debtors' disclosure statement and confirming the Chapter 11 plan under 11 U.S.C. § 1129(a). (Doc. # 36-2). On July 25, 2006, Kenneth – proceeding *pro se* – filed a motion to vacate the

---

[5] Judge Lane ordered that Charlotte sell the guns and use part of the proceeds to pay three annual premiums on Kenneth's life insurance policy and to remit the remainder to Kenneth's attorney for disposition at Kenneth's direction.

3

order confirming the plan, alleging fraud on the court. He further requested relief from unlawful division of the estate's assets by the circuit court. In the motion, Kenneth asserted that Brown, Brady, Memory and Day had failed to advise the circuit court of the pending bankruptcy action. He further alleged that Memory and Day had not advised the bankruptcy court of the circuit court's unauthorized division of marital assets. Kenneth requested that the bankruptcy court reopen the case, vacate the plan, and conduct evidentiary hearings on the issue of fair division of the joint debtors' assets. (Doc. # 36-6).[6] In a pleading filed two weeks later, Kenneth clarified that he did not seek to have the plan vacated, but that he requested only that the court conduct an evidentiary hearing regarding the proper division of the estate's assets. (See Doc. # 36-11 ("Maybe I should apologize to this honorable court, for my ignorance of the law, and I pray that the court will accept my apology for wording of what I have requested. Maybe, I should not have used the word vacate in my request, I might have just of said, I would like to have this case reopen; because of the fraud on the court, and for relief from the unlawful division of the estates['] assets. Because I surely do not want, nor have I requested dismissal of this plan, nor will I, other than for relief, for what I have worked for, for the last 27 years."); see also Doc. # 36-15, p. 3 ("This plan, that, this honorable court has co[n]firmed should not be dismissed or dismantled, for any reason other than to divid[e] the business and marital property and assets equally and fairly.")).

---

[6] On July 27, 2006, Memory and Day filed a motion to dismiss the pending Chapter 11 case. (Doc. # 36-7). On August 8, 2006, they moved to withdraw as counsel. (Doc. # 36-10). The motion to dismiss was denied, and the motion to withdraw was granted. (Doc. # 36-27 and # 36-28).

In response, Charlotte requested that the bankruptcy court allow the circuit court property division to stand. (Doc. # 36-24). The bankruptcy court set the matter for a status hearing on September 12, 2006. (See Docs. ## 36-9).[7, 8] On December 8, 2006, the bankruptcy court entered an order denying Kenneth's motion. Instead, the court annulled the automatic stay imposed by 11 U.S.C. § 362 to retroactively permit the circuit court divorce proceedings. (Docs. ## 36-27, 36-28). Kenneth appeals from this order.[9]

## STANDARD OF REVIEW

A district court reviews a bankruptcy court's factual findings under the clearly erroneous standard. In re Thomas, 883 F.2d 991, 994 (11th Cir. 1989). "For a factual finding to be clearly erroneous, this court, after reviewing all of the evidence, must be left with the definite and firm conviction that a mistake has been committed." Gen. Trading, Inc. v. Yale Materials Handling Corp., 119 F.3d 1485, 1494 (11th Cir. 1997). In contrast, a district court reviews de novo a bankruptcy court's conclusions of law. In re Simmons, 200 F. 3d 738, 741 (11th Cir. 2000). Equitable determinations by a bankruptcy court are subject to review under an abuse of discretion standard. In re General Dev. Corp., 84 F.3d 1364,

---

[7] Because the hearing was not an evidentiary hearing, Judge William Sawyer denied Kenneth's motion to be transported to the bankruptcy court and directed that he instead appear by telephone. (Doc. # 36-16). Since the facts relevant to the bankruptcy court's determination on relief from the stay were not in dispute, an evidentiary hearing on that issue was not necessary, and Kenneth's appearance by telephone was sufficient. See 11 U.S.C. § 102(1)(A).

[8] At that hearing, Kenneth again reiterated that he did not seek to have the plan vacated, and that the plan should remain in place. (Doc. # 37, p. 6).

[9] In this order, Judge Sawyer also ruled on a number of motions filed by William Murray and Memory & Day. In the present appeal, Kenneth has raised no issue regarding these rulings.

1367 (11th Cir. 1996).

## DISCUSSION

Kenneth Williford raises three issues on appeal. He contends that: (1) the bankruptcy court abused its discretion by retroactively annulling the automatic bankruptcy stay to allow the state circuit court's judgment regarding the division of marital property to stand; (2) the bankruptcy court abused its discretion by overlooking Kenneth Williford's claim that Charlotte Williford, Memory & Day, Brown and Brady committed fraud against the court; and (3) the bankruptcy court demonstrated its bias against Kenneth Williford, because of his incarceration, by failing to rule in his favor even though Charlotte Williford and Memory & Day did not refute Kenneth Williford's allegations and issues. (See Doc. # 4, ¶¶ 7-8; Doc. # 23, p. VIII; Doc. # 10). The latter two issues, although raised as separate issues, both pertain to the primary issue in this case, *i.e.*, whether the bankruptcy court abused its discretion by annulling the stay.

It is undisputed that the divorce court judgment was entered after the Willifords' jointly filed a petition in bankruptcy and, thus, that the division of property effected by the judgment was in violation of the automatic bankruptcy stay. See 11 U.S.C. § 362(a)(1). While "acts taken in violation of the automatic stay are generally deemed void," the bankruptcy code permits bankruptcy courts, in limited circumstances, to annul the stay so as to retroactively validate actions taken while the stay was in effect. In re Albany Partners, Ltd., 749 F.2d 670, 675 (11th Cir. 1984); 11 U.S.C. § 362(d). A bankruptcy judge's decision to annul an automatic stay is reviewed for abuse of discretion. See Albany Partners, *supra*.

On September 12, 2006, Judge Sawyer held a status hearing to discuss the alternatives for dealing with the violation of the automatic stay, including annulling the stay to permit the circuit court judgment to stand, as requested by Charlotte, and vacating the judgment in the divorce case and proceeding to hear the property division in bankruptcy court, as requested by Kenneth. Judge Sawyer ultimately determined that annulment of the stay was the best course of action, relying heavily on the fact that no creditors would be harmed by annulment.

While the automatic bankruptcy stay serves to provide a debtor with relief from financial pressure during the pendency of bankruptcy proceedings, "the stay also protects creditors by preventing the premature disbursement of the bankruptcy debtor's estate." Carver v. Carver, 954 F.2d 1573, 1576 (11th Cir. 1992). "'Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors.'" (Id.)(quoting H.R. Rep. No. 595, 95th Cong., 2d Sess. 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97). See also Hunt v. Bankers' Trust Co., 799 F.2d 1060, 1069 (5th Cir. 1986)("The purpose of the automatic stay is to protect creditors in a manner consistent with the bankruptcy goal of equal treatment.")(quoted in Carver). In the particular circumstances of the present case, annulment did not disserve the dual purposes of the automatic stay. With regard to protection of the debtor, Kenneth, from the pressure of financial collection activities, the court notes that the bankruptcy action was not filed until after the divorce trial had concluded. All that remained was for Judge Lane to enter a judgment, and no responsive action was required of Kenneth in the circuit court after the

7

bankruptcy petition was filed. Additionally, Kenneth himself prosecuted an appeal of the divorce court judgment through the state courts in violation of the automatic stay. The stay's purpose of protecting Kenneth from the pressure of financial collection activities plainly is not served by allowing him to proceed first through appeals in the state court system, in violation of the stay, and then granting him – using Judge Sawyer's apt phrase – "a federal court 'do over.'"

Judge Sawyer concluded that annulment of the stay would not prejudice the creditors. Charlotte is also a debtor in the joint bankruptcy proceeding. All creditors were advised of the existence of the circuit court divorce judgment awarding all estate property to Charlotte. The amended disclosure statement filed June 29, 2005 in the bankruptcy proceeding states:

> ***In September 2003 Charlotte Williford filed a petition for divorce against Kenneth Williford in the Circuit Court of Lee County, Alabama, Case Number DR 2003-175. Pursuant to a judgment of divorce rendered October 31, 2003 the court awarded to Charlotte Williford all property of the estate. This matter was appealed by Kenneth Williford to the Alabama Court of Civil Appeals, Case Number 2030320, and a rehearing was denied, June 17, 2005.***

(See Doc. # 35-15, pp. 6-7)(emphasis in original). As Judge Sawyer noted in his memorandum opinion (see Doc. # 36-2, p. 4), no creditors objected to confirmation of the proposed Chapter 11 plan, as amended. (See Doc. # 33-2, bankruptcy proceeding docket sheet). The confirmed plan contemplates Charlotte's continued operation of the mobile home parks as the means for generating revenue to make required payments on the substantial mortgages secured by the property. (Doc. # 35-31; # 36-2).

In reaching his decision, Judge Sawyer also considered the "deeply rooted policy

8

concerns pertaining to the traditional reluctance of federal courts to intrude in domestic relations law, which is traditionally within the purview of the state courts." (Doc. # 36-29, p. 10). He did not err by doing so. See Harrell v. Sharp, 754 F.2d 902, 907 (11th Cir. 1985)("[L]imited to its proper role, the bankruptcy court will not duplicate the functions of state domestic relations courts, and its ruling will impinge on state domestic relations issues in the most limited manner possible."). Judge Sawyer reasoned that "[t]he overriding interest of the bankruptcy courts in [divorce] proceedings is to protect the interests of creditors who could be harmed by collusive or fraudulent activities in connection with the division of marital property." (Doc. # 36-29, p. 9). In the present case, because the parties filed a joint bankruptcy and were beholden to the same creditors, the particulars of the circuit court's division of property between Kenneth and Charlotte did not harm the interests of the creditors.[10]

Fraud against the court. Kenneth argues that the bankruptcy court erred by ignoring his claims of fraud against the court. In particular, he contends that Charlotte and the attorneys in the bankruptcy action failed to advise the court of the divorce action, and that Charlotte and the attorneys in the divorce court failed to advise that court of the bankruptcy stay. However, as Judge Sawyer observed, he was advised of the existence of the circuit court judgment awarding all property to Charlotte by the amended disclosure filed on June

---

[10] From his numerous pleadings, it appears that Kenneth is laboring under the misconception that the bankruptcy court's primary concern is the fairness of the circuit court's distribution between Kenneth and Charlotte. This issue is within the province of the state courts, since the division did not adversely affect the reorganization proposed by the plan.

29, 2005 (quoted *supra*). Kenneth complains that this disclosure came too late, and only after he had threatened to reveal the circuit court judgment to the bankruptcy court. However, the disclosure was filed well before the court entered its order confirming the plan and, accordingly, the late disclosure did not affect the outcome of the bankruptcy proceeding. (See Doc. # 35-15, pp. 6-7). Additionally, Judge Sawyer was clearly aware of the parties' failure to advise the circuit court of the filing of the bankruptcy petition. See Doc. # 36-29, p. 9 ("None of the lawyers advised the Circuit Court of the bankruptcy filing until considerably later, and no one moved for relief from the automatic stay here to permit the divorce case to proceed."). Contrary to Kenneth's argument, the court did not "ignore" the "fraud" – the judge merely failed to find that the late disclosure constituted reason to deny Charlotte's request that the stay be annulled.

In his brief before this court, Kenneth argues extensively about another alleged "fraud" – contending that Charlotte is undervaluing assets and evading taxes. (See, *e.g.*, Doc. # 23, pp. 11-15). The court notes that Kenneth did not raise this additional fraud before the bankruptcy court until after the court issued the December 8, 2006 order appealed here and then only did so in a cursory fashion. He first argued it in his motion for reconsideration, filed on December 20, 2006 (Doc. # 36-30), and again in the telephone conference held on January 23, 2007. Since he denied Kenneth's motion for reconsideration, it is apparent that Judge Sawyer concluded that the additional allegations of fraud presented by Kenneth did not provide a basis for reversing the court's decision regarding the annulment. The court had previously determined that the interests of the creditors would not be prejudiced by annulling

the stay. During the January telephone conference on the motion to reconsider, the court indicated that Kenneth's incarceration is a relevant factor to consider, and stated its conclusion that the lengthy incarceration impinged on the feasibility and practicality of the Chapter 11 plan. (Doc. # 38, p. 26). The abuse of discretion standard of review is deferential to the conclusions of the lower court. See Long v. Raymond Corp., 2007 WL 2376785 (11th Cir. Aug. 21, 2007)("Indeed, abuse-of-discretion review recognizes the range of possible conclusions the trial judge may reach. "By definition . . . under the abuse of discretion standard of review there will be occasions in which we affirm the district court even though we would have gone the other way had it been our call. That is how an abuse of discretion standard differs from a *de novo* standard of review. As we have stated previously, the abuse of discretion standard allows "a range of choice for the district court, so long as that choice does not constitute a clear error of judgment."'")(citation omitted). The bankruptcy court did not abuse its discretion in concluding that the circumstances of this case presented cause for annulling the stay to permit the circuit court's judgment to stand.[11]  See 11 U.S.C. § 362(d)(1).

## CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that the decision of the Bankruptcy Court be AFFIRMED.

---

[11] Kenneth argues that the bankruptcy court's holding demonstrates that the court was biased against him because of his incarceration. This argument is without merit. The fact that Kenneth is presently serving a lengthy sentence to confinement is undisputed, and the bankruptcy court was free to consider it as a factor in determining whether there existed cause for annulling the stay.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action.  The parties are DIRECTED to file any objections to this Recommendation on or before October 12, 2007.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 28th day of September, 2007.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE